IN THE UNITED STATES DISTRICT COURT
for
The Northern District of Texas

| | | |
|---|---|---|
| DR. ADAM W. GREENWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. |
| v. | ) | |
| | ) | |
| THE SOUTHWESTERN BAPTIST | ) | |
| THEOLOGICAL SEMINARY | ) | |
| c/o Michele G. Smith, | ) | |
| Registered Agent | ) | |
| 2001 W. Seminary Dr. | ) | |
| Fort Worth, TX 76115 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DANNY ROBERTS | ) | |
| 8808 Thornbridge Dr., | ) | |
| North Richland Hills, TX 76180 | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Dr. Adam W. Greenway, ("Dr. Greenway" or "Plaintiff" herein) by and through counsel, Andrew B. Jones, and respectfully submits this *Complaint and Jury Demand.*

Plaintiff hereby respectfully moves the Court for entry of judgment in his favor against the above-named Defendants.  In support of such Complaint, Plaintiff avers as follows:

## INTRODUCTION

Dr. Adam W. Greenway was elected to serve as the ninth president of The Southwestern Baptist Theological Seminary (hereafter "SWBTS") by its Board of

1

Trustees on February 27, 2019.  In fall of 2022, Dr. Greenway took executive actions and voiced opinions relating to political issues that were met with disapproval by influential alumni, members of the Executive Committee of the Board of Trustees, administration, and faculty of SWBTS. A behind-the-scenes initiative led to Dr. Greenway's removal, culminating in a request for Dr. Greenway's resignation made by the Chairman of the Board of Trustees, Danny Roberts (hereafter "Roberts"), at an Executive Committee meeting on September 22, 2022.  Thereafter, Dr. Greenway and SWBTS negotiated the terms of his resignation, and signed a Settlement Agreement on February 13, 2023.  Within days of its execution, members of its administration and Board of Trustees of SWBTS breached terms of the Settlement Agreement by failing to issue a public statement as required under the agreement. Shortly thereafter, the administration of SWBTS, including Roberts, began a defamatory campaign against Dr. Greenway that included both specific false statements along with publication of a narrative that created a substantially false and defamatory impression.  The defamation of Dr. Greenway has been widely publicized, resulting in severe damage to his reputation and rendering him unemployable in the professional capacity for which he is qualified.

### A.   PARTIES

1.    Plaintiff, Dr. ADAM W. GREENWAY, an individual, is a citizen and a resident of the State of Florida.

2.    Defendant, The Southwestern Baptist Theological Seminary, is an institution of higher education, registered as a domestic nonprofit corporation within

the State of Texas, with its primary place of business being 2001 W. Seminary Dr., Fort Worth, TX 76115.  SWBTS may be served with process via its registered agent, Michele G. Smith, at 2001 W. Seminary Dr., Fort Worth, TX 76115.

3.        Defendant Danny Roberts ("Roberts") was, at the time of the conduct complained of herein, Chairman of the Board of Trustees of SWBTS.  As Chairman, Roberts was an agent of SWBTS.  Roberts is named here in his official capacity as a representative of SWBTS and his individual capacity.  Roberts is a resident of Tarrant County, Texas, a location in the Northern District of Texas.  He may be served at 8808 Thornbridge Dr., North Richland Hills, TX 76180.

### B.        JURISDICTION AND VENUE

4.        Plaintiff is seeking damages in excess of $75,000.

5.        The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a), as the amount in controversy exceeds $75,000.00 and the parties are citizens of different states.

6.        The Court has supplemental jurisdiction over the subject matter of the state law causes of action pursuant to 28 U.S.C. §1367(a) because Plaintiff's claims are part of the same case or controversy under Article 3 of the U.S. Constitution.

7.        Venue in this Court is proper under 28 U.S.C. §1391(b)(1), which provides that a civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.  Additionally, venue in this Court is proper under 28 U.S.C. §1391(b)(2), as a

substantial part of the events or omissions giving rise to the claim occurred within the judicial district.

8.      Venue in this Court is proper for Defendant SWBTS, a corporation, pursuant to 28 U.S.C. §1391(d), as SWBTS is deemed to reside in any district within the State within which its contacts would be sufficient to subject it to personal jurisdiction, and SWBTS principal place of business is within the judicial district.

9.      Venue in this Court is proper for Defendant Danny Roberts, an individual, as he resides within the judicial district.

### C.      CONDITIONS PRECEDENT

10.     All conditions precedent to recovery have been performed or have occurred.

### D.      STATEMENT OF FACTS

11.     Plaintiff incorporates paragraphs 1 through 10 stated above, as if fully set forth herein.

12.     Plaintiff, Dr. Adam W. Greenway, was elected by the Board of Trustees of The Southwestern Baptist Theological Seminary to serve as its ninth President on February 27, 2019.   He served as President through February 13, 2023.

13.     The President of SWBTS, as part of his compensation and duties, is expected to live at the "President's Home," once known as "Pecan Manor," a facility owned and maintained by the seminary.

14.     The President's Home is a seminary building, nearly 10,000 square feet in size, located in the center of campus and surrounded by other seminary buildings

including the J.W. MacGorman Chapel and Performing Arts Center, Mathena Hall, and the Robert E. Naylor Student Center.

15.    The President's Home is neither intended nor used as merely a private dwelling for the President. Rather, the President's Home is designed, equipped, and maintained as a multi-purpose institutional facility, equipped to host institutional functions and gatherings, including meetings, fundraising events, and receptions.

16.    The preceding President of SWBTS, Dr. Paige Patterson, and First Lady, Dr. Dorothy Patterson, employed up to fourteen (14) staff within the President's Home facility (then known as Pecan Manor), along with a professional chef.  Four offices, and up to twenty-seven (27) active phone lines existed within the building during President Patterson's tenure.

17.    Upon his termination from SWBTS in May of 2018, the majority of furnishings and décor of the President's Home were removed by the Pattersons.

18.    In February 2019, when Plaintiff began his tenure as President of SWBTS, the President's Home was in a state of disrepair and unfit for habitation or use. Visible mold could be seen growing on interior walls of the facility.

19.    The President's Home's condition was known to then-Chairman Roberts, who toured the building with Plaintiff on February 26, 2019.

20.    Restoration of the facility was necessary to return the President's Home to usable condition as a seminary asset in the center of campus.

21.    Beginning shortly after February of 2019, renovations and restoration of the President's Home facility took place.

5

22.     The large majority of the work and corresponding expenditures occurred in 2019.

23.     In conjunction with the renovations of the President's Home, Plaintiff made permanent the elimination of full-time staffed positions within the home, including the chef, to reduce ongoing costs associated with the facility.

24.     The facility's kitchen capacity and equipment are suitable for its intended purposes as an institutional facility.   The kitchen is equipped with commercial grade appliances, suitable for hosting gatherings beyond those typical in a single-family dwelling.

25.     As part of the renovations relating to hospitality, the President's Home was equipped with a commercial grade coffee bar at a cost of $11,123.49. The cost included an espresso machine, water filtration system, accessories, and installation. The expense occurred in August of 2019.

26.     In late 2021, during the Covid-19 pandemic, inspection of the President's Home facility revealed that mold and mildew existed throughout the HVAC system, including the ductwork.

27.     The HVAC units on the facility had not been recently replaced, with some units over fifteen (15) years old.

28.     The risk manager for SWBTS advised that the HVAC units need to be replaced for the safety of occupants and guests.

29.     The HVAC units on the facility were replaced in late 2021.

30.     When used in its capacity as an institutional facility for events under Plaintiff's tenure, the SWBTS campus events team would operate the facility and provide institutional catering services; Professional catering foodservice staff, including a barista, would serve attendees of the events.

31.     During Plaintiff's tenure, institutional use of the President's Home included annual receptions during graduation weekend, where approximately 1000 persons, including graduates and families, entered and were received at the facility throughout a single day.   Similarly, during the Christmas holiday season, approximately 1000 visitors entered the President's Home during a series of reception events spanning consecutive days.

32.     After the expenditures made in 2019, the number of institutional events held in the home in the years 2020-2022 were severely curtailed by the Covid-19 pandemic.

33.     The expenditures made for repair and renovation of the President's Home facility during Plaintiff's tenure were not made by Plaintiff unilaterally, but were made with the knowledge of the appropriate officials of SWBTS.

34.     As they occurred, the expenditures were submitted to the Vice President for Business Administration, who serves as treasurer of the Seminary. Whether by invoice, purchase order, or similar document, the expenditures were submitted to the Vice President for Business Administration when purchases were made or services performed.

35.     Pursuant to Article IX of SWBTS's Bylaws at the time, the Vice President for Business Administration was required to keep an accurate record of all receipts and disbursements, and make regular reports to the Board of Trustees.

36.     In compliance with SWBTS's Bylaws, the financial records of the Seminary were audited annually by an outside firm of independent certified public accountants selected by the trustees.[1]

37.     This audit occurred each year from 2019 through 2022.

38.     Annually, copies of the audit were presented to the President, the Chairman of the Board, members of the Board, and officials of the Southern Baptist Convention.

39.     The Southern Baptist Convention (hereafter "the Convention") is the religious entity that governs SWBTS as its sole member.[2]

40.     SWBTS submits an annual financial statement to the Executive Committee of the Convention.

41.     As part of the annual financial statement, the officers of the Board of Trustees certify that "the expenses and perquisites of the president are not excessive and are in keeping with biblical stewardship, including every emolument and personal benefit of any kind (and specifically including housing, travel, automobile(s), and personal assistants) all valued at market rates."[3]

---

[1] See Article X of the Bylaws of SWBTS.

[2] Article I, ¶1 of the Bylaws of SWBTS states "The Seminary is fostered and supported by the Southern Baptist Convention." Article I, ¶ 3 provides that the "*Baptist Faith and Message*" adopted by the Convention is the "Statement of Faith" of SWBTS.

[3] Convention "Annual Reports" containing the Business and Financial Plan of the Convention are located online at https://sbhla.org/digital-resources/sbc-annuals/. See §13(B)(6) of the Business and Financial Plan. For reports from years 2020-2022, see p. 29; For the report from year 2023 see p. 28.

42.     For the years 2019 through 2022, during each of the years of Plaintiff's tenure, the Board of Trustees of SWBTS made such a certification to the Convention.[4]

43.     All expenditures relating to the restoration of the President's Home facility during Plaintiff's tenure were made in accordance with existing SWBTS financial controls and policies.

44.     In the summer of 2022, Plaintiff began to have disagreements with certain members in a faction of leadership within SWBTS relating to continued employment of persons within the administration of SWBTS.

45.     In July of 2022, Plaintiff learned that SWBTS's treasurer at the time, Vice President for Business Administration Colby Adams, had drawn approximately $1.6 million on a line of credit extended to SWBTS.

46.     The draws of credit occurred, and the need to do so arose, without the Plaintiff's knowledge.

47.     This occurrence in July of 2022 was the first instance wherein Plaintiff was advised that a funding shortfall existed that required use of the line of credit.

48.     Plaintiff subsequently removed Adams from the role of treasurer and Vice President for Business Administration.

49.     Plaintiff was not allowed to terminate Adams by Roberts and other trustees.

50.     Adams was reassigned to a staff position working on SWBTS legal matters and continued in employment with SWBTS, against the wishes of Plaintiff.

---

[4] Specific pages confirming the certifications are as follows: 2020 report, p. 102; 2021 report, p. 188; 2022 report, p. 150; 2023 report, p. 153.

51.     In the summer and fall of 2022, Plaintiff began to have disagreements with certain members in a faction of leadership within SWBTS relating to political topics.

52.     On September 12, 2022, Plaintiff posted an online tweet criticizing a "Christian Nationalism" conference, that included several United States Senators as keynote speakers.  Plaintiff's tweet read:

> "If America really was/is a Christian nation – as my Twitter feed indicates some are claiming today – then where are the cries to repent and believe instead of just calls to register and go vote?  Don't reduce the Bible to a political prop and Jesus to a candidate consultant, please."

53.     Plaintiff was immediately contacted by Jack Graham, a prominent SWBTS alumnus and senior pastor of a Dallas area megachurch, Prestonwood Baptist, who, via text message, demanded Plaintiff take down the tweet.

54.     The message sent from Graham was a group text message, that included O.S. Hawkins, a prominent SWBTS alumnus and former president of GuideStone Financial Resources of the Southern Baptist Convention.

55.     O.S. Hawkins responded to the text thread to Plaintiff, stating:

> Adam… it appears you feel like you always have to be the smartest person in the room… your constant push back on board members, friends and people trying to support you is not a winning strategy… You continue to burn bridges with such things as tweets that are total straw men and sadly it does nothing for the growth and health of our seminary of which you are a steward.

56.     On September 12, 2022, O.S. Hawkins also issued a tweet (naming no persons) stating:

> "Pride goes before destruction, and a haughty spirit before a fall" (Prv16:18) – why is it that some people never learn the value of losing a

little battle in order to win a bigger war?  You don't. always have to push back insisting you are right… b/c you are not always right!

57.    On September 19, 2022, a private meeting occurred pertaining to Plaintiff that included Roberts, O.S. Hawkins, and Jack Graham.

58.    A SWBTS Trustee Executive Committee meeting had previously been scheduled for September 22, 2022.

59.    During that meeting, Roberts met with Plaintiff and demanded that Plaintiff resign as President of SWBTS, offering six months of salary, benefits, housing, and the promise of mutual non-disparagement as terms of separation.

60.    The proposed terms were witnessed to by Paul Chitwood, president of the International Mission Board of the Southern Baptist Convention, via phone call with Roberts on September 22, 2022.

61.    Plaintiff did not resign as president of SWBTS on September 22, 2022.

62.    Plaintiff verbally agreed to resign on the condition of the terms promised by Roberts on September 23, 2022.

63.    On October 18, 2022, Roberts, as Chairman of the Board of Trustees, issued a press release in contradiction to his promise of mutual non-disparagement, stating, among other things, that Plaintiff was responsible for "budget mismanagement, overspending resulting in hundreds of thousands of dollars of deficits per month, and attempts to pass the blame for these matters onto three different chief financial officers who were each removed."

64.    Dr. Greenway obtained counsel, and a Settlement Agreement was negotiated governing the terms of Plaintiff's resignation from SWBTS.

65.     The Settlement Agreement included the provision that:

"Southwestern and Greenway agree to issue the joint statement … Southwestern will take responsibility for issuing the joint statement on or before February 28, 2023."

66.     Among other content, the joint statement indicated that the parties parting was amicable.  The parties mutually represented that they would "pray that God will richly bless the Greenway family as well as the Southwestern Seminary in the years ahead."

67.     The Settlement Agreement included a non-disparagement clause prohibiting the parties, including Plaintiff and Roberts (individually) from making statements pertaining to the other parties that are false and disparaging.

68.     Based on the terms of the settlement agreement Dr. Greenway resigned as President of SWBTS on February 13, 2023.

69.     SWBTS did not issue the joint statement on or before February 28, 2023 in any manner where SWBTS knew it would become public.

70.     SWBTS has the capacity to issue public statements on its website, and commonly does so in its "News" column, https://swbts.edu/news.

71.     SWBTS did not place the joint statement on its website.

72.     Plaintiff requested that SWBTS place the statement on its website to ensure it was issued.

73.     SWBTS specifically declined to do so.

74.   On April 14, 2023, at a meeting of SWBTS's Advisory Council, a gathering of major Seminary donors, board members, faculty, staff, and religious and community leaders, Roberts made several public statements pertaining to Plaintiff:

> "[A]bout the time of the Southern Baptist Convention last year [2022] I think our president realized we were getting into some pretty deep financial troubles, and it just started to spiral a bit … at the end of July, August [2022] there were some obvious indicators that we were greatly troubled financially."
> …
> "So you kind of fast forward to the September, uh, 22nd Executive Committee meeting, and I can't give you specifics because, uh, it was held in executive session, so I'm going to just paint a broad brush of what took place. It became apparent . . . that in several areas, not just related to finances, that things were not going well. And the way I would categorize that is, people would come to me and other trustees and share things with us, and when they share something with us, it's our duty and our responsibility to go investigate and to interview those people that are making statements, and to go and get other witnesses, if you will. From September 20-22, those couple of days right there, it seemed as if things were snowballing, as it relates to personnel, finances, just a lot of different matters."
> …
> So at the EC meeting . . . so in those discussions, it appeared as if everything that was coming up was very, very negative, very negative. And then in the afternoon, uh, we took a break, uh, came back, um, it became very apparent that things were going in the wrong direction and going very quickly. Once again, I can't give a lot of specifics, and, uh, just so you'll know, nobody entered that meeting on September 22nd thinking we would leave that meeting and not have a president. God as my witness, that thought never crossed my mind before that meeting started."
> …
> Now since then, um, the EC, who does serve as the, um, compensation committee for the Office of the President, uh, met and we came up with a 'exit package' if you will, and he had to sign that in order to receive it, and I can't get into his mind, for whatever reason he decided not to sign it . . . uh, he decided to stay a bit longer in the President's Home than we had anticipated, um, then, and I can share this with you because it's a matter of record, we received a demand letter, which means, here are the things that I expect, and the implication when you get one of those is that it's going to go to the next step legally, okay? So, we received that.

So, we said what is the best thing to do? Matthew 18. We sought out and got a Christian mediator, and just to be really frank, and kind of fast forward to I guess it was February, uh, spent a total of about 14 hours with three people in a room, and finally when it was all said and done, we came up with an agreement, um, he had to sign it by the end of February; he signed it, um, and that ended it. So, to get specifically on your question, um, the, Dr. Greenway moved out of the house, um, there was an agreement; it was signed, it's done, um, so there's a clear-cut ending, okay. So that, that chapter is over."

75.    On approximately April 17, 2023, during the spring meeting of the SWBTS Board of Trustees, Roberts informed individuals that he had directed that the joint statement would not be posted on the SWBTS website, but would be "buried," and further, that he hoped "the day comes when people will forget there ever was an Adam Greenway presidency of SWBTS."

76.    On April 19, 2023, SWBTS issued a press release on its website (https://swbts.edu/news) that included the following:

Roberts reported that a trustee task force evaluated the former president's expenses and financial management, following up on a request from trustees during their fall meeting. He said the task force "was given unfettered access by the administration to all financial records of the institution, and concluded there were instances of imprudent, unwise, and some activities contrary to institutional policies. These findings, however, did not rise to the level of requiring further action based on what is currently known."

He said, "The findings demonstrated a need for greater accountability and oversight for the institution. As a result, new financial guardrails will be implemented to provide for greater accountability to the trustees in order to prevent similar decision making in the future."

77.    The conclusions proffered by Roberts as the findings of the task force were Roberts' words, not the findings of the task force.

78.    Only selected and incomplete financial records were shared with the task force.

79.    The task force found instances of "imprudent, unwise, and some activities contrary to institutional policies" relating to persons other than Plaintiff, not relating to Plaintiff.

80.    On May 30, 2023, SWBTS issued a press release on its website (https://swbts.edu/news) that included the following statement of Roberts: "As I said in our October 2022 meeting, it was the growing involvement of trustee leadership and our insistence of greater presidential accountability and resistance to our attempts to implement financial safeguards that led to Adam Greenway's resignation."

81.    On June 7, 2023, SWBTS issued a "Summary of Findings" purportedly generated by the Trustee Task Force, however, its authors were not identified.

82.    The "Summary of Findings" press release included the following statements:

> The task force concluded that Adam Greenway engaged in a pattern of spending that the task force believes did not reflect proper stewardship of seminary resources. This pattern of spending occurred without deference to financial controls and seminary financial policies.
>
> Between 2019 and 2022, over $1.5 million was spent on renovations, furnishings, and related expenses to the President's home. These expenditures were made at a time when the seminary was making significant budget cuts, including the reduction of faculty personnel and positions. Examples of expenses for the President's home include $59,865.79 for Christmas decorations, more than $25,000 for artwork, and $11,123.49 for an espresso machine and accessories. Despite extensive renovations completed early in his tenure, further optional

work was done on the President's home in late 2021 when more than $180,000 was spent on HVAC work.

Between the summer of 2020 and early 2021, over $500,000 was spent on the President's office, including renovations and furniture.

The task force also found numerous examples of improper expenses charged to the seminary by Greenway himself and/or individuals whom he authorized to use his seminary credit card in violation of seminary policy, including $9,936.05 for first-class airfare for Greenway, his family, and a family friend to Anaheim, California, for the 2022 Southern Baptist Convention annual meeting, $4,850.51 for the framing of personal diplomas, and $920 for a metal University of Florida Gator head decoration (one of Greenway's favorite college athletic programs).

We grieve the pattern of poor stewardship evident in this summary of the task force's findings. We wish to express our gratitude to those seminary employees who sought to enforce existing policies and challenge the pattern of spending noted above, even as their efforts were met with resistance.

83.   SWBTS has never released the full trustee investigative report, or any document purporting to be the trustees report, other than the "Summary of Findings" press release of June 7, 2023.

84.   The statements made by SWBTS and Roberts pertaining to Plaintiff have been widely circulated by numerous online and print media organizations.  The content of the media coverage overwhelmingly reflected the defamatory narrative provided by Defendants.

85.   On September 25, 2023, Plaintiff, by counsel, authored a letter to counsel for SWBTS for purposes of settlement of anticipated claims, and to seek a retraction of the defamatory statements made by SWBTS.

86.   SWBTS provided the letter to the media.

87.    On October 21, 2023, SWBTS issued a press release pertaining to Plaintiff's demand for compensation and retraction, stating:

> "The demand letter from Adam Greenway is baseless and incredibly disappointing, especially given his professed love for this institution. Over the past year, we have continued to pray for Dr. Greenway's spiritual, mental, and emotional well-being as we have worked toward an amicable resolution."

88.    SWBTS's decision to release the letter and make further commentary caused a resurrection of the media coverage that again overwhelmingly reflected the defamatory narrative provided by Defendants.

## E.    COUNT I: BREACH OF CONTRACT

89.    Plaintiff incorporates paragraphs 1 through 88 stated above, as if fully set forth herein.

90.    Plaintiff and Defendant entered into a written contract, the Settlement Agreement on or about February 13, 2023.

91.    The contract included a joint statement drafted by and agreed upon by the parties to be issued to the public.  Defendant agreed it would "take responsibility for issuing the joint statement on or before February 28, 2023."

92.    Defendant failed to issue the joint statement on or before February 28, 2023, or at any time thereafter.

93.    The contract included a non-disparagement clause, prohibiting the Defendants from making statements that were false and defamatory.

94.    Defendants made several statements that were false and defamatory, as set forth throughout this Complaint, and incorporated by reference.

95.    Defendant's breaches of contract were material.

96.    Plaintiff's injuries are a natural, probable, and foreseeable consequence of Defendant's breach.

### F.    COUNT II: PROMISSORY ESTOPPEL AND/OR EQUITABLE ESTOPPEL

97.    Plaintiff incorporates paragraphs 1 through 96 stated above, as if fully set forth herein.

98.    Defendants made promises to Plaintiff with the intention that Plaintiff act upon said promises and resign his position as President of SWBTS.

99.    Plaintiff's decision to resign as President of SWBTS was premised upon the promise by Defendant SWBTS that it would act in good faith, issue the joint statement, and operate in a manner to ensure that Plaintiff's professional reputation was protected.

100.    Plaintiff reasonably and substantially relied upon the promises to him in detriment.

101.    Plaintiff's reliance was foreseeable to Defendants.

### G.    COUNT III: DEFAMATION

102.    Plaintiff incorporates paragraphs 1 through 101 stated above, as if fully set forth herein.

103.    Defendants defamed Plaintiff by publishing statements of fact, both orally, in writing, that referred to Plaintiff.

104.   In April of 2023, Defendant Roberts verbally stated "about the time of the Southern Baptist Convention last year [2022] I think our president realized we were getting into some pretty deep financial troubles…"

105.   This statement is false.

106.   In April of 2023, Defendant Roberts generally characterized that:

> …he could not give specifics because it was held in executive session … but in several areas, not just related to finances things were not going well … from September 20-22 … as it relates to personnel, finances, just a lot of different matters … everything was coming up very, very negative …  nobody entered that meeting on September 22nd thinking we would leave that meeting and not have a president.  God as my witness, that thought never crossed my mind before that meeting started.

107.   This statement is false.

108.   In April of 2023, Defendant Roberts stated that Plaintiff "decided to stay a bit longer in the President's Home than we had anticipated…"

109.   This statement is false.

110.   On April 19, 2023, SWBTS issued a written press release, based on verbal statements of Roberts, that stated:

> Roberts reported that a trustee task force evaluated the former president's expenses and financial management, following up on a request from trustees during their fall meeting.  He said the task force "was given unfettered access by the administration to all financial records of the institution, and concluded there were instances of imprudent, unwise, and some activities contrary to institutional policies.

111.   This statement is false, and created a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way.

112.   On May 30, 2023, SWBTS issued a written press release, based on verbal statements of Roberts, that stated:

> "It was the growing involvement of trustee leadership and our insistence of greater presidential accountability and resistance to our attempts to implement financial safeguards that led to Adam Greenway's resignation."

113.   This statement is false.

114.   On June 7, 2023, SWBTS issued a "Summary of Findings" purportedly generated by the trustee task including the statement "[b]etween 2019 and 2022, over $1.5 million was spent on renovations, furnishings, and related expenses to the President's home."

115.   This statement is false.

116.   The June 7, 2023 "Summary of Findings" included the statement "[e]xamples of expenses for the President's home include $59,865.79 for Christmas decorations, more than $25,000 for artwork, and $11,123.49 for an espresso machine and accessories."

117.   This statement created a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way.

118.   The June 7, 2023 "Summary of Findings" included the statement "[d]espite extensive renovations completed early in his tenure, further optional work was done on the President's home in late 2021 when more than $180,000 was spent on HVAC work."

119.   This statement is false.

20

120.   The June 7, 2023 "Summary of Findings" included the statement "[b]etween the summer of 2020 and early 2021, over $500,000 was spent on the President's office, including renovations and furniture."

121.   This statement is false, and created a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way.

122.   The June 7, 2023 "Summary of Findings" included the following statement:

> The task force also found numerous examples of improper expenses charged to the seminary by Greenway himself and/or individuals whom he authorized to use his seminary credit card in violation of seminary policy.

123.   This statement is false.

124.   The false statements of Defendants, coupled with some discrete facts that may have been true, were published in such a way that overall, they created a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way.

125.   The statements made by Defendants created a false and defamatory impression that Plaintiff, in secret, spent seminary funds for his own benefit in a manner akin to embezzlement.

126.   The numerous false statements made by Defendants, and defamatory impression created by Defendants, were injurious to Plaintiff's reputation.

127.    Defendant Danny Roberts was acting in the scope of his official capacity of the Chairman of the Board of Trustees of SWBTS at the time he made the defamatory statements pertaining to Plaintiff.

128.    The press releases and news articles issued by SWBTS on its website were issued on behalf of SWBTS by individuals acting withing the scope of their employment with SWBTS.

129.    While making the statements, the Defendants were negligent.

130.    While making the statements, the Defendants also acted with actual malice, and/or a reckless disregard for the truth.

131.    The actions of Defendants have exposed Plaintiff to public hatred, contempt, and ridicule.

132.    As a result of the statements of Defendants, Plaintiff has suffered pecuniary injury, a loss of reputation and standing, in addition to emotional distress and mental anguish.

## H.    ATTORNEYS' FEES

133.    Plaintiff has been forced to hire attorneys and pay them a reasonable fee for their services based upon reasonable and necessary services performed and the reasonable value thereof at the time and place incurred.  Plaintiff seeks the recovery of his attorneys' fees pursuant to Texas Civil Practices & Remedies Code §38.001 and/or 37.009.

## I.    JURY DEMAND

22

134.    Plaintiff, Dr. Adam W. Greenway, requests trial by jury on all issues so triable.

## J.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dr. Adam W. Greenway, respectfully requests judgment against Defendants and damages as follows:

A.    Any and all damages, and actual damages, as proven at trial;

B.    Past and future economic loss including lost wages;

C.    Pre-judgment interest;

D.    Reasonable attorneys' fees incurred in the presentation of this suit;

E.    Post-judgment interest as allowable by law from the date judgment is entered until paid in full;

F.    Exemplary damages;

G.    Costs of the action;

H.    Statutory/civil penalties according to law;

I.    All other proper relief, general or special, whether at law or in equity, as is just and proper.

Respectfully submitted:

**JONES LAW OFFICE LLC**

*/s/Andrew B. Jones*
Andrew B. Jones (29686-71)
704 W. Washington St.
South Bend, Indiana 46601
Telephone: (574) 239-7017
Fax: (574) 239-7018
andrew@attorney-jones.com