**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **DR. ADAM W. GREENWAY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **CIVIL NO. 4:24-CV-00260-O** |
| **THE SOUTHWESTERN BAPTIST** | § | |
| **THEOLOGICAL SEMINARY and** | § | |
| **DANNY ROBERTS,** | § | |
| | § | |
| **Defendants.** | § | |

<u>**BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Caleb B. Bulls
State Bar No. 24082749
caleb.bulls@kellyhart.com
John C. Fronk
State Bar No. 24126086
john.fronk@kellyhart.com
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone:  817-878-3562
Facsimile:  817-335-2800

**ATTORNEYS FOR DEFENDANTS**

---

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................................1

RELEVANT FACTUAL BACKGROUND......................................................................3

    A.    The Seminary is a Confessional Southern Baptist Religious Institution. ...............3

    B.    Plaintiff Serves as the Seminary's Ninth President and as a Member of the Faculty.....................................................................................................6

    C.    The Seminary Faces Financial Issues, and Plaintiff Resigns Following a Meeting with the Executive Committee of the Seminary's Board. ........................6

    D.    The Parties Enter into a Settlement Agreement. ....................................................8

    E.    Defendants Update The Seminary's Ecclesiastical Community Regarding Plaintiff's Stewardship.................................................................................8

APPLICABLE LEGAL STANDARD ..........................................................................10

    A.    Standard of Review for Motion Pursuant to Rule 12(b)(1). .................................10

    B.    Standard of Review for Motion Pursuant to Rule 12(b)(6). .................................11

ARGUMENTS & AUTHORITIES ..............................................................................11

    A.    Plaintiff's Claims Should be Dismissed Under Federal Rule of Civil Procedure 12(b)(1). ................................................................................11

        i.    The Ecclesiastical Abstention Doctrine. .................................................. 11

        ii.    The Court Cannot Exercise Jurisdiction Over Plaintiff's Claims. ............ 13

    B.    Plaintiff's Claims Should be Dismissed Under Rule 12(b)(6). ............................18

        i.    Plaintiff Fails to Allege a Breach of Contract Claim.............................. 18

        ii.    Plaintiff Fails to State an Estoppel Claim. ............................................... 20

        iii.    Plaintiff Fails to Allege a Valid Defamation Claim................................. 22

CONCLUSION...........................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Federal Cases</u>

*Addicks Servs., Inc. v. GGP-Bridgeland, LP*,
 596 F.3d 286 (5th Cir. 2010) .................................................................................21

*Ashcroft v. Iqbal*,
 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ....................................11

*Beanal v. Freeport-McMoran, Inc.*,
 197 F.3d 161 (5th Cir. 1999) .................................................................................11

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......................................11

*Borninski v. Williamson*,
 2003 WL 22952571 (N.D. Tex. 2003)......................................................................25

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*,
 654 F.Supp.2d 536 (N.D. Tex. 2009) .............................................................20, 21

*Collins v. Morgan Stanley Dean Witter.*
 224 F.3d 496 (5th Cir.) .........................................................................................19

*Conley v. Gibson*,
 355 U.S. 41 (1957)................................................................................................11

*Global Integrated Bldg. Sys. v. Target Logistics, LLC*,
 2009 WL 259360 (S.D. Tex. 2009) ...................................................................21, 22

*Hosanna-Tabor Evangelical Lutheran Church and Sch. v. E.E.O.C.*,
 565 U.S. 171 (2012)..............................................................................................16

*In re Parkcentral Glob. Litig.*,
 884 F. Supp. 2d 464 (N.D. Tex. 2012) ..................................................................11

*Isquith v. Middle S. Utils., Inc.*,
 847 F.2d 186 (5th Cir. 1988) .................................................................................19

*Jones v. Compass Bank*,
 2008 WL 11429806 (S.D. Tex. 2008) .....................................................................22

*Kaye v. Lone Star Fund V (US), L.P.*,
 453 B.R. 645 (Bankr. N.D. Tex. 2011)..................................................................19

*Klouda v. Sw. Baptist Theological Seminary*,
   543 F.Supp.2d 594 (N.D. Tex. 2008) .......................................................12, 13, 14

*Langley v. Chase Bank USA, N.A.*,
   2010 WL 8266202 (N.D. Tex. 2010).........................................................................20

*McRaney v. N. Am. Mission Bd. of S. Baptist Convention, Inc.*,
   2023 WL 5266356 (N.D. Miss. 2023) .......................................................................18

*McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*,
   966 F.3d 346 (5th Cir. 2020)..............................................................................17, 18

*Mitchell v. Carrington Mortg. Servs., LLC*,
   2020 WL 8125817 (N.D. Tex. 2020).........................................................................22

*Moran v. Kingdom of Saudi Arabia*,
   27 F.3d 169 (5th Cir. 1994) ......................................................................................10

*Ogle v. Church of God*,
   153 Fed.App'x. 371 (6th Cir. 2005) .........................................................................13

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
   140 S.Ct. 2049 (2020)..........................................................................................11, 12

*Paso Del Norte Motors, LP v. Tri Star Partners*
   2015 WL 13778413 (W.D. Tex. 2015)......................................................................21

*Price v. Stossel*,
   620 F.3d 992 (9th Cir. 2010) ....................................................................................25

*Rodarte v. Apostolic Assembly of the Faith in Jesus Christ*,
   2012 WL 12893656 (S.D. Tex. 2012) .......................................................................13

*Rogers v. City of Yoakum*,
   660 Fed.App'x 279, 285 n.6 (5th Cir. 2016) ............................................................19

*Ruhrgas AG v. Marathon Oil Co.*,
   526 U.S. 574 (1999)............................................................................................10, 11

*Serbian E. Orthodox Diocese v. Milivojevich*,
   426 U.S. 696 (1976)......................................................................................2, 11, 12

*Shaunfield v. Experian Info. Sols., Inc.*,
   991 F.Supp.2d 786 (N.D. Tex. 2014) .......................................................................25

*Stockman v. Fed. Elec. Comm'n*,
   138 F.3d 144 (5th Cir. 1998) ....................................................................................10

*Torres-Aponte v. JP Morgan Chase Bank, N.A.*,
  639 Fed.App'x. 272 (5th Cir. 2016) ...................................................22

*Warren v. Fed. Nat'l Mortg. Ass'n*,
  932 F.3d 378 (5th Cir. 2019) .............................................................22

**State Cases**

*Ad Hoc Committee of Parishioners of Our Lady of the Sun Catholic Church, Inc. v. Reiss*,
  224 P.3d 1002,1014 (Ct. App. Ariz. 2010).........................................15

*Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith
  of Washington, D.C. v. Beards*,
  680 A.2d 419 (D.C. 1996) .................................................................15

*Harris v. Matthews*,
  361 N.C. 265 (N.C. 2007).............................................................14, 15

*In re Davenport*,
  522 S.W.3d 452 (Tex. 2017)...............................................................20

*In re Godwin*,
  293 S.W.3d 742 (Tex. App.—San Antonio 2009, no pet.)....................15

*In re Lubbock*,
  624 S.W.3d 506 (Tex. 2021)..............................2, 12, 13, 14, 15, 17

*New Times, Inc. v. Wamstad*,
  106 S.W.3d 916 (Tex. App.—Dallas 2003), *review granted,
  judgment vacated and remanded by agreement sub no. Wamstad v. Sands*,
  2004 WL 7352479 Tex. 2004 ............................................................25

*Patton v. Jones*,
  212 S.W.3d 541 (Tex. App.—Austin 2006, pet. denied).................13, 14

*Robertson v. Sw. Bell Yellow Pages, Inc.*,
  190 S.W.3d 899 (Tex. App.—Dallas 2006, no pet.).............................23

*Westbrook v. Penley*,
  231 S.W.3d 389 (Tex. 2007)...........................................................2, 12

*Williams v. Gleason*,
  26 S.W.3d 54 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) .....12

**State Rules**

Rule 12(b)(1)................................................................................10, 17

Rule 12(b)(6)................................................................................19, 23

<u>**Other Authorities**</u>

https://en.wikipedia.org/wiki/Adam_W._Greenway (last accessed Apr. 17, 2024)......................25

https://twitter.com/AdamGreenway (last accessed Apr. 17, 2024) ...............................................25

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants The Southwestern Baptist Theological Seminary ("Seminary") and Danny Roberts ("Roberts," and with the Seminary, "Defendants") file this their Brief in Support of their Motion to Dismiss Plaintiff's Complaint.  Defendants respectfully show the Court as follows:

<u>**INTRODUCTION**</u>

This lawsuit concerns a religious dispute between the Seminary and its former President. The Complaint reads like church infighting because, unfortunately, that is precisely what is involved.  Civil courts, however, lack subject-matter jurisdiction to resolve such disputes under the well-established ecclesiastical abstention doctrine.  Defendants, therefore, move to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction.

Briefly, the Seminary is a non-profit, religious institution whose sole member is the Southern Baptist Convention.  It exists to assist "the churches of the Southern Baptist Convention by the biblical education of God-called men and women for their respective ministries, which fulfill the Great Commission and glorify God."

Plaintiff served as the Seminary's ninth President for just over three years.  He also served as Professor of Evangelism and Apologetics.  Plaintiff's tenure at the Seminary abruptly ended in the Fall of 2022 when he tendered his resignation to the then-Chairman of the Seminary's Board of Trustees, Roberts.  A dispute immediately arose as to whether Plaintiff actually resigned and what the terms of his separation were.  The parties thereafter selected a Christian mediator to aid in the resolution of their dispute.  At the conclusion of that biblical process, they entered into a Settlement Agreement in February 2023.

Roberts later had discussions with the Board of Trustees and the Seminary's Advisory Council regarding Plaintiff's tenure and his stewardship over the Seminary.  The Seminary also conducted a review of expenditures made during Plaintiff's tenure and reported its findings to its

stakeholders.   This lawsuit followed, wherein Plaintiff has asserted claims for breach of contract, promissory estoppel, and defamation.   As pled, Plaintiff's claims emanate from his contentious departure from the Seminary and statements made regarding an investigation into his stewardship.

Ecclesiastical disputes such as this have no place in civil courts.   It has long been the law that civil courts do not have subject-matter jurisdiction to adjudicate ecclesiastical disputes. To that end, the First Amendment's Establishment Clause and the ecclesiastical abstention doctrine preclude courts from deciding matters relating to church governance, church discipline, and theological controversy.[1]   Underscoring this point, the Texas Supreme Court has recently held that "[i]nvestigations that relate to the character and conduct of church leaders are *inherently ecclesiastical*" and that claims emanating from investigations involving its leaders are barred by the ecclesiastical abstention doctrine.[2]   Because Plaintiff's claims relate to precisely those types of issues, Defendants respectfully request that the Court dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction under the ecclesiastical abstention doctrine.

Alternatively, Plaintiff has failed to state a claim for relief.   Plaintiff has failed to allege a breach of the parties' Settlement Agreement.   Through his pleadings, Plaintiff tacitly acknowledges that the Seminary issued an agreed upon joint statement.   He simply prefers that the Seminary would have published the joint statement on its website, despite there being no obligation to do so.   That is not a breach.   Further, as to the claim that the Seminary breached the Settlement Agreement by making disparaging and false statements regarding Plaintiff, a plain review of the Settlement Agreement reveals that the non-disparagement clause does not even

---

[1] *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696 (1976); *Westbrook v. Penley*, 231 S.W.3d 389 (Tex. 2007).

[2] *In re Lubbock*, 624 S.W.3d 506, 517 (Tex. 2021) (emphasis added).

apply to the Seminary.  As for Roberts, Plaintiff has failed to allege that he made a false and disparaging statement regarding Plaintiff.  Plaintiff does not identify the alleged false and disparaging statements (unlike what he did with respect to his defamation claim).  To the extent the alleged statements are the same as the alleged defamatory statements, the statements are non-actionable statements of opinion or are not capable of being disparaging (besides being protected by the ecclesiastical abstention doctrine).

Next, Plaintiff alleges that Defendants are liable on promissory estoppel grounds for breaking promises that led to the Settlement Agreement.  No claim for promissory estoppel can lie where there is a contract—here, the Settlement Agreement—governing the relationship.  Moreover, Plaintiff disclaimed reliance in the Settlement Agreement.

Finally, Plaintiff alleges that Defendants defamed him through a litany of statements regarding the end of his tenure at the Seminary and his stewardship.  Even if these allegations are not covered by the First Amendment, ecclesiastical abstention doctrine, or ministerial exception, the alleged statements are clearly non-actionable statements of opinion or are not capable of a defamatory meaning.

Accordingly, for the reasons set forth herein, Defendants respectfully request that the Court dismiss Plaintiff's Complaint.

## RELEVANT FACTUAL BACKGROUND

### A.    *The Seminary is a Confessional Southern Baptist Religious Institution.*

The Seminary is a non-profit religious institution based in Fort Worth.  [Doc. 1, ¶ 2; App., pp. 3-4, ¶¶ 4, 8].  It is one of six Southern Baptist Convention seminaries.  [App., p. 3, ¶ 4].  Its sole member is the Southern Baptist Convention.  [Doc. 1, ¶ 39; App., p. 4. ¶ 8].  The Southern Baptist Convention is a network of like-minded local churches cooperating together to reach the

world with the Good News of Jesus Christ.  [App., p. 3, ¶ 4].  There are currently more than fifty

thousand Southern Baptist cooperating churches and church-type missions.  [*Id*.].

The purpose of the Seminary is "for the promotion of theological education . . . and such

other instruction as is needful to equip preachers and other Christian workers for their life work."

[App., p. 4, ¶ 7; App. 15].  The Seminary's Restated Articles of Incorporation explain that the

"primary purpose of the [Seminary] is to provide theological education for men and women

preparing for Christian ministry."  [App., p. 4, ¶ 8; App., p. 22 (Article III); *see also* App., pp. 6-

7, ¶ 16].  With respect to its position in Southern Baptist life, the Seminary emphasizes the

fundamental ecclesiastical relationship it has with Southern Baptist churches and with its own

faculty:

> This *Faculty Manual* acknowledges the ownership of the Seminary by the Southern
> Baptist Convention and the covenant relationship which the Seminary has with the
> churches of the Southern Baptist Convention.  It is within this context that the
> responsibilities of academic freedom and relationship must be exercised.  The
> special position of the Seminary teacher within the Southern Baptist Convention
> imposes special obligations that are of utmost ecclesiastical concern to the
> Seminary and its mission.
> 
> ***
> 
> Finally, it should be noted that the seminary views its relationship with its faculty
> as a covenant relationship of ecclesiastical concern which informs and guides how
> we relate to one another.  Relationships with faculty are not entered into or severed
> without prayerful consideration.

[App., pp. 6-7, ¶ 16; App. 72].

A Board of Trustees manages the affairs of the Seminary.  [App., p. 4, ¶ 8; App., p. 22

(Article VI)].  The Southern Baptist Convention elects the members of the Seminary's Board of

Trustees.  [App., p. 4, ¶ 8, App., pp. 22-23 (Article VII)].  The Board is the legal body with specific

authority over the Seminary and exercises fiduciary oversight of the Seminary.  [App., p. 4, ¶ 8;

App., p. 55 (Section 2.2)].  The Seminary's Bylaws expressly provide that the Seminary is a

confessional institution and that its Board of Trustees is the final interpretative authority on the

Bible's meaning and application for all purposes of the Seminary:

> As a confessional institution, the Seminary is committed to theological integrity and biblical fidelity. The Confession of Faith of the Seminary shall be the *Baptist Faith and Message* as adopted and amended by the Convention, and shall be subscribed to in writing by all faculty, without hesitation or mental reservation. The Confession of Faith does not exhaust the extent of the Seminary's beliefs, however. The *Chicago Statement on Biblical Inerrancy*, the *Danvers Statement on Biblical Manhood and Womanhood*, and the *Nashville Statement* are recognized by the Seminary as guiding documents that clarify and establish the meaning of the Confession of Faith. Furthermore, the Bible itself, as the inspired, inerrant, and infallible Word of God that speaks with final authority concerning truth, morality, and the proper conduct of humankind, is the ultimate source of all that the Seminary believes. The Board is the final interpretive authority on the Bible's meaning and application for purposes of the Seminary's faith, doctrine, practice, policy, and discipline. The President shall serve as the authorized agent of the Board.

[App., p. 5, ¶ 12; App., p. 54 (Section 1.3)].

The Seminary's Statement of Faith sets forth many of its guiding principles. Biblical

stewardship is an integral part of the Seminary's Statement of Faith:

> God is the source of all blessings, temporal and spiritual; all that we have and are we owe to Him. Christians have a spiritual debtorship to the whole world, a holy trusteeship in the gospel, and a binding stewardship in their possessions. They are therefore under obligation to serve Him with their time, talents, and material possessions; and should recognize all these as entrusted to them to use for the glory of God and for helping others. According to the Scriptures, Christians should contribute of their means, cheerfully, regularly, systematically, proportionately, and liberally for the advancement of the Redeemer's cause on earth.

[App., p. 7, ¶ 18; App., p. 108 (Article XIII)]. To this end, the Seminary submits an annual

financial statement to the Executive Committee of the Southern Baptist Convention. [Doc. 1,

¶ 40]. In doing so, the officers of the Board of Trustees certify that "the expenses and perquisites

of the president are not excessive *and are in keeping with biblical stewardship*[.]" [*Id.* at ¶ 41

(emphasis added)].

**B.**     *Plaintiff Serves as the Seminary's Ninth President and as a Member of the Faculty.*

One role of the Seminary's Board of Trustees is to elect the President of the Seminary. [App., p. 60 (Section 5.2)].  According to the Bylaws, the "President shall work with the Board and be accountable to the Board in advancing the mission of the Seminary."  [*Id.* (Section 5.3)]. Moreover, the "President shall have direct charge of, full supervision over, and shall be responsible for all funds and properties of the Seminary, and over all matters pertaining to the Seminary, in all its units, schools, and departments."  [*Id.* (Section 5.4)].  The President "shall be custodian of all funds and properties of the Seminary and shall have direct charge and supervision over them, under the authority of the Board."  [App., p. 75, ¶ 2 (listing duties of President)].

On February 27, 2019, the Board of Trustees elected Plaintiff as the Seminary's ninth President and as Professor of Evangelism and Apologetics.  [Doc. 1, ¶ 12; App., p. 6, ¶ 14].  At the time, Roberts served as Chairman of the Presidential Search Committee.  [App., p. 6, § 14].

As President, Plaintiff lived at the "President's Home."  [Doc. 1, ¶ 13].  The Seminary owns and maintains the "President's Home."  [*Id.*].  It is centrally located on the Seminary's campus, totaling nearly 10,000 square feet in size.  [*Id.* at ¶ 14].  Shortly after his election as President, renovations on the President's Home began.  [*Id.* at ¶ 21].  Additional work replacing HVAC units occurred in 2021.  [*Id.* at ¶ 29].

**C.**     *The Seminary Faces Financial Issues, and Plaintiff Resigns Following a Meeting with the Executive Committee of the Seminary's Board.*

In 2022, the Seminary experienced financial headwinds and was forced to draw on its line of credit.  [*Id.* at ¶ 45].  According to his Complaint, Plaintiff at least became aware of the financial issues in July of 2022.[3]  [*Id.* at ¶ 47].  On September 22, 2022, the Executive Committee of the

---

[3]  Plaintiff knew about the financial issues earlier than as represented in his Complaint.  For purposes of this Motion, Defendants will use the July date.

Seminary's Board of Trustees met as part of a regularly scheduled meeting in preparation for an upcoming Board of Trustees meeting to be held in October. [App., p. 8 (¶ 19)]. Plaintiff's stewardship over the Seminary and his relationship with faculty were key issues at that time and were discussed with Plaintiff on September 22nd. [*Id.*]

Plaintiff resigned as President of the Seminary on September 22, 2022. He later disputed that he resigned. [App., pp. 8-9 (¶¶ 19-21)]. On September 23, 2022, the Seminary issued a statement that included a statement from Plaintiff:

> "These days are incredibly challenging in the life of our denomination," said Greenway. "They are also challenging times for academic institutions, particularly theological seminaries. In February 2019, Carla and I accepted the call to come back 'home' to Southwestern Seminary with an understanding of these challenges, but also with the strong desire to be part of the solution. What we failed to appreciate was the enormity of the reputational, legal, and financial realities that would welcome us to the Dome—only to be compounded by a global pandemic unlike anything we have ever experienced before. We have done our best to serve Southern Baptists by helping position our seminary for the future, but much, much work remains to be done. Nevertheless, in the Providence of God we sense a release from our duties here.
>
> ***
>
> "We will continue to serve Southern Baptists as we have throughout the course of our lives and ministry," said Greenway. "We believe our next assignment is not a departure from but a continuation along the journey God has always had us walk. We are thrilled that we are going to help prepare Southern Baptist missionaries for their work of addressing the world's greatest problem—spiritual lostness—with God's solution, which is the gospel of Christ. As we look forward to beginning a new chapter with Southern Baptists' favorite entity, the International Mission Board, we ask for your prayers for us in this season of transition, and we pledge our continued prayers and support for our beloved "crown jewel."

[App., pp. 8-9 (¶ 20); App., p. 149].

Plaintiff insists that he did not resign. Rather, according to Plaintiff's Complaint, he "verbally agreed to resign on the condition of the terms promised by Roberts on September 23, 2022." [Doc. 1, ¶¶ 59-62]. At the time, Roberts was Chairman of the Board of Trustees. [App., p. 3 (¶ 5)].

D.      *The Parties Enter into a Settlement Agreement.*

The parties retained a Christian mediator to help resolve their dispute.  [App., p. 9 (¶ 21)].  That process culminated in a February 2023 Settlement Agreement.  [*Id.*].  A copy of the Settlement Agreement is attached as an exhibit to Plaintiff's Complaint.  [Doc. 1, Ex. 1].

As part of the Settlement Agreement, the parties agreed, "Southwestern and Greenway agree to issue the joint statement attached hereto as Exhibit No. 1.  Southwestern will take responsibility for issuing the joint statement on or before February 28, 2023."  [*Id.*].  The Seminary did not agree to publish the joint statement on its website.  [*Id.*; App., p. 9 (¶ 22)].  The Seminary issued the joint statement to *Baptist Press*—the official news service of the Southern Baptist Convention—on February 28, 2023.  [App., p. 9 (¶ 23), App., p. 152].

E.      *Defendants Update The Seminary's Ecclesiastical Community Regarding Plaintiff's Stewardship.*

On or about April 14, 2023, Roberts attended a meeting with the Seminary's Advisory Council.  [Doc. 1, ¶ 74; App., pp. 9-10 (¶ 24)].  The Advisory Council is a group of ministry partners, advisors, and ambassadors who are appointed by the Seminary.  [*Id.*].  They help advance the mission of the Seminary in fulfillment of the Seminary's mission to provide theological education for individuals engaging in Christian ministry.  [App., pp. 9-10 (¶ 24)].  The role of the Seminary's Advisory Council is to advise and assist the Seminary and to communicate its progress to the president and the Seminary's administration.  [*Id.*].  Roberts' statements to the Advisory Council were made as part of keeping the Advisory Council up to date on important events regarding the Seminary so that the Advisory Council can fulfill its role.  [*Id.*].

A few days later, on April 17, 2023, the Seminary's Board of Trustees met for its Spring meeting.  [Doc. 1, ¶ 75; App., p. 10 (¶ 25)].  Roberts' alleged statements to the Seminary's Board

of Trustees were in furtherance of his then role as Chairman of the Board of Trustees.  They were also made in furtherance of the governance of the Seminary.  [App., p. 10 (¶ 25)].

On April 19, 2023, the Seminary posted a statement on its website regarding Plaintiff's stewardship over the Seminary.  [Doc. 1, ¶ 76; App., p. 10 (¶ 26)].  By way of background, a Trustee task force had been assigned the task of reviewing and investigating Plaintiff's stewardship.  [App., p. 10 (¶ 26)].  As explained in the Seminary's Statement of Faith, stewardship is a key component of the Seminary's Statement of Faith.  [*Id*.; *see also* App., p. 104 (XIII)].

Plaintiff's expenses and financial management of the Seminary fall squarely within stewardship.  [App., p. 10 (¶ 26)].  Any statement regarding stewardship cannot be divorced from or reviewed in isolation from the Seminary's Statement of Faith.  [*Id*.].  The purpose of this April 19th statement was to communicate to the churches of the Southern Baptist Convention and ministry partners what the task force had found with respect to Plaintiff's stewardship.  [*Id*.].  The next day and through his Twitter account, Plaintiff publicly called for the release of the full investigative report.  [App., p. 11 (¶ 27)].

On May 30, 2023, a Special Called Meeting of the Board of Trustees occurred.  [App., p. 11 (¶ 28)].  The Board approved the publication of the audited financials as one comprehensive report for the fiscal years 2002-2022.  [App., p. 164].  The Board also approved the publication of examples of presidential expenses as generated by the task force investigation.  [*Id*.].  The Board, moreover, affirmed the ongoing work to strengthen financial guardrails recommended by the task force to ensure greater accountability and oversight of the President and other senior administrators.  [*Id*.].  These actions were taken after prayerful deliberation and in keeping with the Seminary's Statement of Faith regarding stewardship and as part of the Board's ecclesiastical duty in the governance of the Seminary.  [*Id*.].

That same day—May 30th—the Seminary posted a statement on its website.  The statement attributed to Roberts in Plaintiff's Complaint refers to accountability and implementation of financial safeguards.  [Doc. 1, ¶ 80; App., pp. 11-12 (¶ 29)].  The statement deals squarely with Seminary stewardship and is a report flowing from the May 30, 2023 Special Called Meeting of the Board of Trustees.  [App., pp. 11-12 (¶ 29)].  The purpose of this statement was to communicate to the churches of the Southern Baptist Convention.  [*Id.*].

A week later, the Seminary posted a Summary of Findings on its website.  [Doc. 1, ¶¶ 81-82].  The Summary of Findings details expenditures identified by the Trustee task force as part of its investigation into Plaintiff's stewardship.  [*Id.*; App., p. 12 (¶ 30)].  The statement provides, "The task force concluded that Adam Greenway engaged in a pattern of spending that the task force believes did not reflect proper stewardship of seminary resources."  [App., p. 12 (¶ 30)].  The Board issued the statement in furtherance of its ecclesiastical duty and to communicate to the Seminary's stakeholders and fellow believers.  It is impossible to discuss the statement without engaging matters of Baptist ecclesiology and Biblical doctrine on the subjects of stewardship, accountability and leadership.  [*Id.*].

## APPLICABLE LEGAL STANDARD

### A.      *Standard of Review for Motion Pursuant to Rule 12(b)(1).*

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1)  The importance of subject-matter jurisdiction cannot be overstated—without it, a federal court cannot proceed any further than dismissal of the lawsuit.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); *see also Stockman v. Fed. Elec. Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  When considering a motion made pursuant to Rule 12(b)(1), the Court is allowed to consider evidence beyond the pleadings in order to determine whether it has subject-matter jurisdiction.  *Moran v. Kingdom of Saudi*

*Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).  In the event that a court finds that it lacks subject-matter jurisdiction in connection with a Rule 12(b)(1) motion to dismiss, the only remedy is dismissal. *See Ruhrgas*, 526 U.S. at 583.

**B.      Standard of Review for Motion Pursuant to Rule 12(b)(6).**

Rule 12(b)(6) exists to quickly dispose of meritless claims before the parties and Court engage in lengthy and expensive litigation.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).  While a court must accept all of a plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation."  *In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d 464, 470 (N.D. Tex. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citations omitted)).  A district court may dismiss a complaint under Rule 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).  That is precisely the case here.

## ARGUMENTS & AUTHORITIES

**A.      Plaintiff's Claims Should be Dismissed Under Federal Rule of Civil Procedure 12(b)(1).**

i.      The Ecclesiastical Abstention Doctrine.

"The First Amendment protects the right of religious institutions to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S.Ct. 2049, 2055 (2020); *Serbian Orthodox Diocese for U.S. of Am. and Canada v. Milivojevich*, 426 U.S. 696, 708 (1976).  "State interference in that sphere would obviously violate the free exercise of religion, and any attempt by government to dictate or even influence such matters would constitute one of the central attributes of an establishment of religion."  *Id.*  "The First Amendment outlaws such intrusion."  *Id.*

This prohibition has come to be known as the ecclesiastical abstention or the church autonomy doctrine. The ecclesiastical abstention doctrine "protect[s] [a religious institution's] autonomy with respect to internal management decisions that are essential to the institution's central mission." *Id.* In other words, the ecclesiastical abstention doctrine prohibits courts from exercising subject-matter jurisdiction over religious disputes (like this one), including disputes relating to theological controversy, church discipline and church governance.[4] *Id.*; *see, e.g.*, *Klouda v. Sw. Baptist Theological Seminary*, 543 F.Supp.2d 594, 612 (N.D. Tex. 2008).

Out of the respect for the Establishment Clause and religious freedom, courts apply the doctrine liberally. *Williams v. Gleason*, 26 S.W.3d 54, 58 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("[a]lthough wrongs may exist in the ecclesiastical setting, and although the administration of the church may be inadequate to provide a remedy, the preservation of the free exercise of religion is deemed so important a principle it overshadows the inequities that may result from its liberal application."). As a result, the *only* instances in which a court can exercise jurisdiction over a religious dispute is if it can apply neutral principles of law that will not require inquiry into religious doctrine. *In re Lubbock*, 624 S.W.3d at 513 (citing *Westbrook*, 231 S.W.3d at 398–400). "[A]ny exception to ecclesiastical abstention . . . must be narrowly drawn to avoid inhibiting the free exercise of religion or imposing secular interests on religious controversies." *Id.*

In that vein, if the plaintiff's "claim challenges a religious institution's employment decision, the sole jurisdictional inquiry is whether the employee is a member of the clergy or otherwise serves a 'ministerial' function." *Patton v. Jones*, 212 S.W.3d 541, 547-48 (Tex. App.—

---

[4] As noted by the Supreme Court, "[r]eligious education is vital to many faiths practiced in the United States." *Our Lady of Guadalupe*, 140 S.Ct. at 2064. Thus, faith-based educational institutions are afforded immunity under the ecclesiastical abstention doctrine. *Id.* Indeed, the Northern District has applied the ecclesiastical abstention doctrine in a case where the Seminary was a defendant. *Klouda*, 543 F.Supp.2d at 611 ("The record clearly establishes that Seminary is a 'church.'").

Austin 2006, pet. denied).  This rule of law is commonly known as the "ministerial exception." The ministerial exception not only applies to any challenge to the employment decision itself, but equally applies to "allegedly defamatory statements made in connection with a church's decision to terminate a minister's employment . . . , even if the statements do not expressly involve religious doctrine or are not made prior to the church's decision." *Id.*; *see also Lubbock*, 624 S.W.3d at 518 ("[T]hat the Diocese made public statements about its new policy and a statement at the completion of its investigation does not necessarily foreclose ecclesiastical protection."); *Klouda*, 543 F.Supp.2d at 613 ("[A]ll claims asserted by plaintiff against defendants are derivative of or intimately related to the employment action taken against her by defendants.   Therefore, defendants enjoy First Amendment protection to all of the claims."); *Ogle v. Church of God*, 153 Fed.App'x. 371, 375-76 (6th Cir. 2005).

      ii.    <u>The Court Cannot Exercise Jurisdiction Over Plaintiff's Claims.</u>

Plaintiff's Complaint alleges three causes of action: (i) breach of contract; (ii) promissory estoppel and/or equitable estoppel; and (iii) defamation.[5]  All of Plaintiff's claims relate to his tenure as President of the Seminary, the Settlement Agreement the parties reached following Plaintiff's resignation, and statements that were made after an investigation had been performed into Plaintiff's stewardship over Seminary resources.

Here, the Court is initially precluded from exercising jurisdiction under the ministerial exception.   It is not disputed that Plaintiff served the Seminary's President.   [Doc. 1, ¶ 12].

---

[5]  All of Plaintiff's claims are creatures of the Texas common law.  As a result, Texas state courts have had "greater occasion" to analyze whether the ecclesiastical abstention doctrine precludes a court from exercising jurisdiction over such claims.  *Rodarte v. Apostolic Assembly of the Faith in Jesus Christ*, 2012 WL 12893656, at 3 (S.D. Tex. 2012) ("Because breach of contract is a state law claim, Texas state courts have had greater occasion to analyze whether a breach of contract case falls within the First Amendment's ecclesiastical abstention doctrine than have federal courts, which are only presented with this issue in diversity cases.").  That is why a number of the decisions cited to herein are Texas state court cases.

Moreover, all of Plaintiff's claims are inextricably intertwined with Plaintiff's resignation as President.  Indeed, Plaintiff's claims wholly relate to his employment at the Seminary and the reason he resigned, as well as the investigation attendant to Plaintiff's resignation.  *See Patton*, 212 S.W.3d at 551-52 (dismissing defamation and tortious interference claims for lack of jurisdiction when they were "inextricably intertwined with the Church's decision to terminate Patton"); *see also Klouda*, 543 F.Supp.2d at 613.  Plaintiff's Complaint should be dismissed for that reason alone.

Even if the ministerial exception did not apply (it does), all of the statements that Plaintiff alleged that form the basis of his breach of contract and defamation claims unquestionably implicate ecclesiastical principles.  Specifically, all of those statements relate to Plaintiff's resignation and the investigation that the Seminary performed into Plaintiff's stewardship of Seminary resources.  It is established law that "[i]nvestigations that relate to the character and conduct of church leaders are inherently ecclesiastical."  *In re Lubbock*, 624 S.W.3d 506, 517 (Tex. 2021).  This includes investigations into a church leader's management of church funds and property.

For example, in *Harris v. Matthews*, the Supreme Court of North Carolina considered whether a court could exercise jurisdiction over claims relating to a church leader's purported poor stewardship of church funds.  361 N.C. 265 (N.C. 2007).  Because adjudicating such a claim would require analysis and application of religious principles, the Supreme Court held that courts were "forbidden" to make such an inquiry:

> Determining whether actions, including expenditures, by a church's pastor, secretary and chairman of the Board of Trustees were proper requires an examination of the church's view of the role of the pastor, staff and church leaders, their authority and compensation, and church management.  Because a church's religious doctrine and practice affect its understanding of each of these concepts, seeking a court's review of the matters presented here is no different than asking a

court to determine whether a particular church's grounds for membership are spiritually or doctrinally correct or whether a church's charitable pursuits accord with the congregation's beliefs.  None of these issues can be addressed using neutral principles of law.

Here, for example, in order to address plaintiffs' claims, the trial court would be required to interpose its judgment as to both the proper role of these church officials and whether each expenditure was proper in light of Saint Luke's religious doctrine and practice, to the exclusion of the judgment of the church's duly constituted leadership.  This is precisely the type of ecclesiastical inquiry courts are forbidden to make.

*Id.* at 273.

Similarly, in *In re Godwin*, the San Antonio Court of Appeals considered whether it could exercise jurisdiction over a claim that a church leader had misused church funds.  293 S.W.3d 742, 750 (Tex. App.—San Antonio 2009, no pet.).  The appellate court ultimately determined that the ecclesiastical abstention doctrine applied because "[t]he determination of whether Godwin and ENCF's financial expenditures were proper . . . requires an inquiry into whether the expenditures were justified in light of ENCF's religious doctrine."  *Id.*

The Seminary's investigation and findings concerning Plaintiff's stewardship of Seminary resources are unquestionably ecclesiastical in nature, and the ecclesiastical abstention doctrine prohibits courts from reviewing those findings.  *Lubbock*, 624 S.W.3d at 518-19; *Harris*, 361 N.C. at 273; *Godwin*, 293 S.W.3d at 750.[6]  Indeed, biblical stewardship is a cornerstone of the Seminary's Statement of Faith.  [App., pp. 7-8 (¶ 18)].

Any argument that the ecclesiastical abstention doctrine does not apply because the alleged statements were published is unfounded.  Specifically, the ecclesiastical abstention doctrine

---

[6] Other courts across the country have similarly held that judicial review of a religious leader's stewardship of church funds is not allowed under the ecclesiastical abstention doctrine.  *Ad Hoc Committee of Parishioners of Our Lady of the Sun Catholic Church, Inc. v. Reiss*, 224 P.3d 1002,1014 (Ct. App. Ariz. 2010) ("Essentially, the Committee wants the court to look over the shoulder of the Board and see if funds are being spent in conformity with church purposes.  The First Amendment prohibits such an examination."); *Bible Way Church of Our Lord Jesus Christ of the Apostolic*

"allows a religious institution to engage freely in ecclesiastical discussions with more than just its members" and "extends to publications that relate to a religious group's right to shape its own faith and mission." *Id*. Moreover, "a religious body's right to self-governance must include the ability to select, and be selective about, those who will serve as the very 'embodiment of its message' and 'its voice to the faithful.'" *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. E.E.O.C.*, 565 U.S. 171, 200-01 (2012). A religious body's ability to communicate with its followers concerning its selection of its leadership must be of prime ecclesiastical concern. *See id.*

However, even if the ministerial exception did not apply (it does), all of the statements that the Seminary allegedly made concern Plaintiff's resignation, why the resignation happened, and the findings that were made as part of the investigation. [*See* Doc. 1, ¶ 106 (statements related to financial matters), ¶ 108 ("Roberts stated that Plaintiff 'decided to stay a bit longer in the President's Home than we anticipated'"), ¶ 110 (alleging that Seminary stated "there were instances of imprudent, unwise, and some activities contrary to institutional policies."), ¶ 112 (statement relating to "presidential accountability"), ¶ 114-22 (various statements set forth in the "Summary of Findings")]. All of these statements were made to the Seminary's ecclesiastical network and fellow believers in order to keep them informed about Plaintiff's departure and the reason for it. [App., pp. 9-10 (¶¶ 24-26); App., p. 11-12 (¶¶ 29-30)]. These statements, made in the course of governance of a religious organization, clearly implicate ecclesiastical matters and determining whether these statements were disparaging or defaming would require the Court to

---

*Faith of Washington, D.C. v. Beards*, 680 A.2d 419 (D.C. 1996), ("Accounting is an area riddled with major subjective decisions. When the entity in question is a religious society, those subjective decisions raise questions of internal church governance . . . .").

analyze Seminary policies and procedures.  *See Lubbock*, 624 S.W.3d at 518-19.  That is precisely the type of inquiry that courts are forbidden to make.  *Id.*

As part of his breach of contract claim, Plaintiff has also alleged that the Seminary breached the Settlement Agreement for failing to issue the joint statement contemplated by the Settlement Agreement.  Regardless of the fact that the Seminary complied with this obligation, the Court cannot exercise jurisdiction over this claim pursuant to the ecclesiastical abstention doctrine.

The joint statement contemplated by the Settlement Agreement clearly implicates ecclesiastical principles.  Indeed, the statement itself provides that:

> We are grateful to have this resolution between Southwestern Seminary and its ninth president, Dr. Adam W. Greenway.  Our *prayer* has always been that things could be resolved amicably, and the conclusion we now arrived at is one that *we believe honors our Lord and His trustworthy Word*, which counsels us that we are to "if possible, as far as it depends on you, live at peace with everyone."  (Romans 12:18, CSB).  The trustees and Dr. Greenway are looking forward to putting this matter behind us and moving on to focus our energies and efforts on *following God's plans* for the next chapters of our respective lives and ministries.  We pray that God will richly bless the Greenway family as well as Southwestern Seminary in the years ahead.

[Doc. 1, Ex. 1, p. 7 (emphases added)].  The Seminary agreed to issue the joint statement, in part, based upon its interpretation of the Book of Romans and its mandate to "live at peace with everyone."  [*See id.*].  The Seminary clearly agreed to issue the statement as part of an ecclesiastical resolution with Plaintiff.  Furthermore, the Seminary (guided by principles of accountability shaped by Baptist ecclesiology) issued the joint statement to *Baptist Press*, the official news outlet of the Southern Baptist Convention (who is also the Seminary's sole member).  [App., p. 9 (¶ 23); App., p. 152].  The ecclesiastical abstention doctrine precludes the Court from exercising subject-matter jurisdiction over Plaintiff's breach of contract claim for that reason.[7]

---

[7] Defendants maintain that this lawsuit is presently ripe for dismissal under Rule 12(b)(1).  However, in a recent case, the Fifth Circuit held that an ecclesiastical abstention argument made under Rule 12(b)(1) was premature.  *McRaney*

**B.**     ***Plaintiff's Claims Should be Dismissed Under Rule 12(b)(6).***

Plaintiff's Complaint should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

i.     Plaintiff Fails to Allege a Breach of Contract Claim.

Plaintiff alleges that the Seminary breached the Settlement Agreement by (1) disparaging Plaintiff; and (2) failing to issue the joint statement.  [Doc. 1, ¶¶ 89-96].

As an initial matter, Plaintiff alleges that "[t]he contract included a non-disparagement clause, prohibiting the Defendants from making statements that were false and defamatory." [Doc. 1, ¶ 93].  That is simply not true.  The non-disparagement provisions in the Settlement Agreement do not prohibit the Seminary from disparaging Plaintiff (in any event, it did not). [Doc. 1, Ex. 1, ¶ 4].  Instead, that provision only prohibited certain individuals from disparaging Plaintiff.  Those individuals signed the Settlement Agreement in their individual capacities to evidence their agreement to that provision.  Plaintiff, therefore, has failed to state a claim for breach of contract against the Seminary.  *See Rogers v. City of Yoakum*, 660 Fed.App'x 279, 285 n.6 (5th

---

*v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 351 (5th Cir. 2020).  In that case, McRaney (the plaintiff) did not sue his employer, as Plaintiff has done in this case.  Instead, McRaney sued one of his employer's strategic partners for tortiously interfering with his employment relationship.  The Fifth Circuit ultimately held that, at the time it was considering the defendant's 12(b)(1) motion, it was not clear whether the case could be adjudicated using neutral principles of law.  *Id.*  The same is not true with respect to this case.

To begin with, because the Seminary employed Plaintiff as its President, the ministerial exception applies.  The Court need not go any further in its ecclesiastical and jurisdictional analysis.  But even if it did, Plaintiff's own allegations demonstrate the ecclesiastical issues that the Court would have to consider.  [Doc. 1, ¶ 82 (alleging the Seminary defamed Plaintiff by stating that "[t]he ask force concluded Adam Greenway engaged in a pattern of spending that the task force believes did not reflect proper stewardship. . . . We grieve the pattern of poor stewardship . . . ."), ¶ 110 (the Task force "concluded there were instances of imprudent, unwise, and some activities contrary to institutional policies."), ¶ 122 ("The task force also found numerous examples of improper expenses . . . in violation of seminary policy.")].  As a result, Plaintiff's own allegations show that the Court would have to analyze Seminary and ecclesiastical principles and policies to adjudicate his claims.  [*See id.*].  That was not the case in *McRaney* when the Fifth Circuit issued its opinion.  *Id.*  On remand in *McRaney*, the district court ultimately granted summary judgment in favor of the defendant based on the ecclesiastical abstention doctrine.  *McRaney v. N. Am. Mission Bd. of S. Baptist Convention, Inc.*, 2023 WL 5266356, at *5 (N.D. Miss. 2023).  That decision is currently on appeal.

---

Cir. 2016) ("When 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.").

While Roberts did agree to the Settlement Agreement's non-disparagement provision, Plaintiff's claim against Roberts should also be dismissed.  For any statements made before the Settlement Agreement was entered into, such statements are covered by the Settlement Agreement's release.[8]  [Ex. 1, Doc. 1, ¶ 11].  For any post-Settlement Agreement statements attributed to Roberts, such statements are foreclosed by the ecclesiastical abstention doctrine (as set forth *supra*).  Moreover, such statements are not disparaging and do not constitute a breach of the Settlement Agreement for the same reasons they are not defamatory (discussed *infra*).

Plaintiff further alleges that the Seminary breached the Settlement Agreement because the Seminary "failed to issue the joint statement on or before February 28, 2023, or at any time thereafter."  [Doc. 1, ¶ 92].  But that is simply not true.  Plaintiff tacitly admits that the Seminary issued the joint statement; Plaintiff, though, is disappointed that it did not receive traction.  [*Id.* at ¶¶ 69-71].  The Seminary issued the joint statement to *Baptist Press* on February 28, 2023. [App., p. 9 (¶ 23); App., p. 152].  *Baptist Press* is the official news service of the Southern Baptist Convention.  [App., p. 9 (¶ 23)].  That is all that the Settlement Agreement required.[9]  [Doc. 1,

---

[8]  Plaintiff's breach of contract claim does not specifically identify which statements purportedly form the basis of his claim for breach of the Settlement Agreement's non-disparagement provision.

[9]  The Seminary asks the Court to exercise its discretion and consider this evidence for Rule 12(b)(6) purposes in accordance with the limited exception set forth in *Collins v. Morgan Stanley Dean Witter*.  224 F.3d 496, 498 (5th Cir.).  The exception set forth in *Collins* lets courts consider evidence outside of the plaintiff's complaint when (1) the documentary evidence is attached to the defendant's motion to dismiss; (2) the documents are referred to in the plaintiff's complaint; and (3) the documents be central to the plaintiff's claims.  *Id.*; *Kaye v. Lone Star Fund V (US), L.P.*, 453 B.R. 645, 661-62 (Bankr. N.D. Tex. 2011); *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 (5th Cir. 1988) ("[A] district court has complete discretion . . . to either accept the exhibits submitted or not.").  Each element is satisfied here.  Specifically, the evidence is attached to this Motion, and the issues concerning the joint statement were referenced in Plaintiff's Complaint.  Finally, this evidence is central to Plaintiff's breach of contract claim because it conclusively negates the breach element of Plaintiff's claim.  The exception permitting a court to consider evidence outside of the plaintiff's complaint is, thus, satisfied.  *See id.*

Ex. 1, ¶ 2].

Apparently, compliance with the Settlement Agreement was not enough. Instead, Plaintiff wants to re-write the Settlement Agreement to include an obligation for the Seminary to have posted the joint statement on the Seminary's website. [Doc. 1, ¶¶ 89-96]. The Court, however, should not re-write the Settlement Agreement or include terms that were not agreed to. *In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017) ("Courts may not rewrite the parties' contract, nor should courts add to its language."); *Langley v. Chase Bank USA, N.A.*, 2010 WL 8266202, at *3 (N.D. Tex. 2010) (courts may "not rewrite [a] contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal"). Instead, the allegations and evidence show that the Seminary issued the joint statement. Nothing more was required.

      ii.    <u>Plaintiff Fails to State an Estoppel Claim.</u>

Plaintiff has also failed to state a claim for promissory estoppel. Plaintiff's promissory estoppel claim should be dismissed for four reasons. First, it is black-letter law that a plaintiff cannot maintain a cause of action for promissory estoppel whenever a contract covers the subject-matter of the promissory estoppel claim. *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 654 F.Supp.2d 536, 544 (N.D. Tex. 2009).

Specifically, Plaintiff has identified two "promises" in support of his claim: (1) that the Seminary would "issue the joint statement;" and (2) that the Seminary would "operate in a manner to ensure that Plaintiff's professional reputation was protected." [Doc. 1, ¶ 99]. The Settlement Agreement covers both of these alleged promises. Specifically, the Settlement Agreement included a provision that required the Seminary to issue the joint statement, which the Seminary did. [Doc. 1, Ex. 1]. The Settlement Agreement also included a non-disparagement provision, which Roberts has complied with. [*Id.*]. Because the Settlement Agreement covers the promises that are the subject of his claim, Plaintiff cannot maintain an action for promissory estoppel.

Second, an essential element of a promissory estoppel claim is substantial and justifiable reliance. *Global Integrated Bldg. Sys. v. Target Logistics, LLC*, 2009 WL 259360, at \*8 (S.D. Tex. 2009). "A disclaimer of reliance provision bars . . . promissory estoppel claims because reliance is a necessary element of" that claim. *Paso Del Norte Motors, LP v. Tri Star Partners* 2015 WL 13778413, at \*7 (W.D. Tex. 2015). Here, the Settlement Agreement includes a disclaimer of reliance provision. [Doc. 1, Ex. 1, ¶ 15].

Third, "[v]ague and indefinite statements that amount to no more than speculation about future events . . . are insufficient to support a claim for promissory estoppel." *Pilgrim's Pride*, 654 F.Supp.2d at 544. Plaintiff's allegation that the Seminary promised that it would "operate in a manner to ensure that [Plaintiff's] professional reputation was protected" is just that. The Fifth Circuit's decision in *Addicks Servs., Inc. v. GGP-Bridgeland, LP* is instructive. 596 F.3d 286, 301 (5th Cir. 2010). In that case, a plaintiff tried to enforce a promise that the defendant "would resolve [the plaintiff's] claims for extra work at a later date." *Id.* The Fifth Circuit held that this "promise" was too vague and indefinite to enforce. *Id.*; *see also Global Integrated Bldg. Sys.*, 2009 WL 259360, at \*9 (holding that statements amounting to "[If you] can get these buildings built, I will get you paid" were too vague and indefinite as a matter of law). As was the case in *Addicks*, the Seminary's alleged promise that it would "operate in a manner to ensure that Plaintiff's professional reputation was protected" is too vague and indefinite to enforce. *See id.* There is simply no way for the Seminary to know what it supposedly had to do in order to "ensure that Plaintiff's professional reputation was protected." Without specifics, the alleged promise is too vague and indefinite to enforce. *See id.*

Fourth, Plaintiff's promissory estoppel claims purports to relate to "promises" that the Seminary made *prior* to entering into the Settlement Agreement. Indeed, Plaintiff alleges that the

Seminary's failure to issue the joint statement was one of the promises that the Seminary did not keep.  However, such promises were expressly released in the Settlement Agreement.  [Doc. 1, Ex. 1, ¶ 11].

In addition to promissory estoppel, Plaintiff also asserted a "claim" for equitable estoppel. [Doc. 1, ¶¶ 97-101].  This claim fares no better.  Courts have expressly stated that "[e]quitable estoppel is not a cause of action." *Torres-Aponte v. JP Morgan Chase Bank, N.A.*, 639 Fed.App'x. 272 (5th Cir. 2016); *Mitchell v. Carrington Mortg. Servs., LLC*, 2020 WL 8125817, at *6 (N.D. Tex. 2020).  Instead, it is only a principle that can be used defensively.  *Id.*

    iii.    <u>Plaintiff Fails to Allege a Valid Defamation Claim.</u>

Finally, Plaintiff has failed to state a claim for defamation.  To constitute an actionable claim for defamation, the statement at-issue must be (1) capable of a defamatory meaning; and (2) not merely the opinion of the speaker.  Specifically, "[t]o be defamatory, the statement must tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury." *Jones v. Compass Bank*, 2008 WL 11429806, at *4 (S.D. Tex. 2008).  This inquiry is a question of law for the Court to decide.[10] *Warren v. Fed. Nat'l Mortg. Ass'n*, 932 F.3d 378, 384 (5th Cir. 2019).  Moreover, to be actionable, the complained-of statement must be one that can be objectively verified as false; statements of opinion are not actionable. *Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.—Dallas 2006, no pet.).  Here, Plaintiff's allegations do not satisfy either requirement.

Specifically, the following statements form the basis of Plaintiff's defamation claim:[11]

---

[10]  Only in the event that the Court determines that the at-issue statement is "ambiguous or of doubtful" import does this issue become one for the jury to decide.  *Warren*, 932 F.3d at 384.

[11]  All of the at-issue statements are also true.  However, given that the Motion is seeking dismissal under Rule 12(b)(6), it would not be appropriate for the Court to adjudicate the truth of the statements at this point in time.

- **Statement #1:**  In April 2023, Roberts allegedly stated that "[A]bout the time of the Southern Baptist Convention last year [2022] I think our president realized we were getting into some pretty deep financial troubles . . ." [Doc. 1, ¶ 104].

  - This statement constitutes a non-actionable statement of opinion, in that it conveys what Roberts "thought."  Moreover, the statement is not capable of defamatory meaning because it does not tend to injure Plaintiff's reputation.

- **Statement #2:**  An April 2023 press release, where Roberts generally characterized that "he could not give specifics because it was held in executive session . . . but in several areas, not just related to finances things were not going well . . . from September 20-22 . . . as it relates to personnel, finances, just a lot different matters . . . everything was coming up very, very negative.  [Doc. 1, ¶ 106].

  - This statement constitutes a non-actionable statement of opinion in that relates to what Roberts and the Trustees thought.  Moreover, the statement is not capable of defamatory meaning because it does not tend to injure Plaintiff's reputation.

- **Statement #3:**  Roberts stated that Plaintiff "decided to stay a bit longer in the President's Home than we had anticipated." [Doc. 1, ¶ 108].

  - This statement constitutes a non-actionable statement of opinion in that it states that Plaintiff thought he would stay in the President's Home longer than the Board of Trustees thought he would.  Moreover, this statement is not capable of defamatory meaning because it does not tend to injure Plaintiff's reputation.

- **Statement #4:**  An April 19, 2023, press release that stated "a trustee task force evaluated the former president's expenses and financial management, following up on a request from trustees during their fall meeting.  [Roberts] stated the task force was given unfettered access by the administration to all financial records of the institution, and concluded there were instances of imprudent, unwise, and activities contrary to institutional policies." [Doc. 1, ¶ 110].

  - This statement constitutes a non-actionable statement of opinion in that it conveys the Task Force's conclusions.  This statement is also not capable of defamatory meaning because it does not tend to injure Plaintiff's reputation.

- **Statement #5:**  A May 30, 2023, press release that stated "It was the growing involvement of trustee leadership and our insistence of greater presidential accountability and resistance to our attempts to implement financial safeguards that led to Adam Greenway's resignation." [Doc. 1, ¶ 112].

  - This statement is not capable of defamatory meaning because it does not tend to injure Plaintiff's reputation; instead, it only states why Defendants believe Plaintiff resigned.

- Statement #6:   The June 7, 2023, "Summary of Findings" which stated that (1) "between 2019 and 2022, over \$1.5 million was spent on renovations, furnishings and related expenses to the President's Home" [Doc. 1, ¶ 114]; (2) "examples of expenses for the President's home include \$59,865.79 for Christmas decorations, more than \$25,000 for artwork, and \$11,123.49 for an espresso machine and accessories" [*Id.*, ¶ 116]; (3) "despite extensive renovations completed early in his tenure, further optional work was done on the President's home in late 2021 . . . ." [*Id.*, ¶ 118]; (4) "between the summer of 2020 and early 2021, over \$500,000 was spent on the President's office, . . ." [*Id.*, ¶ 120]; and (5) "[t]he task force also found numerous examples of improper expenses charged to the seminary by Greenway . . . in violation of seminary policy."  [*Id.*, ¶ 122].

    o All of these statements are (i) non-actionable statements of opinion; and/or (ii) not capable of defamatory meaning because they do not injure Plaintiff's reputation; instead, they simply convey the Task Force's findings about how Seminary resources were utilized.

Notwithstanding the fact that none of the alleged statements are actionable under a claim for defamation, these statements only underscore why this is an ecclesiastical matter.  For example, one of Plaintiff's allegations is that "[t]he task force concluded that [Plaintiff] engaged in a pattern of spending that the task force believes did not reflect proper stewardship of seminary resources." [Doc. 1, ¶ 82].  Another states that "[t]he task force also found numerous examples of improper expenses charged to the Seminary . . . in violation of seminary policy."  [*Id.*, ¶ 122].  Thus, to adjudicate these claims, the Court would have to entangle itself in matters of Seminary policy, which the ecclesiastical abstention doctrine prohibits.

Plaintiff has also failed to state a claim for defamation because he has not made allegations sufficient to plead malice.  Specifically, because Plaintiff is/was a public figure,[12] he is required

---

[12]  It should not be disputed that Plaintiff qualifies as a "public figure."  *See Price v. Stossel*, 620 F.3d 992, 995 (9th Cir. 2010) ("The plaintiff public figure in this case is Dr. Frederick Price, a minister known for his television evangelism.").  Here, Plaintiff was the Seminary's President, one of only six seminaries under the Southern Baptist Convention.  Moreover, Plaintiff is well-known throughout the Baptist community.  He has authored various articles and presentations that have been published in the Baptist community and has lectured at various conventions and conferences.  [App., pp. 203-210].  Additionally, Plaintiff has a dedicated Wikipedia page and over 15,000 followers

to plead and prove that the Seminary acted with malice to prevail on his defamation claim. *New Times, Inc. v. Wamstad*, 106 S.W.3d 916, 925 (Tex. App.—Dallas 2003), *review granted, judgment vacated and remanded by agreement sub no. Wamstad v. Sands*, 2004 WL 7352479 Tex. 2004).

Courts in this Circuit have repeatedly held that boilerplate, conclusory allegations regarding malice are insufficient and that a plaintiff's defamation claims must be dismissed without more. *Shaunfield v. Experian Info. Sols., Inc.*, 991 F.Supp.2d 786, 807 (N.D. Tex. 2014); *Borninski v. Williamson*, 2003 WL 22952571, at *1 (N.D. Tex. 2003). In this case, Plaintiff has made the single allegation that "While making the statements, the Defendants also acted with actual malice, and/or a reckless disregard for the truth." [Doc. 1, ¶ 130]. This allegation is not sufficient. *See id.* There are not even any allegations that Roberts or any other member of the Seminary knew the statements were false or that the statements were not in line with the Task Force's findings and investigation.

## CONCLUSION

For the foregoing reasons, Defendants respectfully pray the Court grant the instant Motion to Dismiss, dismiss Plaintiff's claims with prejudice, and grant Defendants such other or further relief, in law or equity, which the Court deems just and proper.

---

on his social media accounts.  https://en.wikipedia.org/wiki/Adam_W._Greenway (last accessed Apr. 17, 2024); https://twitter.com/AdamGreenway (last accessed Apr. 17, 2024).

Respectfully submitted,

*/s/ Michael D. Anderson*
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Caleb B. Bulls
caleb.bulls@kellyhart.com
State Bar No. 24082749
John C. Fronk
State Bar No. 24126086
john.fronk@kellyhart.com
**KELLY HART & HALLMAN LLP**
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280

**ATTORNEYS FOR DEFENDANTS**


**CERTIFICATE OF SERVICE**

On April 18, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


*/s/ Michael D. Anderson*
Michael D. Anderson