**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |  |
|---|---|---|
| **DR. ADAM W. GREENWAY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **CIVIL NO. 4:24-CV-00260-O** |
| **THE SOUTHWESTERN BAPTIST** | § | |
| **THEOLOGICAL SEMINARY and** | § | |
| **DANNY ROBERTS,** | § | |
| | § | |
| **Defendants.** | § | |

---

**APPENDIX TO BRIEF IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

Exhibit A    Affidavit of Danny Roberts ......................................................................2

Exhibit 1    Charter...................................................................................................16

Exhibit 2    Restated Articles of Incorporation .........................................................19

Exhibit 3    Seminary Bylaws (04/05/22) .................................................................28

Exhibit 4    Seminary Bylaws (10/18/22) .................................................................41

Exhibit 5    Seminary Bylaws (10/17/23) .................................................................54

Exhibit 6    February 2019 Meeting Minutes............................................................67

Exhibit 7    Faculty Manual 2019-2020 ...................................................................70

Exhibit 8    Greenway Resignation Statement (09/23/22) ......................................148

Exhibit 9    Statement on Adam W. Greenway (02/28/23).......................................152

Exhibit 10   April 19, 2023 Statement ...................................................................154

Exhibit 11   Board of Trustees Minutes (05/30/23).................................................163

Exhibit 12   May 30, 2023 Statement....................................................................166

Exhibit 13      June 7, 2023 Statement ........................................................................171

Exhibit 14      Baptist Faith and Message (2023 Southern Baptist Convention) ........................176

Exhibit 15      Southern Baptist Convention Bylaws (2016) ........................................184

Exhibit 16      Southern Baptist Convention Exemption Letter (1964) ......................................199

Exhibit 17      Greenway CV ........................................................................203

Respectfully submitted,

*/s/ Michael D. Anderson*
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Caleb B. Bulls
caleb.bulls@kellyhart.com
State Bar No. 24082749
John C. Fronk
State Bar No. 24126086
john.fronk@kellyhart.com
**KELLY HART & HALLMAN LLP**
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

On April 18, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Michael D. Anderson*
Michael D. Anderson

iii

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **DR. ADAM W. GREENWAY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **CIVIL NO. 4:24-CV-00260-O** |
| **THE SOUTHWESTERN BAPTIST** | § | |
| **THEOLOGICAL SEMINARY and** | § | |
| **DANNY ROBERTS,** | § | |
| | § | |
| **Defendants.** | § | |

## AFFIDAVIT OF DANNY ROBERTS

BEFORE ME, the undersigned Notary Public, on this day personally appeared Danny Roberts, known to me to be the person whose name is subscribed to this Affidavit. After I administered an oath to him, upon his oath, he said:

1.      "My name is Danny Roberts. I am a Defendant in the above-captioned lawsuit, and I submit this affidavit in support of Defendants' Motion to Dismiss Plaintiff's Complaint. I am over the age of 21 years, and I am fully competent to make this Affidavit. All information contained herein is true and correct and is based upon my personal knowledge.

2.      "I am a Southern Baptist. I serve as the Executive Pastor of Cross Church and have since 2004. Cross Church is located in North Richland Hills and is in friendly cooperation with the Southern Baptist Convention. Cross Church provides regular financial support for the Southern Baptist Convention's work as part of Cross Church's adopted budget.

3.      "As part of my education, I earned a Master of Church Music degree from The Southwestern Baptist Theological Seminary (the "Seminary") in 1979. I currently serve as a

Trustee on the Seminary's Board of Trustees and have since 2016.  The Seminary's Board of Trustees has overall responsibility for the governance of the Seminary.

4.      "The Seminary is based in Fort Worth and has been for over 100 years.  It is one of six Southern Baptist Convention seminaries.  The Southern Baptist Convention is a network of like-minded local churches cooperating together to reach the world with the Good News of Jesus Christ.  According to the Southern Baptist Convention, there are currently more than fifty thousand Southern Baptist cooperating churches and church-type missions.

5.      "In 2016, I was elected by the Southern Baptist Convention to serve a five-year term as a member of the Seminary's Board of Trustees. In order to be eligible to serve as a trustee, I was required by Southern Baptist Convention Bylaw 15.H to "have been continuously a resident member for at least the preceding three (3) years of a church or churches which were in those years in friendly cooperation with the Convention and sympathetic with its purposes and work. . . ."  A true and correct copy of the 2016 Southern Baptist Convention Bylaws are attached hereto as Exhibit No. 15.  In 2021, I was elected to serve another five-year term as a member of the Board of Trustees.  I served as Chairman of the Presidential Search Committee that ultimately recommended Plaintiff's election as the Seminary's ninth president. From 2019-2021, I served as Vice Chairman of the Board of Trustees of the Seminary. From 2021 to 2023, I served as the Chairman of the Board of Trustees of the Seminary.

6.      "Through my roles as a Trustee and as Chairman of the Board, I have become familiar with the organizational and governing documents for the Seminary, including its Charter, Restated Articles of Incorporation, Bylaws, and Faculty Manual.  I have had to review these documents through my service as a Trustee and particularly so as both Vice Chairman and Chairman of the Board of Trustees.

7.     "Attached hereto as Exhibit No. 1 is a true and correct copy of the Seminary's Charter.  As set forth in the Seminary's Charter, the purpose of the Seminary "is hereby declared to be mainly for the promotion of theological education . . . and such other instruction as is needful to equip preachers and other Christian workers for their life work."  Additionally, the Seminary's Charter explains that "[a]ll Trustees shall be elected by the Southern Baptist Convention according to the provisions of the Constitution of that Convention."

8.     "Attached hereto as Exhibit No. 2 is a true and correct copy of the Seminary's Restated Articles of Incorporation.  There have not been any subsequent amendments to these Restated Articles of Incorporation.  As set forth in the Restated Articles of Incorporation, the Seminary shall be operated as a non-profit corporation, which it is.  [Article XI].  A true and correct copy of its tax exempt status by way of its Group Exemption Letter from IRS is attached hereto as Exhibit No. 16.   Further, the Seminary "shall have one Member, the Southern Baptist Convention, a religious non-profit corporation chartered by act of the Senate and House of Representatives of the State of Georgia."  [Article II].  Echoing the Seminary's Charter, the Restated Articles of Incorporation state that the "primary purpose of the [Seminary] is to provide theological education for men and women preparing for Christian ministry."  [Article III].  The Restated Articles of Incorporation also provide that the affairs of the Seminary shall be managed by its Board of Trustees, who are elected by the Southern Baptist Convention.  [Articles VI, VII].

9.     "Attached hereto as Exhibit No. 3 is a true and correct copy of the Bylaws of the Seminary, effective April 5, 2022.   These were the Bylaws in effect prior to Plaintiff's resignation as President.

10.    "Attached hereto as Exhibit No. 4 is a true and correct copy of the Bylaws of the Seminary, effective October 18, 2022.   These were the Bylaws in effect immediately after

Plaintiff's resignation as President and during the period that the Seminary and Plaintiff negotiated a resolution of their dispute.

11.     "Attached hereto as Exhibit No. 5 is a true and correct copy of the Bylaws of the Seminary, effective October 17, 2023. These are the current Bylaws in effect for the Seminary.

12.     "The Bylaws, regardless of which version is reviewed, provide that the Seminary is a confessional institution and that its Board of Trustees is the final interpretative authority on the Bible's meaning and application for all purposes of the Seminary:

> As a confessional institution, the Seminary is committed to theological integrity and biblical fidelity. The Confession of Faith of the Seminary shall be the *Baptist Faith and Message* as adopted and amended by the Convention, and shall be subscribed to in writing by all faculty, without hesitation or mental reservation. The Confession of Faith does not exhaust the extent of the Seminary's beliefs, however. The *Chicago Statement on Biblical Inerrancy*, the *Danvers Statement on Biblical Manhood and Womanhood*, and the *Nashville Statement* are recognized by the Seminary as guiding documents that clarify and establish the meaning of the Confession of Faith. Furthermore, the Bible itself, as the inspired, inerrant, and infallible Word of God that speaks with final authority concerning truth, morality, and the proper conduct of humankind, is the ultimate source of all that the Seminary believes. The Board is the final interpretive authority on the Bible's meaning and application for purposes of the Seminary's faith, doctrine, practice, policy, and discipline. The President shall serve as the authorized agent of the Board.

[Exhibit No. 5, Section 1.3]. The Bylaws state that the Board of Trustees is the legal body with specific authority over the Seminary and exercises fiduciary oversight of the Seminary. [Exhibit No. 5, Section 2.2]. That is, all powers for governance of the Seminary are vested in the Board of Trustees. [Exhibit No. 5, Section 1.1].

13.     "The Bylaws provide that the "President shall work with the Board and be accountable to the Board in advancing the mission of the Seminary." [Exhibit No. 5, Section 5.3]. Moreover, the "President shall have direct charge of, full supervision over, and shall be responsible for all funds and properties of the Seminary, and over all matters pertaining to the

Seminary, in all its units, schools, and departments." [Exhibit No. 5, Section 5.4]. Additionally, "[t]he President shall represent the Seminary in its routine contacts with Convention entities and other general Baptist bodies. He shall be a member of the Great Commission Council and the Council of Seminary Presidents of the Southern Baptist Convention." [Exhibit No. 5, Section 5.5].

14. "Attached hereto as Exhibit No. 6 is a true and correct copy of the Minutes of the Board of Trustees Special Called Meeting. On February 27, 2019, the Seminary's Board of Trustees elected Adam W. Greenway the ninth President of the Seminary and as Professor of Evangelism and Apologetics. I served as Chairman of the Presidential Search Committee, and I attended this Special Called Meeting. A true and correct copy of Plaintiff's *curriculum vitae*, as maintained at the Seminary, is attached hereto as Exhibit No. 17.

15. "Attached hereto as Exhibit No. 7 is a true and correct copy of the Faculty Manual, as revised in 2019 during Plaintiff's tenure as President of the Seminary.

16. "The Faculty Manual emphasizes the ecclesiastical connection between the Seminary, the Southern Baptist Convention, and faculty. It states:

> This *Faculty Manual* acknowledges the ownership of the Seminary by the Southern Baptist Convention and the covenant relationship which the Seminary has with the churches of the Southern Baptist Convention. It is within this context that the responsibilities of academic freedom and relationship must be exercised. The special position of the Seminary teacher within the Southern Baptist Convention imposes special obligations that are of utmost ecclesiastical concern to the Seminary and its mission.
>
> .        .        .
>
> Finally, it should be noted that the seminary views its relationship with its faculty as a covenant relationship of ecclesiastical concern which informs and guides how we relate to one another. Relationships with faculty are not entered into or severed without prayerful consideration.

[Preface]. The Faculty Manual also identifies the Mission Statement of the Seminary: "[The Seminary] assists the churches of the Southern Baptist Convention by the biblical education of God-called men and women for their respective ministries, which fulfill the Great Commission and glorify God."

17. The Faculty Manual lists a number of responsibilities of the President of the Seminary. It provides, for example, that, "He shall be custodian of all funds and properties of the Seminary and shall have direct charge and supervision over them, under the authority of the Board."

18. Appendix 1 to the Faculty Manual contains the Seminary's Statement of Faith. The Statement of Faith specifically deals with the biblical principle of stewardship. Stewardship is an integral part of the Seminary's Statement of Faith:

> God is the source of all blessings, temporal and spiritual; all that we have and are we owe to Him. Christians have a spiritual debtorship to the whole world, a holy trusteeship in the gospel, and a binding stewardship in their possessions. They are therefore under obligation to serve Him with their time, talents, and material possessions; and should recognize all these as entrusted to them to use for the glory of God and for helping others. According to the Scriptures, Christians should contribute of their means, cheerfully, regularly, systematically, proportionately, and liberally for the advancement of the Redeemer's cause on earth.

This mirrors the Southern Baptist Convention's Baptist Faith and Message, which provides the following biblical support regarding stewardship:

### XIII. Stewardship

> God is the source of all blessings, temporal and spiritual; all that we have and are we owe to Him. Christians have a spiritual debtorship to the whole world, a holy trusteeship in the gospel, and a binding stewardship in their possessions. They are therefore under obligation to serve Him with their time, talents, and material possessions; and should recognize all these as entrusted to them to use for the glory of God and for helping others. According to the Scriptures, Christians should contribute of their means cheerfully, regularly, systematically,

proportionately, and liberally for the advancement of the Redeemer's cause on earth.

Genesis 14:20; Leviticus 27:30-32; Deuteronomy 8:18; Malachi 3:8-12; Matthew 6:1-4, 19-21; 19:21; 23:23; 25:14-29; Luke 12:16-21, 42; 16:1-13; Acts 2:44-47; 5:1-11; 17:24-25; 20:35; Romans 6:6-22; 12:1-2; 1 Corinthians 4:1-2; 6:19-20; 12; 16:1-4; 2 Corinthians 8-9; 12:15; Philippians 4:10-19; 1 Peter 1:18-19.

A true and correct copy of the Southern Baptist Convention's Baptist Faith and Message is attached hereto as Exhibit No. 14.

19.     "On September 22, 2022, the Executive Committee of the Seminary's Board of Trustees met as part of a regularly scheduled meeting in preparation for the upcoming Board of Trustees meeting to be held in October.  As Chairman of the Board, I served on the Executive Committee at that time and chaired the September 22, 2022 meeting.   The President's stewardship over the Seminary and his relationship with faculty were key issues at that time.  As part of this September 2022 meeting, the Executive Committee met with Plaintiff and discussed his stewardship and his relationship with the faculty.  I believe that Plaintiff resigned as President of the Seminary on September 22, 2022.  There was a dispute as to whether Plaintiff actually resigned but that appeared to be cleared up the following day.

20.     "On September 23, 2022, the Seminary issued a statement that included a statement from Plaintiff regarding his resignation.  A true and correct copy of the text of the September 23, 2022 statement is attached hereto as Exhibit No. 8.  In it, Plaintiff stated,

"These days are incredibly challenging in the life of our denomination," said Greenway. "They are also challenging times for academic institutions, particularly theological seminaries. In February 2019, Carla and I accepted the call to come back 'home' to Southwestern Seminary with an understanding of these challenges, but also with the strong desire to be part of the solution. What we failed to appreciate was the enormity of the reputational, legal, and financial realities that would welcome us to the Dome—only to be compounded by a global pandemic unlike anything we have ever experienced before. We have done our best to serve Southern Baptists by helping position our seminary for the future,

but much, much work remains to be done. Nevertheless, in the Providence of God we sense a release from our duties here.

.        .        .

"We will continue to serve Southern Baptists as we have throughout the course of our lives and ministry," said Greenway. "We believe our next assignment is not a departure from but a continuation along the journey God has always had us walk. We are thrilled that we are going to help prepare Southern Baptist missionaries for their work of addressing the world's greatest problem—spiritual lostness—with God's solution, which is the gospel of Christ. As we look forward to beginning a new chapter with Southern Baptists' favorite entity, the International Mission Board, we ask for your prayers for us in this season of transition, and we pledge our continued prayers and support for our beloved "crown jewel."

21.    "Despite the September 23rd statement, a dispute nevertheless arose over Plaintiff's resignation and the terms of his separation.  The parties retained a Christian mediator to help resolve their dispute.  That process culminated in a February 2023 Settlement Agreement, which is attached as an exhibit to Plaintiff's Complaint.

22.    "As part of the Settlement Agreement, the parties agreed, "Southwestern and Greenway agree to issue the joint statement attached hereto as Exhibit No. 1.  Southwestern will take responsibility for issuing the joint statement on or before February 28, 2023."  The Seminary did not agree to publish the joint statement on its website as part of the Settlement Agreement.

23.    "The Seminary issued the joint statement to *Baptist Press* on February 28, 2023. *Baptist Press* is the official news service of the Southern Baptist Convention.  A true and correct copy of an email issuing the joint statement to *Baptist Press* is attached hereto as Exhibit No. 9.

24.    "On or about April 14, 2023, I attended a meeting with the Seminary's Advisory Council.  The Advisory Council is a group of ministry partners, advisors, and ambassadors who are appointed by the Seminary.  They help advance the mission of the Seminary in fulfillment of

the Seminary's mission to provide theological education for individuals engaging in Christian ministry. The role of the Seminary's Advisory Council is to advise and assist the Seminary and to communicate its progress to the president and the Seminary's administration. Plaintiff's Complaint references that meeting in Paragraph No. 74 of his Complaint. Any statements I am alleged to have made solely to the Advisory Council were made as part of keeping the Advisory Council up to date on important events regarding the Seminary so that the Advisory Council can fulfill its role to help advance the mission of the Seminary.

25. "On or about April 17, 2023, the Seminary's Board of Trustees met for its Spring meeting. Plaintiff's Complaint references that meeting in Paragraph No. 75 of his Complaint. Any statements I am alleged to have made solely to the Seminary's Board of Trustees was in furtherance of my then role as Chairman of the Board of Trustees and in furtherance of the governance of the Seminary.

26. "In Paragraph No. 76 of his Complaint, Plaintiff refers to a statement posted on the Seminary's website on April 19, 2023. A true and correct copy of the statement is attached hereto as Exhibit No. 10. By way of background, a Trustee task force was assigned the task of reviewing and investigating Plaintiff's stewardship over the Seminary. I was involved in that assignment. As detailed above, stewardship is a key component of the Seminary's Statement of Faith. Plaintiff's expenses and financial management of the Seminary fall squarely within stewardship. Any statement regarding stewardship cannot be separated from or reviewed in isolation from the Seminary's Statement of Faith. The purpose of this statement was to communicate to the Seminary's stakeholders (i.e., the Southern Baptist Convention and Southern Baptist cooperating churches and their members and ministry partners) and fellow believers an overview of what the task force had found with respect to Plaintiff's stewardship.

27.     On April 20, 2023, Plaintiff posted a statement to his Twitter account.  A true and correct copy of the statement is listed below:

### Statement from
### Adam W. Greenway
April 20, 2023

"I look forward to the seminary fulfilling its promise of transparency to Southern Baptists by releasing the full trustee investigative report including all related findings, without edit or redaction. I trust that all Southern Baptists will then be able to judge for themselves the veracity of the summary narrative presented in the seminary's press release."

28.     "On May 30, 2023, a Special Called Meeting of the Board of Trustees occurred.  I attended the Special Called Meeting and called it to order.  A true and correct copy of the minutes from that Special Called Meeting are attached hereto as Exhibit No. 11.  As set forth in the minutes, the Board approved the publication of the audited financials as one comprehensive report for the fiscal years 2002-2022.  The Board also approved the publication of examples of presidential expenses as generated by the task force investigation.  The Board also affirmed the ongoing work to strengthen financial guardrails recommended by the task force to ensure greater accountability and oversight of the president and other senior administrators.  These actions were taken after prayerful deliberation and in keeping with the Seminary's Statement of Faith regarding stewardship, in alignment with the biblically-guided responsibility given the Board of Trustees by the churches of the Southern Baptist Convention, and as part of the Board's ecclesiastical duty in the governance of the Seminary.

29.     "In Paragraph No. 80 of his Complaint, Plaintiff refers to a statement posted on the Seminary's website on May 30, 2023. A true and correct copy of the statement is attached hereto as Exhibit No. 12.  The statement attributed to me in Plaintiff's Complaint refers to

accountability and implementation of financial safeguards.  Again, this statement deals squarely with Seminary stewardship, which is biblically based and a fundamental part of the Seminary's Statement of Faith, and is a report flowing from the May 30, 2023 Special Called Meeting of the Board of Trustees.  It is impossible to discuss this statement without engaging in matters of Baptist ecclesiology and biblical doctrine on the subjects of stewardship, accountability, and leadership.  The purpose of this statement was to communicate to the Seminary's stakeholders and fellow believers.

30.     "In Paragraph Nos. 81 and 82 of his Complaint, Plaintiff refers to a statement posted on the Seminary's website on June 7, 2023 regarding a Summary of Findings. A true and correct copy of the statement is attached hereto as Exhibit No. 13.  The Summary of Findings details expenditures found by the Trustee task force as part of its investigation into Plaintiff's stewardship over Seminary resources.  Indeed, the statement provides, "The task force concluded that Adam Greenway engaged in a pattern of spending that the task force believes did not reflect proper stewardship of seminary resources. . . .  The Board of Trustees and administrative leadership at the seminary are committed to every appropriate measure that will ensure proper stewardship of seminary resources in a manner that is consistent with the mission of Southwestern Seminary."  Again, stewardship is core tenet of the Seminary's Statement of Faith. It is impossible to discuss this statement without engaging in matters of Baptist ecclesiology and biblical doctrine on the subjects of stewardship, accountability, and leadership.  The purpose of this statement was to communicate to the Seminary's stakeholders and fellow believers.

31.     "Many of the exhibits referenced in this affidavit are records of regularly recorded activities of the Seminary.  In particular, Exhibit Nos. 1-13 are documents that reflect the activities and/or policies of the Seminary.  These documents are regularly created by the

Seminary in the ordinary course of the Seminary's regularly conducted activities. It is the practice of the Seminary to create documents like Exhibit Nos. 1-13, and these documents are made by persons with knowledge of the information recorded, and are created at or near the time of the event or decision reflected in the documents. Exhibit No. 17 is a *curriculum vitae* the Seminary received from Plaintiff and which the Seminary maintains in its files."

FURTHER AFFIANT SAYETH NOT.

_____
Danny Roberts

SUBSCRIBED AND SWORN TO BEFORE ME by Danny Roberts on this __17__ day of April, 2024.



_____
Notary Public, State of Texas

# EXHIBIT 1

CHARTER OF THE
SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY
Last Amended - February, 1956
Editorially Amended - February 25, 1969

### FIRST

The name and official designation of the corporation shall be "The Southwestern Baptist Theological Seminary."

### SECOND

The purpose of said corporation is hereby declared to be mainly for the promotion of theological education, but to include the instruction of Women's Training School for the special Christian service, and such other instruction as is needful to equip preachers and other Christian workers for their life work.

### THIRD

Said corporation shall have its domicile and place of business at Fort Worth, Tarrant County, Texas, and the Educational Institution for the support of which this corporation is organized shall be established and maintained in said City of Fort Worth.

### FOURTH

Said corporation shall have corporate existence for fifty years.

### FIFTH

Said corporation shall have a Board of Trustees which shall consist of one member from each cooperating state of the Convention in keeping with the constitution of the Southern Baptist Convention and ten Members At Large whose residences are adjacent to the Seminary.

All Trustees shall be elected by the Southern Baptist Convention according to the provisions of the Constitution of that Convention.

The term of office of the Trustees elected from said states and the District of Columbia shall be five years. These terms of office shall be so arranged that the numbers of terms expiring in each of these five years shall be as nearly equal as possible.

The ten Members at Large shall be elected by the Convention. Two of them shall be elected for a term of one year, two for two years, two for three years, two for four years, and two for five years, and thereafter all elections, except to fill vacancies caused by death, resignation or removal, shall be for a term of five years. In meeting this provision, all Trustees more than one in a state, shall be considered At Large and their present terms of office be made a part of this pattern.

As vacancies shall occur the Southern Baptist Convention shall fill such vacancies at the session of that body next ensuing. If for any cause said Convention shall fail to fill vacancies at the next annual session after the said vacancies occur, the Board of Trustees shall fill such vacancy. It is hereby made the duty of the Trustees to notify the said Convention of any vacancies to be filled.

In all cases, Trustees elected shall be citizens of the states composing the Southern Baptist Convention and shall be members of regular Baptist Churches in cooperation with the appointing Body.

## SIXTH

Said corporation shall have such rights, powers and duties as appertain to similar corporations under the general laws of this State, or which are inherent in like corporations. And said corporation shall specifically have the power to borrow money and pledge its properties for the payment thereof. And said corporation shall have the power by its Board of Trustees and upon the recommendation of its faculty, to confer upon any pupil of said Seminary or upon any other person any of the degrees usually conferred by Theological Seminaries, or other degrees arising from its curriculum.

## SEVENTH

Said corporation is not organized for pecuniary profit, and has no capital stock, but the estimated value of the goods, chattels and lands owned by it amounts to Five Hundred Thousand Dollars.

## EIGHTH

Said corporation shall have the right to acquire, hold and dispose of funds, lands and personal property for all the purposes and objects of the corporation; provided that the principal of funds, or lands, or property given for permanent endowment shall never be applied to current expenses or equipment or in any other way diverted from the purpose for which they were given, which, however, does not preclude any necessary or expedient change in the form of investment.

## NINTH

Said corporation shall be under the patronage, general direction and control of the Southern Baptist Convention, which Convention may establish articles of faith and permanent laws for said Seminary, provided that such permanent laws shall be consistent with its charter and the Constitution and laws of this State, and provided further that when said permanent laws are promulgated, they shall not thereafter be altered, annulled or abrogated by said Convention except by the following procedure, viz; a resolution providing for such alteration, annullment, or abrogation shall be presented to said Convention at a regular

session, signed by at least five accredited messengers to such body, which resolution, *without other action*, shall be printed in the minutes of said Convention, and shall not be acted on until the next session of said body. In all matters not included in the Articles of Faith and Permanent Laws, as set out in this clause, the corporation shall be subject to the rules and regulations of the Southern Baptist Convention, both general and specific, as these may be promulgated from time to time, and made a matter of record in the Minutes of said Convention.

## TENTH

The primary right of appointing Trustees of said Seminary as hereinbefore vested in the Southern Baptist Convention shall so remain exclusively.

## ELEVENTH

*Amendments to this Charter* shall be made only with the advice and consent of the Southern Baptist Convention, said action being duly recorded upon the Minutes of said Convention.

## TWELFTH

This corporation is hereby authorized to receive, enjoy and employ all *donations, bequests and legacies* that may be given to it, and to create a general and special endowment fund.

# EXHIBIT 2

BLU-RST(+)

9.10



# The State of Texas

## Secretary of State

SEP. 7, 1999

RUSSELL R BARTON....HARRIS,FINLEY & BOGLE
500 THROCKMORTON ST,1300 BK ONE TWR
FT WORTH        ,TX 76102-3798

RE:
SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY, THE
CHARTER NUMBER 00018322-01

IT HAS BEEN OUR PLEASURE TO APPROVE AND PLACE ON RECORD YOUR RESTATED
ARTICLES OF INCORPORATION. THE APPROPRIATE EVIDENCE IS ATTACHED FOR
YOUR FILES, AND THE ORIGINAL HAS BEEN FILED IN THIS OFFICE.

PAYMENT OF THE FILING FEE IS ACKNOWLEDGED BY THIS LETTER.

IF WE CAN BE OF FURTHER SERVICE AT ANY TIME, PLEASE LET US KNOW.

VERY TRULY YOURS,



Elton Bomer, Secretary of State

**App. 19**

# The State of Texas
## Secretary of State

CERTIFICATE OF RESTATED ARTICLES

OF INCORPORATION

OF

SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY, THE
CHARTER NUMBER   00018822

THE UNDERSIGNED, AS SECRETARY OF STATE OF THE STATE OF TEXAS, HEREBY CERTIFIES THAT THE ATTACHED RESTATED ARTICLES OF INCORPORATION FOR THE ABOVE NAMED CORPORATION HAVE BEEN RECEIVED IN THIS OFFICE AND ARE FOUND TO CONFORM TO LAW.

ACCORDINGLY THE UNDERSIGNED, AS SECRETARY OF STATE, AND BY VIRTUE OF THE AUTHORITY VESTED IN THE SECRETARY BY LAW, HEREBY ISSUES THIS CERTIFICATE OF RESTATED ARTICLES OF INCORPORATION.

DATED AUG. 30, 1999
EFFECTIVE AUG. 30, 1999



Elton Bomer, Secretary of State

RESTATED ARTICLES OF INCORPORATION OF

THE SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY

FILED
In the Office of the
Secretary of State of Texas
AUG 3 0 1999
Corporations Section

Pursuant to Articles 1396-4.03 and 1396-4.06 of the Texas Non-Profit Corporation Act (the "Act"), THE SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY (the "Seminary") adopts the following Restated Articles of Incorporation, which accurately copy the original articles of incorporation and all amendments thereto that are in effect to date and as further amended as set forth below and which contain no other changes in any provision thereof.

The articles of incorporation of the Seminary are amended by these Restated Articles of Incorporation as follows: (i) to state the name of the Member of the Seminary, (ii) to provide for perpetual duration, (iii) to provide for matters concerning the management of the Seminary, (iv) to provide for matters concerning the qualification, terms of office, election, and removal of directors, and (v) to make other minor technical amendments.

Each amendment made by these Restated Articles of Incorporation has been effected in conformity with the provisions of the Act, and these Restated Articles of Incorporation and each amendment made were duly adopted by the Board of Trustees of the Seminary on the 9th day of March 1999, and approved by the sole Member of the Seminary, the Southern Baptist Convention, on the 15-16th day of June 1999.

The articles of incorporation and all amendments and supplements thereto are hereby superseded by the following Restated Articles of Incorporation, which accurately copy the entire text thereof and as amended as set forth above:

ARTICLE I

The name of the Corporation is THE SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY.

ARTICLE II

The Corporation shall have one Member, the Southern Baptist Convention, a religious non-profit corporation chartered by act of the Senate and House of Representatives of the State of Georgia.

## ARTICLE III

The primary purpose of the Corporation is to provide theological education for men and women preparing for Christian ministry.

## ARTICLE IV

The Corporation shall have its domicile and place of business at Fort Worth, Tarrant County, Texas, and the educational institution for the support of which this Corporation is organized shall be established and maintained in said City of Fort Worth. The address of the Corporation's registered agent is 2001 West Seminary Drive, Fort Worth, Texas 76115, and the name of its registered agent at that address is Hubert R. Martin, Jr.

## ARTICLE V

The period of the Corporation's duration is perpetual.

## ARTICLE VI

The affairs of the Corporation shall be managed by the Corporation's Board of Directors, also by custom referred to as the Board of Trustees, except to the extent the Act vests powers in the Member, and further to the extent these articles or the bylaws of the Corporation vest powers in the Member which would otherwise be vested in the Board of Trustees. The power to alter, amend, or repeal the bylaws of the Corporation is vested solely in the Board of Trustees.

An amendment of the articles of incorporation; merger; consolidation; the sale, lease, exchange, or other disposition of all, or substantially all, of the property and assets of the Corporation; shall occur only after approval of the Southern Baptist Convention. The acquisition by the Corporation of a controlling interest in, or the establishment of, a subsidiary corporation or any other legal entity or form for conducting its affairs shall occur only after approval of the Southern Baptist Convention or its Executive Committee.

## ARTICLE VII

The qualifications and term of office of a trustee, the number of trustees constituting the Board of Trustees, and any increase or decrease from time to time of the number of trustees, shall be determined by the Southern Baptist Convention according to the provisions of the Constitution of the Convention. The election of trustees shall occur by the act of the Southern Baptist Convention. Vacancies occurring in the Board of Trustees, and any trusteeship to be filled by reason of an increase in the number of

trustees, shall be filled by the Southern Baptist Convention. No decrease in the number of trustees shall have the effect of shortening the term of any incumbent trustee. In the event of a vacancy, not caused by reason of an increase in the number of trustees, the Board of Trustees may fill a vacancy by an interim appointment pending the filling of the vacancy by the Southern Baptist Convention for the unexpired term of the trustee's predecessor in office. If for any reason the Southern Baptist Convention fails to fill a vacancy, not caused by reason of an increase in the number of trustees, at the next annual session after the vacancy occurs, the Board of Trustees shall fill the vacancy.

The term of office of a trustee shall be five years unless the trustee is elected to fill an unexpired term (or is elected to fill a vacancy until the Southern Baptist Convention elects a trustee to fill the unexpired term). A trustee shall hold office until the expiration of the term to which the trustee is elected, or until the trustee is no longer qualified, or is removed, or until a successor is elected and qualified.

The Board of Trustees shall consist of one member chosen from each cooperating state (including the District of Columbia) of the Southern Baptist Convention and ten members at large from the city or vicinity in which the Corporation is located, but not more than two local trustees shall be chosen from the same church.

The trustees shall be divided into five groups as nearly equal as possible and one group shall be elected each year to serve five years. A trustee having served two full terms of five years shall not be eligible for re-election until as much as one year has elapsed after the trustee has served two full terms.

In all cases, trustees elected shall be citizens of the states composing the Southern Baptist Convention and shall be members of regular Baptist churches in cooperation with the Southern Baptist Convention.


## ARTICLE VIII

The Southern Baptist Convention may remove a trustee prior to the expiration of the trustee's term for any reason deemed sufficient to the Convention, the election and removal of trustees by the Convention being religious acts within the scope of the free exercise of the Convention's religion under the Constitution of the United States.

## ARTICLE IX

The number of trustees constituting the current Board of Trustees for the Corporation is 38 and the names, addresses, and terms of the persons who are to serve as

trustees until the next annual meeting of the Southern Baptist Convention, until the end of their term, or until their successors are elected and qualified are:

| Trustees: | Address: | Term Ends: |
|---|---|---|
| David L. Allen | 4010 Gaston Ave., Dallas, TX 75246 | 1999 |
| Robert E. Anderson | 2052 W. Magna Carta Pl., Baton Rouge, LA 70815 | 2002 |
| Craig Atherton | 2823 Wedgewood, Wichita, KS 67204 | 1999 |
| Larry J. Brown | 10 Normandy Pkwy., Morristown, NJ 07960 | 2000 |
| Willie R. Brumfield | 6949 Hwy. 61 S., Vicksburg, MS 39180 | 2003 |
| Robert C. Burch | 1701 Cove Creek Ln., Knoxville, TN 37919 | 2000 |
| Stephen M. Cloud | 1303 Sunset Blvd., West Columbia, SC 29169 | 1999 |
| Laura Lee Cogswell | 1118 Tate Circle, Sherman, TX 75090 | 1999 |
| Ron Coppock | 680 N. Monroe Dr., Xenia, OH 45385 | 2002 |
| Gerald E. Dacus | 20425 E. La Puente Rd., Walnut, CA 91789 | 1999 |
| Michael D. Dean | 3041 Travis Ave., Fort Worth, TX 76110 | 2000 |
| Robert L. Dodridge | 1001 E. Southern Ave., Tempe, AZ 85282-5489 | 2003 |
| Bonny Elliott | 45 Forest Glen Dr., Imperial, PA 15126 | 1999 |
| Ronald G. Emmerling | 3802 Bennett Ave., Flint, MI 48506 | 2000 |
| E. Dean Gage | 9561 Twelve Oaks Ln., College Station, TX 77845 | 2002 |
| David Galvan | 5225 Spring Lake, Garland, TX 75043 | 2001 |
| Charles A. Lawson | 914 Wanda Rd., Linthicum, MD 21090-1808 | 1999 |
| Jim Leftwich | 2711 Harbor City Blvd., Melbourne, FL 32935 | 2003 |
| Arthur L. Mallory | 2827 E. Covington Cir., Springfield, MO 65804 | 2000 |
| Michael D. Marshall | 5305 Corkran Lane, Temple Hills, MD 20748 | 1999 |
| Richard L. Mason | RR #3, Box 54, Fairfield, IL 62837 | 2000 |
| Richard McClure | 601 E. Rosewood, Hugo, OK 74743-8049 | 2003 |
| Matthew F. McKellar | 2801 SSE Loop 323, Tyler, TX 75701 | 2001 |
| A. David McLendon | 1814 N. County Line Rd., Lithia Springs, GA 30122 | 2002 |
| Eddie Miller | 4210 Farm District Rd., Fernley, NV 89408 | 2001 |
| Mark Payton | 123 Quisenberry Ave., Danville, KY 40422 | 2001 |
| Ralph W. Pulley, Jr. | 6643 Garlinghouse, Dallas, TX 75252 | 2002 |
| Ted Russell | 437 Parkland Dr., Aztec, NM 87410 | 2001 |
| Edward A. Saucier | 8101 Valley Forge Rd., Fort Smith, AR 72903 | 2001 |
| Miles Seaborn, Jr. | 9100 N. Normandale, Fort Worth, Texas 76116 | 2003 |
| R. E. Smith | 300 Timber Tr., Southlake, TX 76092 | 2003 |
| Ted Stone | P. O. Box 1397, Durham, NC 27702 | 2002 |
| Lu Walker | 13695 SW Hargis Rd., Beaverton, OR 97008 | 2003 |
| Philip A. Walker | 97 Garr Ave., Culpeper, VA 22701 | 2001 |
| L. Sid West | 633 Lower Huntington Rd., Fort Wayne, IN 46819 | 2002 |
| Danny L. Williams | 13058 Dyanna Dr., Thornton, CO 80241 | 2003 |
| William W. Wyrick | 205 East Dr., Princeton, WV 24740 | 2001 |
| Ronnie H. Yarber | 1729 Gross Rd., Mesquite, TX 75149 | 2002 |

## ARTICLE X

The Corporation shall have such rights, powers, and duties as provided by the Act. The Corporation shall have the power by its Board of Trustees and upon the

recommendation of its faculty, to confer upon any person any of the degrees usually conferred by theological seminaries or other degrees arising from its curriculum.

## ARTICLE XI

The Corporation shall at all times be operated as a non-profit corporation. No part of the net earnings of the Corporation shall inure to the benefit of, or be distributable to, its trustees, officers, or other private individuals or persons, except that the Corporation shall be authorized and empowered to pay reasonable compensation for goods and services rendered and to make payments in furtherance of the purposes of the Corporation. Notwithstanding any other provision of these articles of incorporation, the Corporation shall not carry on any activities not permitted to be carried on by a corporation exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code of 1986, or corresponding section of any future federal tax code, or by a corporation, contributions to which are deductible under Section 170(c)(2) of the Internal Revenue Code of 1986, or corresponding section of any future tax code.

Upon dissolution, after all creditors of the Corporation have been paid, the assets of the Corporation shall be distributed to the Southern Baptist Convention, a Georgia nonprofit religious corporation, if the Southern Baptist Convention then qualifies as an exempt organization under Section 501(c)(3) of the Internal Revenue Code of 1986, or corresponding section of any future federal tax code. If the Southern Baptist Convention does not then qualify, the assets of the Corporation shall be distributed, as determined by the Board of Trustees, to one or more organizations which do qualify as an exempt organization.

## ARTICLE XII

The Corporation shall have the right to acquire, hold, and dispose of funds, lands, and personal property for the purposes and objects of the Corporation; provided that the principal of funds, or lands, or property given for permanent endowment shall never be applied to current expenses or equipment or in any other way diverted from the purpose for which they were given, which, however, does not preclude any necessary or expedient change in the form of investment. The Corporation is authorized to receive, enjoy, and employ all donations, bequests, and legacies that may be given to it, and to create any general and special endowment funds.

## ARTICLE XIII

The Corporation is fostered and supported by the Southern Baptist Convention, a Georgia corporation, the purpose of which is to provide a general organization for Baptists in the United States and its territories to promote Christian missions, Christian

education, benevolent enterprises, and social services which further the Kingdom of God. The Corporation is subject to the spiritual control and leadership of the Convention, and the activities of the Corporation shall be guided by, and subject to, any articles of faith which are embraced by the Convention, and which may be amended or altered by the Convention from time to time.

ARTICLE XIV

The power to alter or amend the articles of incorporation is vested in the Board of Trustees, subject to the advice and consent of the Southern Baptist Convention, said action by the Southern Baptist Convention being duly recorded upon the Minutes of said Convention.

Signed on _____ August 17 _____, 1999.

THE SOUTHWESTERN BAPTIST
THEOLOGICAL SEMINARY

By: _____
Name: ___ Kenneth S. Hemphill _____
Title: ____ President _____

# EXHIBIT 3

# BYLAWS OF THE SEMINARY[1]

## PREAMBLE

The following Bylaws of The Southwestern Baptist Theological Seminary (the "Seminary"), a Texas nonprofit corporation, are hereby adopted to govern the way the Board of Trustees, the administration, the faculty and instructional staff, and all other employees transact the business and fulfill the mission of the institution.

## ARTICLE I—NATURE AND PURPOSE

1.1 **Governance**. Except to the extent of those powers specifically reserved to the Southern Baptist Convention (the "Convention") as the sole Member of the corporation, all powers for the governance of the Seminary shall be vested in a Board of Trustees (the "Board").

1.2 **Purpose**. The primary purpose of the Seminary is that set forth in its Certificate of Formation[2] as from time to time amended or restated.

1.3 **Confessional Nature**. As a confessional institution, the Seminary is committed to theological integrity and biblical fidelity. The Confession of Faith of the Seminary shall be the *Baptist Faith and Message* as adopted and amended by the Convention and shall be subscribed to in writing by all faculty and instructional staff, without hesitation or mental reservation. The Confession of Faith does not exhaust the extent of the Seminary's beliefs, however. The *Chicago Statement on Biblical Inerrancy*, the *Danvers Statement on Biblical Manhood and Womanhood*, and the *Nashville Statement* are recognized by the Seminary as guiding documents that clarify and establish the meaning of the Confession of Faith. Furthermore, the Bible itself, as the inspired, inerrant, and infallible Word of God that speaks with final authority concerning truth, morality, and the proper conduct of humankind, is the ultimate source of all that the Seminary believes. The Board is the final interpretive authority on the Bible's meaning and application for purposes of the Seminary's faith, doctrine, practice, policy, and discipline. The President shall serve as the authorized agent of the Board.

1.4 **Parliamentary Authority**. The rules contained in the current edition of *Robert's Rules of Order Newly Revised* shall govern the Seminary in all cases to which they are applicable and in which they are not inconsistent with the Certificate of Formation and these Bylaws.

## ARTICLE II—THE BOARD OF TRUSTEES

2.1 **Membership**. The members of the Board are those persons elected by act of the Convention in accordance with the requirements of the Certificate of Formation. As provided therein, if a vacancy occurs on the Board, including a vacancy resulting from death, resignation,

---

[1]Amended and restated by the Board of Trustees on April 5, 2022.
[2]The Certificate of Formation as defined by the Texas Business Organizations Code is legally synonymous with the Seminary's Articles of Incorporation.

removal, or ineligibility of a trustee, the Board may elect an interim trustee to serve until the position is filled by the Convention.

**2.2** **Responsibility and Authority**. The Board is the legal body with specific authority over the Seminary and exercises fiduciary oversight of the institution. The Board shall be responsible for ensuring that its officers and members are free from any contractual, employment, personal, or familial financial interest in the institution, and that the Board is not controlled by a minority of members of the Board or by organizations or institutions separate from it. The Board exercises its authority collectively as a group, not as individuals, and fulfills its responsibilities on behalf of the Seminary as a whole, using the Seminary's mission to guide all major decisions.

**2.3** **Fiduciary Duty**. While trustees are to represent the interests of the entire Convention as well as those of the Seminary, the fiduciary duty of all trustees is solely to the Seminary. A trustee shall discharge the trustee's duties, including duties as a committee member, in good faith, with ordinary care, and in a manner the trustee reasonably believes to be in the best interest of the corporation.

**2.4** **Regular Meetings of the Board**. There shall be two regular meetings of the Board held each calendar year: one during the spring semester and one during the fall semester, with the fall meeting being designated the annual meeting of the Board. The Chairman of the Board and the President of the Seminary shall determine the date and time of each regular meeting.

**2.5** **Special Meetings of the Board**. Special meetings of the Board may be called by the Chairman of the Board upon request of the President or a majority of the members of the Board. Only the matters specified in the notice, or the waiver of notice, may be considered at the special meeting.

**2.6** **Electronic Provisions**. All meetings of the Board may be conducted by telephone conference or through other electronic communications media if all members may simultaneously hear each other and participate during the meeting. Participation in a meeting in this manner shall constitute presence in person at such a meeting. Notice of meetings may be sent electronically.

**2.7** **Notice**. Notice of a meeting of the Board must be given at least ten (10) days prior to the date of a regular meeting and at least three (3) days prior to the date of a special meeting. The requirement of notice may be suspended by a two-thirds vote of the Board.

**2.8** **Quorum**. A majority of the members of the Board shall constitute a quorum for the transaction of business.

**2.9** **Agenda**. An agenda for any meeting of the Board shall be adopted as soon after the beginning of the meeting as may be practicable. After the adoption of the agenda, no new business not contemplated in the agenda may be presented except by unanimous consent of the members present.

**2.10** **Voting**. The act of a majority of the trustees present at a meeting at which a quorum is present is the act of the Board, unless the vote of a greater number for the question under consideration is required by law, the Certificate of Formation, or some other provision in

these Bylaws. A trustee may not vote by proxy and is entitled to one vote on each matter submitted to a vote.

**2.11 Executive Session**. The Board may meet in executive session during all or part of any regular or special meeting. Meetings of the Board shall be open except when an executive session is declared.

**2.12 Expenses of Board Members**. The Seminary may, within a reasonable time and to the extent consistent with Seminary policy, reimburse each trustee for reasonable travel and other expenses incurred with attendance at a meeting of the Board or performance of duties requested by the Seminary.

**2.13 Policies**. All policies, resolutions, and official statements adopted by the Board shall be included in the *Policy Manual*. Certain trustee resolutions and motions of a procedural nature may be published in the trustee document section of the manual. Procedural material from the administration or the faculty published in the *Policy Manual* are authoritative in so far as they are consistent with official policies adopted by the Board. The *Policy Manual* is to be made available, in an updated version annually, to each trustee.

**2.14 Trustee Misconduct**. All matters of alleged trustee misconduct shall be considered in an appropriate manner, as prescribed by a majority of the officers of the Board. Trustee misconduct may include, but is not limited to, breach of fiduciary duty; breach of duties imposed by law, rule, or regulation, including those imposed by associations in which the entity is a member; criminal misconduct; or failure to meet expectations established by the Convention and/or Seminary. Discipline for misconduct may include actions up to and including a temporary suspension of a trustee's rights and privileges by the affirmative vote of a majority of the officers of the Board. If an instance of trustee misconduct remains unresolved, the matter shall be referred to the Convention for disposition in accordance with the Certificate of Formation.

**2.15 Trustee Indemnification**. Except in instances involving trustee misconduct, the Seminary shall indemnify any present or former officer or member of the Board to the fullest extent permitted by Chapter 8 of the Texas Business Organizations Code, as may be amended from time to time. These rights of indemnification and reimbursement shall not be exclusive of any other rights to which such person may be entitled by law, agreement, or otherwise.

## ARTICLE III—OFFICERS OF THE BOARD AND THEIR DUTIES

**3.1 Composition**. The officers of the Board shall be the Chairman, the Vice Chairman, and the Secretary. The officers of the Board shall also serve as the officers of the Executive Committee.

**3.2 Election and Term**. The officers of the Board shall be elected by the affirmative vote of a majority of the trustees in office at the spring meeting of the Board and take office upon adjournment of the annual meeting of the Convention. The officers of the Board shall be elected following nominations from the floor and shall serve for a term of one year and thereafter until their successors assume office. The Chairman of the Board must have served at least three years on the Board before election as Chairman. The Chairman and Vice Chairman may not be elected for more than two consecutive one-year terms.

**3.3   Chairman**. The Chairman shall preside at all meetings of the Board and the Executive Committee, and, through the President, shall call all special meetings of the Board and the Executive Committee. He shall appoint all committees unless otherwise provided for, sign legal documents as authorized, and discharge all duties usually pertaining to the office. The Chairman is the official spokesperson for the Board absent specific delegation by the Board to another person.

**3.4   Vice Chairman**. The Vice Chairman shall serve as consultant to the Chairman. He shall preside at all meetings of the Board and the Executive Committee in the absence of the Chairman. In the event of death, incapacity, or resignation of the Chairman, the Vice Chairman shall become Chairman and serve until the next regular election of officers. The Vice Chairman shall also be responsible for directing the program of Board development and appraisal as specified in the *Policy Manual*.

**3.5   Secretary**. The Secretary shall keep minutes of all regular and called meetings of the Board and the Executive Committee. Both print and digital copies of all minutes shall be preserved in the archives of the Seminary.

## <u>ARTICLE IV—COMMITTEES OF THE BOARD</u>

**4.1   Bylaw Provisions Applicable to Committees**. The provisions of these Bylaws relating to meetings, electronic provisions, notice, quorum, agenda, and voting requirements of the Board, shall apply to each committee and their members as well, unless otherwise specified for a committee in these Bylaws.

**4.2   Composition**. The Board shall have an Executive Committee and may establish such other standing or special committees as it deems necessary to carry out its governance responsibilities.

**4.3   Executive Committee**. There shall be an Executive Committee composed of the officers of the Board, the chairman and vice chairman of each standing committee, and if still serving as a member of the Board, the immediate past Chairman of the Board.

**4.3.1 Meetings**. There shall be two regular meetings of the Executive Committee each calendar year and such special meetings as may be properly called. Meetings of the Executive Committee shall be closed.

**4.3.2 Duties**. The Executive Committee shall have the full authority of the Board to act on issues between meetings of the Board which appear to demand immediate action and cannot be deferred until a regular meeting of the Board. The Executive Committee will conduct an annual performance review of the President and shall act as a Compensation Committee for the President. The Executive Committee shall be designated the Governance Committee of the Board, with responsibility to review and make recommendations concerning governance policies and procedures, including amendments to the Certificate of Formation and these Bylaws, as needed. The Executive Committee shall report its actions to the next regular meeting of the Board.

**4.3.3 Interim Provisions**. In the interim between meetings of the Executive Committee, a vote may be taken by electronic means on any emergency matter at the request of the

President or Chairman. Such action shall be reported at the next meeting of the Executive Committee and shall become a part of the minutes of that meeting.

**4.4** **Standing Committees**. The standing committees of the Board shall be the Committee for Academic Administration, the Committee for Institutional Administration, and the Committee for Institutional Advancement. After conferring with the President regarding potential appointments, the newly elected Chairman, in consultation with the Vice Chairman, shall appoint the standing committees, and shall designate the chairman and vice chairman of each standing committee. No trustee may be appointed to more than one standing committee. The Chairman and Vice Chairman of the Board shall be ex-officio members of all standing committees.

**4.4.1 Meetings**. Standing committees meet in conjunction with, make reports to, and bring recommendations requiring action by the Board during regular meetings of the Board. Special meetings of standing committees may be called by the chairman of the committee, in consultation with the Chairman of the Board and the President. Meetings of standing committees shall be closed.

**4.4.2 Duties**. Standing committees provide for policy, review, and general guidance in their areas of responsibility, with specific duties as follows.

**4.4.3 Committee for Academic Administration**.

    **a.** This committee shall review matters related to the academic administration of the Seminary and make such recommendations to the Board as may be deemed necessary.

    **b.** This committee shall review the curricula in relation to the purpose of the Seminary. It shall also review educational management, faculty composition and development, relations between the schools, teaching load and sabbatical leave policies, admissions, discipline, and other matters pertaining to the enrollment management and student life of the Seminary.

**4.4.4 Committee for Institutional Administration**.

    **a.** This committee shall review matters related to the institutional administration of the Seminary and make such recommendations to the Board as may be deemed necessary.

    **b.** This committee shall be designated the Finance Committee of the Board. This committee shall be responsible for recommending to the Board at its spring meeting an annual budget submitted by the President for the operation of the Seminary during the ensuing fiscal year. This committee shall receive periodic reports between committee meetings concerning the financial position of the Seminary, and shall, if necessary, make any recommendations for substantial changes to the current budget to the Board or the Executive Committee.

    **c.** This committee shall be designated the Audit Committee of the Board. This committee shall be responsible for recommending to the Board the independent

auditors for the annual audit of the Seminary, giving the audit charge to the auditor, receiving the audit from the auditor, and reporting the findings of the audit to the Board.

**d.** This committee shall be designated the Investment Committee of the Board. This committee is entitled to select advisors and delegate duties and responsibilities to them such as the full power and authority to select investment managers to, or on its own, purchase or otherwise acquire stocks, bonds, securities, and other investments on behalf of the Seminary, and to sell, transfer, or otherwise dispose of the Seminary's assets and properties at a time and for a consideration that the advisor deems appropriate. Members of this committee and the full Board shall have no liability for actions taken or omitted by the advisor if this committee acts in good faith and with ordinary care in selecting the advisor. This committee may remove or replace the advisor, with or without cause.

**e.** This committee shall review the need for expansion of the physical properties of the Seminary and the related need for capital funds. This committee shall review and make any recommendations for substantial disposition and acquisition of real estate to the Board.

### 4.4.5 Committee for Institutional Advancement.

**a.** This committee shall review matters related to the institutional advancement of the Seminary and make such recommendations to the Board as may be deemed necessary.

**b.** This committee shall review and make recommendations to the Board related to donor relations and philanthropy, annual and planned giving, capital campaigns and fundraising, alumni and church relations, foundations and grants management, campus operations and auxiliary enterprises, and other related matters.

**c.** This committee shall be kept informed and involved in the work of the Advisory Council, the President's Club, and other development groups.

**4.5  Special Committees**. Special committees shall be appointed as the Board authorizes.

### ARTICLE V— OFFICERS OF THE SEMINARY AND THEIR DUTIES

**5.1  Composition**. The officers of the Seminary shall be the President, the Provost, and one or more Vice Presidents. The powers and duties of the officers are those usually pertaining to their respective offices, subject to the supervision and direction of the Board.

**5.2  Election of President**. The President shall be elected by the Board for an indefinite term. If a vacancy occurs in the office of President, the Board may appoint an interim successor who shall serve until the Board elects a successor. The President may be removed from office by the Board with or without cause, whenever, in the Board's judgment, the best interests of the Seminary are served thereby.

5.3 **Authority Vested in President**. The Board elects the President of the Seminary and authorizes the President to appoint, employ, and have direction over administrators, faculty members, and all other personnel of the Seminary in accordance with policies of the Board. The President shall assist the Board in formulating policy, and he shall be responsible for the implementation of Board policy. The President shall work with the Board and be accountable to the Board in advancing the mission of the Seminary. The Board delegates to the President the administrative responsibility and authority for the operation of the Seminary. The President, or his designee, is the official spokesperson for the Seminary.

5.4 **Duties of President**. The President shall serve as the chief executive officer of the Seminary. The President shall have direct charge of, full supervision over, and shall be responsible for all funds and properties of the Seminary, and over all matters pertaining to the Seminary, in all its units, schools, and departments. The President shall be accountable only to the Board for the proper administration of all affairs, business, and functions of the Seminary. The President is responsible for carrying out the mission and purposes of the Seminary. The President shall be an ex-officio and non-voting member of the Board and all committees of the Board. Among the executive and administrative responsibilities of the President is the duty to present to the Board all matters and recommendations which in the judgment of the President may need attention or that may be of interest. The President shall present timely recommendations regarding and affecting other matters set out elsewhere in these Bylaws. The President shall perform such other duties and responsibilities as are usually performed and shall have such other powers and authority as are usually held by the president of an institution of higher education, as well as such other duties and responsibilities as may be given to him from time to time by the Board.

5.5 **Denominational Service of President**. The President shall represent the Seminary in its routine contacts with Convention entities and other general Baptist bodies. He shall be a member of the Great Commission Council and the Council of Seminary Presidents of the Southern Baptist Convention.

5.6 **Other Officers**. Administrative responsibility for internal management is delegated by the President to the other officers of the Seminary, including the Provost and one or more Vice Presidents. Persons at the vice-presidential level, including the Provost, are appointed by the President, after consultation with the officers of the Board, and serve at the pleasure of the President. In the event of absence or inability of the President to act, the Vice Presidents shall, in the order established by the President, perform the duties of the President. The Vice Presidents shall also perform such other duties as may be assigned to them by the President.

## <u>ARTICLE VI—ACADEMIC ORGANIZATION</u>

6.1 **Academic Administration**. The President shall be chairman of the faculty of the Seminary and serve as an ex-officio member of all the faculties of the schools of the Seminary. The President shall participate fully in all decisions and deliberations of the faculty. The President must approve all academic and administrative procedures, ensuring that they are consistent with and not contrary to these Bylaws and other policies adopted by the Board. Under the authority of the President, the Provost shall serve as the chief academic officer of the Seminary and shall be vice chairman of the faculty of the Seminary.

**6.2    Schools**. The Seminary is academically organized into the following schools: the School of Theology, the Jack D. Terry School of Educational Ministries, the School of Church Music and Worship, the Roy J. Fish School of Evangelism and Missions, and the Texas Baptist College. These schools are not separate entities but are de facto departments of one institution—the Seminary. Each separately, and they together, along with related educational programs, shall always strive for the cohesion and unity of the Seminary.

**6.3    Deans**. Each school is led by a dean whose primary responsibilities are to oversee the internal administration of the school and to serve as liaison between the administration and the faculty. School deans are appointed by and serve at the pleasure of the President, and are directly supervised in their work by the Provost.

**6.4    Curricula**. It shall be the policy of the Seminary always to maintain well-rounded curricula containing the subjects which should be studied in training for Christian ministry in the various fields of such service. The faculty shall make recommendations to the academic administration concerning the curricula and shall prescribe courses of study for the various degrees, diplomas, and certificates, and the work required to earn such.

**6.5    Degrees**. The Seminary shall, by the authority of the Board, confer such degrees, diplomas, and certificates as the faculty and academic administration shall recommend. The Seminary shall not confer honorary degrees.

## <u>ARTICLE VII—FACULTY AND INSTRUCTIONAL STAFF</u>

**7.1    Composition**. Supplemental personnel, appointed faculty, and elected faculty comprise the faculty and instructional staff of the Seminary. Members of the faculty and instructional staff are expected to be those of unquestionable Christian character who exhibit positive and consecrated Christian attitudes, strive to achieve the highest possible scholastic attainments, and demonstrate an acceptable aptitude for teaching. Employment matters related to members of the faculty and instructional staff are viewed as matters of ecclesiastical concern and as commitments of faith between the Seminary and the individual member. Ecclesiastical concern requires that the relationship not be entered, continued, or severed without prayerful consideration.

**7.2    Supplemental Personnel**. Supplemental personnel include, but are not limited to, any teaching assistant, teaching fellow, instructor, adjunct professor, senior professor, or visiting professor. Supplemental personnel are appointed by the President for a limited term of service, not to exceed one year, and which may be renewed by the President. The President shall make an annual report of these appointments and any renewals to the Committee for Academic Administration.

**7.3    Appointed Faculty**. The President may appoint faculty to any of the faculty ranks for a limited term of service, not to exceed three years, and which may be renewed by the President in consultation with the Committee for Academic Administration. The President shall make an annual report of these appointments to the Board.

**7.4    Elected Faculty**. The Board may elect faculty to any of the faculty ranks for an ongoing term of service upon nomination by the President in consultation with the Committee for Academic Administration. Election to the faculty will normally follow a term of service under

presidential appointment, though this process may be expedited if an exceptionally qualified individual becomes available to the Seminary. The President shall prepare a recommendation regarding each candidate for election to the faculty to be sent to the Board at least ten (10) days in advance of a regular meeting.

**7.5   Faculty Ranks and Promotions**. The regular faculty ranks are assistant professor, associate professor, full professor, research professor, and distinguished professor. These positions may be held by virtue of election by the Board or by action of appointment by the President. All faculty rank-to-rank promotions shall be by action of the Board upon nomination by the President in consultation with the Committee for Academic Administration.

**7.6   Qualifications**. Every member of the faculty and instructional staff shall:

    **a.**   Have adequate academic preparation and demonstrated experience for the discipline of teaching in the judgment of the President (for supplemental personnel and appointed faculty) and/or the Board (for elected faculty).

    **b.**   Be a member in good standing of a cooperating Southern Baptist church as defined by Article III of the Constitution of the Convention.

    **c.**   Affirm and advocate a position consistent with and not contrary to the Seminary's confessional nature as defined in Bylaw 1.3.

    **d.**   Understand that continued employment will be determined by, among other things, annual performance reviews of all appointed and elected faculty conducted by the appropriate school dean under the authority of the President and supervision of the Provost. All performance reviews shall cover, but are not limited to, teaching, scholarly research, writing, and other professional endeavors that benefit the Seminary. The determination of continued employment for any member of the faculty and instructional staff shall be made by the President, and when necessary, the Board.

**7.7   Responsibilities**. The primary responsibility of the faculty member is to teach and to write in connection with assigned subjects. Any responsibilities beyond these areas are to be performed upon request or under the authority of the President and/or the Board. In no circumstances shall faculty members deal in the administrative or policy matters of the Seminary except by request or under the authority of the President (in administrative matters) and/or the Board (in policy matters).

    **7.7.1** The faculty member's commitment to the Seminary includes fulfilling a defined teaching load for the academic year (consisting of the fall and spring semesters together with the winter and summer terms) as determined by the academic administration. When not engaged in teaching, the faculty member will exercise discretion to be occupied in such engagements as will make a professional contribution to the Seminary, including, but not limited to, scholarly research and writing projects. A faculty member may not accept a teaching responsibility with another institution of higher education (whether paid or unpaid) except with the approval of the President upon the recommendation of the Provost.

**7.7.2** A faculty member may not provide any recurring and/or ongoing personal services to any person or entity (whether paid or unpaid) except with the approval of the President upon the recommendation of the Provost. In the case of pulpit supply, worship leadership, or other church staff ministry, a faculty member may accept an interim for a period of three months without approval.

**7.8** **Academic Freedom**. Academic freedom is the faculty member's privilege of teaching, writing, and conducting research according to his or her conscience under the guidelines of the governing documents of the Seminary. With this freedom comes the obligation of responsible exercise of this privilege in accordance with the confessional nature of the Seminary.

**7.8.1** Faculty members shall be free to teach, carry on research, and publish, subject to the adequate performance of duties as agreed upon with the school.

**7.8.2** The curricula of the Seminary shall be determined by the faculty, and each professor shall have the freedom in the classroom to discuss the subject in which he or she has competence and may claim to be a specialist.

**7.8.3** The professor shall be free to express and act upon his or her conscientious convictions as an individual citizen with the realization that there is always the tacit representation of one's institution in whatever one says.

**7.8.4** Faculty members must take care lest they violate each other's academic freedom by covert interference with their colleagues' work or through bypassing the orderly process of full faculty discussion of curriculum, appointments, and other basic matters.

**7.8.5** The Seminary sustains a covenant relationship with the Convention of churches. It is within this context that the responsibilities of academic freedom must be exercised. The special privilege of the seminary professor within the Convention imposes special obligations. Hence, faculty members should always be accurate, should exercise appropriate restraint, should show respect for the opinion of others, and should seek to relate constructively to the Convention. Acceptance of a teaching position at the Seminary assumes and requires an eager willingness to work within the context of the Convention and its churches, as well as an understanding of the special obligations incumbent upon a denominational seminary.

**7.8.6** All faculty and staff have an obligation to support and relate constructively to the Seminary, its policies, and its administration. Members of the faculty and staff may not abuse their position by undermining or obstructing the policies of the institution. Faculty and staff are not to act in ways that are injurious or detrimental to the Seminary or its relationships with the denomination, donors, or other constituencies, within and without the Seminary community.

**7.8.7** To the extent that there is a dispute over the privilege of academic freedom, all such disputes should be addressed to the President, who shall have sole authority to resolve any dispute regarding academic freedom and his resolution shall be final. The resolution of all disputes is acknowledged to be ecclesiastical in nature.

**7.9    Termination of Service**. Faculty service may be terminated by retirement, resignation, or dismissal as follows:

    **7.9.1 Retirement**. Retirement procedures shall be set forth in the *Faculty Manual*. All elected faculty members shall be eligible to participate in the defined contribution retirement plan authorized by the Board.

    **7.9.2 Resignation**. If a member of the faculty or instructional staff desires to resign, notice should be given in writing to the President sufficiently early to allow for appropriate replacement. If any member of the faculty or instructional staff can no longer affirm, abide by, teach, or write consistent with and not contrary to the Seminary's confessional nature as defined in Bylaw 1.3, that person shall be considered as having resigned.

    **7.9.3 Dismissal**. The determination of whether grounds exist and the specific procedures for dismissal shall be made by the President in consultation with the Provost and/or the Board. Grounds for dismissal include, but are not limited to, departure from the Seminary's confessional nature as defined in Bylaw 1.3, financial exigency, moral turpitude, incompetence or negligence in the performance of duties, defiance of authority, or failure to relate constructively to the institution. Grounds for dismissal may be established notwithstanding the faculty member's agreement or other employment status.

## ARTICLE VIII—FUNDS OF THE CORPORATION

**8.1    Custodian of Funds**. The President shall be the custodian of all funds of the Seminary for the trustees. He shall confer with the Committee for Institutional Administration and the Board concerning problems related to the handling or use of same.

**8.2    Handling of Funds**. The President shall designate a Vice President to serve as treasurer of the Seminary, who shall be the chief financial officer of the Seminary and secretary of the Corporation. The treasurer shall have active charge of all funds, including the placement of endowment funds, and shall receive, keep, and disburse such funds under the direction of the President and the Board. The treasurer shall keep an accurate record of all receipts and disbursements and make regular reports to the Finance Committee of the Board.

**8.3    Fiscal Year**. The fiscal year of the Seminary shall begin August 1 and close July 31.

**8.4    Audit**. The Board shall select an outside firm of independent certified public accountants to conduct an annual audit of the Seminary's financial position and results of operations. The auditor shall submit its written report to the Audit Committee of the Board.

**8.5    Classification of Funds**. The funds of the Seminary shall be classified as follows:

    (1)    Without Donor Restrictions        (2)    With Donor Restrictions

Each class of funds shall be kept in a separate account in the records of the Seminary and shall be held inviolate in its class unless transfer be authorized by the Board.

**8.6**   **Signing of Checks**. All checks shall be digitally signed by the treasurer. The President, also, is authorized to sign checks if necessary. One signature only, a digital signature of the treasurer, is required for payroll disbursements to employees of the Seminary.

**8.7**   **Contracts**. Unless otherwise directed by the Board, the President, or any Vice President authorized by the President, shall execute contracts or other instruments on behalf of or in the name of the Seminary.

**8.8**   **Investment of Funds**. All endowment funds shall be invested with Guidestone Financial Resources, HighGround Advisors, the Southern Baptist Foundation, or such comparable organizations as may be approved by the Investment Committee of the Board.

**8.9**   **Bequests**. All bequests shall be invested, and the proceeds thereof used according to the will of the donors.

<u>**ARTICLE IX—AMENDMENTS**</u>

These Bylaws may be amended by the Board in a regular meeting of the Board or in a special meeting called for that purpose and then only by a two-thirds majority of the members present and voting and only after the proposed amendments have been provided to the trustees at least ten (10) days in advance of the meeting. On any proposed change to the Bylaws which has been properly submitted to the trustees as prescribed herein, the matter may be subject to substitution or amendment by the trustees during the meeting of the Board that follows but only to the extent that the substitution or amendment pertains exclusively to the content of the specific article or paragraph of the Bylaws which has been submitted for adoption or amendment.

# EXHIBIT 4



# BYLAWS OF THE SEMINARY[1]

## PREAMBLE

The following Bylaws of The Southwestern Baptist Theological Seminary (the "Seminary"), a Texas nonprofit corporation, are hereby adopted to govern the way the Board of Trustees, the administration, the faculty and instructional staff, and all other employees transact the business and fulfill the mission of the institution.

## ARTICLE I—NATURE AND PURPOSE

**1.1 Governance**. Except to the extent of those powers specifically reserved to the Southern Baptist Convention (the "Convention") as the sole Member of the corporation, all powers for the governance of the Seminary shall be vested in a Board of Trustees (the "Board").

**1.2 Purpose**. The primary purpose of the Seminary is that set forth in its Certificate of Formation[2] as from time to time amended or restated.

**1.3 Confessional Nature**. As a confessional institution, the Seminary is committed to theological integrity and biblical fidelity. The Confession of Faith of the Seminary shall be the *Baptist Faith and Message* as adopted and amended by the Convention and shall be subscribed to in writing by all faculty and instructional staff, without hesitation or mental reservation. The Confession of Faith does not exhaust the extent of the Seminary's beliefs, however. The *Chicago Statement on Biblical Inerrancy*, the *Danvers Statement on Biblical Manhood and Womanhood*, and the *Nashville Statement* are recognized by the Seminary as guiding documents that clarify and establish the meaning of the Confession of Faith. Furthermore, the Bible itself, as the inspired, inerrant, and infallible Word of God that speaks with final authority concerning truth, morality, and the proper conduct of humankind, is the ultimate source of all that the Seminary believes. The Board is the final interpretive authority on the Bible's meaning and application for purposes of the Seminary's faith, doctrine, practice, policy, and discipline. The President shall serve as the authorized agent of the Board.

**1.4 Parliamentary Authority**. The rules contained in the current edition of *Robert's Rules of Order Newly Revised* shall govern the Seminary in all cases to which they are applicable and in which they are not inconsistent with the Certificate of Formation and these Bylaws.

## ARTICLE II—THE BOARD OF TRUSTEES

**2.1 Membership**. The members of the Board are those persons elected by act of the Convention in accordance with the requirements of the Certificate of Formation. As provided therein, if a vacancy occurs on the Board, including a vacancy resulting from death, resignation,

---

[1]Amended and restated by the Board of Trustees on October 18, 2022.
[2]The Certificate of Formation as defined by the Texas Business Organizations Code is legally synonymous with the Seminary's Articles of Incorporation.

1

removal, or ineligibility of a trustee, the Board may elect an interim trustee to serve until the position is filled by the Convention.

**2.2** **Responsibility and Authority**. The Board is the legal body with specific authority over the Seminary and exercises fiduciary oversight of the institution. The Board shall be responsible for ensuring that its officers and members are free from any contractual, employment, personal, or familial financial interest in the institution, and that the Board is not controlled by a minority of members of the Board or by organizations or institutions separate from it. The Board exercises its authority collectively as a group, not as individuals, and fulfills its responsibilities on behalf of the Seminary as a whole, using the Seminary's mission to guide all major decisions.

**2.3** **Fiduciary Duty**. While trustees are to represent the interests of the entire Convention as well as those of the Seminary, the fiduciary duty of all trustees is solely to the Seminary. A trustee shall discharge the trustee's duties, including duties as a committee member, in good faith, with ordinary care, and in a manner the trustee reasonably believes to be in the best interest of the corporation.

**2.4** **Regular Meetings of the Board**. There shall be two regular meetings of the Board held each calendar year: one during the spring semester and one during the fall semester, with the fall meeting being designated the annual meeting of the Board. The Chairman of the Board and the President of the Seminary shall determine the date and time of each regular meeting.

**2.5** **Special Meetings of the Board**. Special meetings of the Board may be called by the Chairman of the Board upon request of the President or a majority of the members of the Board. Only the matters specified in the notice, or the waiver of notice, may be considered at the special meeting.

**2.6** **Electronic Provisions**. All meetings of the Board may be conducted by telephone conference or through other electronic communications media if all members may simultaneously hear each other and participate during the meeting. Participation in a meeting in this manner shall constitute presence in person at such a meeting. Notice of meetings may be sent electronically.

**2.7** **Notice**. Notice of a meeting of the Board must be given at least ten (10) days prior to the date of a regular meeting and at least three (3) days prior to the date of a special meeting. The requirement of notice may be suspended by a two-thirds vote of the Board.

**2.8** **Quorum**. A majority of the members of the Board shall constitute a quorum for the transaction of business.

**2.9** **Agenda**. An agenda for any meeting of the Board shall be adopted as soon after the beginning of the meeting as may be practicable. After the adoption of the agenda, no new business not contemplated in the agenda may be presented except by unanimous consent of the members present.

**2.10** **Voting**. The act of a majority of the trustees present at a meeting at which a quorum is present is the act of the Board, unless the vote of a greater number for the question under consideration is required by law, the Certificate of Formation, or some other provision in

these Bylaws. A trustee may not vote by proxy and is entitled to one vote on each matter submitted to a vote.

**2.11  Executive Session**. The Board may meet in executive session during all or part of any regular or special meeting. Meetings of the Board shall be open except when an executive session is declared.

**2.12  Expenses of Board Members**. The Seminary may, within a reasonable time and to the extent consistent with Seminary policy, reimburse each trustee for reasonable travel and other expenses incurred with attendance at a meeting of the Board or performance of duties requested by the Seminary.

**2.13  Policies**. All policies, resolutions, and official statements adopted by the Board shall be included in the *Trustee Manual*. Certain trustee resolutions and motions of a procedural nature may be published in the trustee document section of the manual. Procedural material from the administration or the faculty published in the *Trustee Manual* are authoritative in so far as they are consistent with official policies adopted by the Board. The *Trustee Manual* is to be made available, in an updated version annually, to each trustee.

**2.14  Trustee Misconduct**. All matters of alleged trustee misconduct shall be considered in an appropriate manner, as prescribed by a majority of the officers of the Board. Trustee misconduct may include, but is not limited to, breach of fiduciary duty; breach of duties imposed by law, rule, or regulation, including those imposed by associations in which the entity is a member; criminal misconduct; or failure to meet expectations established by the Convention and/or Seminary. Discipline for misconduct may include actions up to and including a temporary suspension of a trustee's rights and privileges by the affirmative vote of a majority of the officers of the Board. If an instance of trustee misconduct remains unresolved, the matter shall be referred to the Convention for disposition in accordance with the Certificate of Formation.

**2.15  Trustee Indemnification**. Except in instances involving trustee misconduct, the Seminary shall indemnify any present or former officer or member of the Board to the fullest extent permitted by Chapter 8 of the Texas Business Organizations Code, as may be amended from time to time. These rights of indemnification and reimbursement shall not be exclusive of any other rights to which such person may be entitled by law, agreement, or otherwise.

## ARTICLE III—OFFICERS OF THE BOARD AND THEIR DUTIES

**3.1  Composition**. The officers of the Board shall be the Chairman, the Vice Chairman, and the Secretary. The officers of the Board shall also serve as the officers of the Executive Committee.

**3.2  Election and Term**. The officers of the Board shall be elected by the affirmative vote of a majority of the trustees in office at the spring meeting of the Board and take office upon adjournment of the annual meeting of the Convention. The officers of the Board shall be elected following nominations from the floor and shall serve for a term of one year and thereafter until their successors assume office. The Chairman of the Board must have served at least three years on the Board before election as Chairman. The Chairman and Vice Chairman may not be elected for more than two consecutive one-year terms.

**3.3** **Chairman**. The Chairman shall preside at all meetings of the Board and the Executive Committee, and, through the President, shall call all special meetings of the Board and the Executive Committee. He shall appoint all committees unless otherwise provided for, sign legal documents as authorized, and discharge all duties usually pertaining to the office. The Chairman is the official spokesperson for the Board absent specific delegation by the Board to another person.

**3.4** **Vice Chairman**. The Vice Chairman shall serve as consultant to the Chairman. He shall preside at all meetings of the Board and the Executive Committee in the absence of the Chairman. In the event of death, incapacity, or resignation of the Chairman, the Vice Chairman shall become Chairman and serve until the next regular election of officers. The Vice Chairman shall also be responsible for directing the program of Board development and appraisal as specified in the *Trustee Manual*.

**3.5** **Secretary**. The Secretary shall keep minutes of all regular and called meetings of the Board and the Executive Committee. Both print and digital copies of all minutes shall be preserved in the archives of the Seminary.

## ARTICLE IV—COMMITTEES OF THE BOARD

**4.1** **Bylaw Provisions Applicable to Committees**. The provisions of these Bylaws relating to meetings, electronic provisions, notice, quorum, agenda, and voting requirements of the Board, shall apply to each committee and their members as well, unless otherwise specified for a committee in these Bylaws.

**4.2** **Composition**. The Board shall have an Executive Committee and may establish such other standing or special committees as it deems necessary to carry out its governance responsibilities.

**4.3** **Executive Committee**. There shall be an Executive Committee composed of the officers of the Board, the chairman and vice chairman of each standing committee, and if still serving as a member of the Board, the immediate past Chairman of the Board.

**4.3.1** **Meetings**. There shall be two regular meetings of the Executive Committee each calendar year and such special meetings as may be properly called. Meetings of the Executive Committee shall be closed.

**4.3.2** **Duties**. The Executive Committee shall have the full authority of the Board to act on issues between meetings of the Board which appear to demand immediate action and cannot be deferred until a regular meeting of the Board. The Executive Committee will conduct an annual performance review of the President and shall act as a Compensation Committee for the President. The Executive Committee shall be designated the Governance Committee of the Board, with responsibility to review and make recommendations concerning governance policies and procedures, including amendments to the Certificate of Formation and these Bylaws, as needed. The Executive Committee shall report its actions to the next regular meeting of the Board.

**4.3.3** **Interim Provisions**. In the interim between meetings of the Executive Committee, a vote may be taken by electronic means on any emergency matter at the request of the

President or Chairman. Such action shall be reported at the next meeting of the Executive Committee and shall become a part of the minutes of that meeting.

**4.4**   **Standing Committees**. The standing committees of the Board shall be the Committee for Academic Administration, the Committee for Business Administration, and the Committee for Institutional Advancement. After conferring with the President regarding potential appointments, the newly elected Chairman, in consultation with the Vice Chairman, shall appoint the standing committees, and shall designate the chairman and vice chairman of each standing committee. No trustee may be appointed to more than one standing committee. The Chairman and Vice Chairman of the Board shall be ex-officio members of all standing committees.

**4.4.1** **Meetings**. Standing committees meet in conjunction with, make reports to, and bring recommendations requiring action by the Board during regular meetings of the Board. Special meetings of standing committees may be called by the chairman of the committee, in consultation with the Chairman of the Board and the President. Meetings of standing committees shall be closed.

**4.4.2** **Duties**. Standing committees provide for policy, review, and general guidance in their areas of responsibility, with specific duties as follows.

### 4.4.3 Committee for Academic Administration.

**a.**   This committee shall review matters related to the academic administration of the Seminary and make such recommendations to the Board as may be deemed necessary.

**b.**   This committee shall review the curricula in relation to the purpose of the Seminary. It shall also review educational management, faculty composition and development, relations between the schools, teaching load and sabbatical leave policies, admissions, discipline, and other matters pertaining to the enrollment management and student life of the Seminary.

### 4.4.4 Committee for Business Administration.

**a.**   This committee shall review matters related to the business administration of the Seminary and make such recommendations to the Board as may be deemed necessary.

**b.**   This committee shall be designated the Finance Committee of the Board. This committee shall be responsible for recommending to the Board at its spring meeting an annual budget submitted by the President for the operation of the Seminary during the ensuing fiscal year. This committee shall receive periodic reports between committee meetings concerning the financial position of the Seminary, and shall, if necessary, make any recommendations for substantial changes to the current budget to the Board or the Executive Committee.

**c.**   This committee shall be designated the Audit Committee of the Board. This committee shall be responsible for recommending to the Board the independent

auditors for the annual audit of the Seminary, giving the audit charge to the auditor, receiving the audit from the auditor, and reporting the findings of the audit to the Board.

**d.** This committee shall be designated the Investment Committee of the Board. This committee is entitled to select advisors and delegate duties and responsibilities to them such as the full power and authority to select investment managers to, or on its own, purchase or otherwise acquire stocks, bonds, securities, and other investments on behalf of the Seminary, and to sell, transfer, or otherwise dispose of the Seminary's assets and properties at a time and for a consideration that the advisor deems appropriate. Members of this committee and the full Board shall have no liability for actions taken or omitted by the advisor if this committee acts in good faith and with ordinary care in selecting the advisor. This committee may remove or replace the advisor, with or without cause.

**e.** This committee shall review the need for expansion of the physical properties of the Seminary and the related need for capital funds. This committee shall review and make any recommendations for substantial disposition and acquisition of real estate to the Board.

### 4.4.5 Committee for Institutional Advancement.

**a.** This committee shall review matters related to the institutional advancement of the Seminary and make such recommendations to the Board as may be deemed necessary.

**b.** This committee shall review and make recommendations to the Board related to donor relations and philanthropy, annual and planned giving, capital campaigns and fundraising, alumni and church relations, foundations and grants management, campus operations and auxiliary enterprises, and other related matters.

**c.** This committee shall be kept informed and involved in the work of the Advisory Council, the President's Club, and other development groups.

**4.5 Special Committees**. Special committees shall be appointed as the Board authorizes.

## ARTICLE V— OFFICERS OF THE SEMINARY AND THEIR DUTIES

**5.1 Composition**. The officers of the Seminary shall be the President, the Provost, and one or more Vice Presidents. The powers and duties of the officers are those usually pertaining to their respective offices, subject to the supervision and direction of the Board.

**5.2 Election of President**. The President shall be elected by the Board for an indefinite term. If a vacancy occurs in the office of President, the Board may appoint an interim successor who shall serve until the Board elects a successor. The President may be removed from office by the Board with or without cause, whenever, in the Board's judgment, the best interests of the Seminary are served thereby.

**5.3    Authority Vested in President**. The Board elects the President of the Seminary and authorizes the President to appoint, employ, and have direction over administrators, faculty members, and all other personnel of the Seminary in accordance with policies of the Board. The President shall assist the Board in formulating policy, and he shall be responsible for the implementation of Board policy. The President shall work with the Board and be accountable to the Board in advancing the mission of the Seminary. The Board delegates to the President the administrative responsibility and authority for the operation of the Seminary. The President, or his designee, is the official spokesperson for the Seminary.

**5.4    Duties of President**. The President shall serve as the chief executive officer of the Seminary. The President shall have direct charge of, full supervision over, and shall be responsible for all funds and properties of the Seminary, and over all matters pertaining to the Seminary, in all its units, schools, and departments. The President shall be accountable only to the Board for the proper administration of all affairs, business, and functions of the Seminary. The President is responsible for carrying out the mission and purposes of the Seminary. The President shall be an ex-officio and non-voting member of the Board and all committees of the Board. Among the executive and administrative responsibilities of the President is the duty to present to the Board all matters and recommendations which in the judgment of the President may need attention or that may be of interest. The President shall present timely recommendations regarding and affecting other matters set out elsewhere in these Bylaws. The President shall perform such other duties and responsibilities as are usually performed and shall have such other powers and authority as are usually held by the president of an institution of higher education, as well as such other duties and responsibilities as may be given to him from time to time by the Board.

**5.5    Denominational Service of President**. The President shall represent the Seminary in its routine contacts with Convention entities and other general Baptist bodies. He shall be a member of the Great Commission Council and the Council of Seminary Presidents of the Southern Baptist Convention.

**5.6    Other Officers**. Administrative responsibility for internal management is delegated by the President to the other officers of the Seminary, including the Provost and one or more Vice Presidents. Persons at the vice-presidential level, including the Provost, are appointed by the President, after consultation with the officers of the Board, and serve at the pleasure of the President. In the event of absence or inability of the President to act, the Vice Presidents shall, in the order established by the President, perform the duties of the President. The Vice Presidents shall also perform such other duties as may be assigned to them by the President.

## <u>ARTICLE VI—ACADEMIC ORGANIZATION</u>

**6.1    Academic Administration**. The President shall be chairman of the faculty of the Seminary and serve as an ex-officio member of all the faculties of the schools of the Seminary. The President shall participate fully in all decisions and deliberations of the faculty. The President must approve all academic and administrative procedures, ensuring that they are consistent with and not contrary to these Bylaws and other policies adopted by the Board. Under the authority of the President, the Provost shall serve as the chief academic officer of the Seminary and shall be vice chairman of the faculty of the Seminary.

**6.2   Schools**. The Seminary is academically organized into the following schools: the School of Theology, the Jack D. Terry School of Educational Ministries, the School of Church Music and Worship, the Roy J. Fish School of Evangelism and Missions, and the Texas Baptist College. These schools are not separate entities but are de facto departments of one institution—the Seminary. Each separately, and they together, along with related educational programs, shall always strive for the cohesion and unity of the Seminary.

**6.3   Deans**. Each school is led by a dean whose primary responsibilities are to oversee the internal administration of the school and to serve as liaison between the administration and the faculty. School deans are appointed by and serve at the pleasure of the President, and are directly supervised in their work by the Provost.

**6.4   Curricula**. It shall be the policy of the Seminary always to maintain well-rounded curricula containing the subjects which should be studied in training for Christian ministry in the various fields of such service. The faculty shall make recommendations to the academic administration concerning the curricula and shall prescribe courses of study for the various degrees, diplomas, and certificates, and the work required to earn such.

**6.5   Degrees**. The Seminary shall, by the authority of the Board, confer such degrees, diplomas, and certificates as the faculty and academic administration shall recommend. The Seminary shall not confer honorary degrees.

## ARTICLE VII—FACULTY AND INSTRUCTIONAL STAFF

**7.1   Composition**. Supplemental personnel, appointed faculty, and elected faculty comprise the faculty and instructional staff of the Seminary. Members of the faculty and instructional staff are expected to be those of unquestionable Christian character who exhibit positive and consecrated Christian attitudes, strive to achieve the highest possible scholastic attainments, and demonstrate an acceptable aptitude for teaching. Employment matters related to members of the faculty and instructional staff are viewed as matters of ecclesiastical concern and as commitments of faith between the Seminary and the individual member. Ecclesiastical concern requires that the relationship not be entered, continued, or severed without prayerful consideration.

**7.2   Supplemental Personnel**. Supplemental personnel include, but are not limited to, any teaching assistant, teaching fellow, instructor, adjunct professor, senior professor, or visiting professor. Supplemental personnel are appointed by the President for a limited term of service, not to exceed one year, and which may be renewed by the President. The President shall make an annual report of these appointments and any renewals to the Committee for Academic Administration.

**7.3   Appointed Faculty**. The President may appoint faculty to any of the faculty ranks for a limited term of service, not to exceed three years, and which may be renewed by the President in consultation with the Committee for Academic Administration. The President shall make an annual report of these appointments to the Board.

**7.4   Elected Faculty**. The Board may elect faculty to any of the faculty ranks for an ongoing term of service upon nomination by the President in consultation with the Committee for Academic Administration. Election to the faculty will normally follow a term of service under

presidential appointment, though this process may be expedited if an exceptionally qualified individual becomes available to the Seminary. The President shall prepare a recommendation regarding each candidate for election to the faculty to be sent to the Board at least ten (10) days in advance of a regular meeting.

**7.5** **Faculty Ranks and Promotions**. The regular faculty ranks are assistant professor, associate professor, full professor, research professor, and distinguished professor. These positions may be held by virtue of election by the Board or by action of appointment by the President. All faculty rank-to-rank promotions shall be by action of the Board upon nomination by the President in consultation with the Committee for Academic Administration.

**7.6** **Qualifications**. Every member of the faculty and instructional staff shall:

    **a.** Have adequate academic preparation and demonstrated experience for the discipline of teaching in the judgment of the President (for supplemental personnel and appointed faculty) and/or the Board (for elected faculty).

    **b.** Be a member in good standing of a cooperating Southern Baptist church as defined by Article III of the Constitution of the Convention.

    **c.** Affirm and advocate a position consistent with and not contrary to the Seminary's confessional nature as defined in Bylaw 1.3.

    **d.** Understand that continued employment will be determined by, among other things, annual performance reviews of all appointed and elected faculty conducted by the appropriate school dean under the authority of the President and supervision of the Provost. All performance reviews shall cover, but are not limited to, teaching, scholarly research, writing, and other professional endeavors that benefit the Seminary. The determination of continued employment for any member of the faculty and instructional staff shall be made by the President, and when necessary, the Board.

**7.7** **Responsibilities**. The primary responsibility of the faculty member is to teach and to write in connection with assigned subjects. Any responsibilities beyond these areas are to be performed upon request or under the authority of the President and/or the Board. In no circumstances shall faculty members deal in the administrative or policy matters of the Seminary except by request or under the authority of the President (in administrative matters) and/or the Board (in policy matters).

    **7.7.1** The faculty member's commitment to the Seminary includes fulfilling a defined teaching load for the academic year (consisting of the fall and spring semesters together with the winter and summer terms) as determined by the academic administration. When not engaged in teaching, the faculty member will exercise discretion to be occupied in such engagements as will make a professional contribution to the Seminary, including, but not limited to, scholarly research and writing projects. A faculty member may not accept a teaching responsibility with another institution of higher education (whether paid or unpaid) except with the approval of the President upon the recommendation of the Provost.

**7.7.2** A faculty member may not provide any recurring and/or ongoing personal services to any person or entity (whether paid or unpaid) except with the approval of the President upon the recommendation of the Provost. In the case of pulpit supply, worship leadership, or other church staff ministry, a faculty member may accept an interim for a period of three months without approval.

**7.8** **Academic Freedom**. Academic freedom is the faculty member's privilege of teaching, writing, and conducting research according to his or her conscience under the guidelines of the governing documents of the Seminary. With this freedom comes the obligation of responsible exercise of this privilege in accordance with the confessional nature of the Seminary.

**7.8.1** Faculty members shall be free to teach, carry on research, and publish, subject to the adequate performance of duties as agreed upon with the school.

**7.8.2** The curricula of the Seminary shall be determined by the faculty, and each professor shall have the freedom in the classroom to discuss the subject in which he or she has competence and may claim to be a specialist.

**7.8.3** The professor shall be free to express and act upon his or her conscientious convictions as an individual citizen with the realization that there is always the tacit representation of one's institution in whatever one says.

**7.8.4** Faculty members must take care lest they violate each other's academic freedom by covert interference with their colleagues' work or through bypassing the orderly process of full faculty discussion of curriculum, appointments, and other basic matters.

**7.8.5** The Seminary sustains a covenant relationship with the Convention of churches. It is within this context that the responsibilities of academic freedom must be exercised. The special privilege of the seminary professor within the Convention imposes special obligations. Hence, faculty members should always be accurate, should exercise appropriate restraint, should show respect for the opinion of others, and should seek to relate constructively to the Convention. Acceptance of a teaching position at the Seminary assumes and requires an eager willingness to work within the context of the Convention and its churches, as well as an understanding of the special obligations incumbent upon a denominational seminary.

**7.8.6** All faculty and staff have an obligation to support and relate constructively to the Seminary, its policies, and its administration. Members of the faculty and staff may not abuse their position by undermining or obstructing the policies of the institution. Faculty and staff are not to act in ways that are injurious or detrimental to the Seminary or its relationships with the denomination, donors, or other constituencies, within and without the Seminary community.

**7.8.7** To the extent that there is a dispute over the privilege of academic freedom, all such disputes should be addressed to the President, who shall have sole authority to resolve any dispute regarding academic freedom and his resolution shall be final. The resolution of all disputes is acknowledged to be ecclesiastical in nature.

**7.9  Termination of Service**. Faculty service may be terminated by retirement, resignation, or dismissal as follows:

    **7.9.1 Retirement**. Retirement procedures shall be set forth in the *Faculty Manual*. All elected faculty members shall be eligible to participate in the defined contribution retirement plan authorized by the Board.

    **7.9.2 Resignation**. If a member of the faculty or instructional staff desires to resign, notice should be given in writing to the President sufficiently early to allow for appropriate replacement. If any member of the faculty or instructional staff can no longer affirm, abide by, teach, or write consistent with and not contrary to the Seminary's confessional nature as defined in Bylaw 1.3, that person shall be considered as having resigned.

    **7.9.3 Dismissal**. The determination of whether grounds exist and the specific procedures for dismissal shall be made by the President in consultation with the Provost and/or the Board. Grounds for dismissal include, but are not limited to, departure from the Seminary's confessional nature as defined in Bylaw 1.3, financial exigency, moral turpitude, incompetence or negligence in the performance of duties, defiance of authority, or failure to relate constructively to the institution. Grounds for dismissal may be established notwithstanding the faculty member's agreement or other employment status.

## ARTICLE VIII—FUNDS OF THE CORPORATION

**8.1  Custodian of Funds**. The President shall be the custodian of all funds of the Seminary for the trustees. He shall confer with the Committee for Business Administration and the Board concerning problems related to the handling or use of same.

**8.2  Handling of Funds**. The President shall designate a Vice President to serve as treasurer of the Seminary, who shall be the chief financial officer of the Seminary and secretary of the Corporation. The treasurer shall have active charge of all funds, including the placement of endowment funds, and shall receive, keep, and disburse such funds under the direction of the President and the Board. The treasurer shall keep an accurate record of all receipts and disbursements and make regular reports to the Finance Committee of the Board.

**8.3  Fiscal Year**. The fiscal year of the Seminary shall begin August 1 and close July 31.

**8.4  Audit**. The Board shall select an outside firm of independent certified public accountants to conduct an annual audit of the Seminary's financial position and results of operations. The auditor shall submit its written report to the Audit Committee of the Board.

**8.5  Classification of Funds**. The funds of the Seminary shall be classified as follows:

    (1)    Without Donor Restrictions       (2)    With Donor Restrictions

Each class of funds shall be kept in a separate account in the records of the Seminary and shall be held inviolate in its class unless transfer be authorized by the Board.

**8.6** **Signing of Checks**. All checks shall be digitally signed by the treasurer. The President, also, is authorized to sign checks if necessary. One signature only, a digital signature of the treasurer, is required for payroll disbursements to employees of the Seminary.

**8.7** **Contracts**. Unless otherwise directed by the Board, the President, or any Vice President authorized by the President, shall execute contracts or other instruments on behalf of or in the name of the Seminary.

**8.8** **Investment of Funds**. All endowment funds shall be invested with Guidestone Financial Resources, HighGround Advisors, the Southern Baptist Foundation, or such comparable organizations as may be approved by the Investment Committee of the Board.

**8.9** **Bequests**. All bequests shall be invested, and the proceeds thereof used according to the will of the donors.

## ARTICLE IX—AMENDMENTS

These Bylaws may be amended by the Board in a regular meeting of the Board or in a special meeting called for that purpose and then only by a two-thirds majority of the members present and voting and only after the proposed amendments have been provided to the trustees at least ten (10) days in advance of the meeting. On any proposed change to the Bylaws which has been properly submitted to the trustees as prescribed herein, the matter may be subject to substitution or amendment by the trustees during the meeting of the Board that follows but only to the extent that the substitution or amendment pertains exclusively to the content of the specific article or paragraph of the Bylaws which has been submitted for adoption or amendment.

# EXHIBIT 5



# BYLAWS OF THE SEMINARY[1]

## PREAMBLE

The following Bylaws of The Southwestern Baptist Theological Seminary (the "Seminary"), a Texas nonprofit corporation, are hereby adopted to govern the way the Board of Trustees, the administration, the faculty and instructional staff, and all other employees transact the business and fulfill the mission of the institution.

## ARTICLE I—NATURE AND PURPOSE

**1.1   Governance**. Except to the extent of those powers specifically reserved to the Southern Baptist Convention (the "Convention") as the sole Member of the corporation, all powers for the governance of the Seminary shall be vested in a Board of Trustees (the "Board").

**1.2   Purpose**. The primary purpose of the Seminary is that set forth in its Certificate of Formation[2] as from time to time amended or restated.

**1.3   Confessional Nature**. As a confessional institution, the Seminary is committed to theological integrity and biblical fidelity. The Confession of Faith of the Seminary shall be the *Baptist Faith and Message* as adopted and amended by the Convention and shall be subscribed to in writing by all faculty and instructional staff, without hesitation or mental reservation. The Confession of Faith does not exhaust the extent of the Seminary's beliefs, however. The *Chicago Statement on Biblical Inerrancy*, the *Danvers Statement on Biblical Manhood and Womanhood*, and the *Nashville Statement* are recognized by the Seminary as guiding documents that clarify and establish the meaning of the Confession of Faith. Furthermore, the Bible itself, as the inspired, inerrant, and infallible Word of God that speaks with final authority concerning truth, morality, and the proper conduct of humankind, is the ultimate source of all that the Seminary believes. The Board is the final interpretive authority on the Bible's meaning and application for purposes of the Seminary's faith, doctrine, practice, policy, and discipline. The President shall serve as the authorized agent of the Board.

**1.4   Parliamentary Authority**. The rules contained in the current edition of *Robert's Rules of Order Newly Revised* shall govern the Seminary in all cases to which they are applicable and in which they are not inconsistent with the Certificate of Formation and these Bylaws.

## ARTICLE II—THE BOARD OF TRUSTEES

**2.1   Membership**. The members of the Board are those persons elected by act of the Convention in accordance with the requirements of the Certificate of Formation. As provided therein, if a vacancy occurs on the Board, including a vacancy resulting from death, resignation,

---

[1] Amended and restated by the Board of Trustees on October 17, 2023.

[2] The Certificate of Formation as defined by the Texas Business Organizations Code is legally synonymous with the Seminary's Articles of Incorporation.

removal, or ineligibility of a trustee, the Board may elect an interim trustee to serve until the position is filled by the Convention. No full-time employee of the Seminary—including the President, other administrators, any full-time faculty members, or any full-time staff members—may serve as a member of the Board of Trustees.

**2.2**  **Responsibility and Authority**. The Board is the legal body with specific authority over the Seminary and exercises fiduciary oversight of the institution. The Board shall be responsible for ensuring that its officers and members are free from any contractual, employment, personal, or familial financial interest in the institution, and that the Board is not controlled by a minority of members of the Board or by organizations or institutions separate from it. The Board exercises its authority collectively as a group, not as individuals, and fulfills its responsibilities on behalf of the Seminary as a whole, using the Seminary's mission to guide all major decisions.

**2.3**  **Fiduciary Duty**. While trustees are to represent the interests of the entire Convention as well as those of the Seminary, the fiduciary duty of all trustees is solely to the Seminary. A trustee shall discharge the trustee's duties, including duties as a committee member, in good faith, with ordinary care, and in a manner the trustee reasonably believes to be in the best interest of the corporation.

**2.4**  **Regular Meetings of the Board**. There shall be two regular meetings of the Board held each calendar year: one during the spring semester and one during the fall semester, with the fall meeting being designated the annual meeting of the Board. The Chairman of the Board and the President of the Seminary shall determine the date and time of each regular meeting.

**2.5**  **Special Meetings of the Board**. Special meetings of the Board may be called by the Chairman of the Board upon request of the President or a majority of the members of the Board. Only the matters specified in the notice, or the waiver of notice, may be considered at the special meeting.

**2.6**  **Electronic Provisions**. All meetings of the Board may be conducted by telephone conference or through other electronic communications media if all members may simultaneously hear each other and participate during the meeting. Participation in a meeting in this manner shall constitute presence in person at such a meeting. Notice of meetings may be sent electronically.

**2.7**  **Notice**. Notice of a meeting of the Board must be given at least ten (10) days prior to the date of a regular meeting and at least three (3) days prior to the date of a special meeting. The requirement of notice may be suspended by a two-thirds vote of the Board.

**2.8**  **Quorum**. A majority of the members of the Board shall constitute a quorum for the transaction of business.

**2.9**  **Agenda**. An agenda for any meeting of the Board shall be adopted as soon after the beginning of the meeting as may be practicable. After the adoption of the agenda, no new business not contemplated in the agenda may be presented except by unanimous consent of the members present.

**2.10**  **Voting**. The act of a majority of the trustees present at a meeting at which a quorum is present is the act of the Board, unless the vote of a greater number for the question under

consideration is required by law, the Certificate of Formation, or some other provision in these Bylaws. A trustee may not vote by proxy and is entitled to one vote on each matter submitted to a vote.

**2.11 Executive Session**. The Board may meet in executive session during all or part of any regular or special meeting. Meetings of the Board shall be open except when an executive session is declared.

**2.12 Expenses of Board Members**. The Seminary may, within a reasonable time and to the extent consistent with Seminary policy, reimburse each trustee for reasonable travel and other expenses incurred with attendance at a meeting of the Board or performance of duties requested by the Seminary.

**2.13 Policies**. All policies, resolutions, and official statements adopted by the Board shall be included in the *Trustee Manual*. Certain trustee resolutions and motions of a procedural nature may be published in the trustee document section of the manual. Procedural material from the administration or the faculty published in the *Trustee Manual* are authoritative in so far as they are consistent with official policies adopted by the Board. The *Trustee Manual* is to be made available, in an updated version annually, to each trustee.

**2.14 Trustee Misconduct**. All matters of alleged trustee misconduct shall be considered in an appropriate manner, as prescribed by a majority of the officers of the Board. Trustee misconduct may include, but is not limited to, breach of fiduciary duty; breach of duties imposed by law, rule, or regulation, including those imposed by associations in which the entity is a member; criminal misconduct; or failure to meet expectations established by the Convention and/or Seminary. Discipline for misconduct may include actions up to and including a temporary suspension of a trustee's rights and privileges by the affirmative vote of a majority of the officers of the Board. If an instance of trustee misconduct remains unresolved, the matter shall be referred to the Convention for disposition in accordance with the Certificate of Formation.

**2.15 Trustee Indemnification**. Except in instances involving trustee misconduct, the Seminary shall indemnify any present or former officer or member of the Board to the fullest extent permitted by Chapter 8 of the Texas Business Organizations Code, as may be amended from time to time. These rights of indemnification and reimbursement shall not be exclusive of any other rights to which such person may be entitled by law, agreement, or otherwise.

## ARTICLE III—OFFICERS OF THE BOARD AND THEIR DUTIES

**3.1 Composition**. The officers of the Board shall be the Chairman, the Vice Chairman, and the Secretary. The officers of the Board shall also serve as the officers of the Executive Committee. No full-time employee of the Seminary—including the President, other administrators, any full-time faculty members, or any full-time staff members—may serve as a member of the Board of Trustees.

**3.2 Election and Term**. The officers of the Board shall be elected by the affirmative vote of a majority of the trustees in office at the spring meeting of the Board and take office upon adjournment of the annual meeting of the Convention. The officers of the Board shall be elected following nominations from the floor and shall serve for a term of one year and thereafter until their successors assume office. The Chairman of the Board must have served at least three years on the Board before election as Chairman. The Chairman and Vice

Chairman may not be elected for more than two consecutive one-year terms.

**3.3** **Chairman**. The Chairman shall preside at all meetings of the Board and the Executive Committee, and, through the President, shall call all special meetings of the Board and the Executive Committee. He shall appoint all committees unless otherwise provided for, sign legal documents as authorized, and discharge all duties usually pertaining to the office. The Chairman is the official spokesperson for the Board absent specific delegation by the Board to another person.

**3.4** **Vice Chairman**. The Vice Chairman shall serve as consultant to the Chairman. He shall preside at all meetings of the Board and the Executive Committee in the absence of the Chairman. In the event of death, incapacity, or resignation of the Chairman, the Vice Chairman shall become Chairman and serve until the next regular election of officers. The Vice Chairman shall also be responsible for directing the program of Board development and appraisal as specified in the *Trustee Manual*.

**3.5** **Secretary**. The Secretary shall keep minutes of all regular and called meetings of the Board and the Executive Committee. Both print and digital copies of all minutes shall be preserved in the archives of the Seminary.

## <u>ARTICLE IV—COMMITTEES OF THE BOARD</u>

**4.1** **Bylaw Provisions Applicable to Committees**. The provisions of these Bylaws relating to meetings, electronic provisions, notice, quorum, agenda, and voting requirements of the Board, shall apply to each committee and their members as well, unless otherwise specified for a committee in these Bylaws.

**4.2** **Composition**. The Board shall have an Executive Committee and may establish such other standing or special committees as it deems necessary to carry out its governance responsibilities.

**4.3** **Executive Committee**. There shall be an Executive Committee composed of the officers of the Board, the chairman and vice chairman of each standing committee, and if still serving as a member of the Board, the immediate past Chairman of the Board.

    **4.3.1 Meetings**. There shall be two regular meetings of the Executive Committee each calendar year and such special meetings as may be properly called. Meetings of the Executive Committee shall be closed.

    **4.3.2 Duties**. The Executive Committee shall have the full authority of the Board to act on issues between meetings of the Board which appear to demand immediate action and cannot be deferred until a regular meeting of the Board. The Executive Committee will conduct an annual performance review of the President and shall act as a Compensation Committee for the President. The Executive Committee shall be designated the Governance Committee of the Board, with responsibility to review and make recommendations concerning governance policies and procedures, including amendments to the Certificate of Formation and these Bylaws, as needed. The Executive Committee shall report its actions to the next regular meeting of the Board.

    **4.3.3 Interim Provisions**. In the interim between meetings of the Executive Committee, a vote may be taken by electronic means on any emergency matter at the request of the

President or Chairman. Such action shall be reported at the next meeting of the Executive Committee and shall become a part of the minutes of that meeting.

**4.4    Standing Committees**. The standing committees of the Board shall be the Committee for Academics and Technology, the Committee for Business Administration, the Committee for Institutional Advancement, and the Committee for Enrollment, Retention, and Student Services. After conferring with the President regarding potential appointments, the newly elected Chairman, in consultation with the Vice Chairman, shall appoint the standing committees, and shall designate the chairman and vice chairman of each standing committee. No trustee may be appointed to more than one standing committee. The Chairman and Vice Chairman of the Board shall be *ex officio* members of all standing committees.

**4.4.1 Meetings**. Standing committees meet in conjunction with, make reports to, and bring recommendations requiring action by the Board during regular meetings of the Board. Special meetings of standing committees may be called by the chairman of the committee, in consultation with the Chairman of the Board and the President. Meetings of standing committees shall be closed.

**4.4.2 Duties**. Standing committees provide for policy, review, and general guidance in their areas of responsibility, with specific duties as follows.

### 4.4.3 Committee for Academics and Technology.

**a.**    This committee shall review matters related to the academic administration of the Seminary and make such recommendations to the Board as may be deemed necessary.

**b.**    This committee shall review the curricula in relation to the purpose of the Seminary. It shall also review educational management, faculty composition and development, relations between the schools, teaching load and sabbatical leave policies, admissions, discipline, and other matters pertaining to the enrollment management and student life of the Seminary.

**c.**    The committee shall develop and recommend to the Board learning, library, and technology resources that provide for the accomplishment of the Seminary's academic mission.

### 4.4.4 Committee for Business Administration.

**a.**    This committee shall review matters related to the business administration of the Seminary and make such recommendations to the Board as may be deemed necessary.

**b.**    This committee shall be designated the Finance Committee of the Board. This committee shall be responsible for recommending to the Board at its spring meeting an annual budget submitted by the President for the operation of the Seminary during the ensuing fiscal year. This committee shall receive periodic reports between committee meetings concerning the financial position of the Seminary, and shall, if necessary, make any recommendations for substantial changes to the current budget to the Board or the Executive Committee.

**c.** This committee shall be designated the Audit Committee of the Board. This committee shall be responsible for recommending to the Board the independent auditors for the annual audit of the Seminary, giving the audit charge to the auditor, receiving the audit from the auditor, and reporting the findings of the audit to the Board.

**d.** This committee shall be designated the Investment Committee of the Board. This committee is entitled to select advisors and delegate duties and responsibilities to them such as the full power and authority to select investment managers to, or on its own, purchase or otherwise acquire stocks, bonds, securities, and other investments on behalf of the Seminary, and to sell, transfer, or otherwise dispose of the Seminary's assets and properties at a time and for a consideration that the advisor deems appropriate. Members of this committee and the full Board shall have no liability for actions taken or omitted by the advisor if this committee acts in good faith and with ordinary care in selecting the advisor. This committee may remove or replace the advisor, with or without cause.

**e.** This committee shall review the need for expansion of the physical properties of the Seminary and the related need for capital funds. This committee shall review and make any recommendations for substantial disposition and acquisition of real estate to the Board.

### 4.4.5 Committee for Institutional Advancement.

**a.** This committee shall review matters related to the institutional advancement of the Seminary and make such recommendations to the Board as may be deemed necessary.

**b.** This committee shall review and make recommendations to the Board related to donor relations and philanthropy, annual and planned giving, capital campaigns and fundraising, alumni and church relations, foundations and grants management, campus operations and auxiliary enterprises, and other related matters.

**c.** This committee shall be kept informed and involved in the work of the Advisory Council, the President's Club, and other development groups.

### 4.4.6 Committee for Enrollment, Retention, and Student Services

**a.** This committee shall support, encourage, and monitor trends related to new and transfer student enrollment, student retention, graduation rates, and ways in which the administration can serve the undergraduate, graduate, doctoral, residential, and non-residential students with effectiveness so that they will be able to live their calling in service to church and society.

**4.5 Special Committees**. Special committees shall be appointed as the Board authorizes.

## ARTICLE V— OFFICERS OF THE SEMINARY AND THEIR DUTIES

**5.1    Composition**. The officers of the Seminary shall be the President, the Provost, and one or more Vice Presidents. The powers and duties of the officers are those usually pertaining to their respective offices, subject to the supervision and direction of the Board.

**5.2    Election of President**. The President shall be elected by the Board for an indefinite term. If a vacancy occurs in the office of President, the Board may appoint an interim successor who shall serve until the Board elects a successor. The President may be removed from office by the Board with or without cause, whenever, in the Board's judgment, the best interests of the Seminary are served thereby.

**5.3    Authority Vested in President**. The Board elects the President of the Seminary and authorizes the President to appoint, employ, and have direction over administrators, faculty members, and all other personnel of the Seminary in accordance with policies of the Board. The President shall assist the Board in formulating policy, and he shall be responsible for the implementation of Board policy. The President shall work with the Board and be accountable to the Board in advancing the mission of the Seminary. The Board delegates to the President the administrative responsibility and authority for the operation of the Seminary. The President, or his designee, is the official spokesperson for the Seminary.

**5.4    Duties of President**. The President shall serve as the chief executive officer of the Seminary. The President shall have direct charge of, full supervision over, and shall be responsible for all funds and properties of the Seminary, and over all matters pertaining to the Seminary, in all its units, schools, and departments. The President shall be accountable only to the Board for the proper administration of all affairs, business, and functions of the Seminary. The President is responsible for carrying out the mission and purposes of the Seminary. Among the executive and administrative responsibilities of the President is the duty to present to the Board all matters and recommendations which in the judgment of the President may need attention or that may be of interest. The President shall present timely recommendations regarding and affecting other matters set out elsewhere in these Bylaws. The President shall perform such other duties and responsibilities as are usually performed and shall have such other powers and authority as are usually held by the president of an institution of higher education, as well as such other duties and responsibilities as may be given to him from time to time by the Board.

**5.5    Denominational Service of President**. The President shall represent the Seminary in its routine contacts with Convention entities and other general Baptist bodies. He shall be a member of the Great Commission Council and the Council of Seminary Presidents of the Southern Baptist Convention.

**5.6    Other Officers**. Administrative responsibility for internal management is delegated by the President to the other officers of the Seminary, including the Provost and one or more Vice Presidents. Persons at the vice-presidential level, including the Provost, are appointed by the President, after consultation with the officers of the Board, and serve at the pleasure of the President. In the event of absence or inability of the President to act, the Vice Presidents shall, in the order established by the President, perform the duties of the President. The Vice Presidents shall also perform such other duties as may be assigned to them by the President.

## ARTICLE VI—ACADEMIC ORGANIZATION

**6.1  Academic Administration**. The President shall be chairman of the faculty of the Seminary and serve as an ex-officio member of all the faculties of the schools of the Seminary. The President shall participate fully in all decisions and deliberations of the faculty. The President must approve all academic and administrative procedures, ensuring that they are consistent with and not contrary to these Bylaws and other policies adopted by the Board. Under the authority of the President, the Provost shall serve as the chief academic officer of the Seminary and shall be vice chairman of the faculty of the Seminary.

**6.2  Schools**. The Seminary is academically organized into the following schools: the School of Theology, the Jack D. Terry School of Educational Ministries, the School of Church Music and Worship, the Roy J. Fish School of Evangelism and Missions, and the Texas Baptist College. These schools are not separate entities but are de facto departments of one institution—the Seminary. Each separately, and they together, along with related educational programs, shall always strive for the cohesion and unity of the Seminary.

**6.3  Deans**. Each school is led by a dean whose primary responsibilities are to oversee the internal administration of the school and to serve as liaison between the administration and the faculty. School deans are appointed by and serve at the pleasure of the President, and are directly supervised in their work by the Provost.

**6.4  Curricula**. It shall be the policy of the Seminary always to maintain well-rounded curricula containing the subjects which should be studied in training for Christian ministry in the various fields of such service. The faculty shall make recommendations to the academic administration concerning the curricula and shall prescribe courses of study for the various degrees, diplomas, and certificates, and the work required to earn such.

**6.5  Degrees**. The Seminary shall, by the authority of the Board, confer such degrees, diplomas, and certificates as the faculty and academic administration shall recommend. The Seminary shall not confer honorary degrees.

## ARTICLE VII—FACULTY AND INSTRUCTIONAL STAFF

**7.1  Composition**. Supplemental personnel, appointed faculty, and elected faculty comprise the faculty and instructional staff of the Seminary. Members of the faculty and instructional staff are expected to be those of unquestionable Christian character who exhibit positive and consecrated Christian attitudes, strive to achieve the highest possible scholastic attainments, and demonstrate an acceptable aptitude for teaching. Employment matters related to members of the faculty and instructional staff are viewed as matters of ecclesiastical concern and as commitments of faith between the Seminary and the individual member. Ecclesiastical concern requires that the relationship not be entered, continued, or severed without prayerful consideration.

**7.2  Supplemental Personnel**. Supplemental personnel include, but are not limited to, any teaching assistant, teaching fellow, instructor, adjunct professor, senior professor, or visiting professor. Supplemental personnel are appointed by the President for a limited term of service, not to exceed one year, and which may be renewed by the President. The President shall make an annual report of these appointments and any renewals to the Committee for Academic Administration.

**7.3** **Appointed Faculty**. The President may appoint faculty to any of the faculty ranks for a limited term of service, not to exceed three years, and which may be renewed by the President in consultation with the Committee for Academic Administration. The President shall make an annual report of these appointments to the Board.

**7.4** **Elected Faculty**. The Board may elect faculty to any of the faculty ranks for an ongoing term of service upon nomination by the President in consultation with the Committee for Academic Administration. Election to the faculty will normally follow a term of service underpresidential appointment, though this process may be expedited if an exceptionally qualified individual becomes available to the Seminary. The President shall prepare a recommendation regarding each candidate for election to the faculty to be sent to the Board at least ten (10) days in advance of a regular meeting.

**7.5** **Faculty Ranks and Promotions**. The regular faculty ranks are assistant professor, associate professor, full professor, research professor, and distinguished professor. These positions may be held by virtue of election by the Board or by action of appointment by the President. All faculty rank-to-rank promotions shall be by action of the Board upon nomination by the President in consultation with the Committee for Academic Administration.

**7.6** **Qualifications**. Every member of the faculty and instructional staff shall:

    **a.** Have adequate academic preparation and demonstrated experience for the discipline of teaching in the judgment of the President (for supplemental personnel and appointed faculty) and/or the Board (for elected faculty).

    **b.** Be a member in good standing of a cooperating Southern Baptist church as defined by Article III of the Constitution of the Convention.

    **c.** Affirm and advocate a position consistent with and not contrary to the Seminary's confessional nature as defined in Bylaw 1.3.

    **d.** Understand that continued employment will be determined by, among other things, annual performance reviews of all appointed and elected faculty conducted by the appropriate school dean under the authority of the President and supervision of the Provost. All performance reviews shall cover, but are not limited to, teaching, scholarly research, writing, and other professional endeavors that benefit the Seminary. The determination of continued employment for any member of the faculty and instructional staff shall be made by the President, and when necessary, the Board.

**7.7** **Responsibilities**. The primary responsibility of the faculty member is to teach and to write in connection with assigned subjects. Any responsibilities beyond these areas are to be performed upon request or under the authority of the President and/or the Board. In no circumstances shall faculty members deal in the administrative or policy matters of the Seminary except by request or under the authority of the President (in administrative matters) and/or the Board (in policy matters).

    **7.7.1** The faculty member's commitment to the Seminary includes fulfilling a defined teaching load for the academic year (consisting of the fall and spring semesters together with the winter and summer terms) as determined by the academic administration. When not engaged in teaching, the faculty member will exercise discretion to be occupied in

such engagements as will make a professional contribution to the Seminary, including, but not limited to, scholarly research and writing projects. A faculty member may not accept a teaching responsibility with another institution of higher education (whether paid or unpaid) except with the approval of the President upon the recommendation of the Provost.

**7.7.2** A faculty member may not provide any recurring and/or ongoing personal services to any person or entity (whether paid or unpaid) except with the approval of the President upon the recommendation of the Provost. In the case of pulpit supply, worship leadership, or other church staff ministry, a faculty member may accept an interim for a period of three months without approval.

**7.8** **Academic Freedom**. Academic freedom is the faculty member's privilege of teaching, writing, and conducting research according to his or her conscience under the guidelines of the governing documents of the Seminary. With this freedom comes the obligation of responsible exercise of this privilege in accordance with the confessional nature of the Seminary.

**7.8.1** Faculty members shall be free to teach, carry on research, and publish, subject to the adequate performance of duties as agreed upon with the school.

**7.8.2** The curricula of the Seminary shall be determined by the faculty, and each professor shall have the freedom in the classroom to discuss the subject in which he or she has competence and may claim to be a specialist.

**7.8.3** The professor shall be free to express and act upon his or her conscientious convictions as an individual citizen with the realization that there is always the tacit representation of one's institution in whatever one says.

**7.8.4** Faculty members must take care lest they violate each other's academic freedom by covert interference with their colleagues' work or through bypassing the orderly process of full faculty discussion of curriculum, appointments, and other basic matters.

**7.8.5** The Seminary sustains a covenant relationship with the Convention of churches. It is within this context that the responsibilities of academic freedom must be exercised. The special privilege of the seminary professor within the Convention imposes special obligations. Hence, faculty members should always be accurate, should exercise appropriate restraint, should show respect for the opinion of others, and should seek to relate constructively to the Convention. Acceptance of a teaching position at the Seminary assumes and requires an eager willingness to work within the context of the Convention and its churches, as well as an understanding of the special obligations incumbent upon a denominational seminary.

**7.8.6** All faculty and staff have an obligation to support and relate constructively to the Seminary, its policies, and its administration. Members of the faculty and staff may not abuse their position by undermining or obstructing the policies of the institution. Faculty and staff are not to act in ways that are injurious or detrimental to the Seminary or its relationships with the denomination, donors, or other constituencies, within and without the Seminary community.

**7.8.7** To the extent that there is a dispute over the privilege of academic freedom, all such disputes should be addressed to the President, who shall have sole authority to resolve

any dispute regarding academic freedom and his resolution shall be final. The resolution of all disputes is acknowledged to be ecclesiastical in nature. **Termination of Service**. Faculty service may be terminated by retirement, resignation, or dismissal as follows:

**7.9.1** **Retirement**. Retirement procedures shall be set forth in the *Faculty Manual*. All elected faculty members shall be eligible to participate in the defined contribution retirement plan authorized by the Board.

**7.9.2** **Resignation**. If a member of the faculty or instructional staff desires to resign, notice should be given in writing to the President sufficiently early to allow for appropriate replacement. If any member of the faculty or instructional staff can no longer affirm, abide by, teach, or write consistent with and not contrary to the Seminary's confessional nature as defined in Bylaw 1.3, that person shall be considered as having resigned.

**7.9.3** **Dismissal**. The determination of whether grounds exist and the specific procedures for dismissal shall be made by the President in consultation with the Provost and/or the Board. Grounds for dismissal include, but are not limited to, departure from the Seminary's confessional nature as defined in Bylaw 1.3, financial exigency, moral turpitude, incompetence or negligence in the performance of duties, defiance of authority, or failure to relate constructively to the institution. Grounds for dismissal may be established notwithstanding the faculty member's agreement or other employment status.

## ARTICLE VIII—FUNDS OF THE CORPORATION

**8.1** **Custodian of Funds**. The President shall be the custodian of all funds of the Seminary for the trustees. He shall confer with the Committee for Business Administration and the Board concerning problems related to the handling or use of same.

**8.2** **Handling of Funds**. The President shall designate a Vice President to serve as treasurer of the Seminary, who shall be the chief financial officer of the Seminary and secretary of the Corporation. The treasurer shall have active charge of all funds, including the placement of endowment funds, and shall receive, keep, and disburse such funds under the direction of the President and the Board. The treasurer shall keep an accurate record of all receipts and disbursements and make regular reports to the Finance Committee of the Board.

**8.3** **Fiscal Year**. The fiscal year of the Seminary shall begin August 1 and close July 31.

**8.4** **Audit**. The Board shall select an outside firm of independent certified public accountants to conduct an annual audit of the Seminary's financial position and results of operations. The auditor shall submit its written report to the Audit Committee of the Board.

**8.5** **Classification of Funds**. The funds of the Seminary shall be classified as follows:

(1)   Without Donor Restrictions         (2)   With Donor Restrictions

Each class of funds shall be kept in a separate account in the records of the Seminary and shall be held inviolate in its class unless transfer be authorized by the Board.

**8.6**   **Signing of Checks**. All checks shall be digitally signed by the treasurer. The President, also, is authorized to sign checks if necessary. One signature only, a digital signature of the treasurer, is required for payroll disbursements to employees of the Seminary.

**8.7**   **Contracts**. Unless otherwise directed by the Board, the President, or any Vice President authorized by the President, shall execute contracts or other instruments on behalf of or in the name of the Seminary.

**8.8**   **Investment of Funds**. All endowment funds shall be invested with Guidestone Financial Resources, HighGround Advisors, the Southern Baptist Foundation, or such comparable organizations as may be approved by the Investment Committee of the Board.

**8.9**   **Bequests**. All bequests shall be invested, and the proceeds thereof used according to the will of the donors.

## <u>ARTICLE IX—AMENDMENTS</u>

These Bylaws may be amended by the Board in a regular meeting of the Board or in a special meeting called for that purpose and then only by a two-thirds majority of the members present and voting and only after the proposed amendments have been provided to the trustees at least ten (10) days in advance of the meeting. On any proposed change to the Bylaws which has been properly submitted to the trustees as prescribed herein, the matter may be subject to substitution or amendment by the trustees during the meeting of the Board that follows but only to the extent that the substitution or amendment pertains exclusively to the content of the specific article or paragraph of the Bylaws which has been submitted for adoption or amendment.

# EXHIBIT 6

**Southwestern Baptist Theological Seminary Minutes of the Board of Trustees Special Called Meeting**

7:00pm, Tuesday, February 26, 2019 10:00am, Wednesday, February 27, 2019

Those attending were Chairman Kevin Ueckert, Bart Barber, J. Kim Bowman, Robert Brown, Wayne Dickard, Denise Ewing, Jeff Crook, Jamie Green, Mark Hindman, John Horn, Charles Hott, Todd Houston, Paul Kim, Connie Hancock, Matthew Kirkland, Jonathan Leeman, Philip Levant, David Maron, Randy Martin, Eddie Miller, Michael Mings, Mark Mucklow, Ronald Pracht, Thomas Pulley, John Rayburn, Don Reeves, Jonathan Richard, Danny Roberts, Joanne Rubel, Herschel Smith, Leon Stamm, George Tynes, Calvin Wittman, Don Whorton.

7:00pm, Tuesday, February 26, 2019

Chairman Ueckert started the meeting at 7:02pm. After confirming quorum, the trustees entered into an extended time of prayer.

Danny Roberts, Chairman of the Presidential Search Committee, was given the floor by Chairman Kevin Ueckert to report on the timeline and process used to arrive at the current candidate, Dr. Adam Greenway. He then gave each member of the search committee a few minutes to share their thoughts and hearts about Adam Greenway. The board then asked questions of the search committee.

Chairman Ueckert invited Dr. Adam Greenway to speak to the board and answer questions.

John Horn was asked by Chairman Kevin Ueckert to pray. The meeting adjourned at 10:03pm by general acclamation.

10:00am, Wednesday, February 27, 2019

Chairman Kevin Ueckert called the meeting to order at 10:01am.

Connie Hancock read scripture and prayed.

The secretary took roll. Quorum was established.

Motion to accept agenda: Calvin Wittman. Second, Bart Barber. Agenda was approved unanimously.

Chairman Kevin Ueckert moved the board into EXECUTIVE SESSION.

Motion to move out of executive session: Calvin Wittman. Second, Randy Martin. Motion carried.

Chairman Kevin Ueckert recognized Dr. Bingham for his service to SWBTS.

Chairman Kevin Ueckert recognized Danny Roberts, chairman of the Presidential Search Committee, who made the following motion:

"We, the Presidential Search Team of Southwestern Baptist Theological Seminary, recommend to the full Board of Trustees that Adam W. Greenway become the ninth president and also Professor of Evangelism and Apologetics of Southwestern Baptist Theological Seminary."

The motion carried by closed ballot (29 yes, 4 no, 1 abstention).

Chairman Kevin Ueckert recognized Bart Barber, chairman of the Academic Administration Committee, who made the following motion:

"The Academic Administration Committee recommends that the board elect Dr. Randy Stinson as the Provost and Vice President for Academic Administration."

The motion carried by closed ballot (31 yes, 1 no, 1 abstention)

The trustees prayed for Dr. Adam Greenway and Dr. Randy Stinson.

Chairman Kevin Ueckert conveyed the trustees' gratitude towards the faculty and staff for their prayers and support.

The meeting adjourned at 11:14am by general acclamation.

# EXHIBIT 7



# FACULTY MANUAL

Updated August 2019

Adam W. Greenway
President

Randy L. Stinson
Provost and Vice President for Academic Administration

# TABLE OF CONTENTS

PREFACE ..................................................................................................................................... iii

SECTION I – MISSION STATEMENT ...................................................................................... 1

SECTION II – THE BOARD OF TRUSTEES ............................................................................ 2

SECTION III – GENERAL ADMINISTRATION ....................................................................... 3

SECTION IV – ACADEMIC ADMINISTRATION ..................................................................... 7

SECTION V – FACULTY SERVICE, EVALUATION, AND DEVELOPMENT ..................... 11

SECTION VI – GENERAL INFORMATION, RULES, POLICIES, AND BENEFITS ........... 22

APPENDIX 1 – STATEMENT OF FAITH AND GUIDING DOCUMENTS ........................... 27

APPENDIX 2 – BYLAWS ........................................................................................................... 40

APPENDIX 3 – ANNUAL FACULTY EVALUATION FORM .................................................. 65

APPENDIX 4 – STUDENT RATING OF TEACHING QUESTIONS....................................... 73

## PREFACE

The *Faculty Manual* of the Southwestern Baptist Theological Seminary is intended to provide guidelines related to both the policies adopted by the Board of Trustees and the procedures developed by the administration that are particularly relevant to the faculty. Additional resources of interest to faculty may be located on the main intranet page entitled *Southwestern Central* in the "Forms and Documents" section. A copy of the *Faculty Manual*, as well as a copy of the *Bylaws* of the Seminary, is contained in the *Policy Manual* of the Board of Trustees. In the event of any conflict between the content of a bylaw and the content of any provision in the *Faculty Manual*, the content of the bylaw shall control. This *Faculty Manual* acknowledges the ownership of the Seminary by the Southern Baptist Convention and the covenant relationship which the Seminary sustains with the churches of the Southern Baptist Convention. It is within this context that the responsibilities of academic freedom and relationship must be exercised. The special position of the Seminary faculty member within the Southern Baptist Convention imposes special obligations that are of utmost ecclesiastical concern to the Seminary and its mission. The Seminary faculty member shall at all times be accurate, shall exercise appropriate restraint, shall show respect for the opinion of others, and shall seek to relate constructively to the Seminary and the Southern Baptist Convention. The manual grows out of the assigned mission of Southwestern Seminary and seeks to relate appropriately to the accreditation requirements of national accreditation agencies (The Association of Theological Schools, Southern Association of Colleges and Schools, National Association of Schools of Music).

The *Faculty Manual* is updated regularly because of policy, procedure, and personnel changes, and is issued in a form that allows for this periodic updating. This manual reflects the broad institutional policies which give direction to Southwestern Seminary and the Seminary reserves the right to change these policies.

The Board of Trustees has vested in the President of the institution the responsibility to provide overall interpretation and direction regarding all personnel policies and procedures. Nothing in this manual or in any of the Seminary's personnel policies and procedures is to be construed or interpreted as a contract or guarantee of employment, specific working conditions, hours of work, length of employment, full-time or part-time status, or continuation of benefits.

For the purposes of information to employees, certain insured benefits programs and their procedures are mentioned in this manual. In the event that a dispute arises over the contents of this manual or in the interpretation of any aspect of an insured benefits program, the actual agreement in effect shall be the official document and shall take precedence over this manual. All plan documents and contracts relating to benefits programs are available for review from the Vice President for Business Administration.

Finally, it should be noted that the seminary views its relationship with its faculty as a covenant relationship of ecclesiastical concern which informs and guides how we relate to one another. Relationships with faculty are not entered into or severed without prayerful consideration.

## SECTION I

## MISSION STATEMENT
## SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY

Southwestern Baptist Theological Seminary assists the churches of the Southern Baptist Convention by the biblical education of God-called men and women for their respective ministries, which fulfill the Great Commission and glorify God.

## SECTION II

## THE BOARD OF TRUSTEES

### General Responsibility and Authority

The Southern Baptist Convention has committed to the Board of Trustees the responsibility to manage the Seminary for the Convention and the trustees have full authority in all matters of its management, except to the extent that powers are vested in the Convention by law. The *Bylaws* and other basic operating policies are set out in the Seminary's *Policy Manual*. The power to alter, amend, or to repeal the bylaws of the Seminary is vested solely in the Board. The Board is answerable only to the Convention for its acts in managing the Seminary.

Board polity shall be exclusively the responsibility of the trustees. Board polity includes, but is not limited to, the nomination and election of officers of the Board and the appointment of trustees as chairmen and members of committees.

The President of the institution shall serve in an advisory capacity to the Board in all matters related to operation of the Seminary.

### Specific Academic Responsibilities

The Board elects the President, and upon the recommendation of the President, the Board elects the Provost and Vice President for Academic Administration, all other Vice Presidents, and the Deans of the schools.

The Board of Trustees elects faculty to ongoing service and approves the renewal of any full-time appointed faculty. First-time appointments and all supplemental faculty appointments are reported to the Board and subject to its review.

The Board grants the promotion of faculty to the various faculty ranks.

The Board approves, when necessary, the retirement, reassignment, or dismissal of elected administrators or faculty.

The Board approves new curricula, major revisions to existing curricula, and all degree programs.

# SECTION III

# GENERAL ADMINISTRATION

## President

1. The President shall serve as the chief executive officer of the Seminary. He shall have executive oversight of the entire institution, including the faculty, employees, curricula, and all that affects its operation. The President reports directly and is accountable only to the Board.

2. He shall be custodian of all funds and properties of the Seminary and shall have direct charge and supervision over them, under the authority of the Board.

3. The President shall serve in an advisory capacity with the Board and with all its committees. He shall provide for administrative support to the Board and its committees and insure that the administration, faculty and staff of the Seminary relates in a cooperative and cordial manner to all its constituencies.

4. The President shall recommend for election by the Board the Provost and Vice President for Academic Administration, the Vice President for Business Administration, the Vice President for Enrollment Management, the Vice President for Institutional Advancement, and the Vice President for Strategic Initiatives and Chief of Staff. He shall supervise and evaluate their work. He shall report the employment of members of the administrative staff other than those elected by the Board.

5. The President shall be chairman of the faculty of the Seminary and serve ex officio as a member of all the faculties of the Seminary. He shall participate fully in all decisions and deliberations of the faculty. He must approve all administrative and faculty procedures and insure that these procedures neither exceed nor minimize and are consistent with and not contrary to the bylaws and policies adopted by the Board.

6. The President shall nominate to the Board for election, the deans and members of the faculty. He shall report the employment of faculty by Presidential appointment. The President shall recommend the promotion of faculty members, and when necessary, the retirement, reassignment, or dismissal of elected administrators or faculty. The President shall likewise recommend all salaries.

7. The President shall have power to appoint an individual to faculty status for a period not to exceed two years. The President shall report such appointments to the next trustee meeting.

8. He shall be responsible for the discipline and cooperation of all members of the Seminary staff and student body. He shall give direction to student discipline as administered by the faculty.

### Provost and Vice President for Academic Administration

The Provost and Vice President for Academic Administration assists the President in the general operation of the Seminary and provides administrative leadership for the academic administration of the Seminary, including matters related to the seven schools, other educational programs, the library, the faculty and its committees, curricular, and degree programs, and the formation of academic objectives and procedures. The Provost and Vice President for Academic Administration reports directly to the President.

**Administrators Reporting Directly to the Provost and Vice President for Academic Administration:**

> Associate Vice President for Academic Administration
> Associate Vice President for Distributed Learning
> Associate Vice President for Enrollment Management
> Associate Vice President for Institutional Effectiveness/Registrar
> Dean of Students
> Dean of Women
> Director of Professional Doctoral Studies
> Director of Research Doctoral Studies
> School Deans

### Vice President for Business Administration

The Vice President for Business Administration provides administrative leadership in the business administration of the Seminary, especially in relation to the fiscal, financial, legal, and physical functions of its operation. The Vice President for Business Administration reports directly to the President.

**Administrators Reporting Directly to the Vice President for Business Administration:**

> Campus Physician
> Controller
> Director of Business Services
> Director of Dining Services
> Director of Events Management
> Director of Facilities Maintenance
> Director of Housing
> Director of Human Resources

### Vice President for Institutional Advancement

The Vice President for Institutional Advancement provides administrative leadership to all programs having to do with institutional advancement including development, alumni activities,

and general functions. The Vice President for Institutional Advancement reports directly to the President.

**Administrators Reporting Directly to the Vice President for Institutional Advancement:**

>   Director of Advancement Operations
>   Director of Alumni and Church Relations
>   Regional Development Officers

### Vice President for Strategic Initiatives and Chief of Staff

The Vice President for Strategic Initiatives and Chief of Staff provides administrative leadership for the coordination of presidential strategies and initiatives within the President's Cabinet and among various constituencies of the seminary, as well as for the development and implementation of marketing, public relations, and communication strategies.

**Administrators Reporting Directly to the Vice President for Strategic Initiatives and Chief of Staff:**

>   Chief of Campus Police (reports directly to the President through the Chief of Staff)
>   Director of Campus Technology
>   Director of Communications

## General Administration
## Organizational Chart



Board of Trustees

President

Provost and Vice President for Academic Administration

Vice President for Business Administration

Vice President for Institutional Advancement

Vice President for Strategic Initiatives and Chief of Staff

Vice President for Enrollment Management (vacant; division currently reporting to Provost through AVP)

Associate Vice President for Academic Administration

Associate Vice President for Distributed Learning

Associate Vice President for Enrollment Management

Associate Vice President for Institutional Effectiveness/ Registrar

Dean, School of Theology

Dean, Jack D. Terry, Jr. School of Educational Ministries

Dean, School of Church Music and Worship

Dean, Roy Fish School of Evangelism and Missions

Dean, School of Preaching

Dean, L.R. Scarborough College

Dean of Libraries

Dean of Students

Dean of Women

Director of Professional Doctoral Studies

Director of Research Doctoral Studies

Executive Assistant

Campus Physician

Controller

Director of Business Services

Director of Dining Services

Director of Events Management

Director of Facilities Maintenance

Director of Housing

Director of Human Resources

Executive Assistant

Director of Advancement Operations

Director of Alumni and Church Relations

Regional Development Officers (4)

Executive Assistant

Chief of Campus Police (reports directly to President through Chief of Staff)

Director of Campus Technology

Director of Communications

Executive Assistant

## SECTION IV

## ACADEMIC ADMINISTRATION

### President

See Section III for the role and responsibilities of the President related to Academic Administration.

### Provost and Vice President for Academic Administration

See Section III for the role and responsibilities of the Provost and Vice President for Academic Administration related to Academic Administration.

### School Deans

Deans are the primary liaisons between the administration and the faculty. Under the authority of the President and supervision of the Provost and Vice President for Academic Administration, they administer all internal administration including recommendations for faculty evaluation, promotion, discipline, and termination and, when appropriate, recommendations for faculty; provide leadership in the development and direction of curricula; and serve on the Deans' Council.

### Associate Deans

Associate Deans are members of the faculty who assist the respective School Deans in coordinating all the programs of a school. The Associate Dean also represents the Dean at functions where the Dean cannot be present and carries other responsibilities as may be assigned by the Dean. Associate Deans are appointed by the Dean of each school with the approval of the Provost and Vice President for Academic Administration and serve at the pleasure of the Dean.

### Department Chairs or Directors of Study Areas

Department Chairs or Directors of Study Areas are members of the faculty who are responsible, under the leadership of the Dean and/or Associate Dean, for the coordination of instructional matters within a department or area of study. The responsibilities are determined by the Dean and/or Associate Dean in consultation with the Provost and Vice President for Academic Administration.

### Dean of Libraries

The Dean of Libraries is appointed by the President and is directly supervised by the Provost and Vice President for Academic Administration. He shall be a regular member of the faculty with faculty status being granted by the Board of Trustees. He is responsible for all of the libraries of the Seminary, for all acquisitions in the library, for supervision of all personnel related to the libraries, and for the faculty-student library relationships of the institution.

### Dean of Women

The Dean of Women is appointed by the President and is directly supervised by the Provost and Vice President for Academic Administration. The Dean of Women provides administrative oversight of all graduate programs that involve women's studies or women's ministry concentrations, the Leadership Certificate in Women's Ministry, and the Seminary Studies for Student Wives programs. She also provides administrative support for all women's campus organizations including Metochai, the Seminary Women's Club and the Southwestern Women's Fellowship. She is responsible for planning, coordinating, implementation, and budget management for each program or organization through the appropriate administrative levels and policies and serves as the seminary's chief advocate for female students and spouses.

### Registrar

The Registrar is responsible for the maintenance of official records for each student in the Seminary, for the registration of courses, and for the administration of all catalog regulations pertaining to study. The Registrar reports directly to the Provost and Vice President for Academic Administration and relates directly to the Deans, Associate Deans, and Department Chairs of the schools, as well as the Associate Vice President for Institutional Effectiveness, the Director of Campus Technology, and the Controller.

### Provost's Council

The Provost's Council discusses important matters pertaining to the educational and academic mission of the Seminary. It serves as a forum for consultation among and coordination between the schools and the various academic support units. The Provost and Vice President for Academic Administration chairs the Council and serves as the liaison between the Provost's Council and the President's Cabinet. The Provost's Council consists of all the Deans and Associate Vice Presidents in the Academic Administration Division, as well as the Directors of Professional and Research Doctoral Studies.

### School Faculty Meetings

Meetings of the faculty of each of the schools of the Seminary are scheduled by the Dean of the school. All full-time elected and appointed faculty are required to attend. The primary purpose of these meetings is for communication and for conducting the business of the school. Curriculum and degree program proposals or changes must be approved by the school faculty to be recommended to the Provost and Vice President for Academic Administration, and from him ultimately to the President. School meetings shall be chaired by the Dean or, in his absence, by the Associate Dean. Minutes shall be kept by the Office of the Dean. A copy shall be sent to the Office of the Provost.

### General Faculty Meetings

General meetings of the faculty are normally held monthly during the fall and spring semesters. The first faculty meeting of the academic year is held at the Fall Faculty Workshop. The President

presides at all general faculty meetings, or in his absence the Provost and Vice President for Academic Administration will preside over the meeting. Attendance of all resident full-time elected and appointed faculty is required. A record of attendance and minutes of the meeting will be kept by the Office of the Provost. Special meetings may be called by the President or the Provost and Vice President for Academic Administration. The primary purpose for general faculty meetings is communication of matters of interest and concern between the administration and faculty. Actions within the purview of the general faculty include recommendations concerning the curricula and the recommendation of candidates for graduation.

## Current Research, Study, and Ministry Centers and Institutes

**School of Theology** (Directors report to the Dean of the School)

- B.H. Carroll Center for Baptist Heritage and Mission
- Center for Early Christian Studies
- Charles D. Tandy Institute for Archaeology [and Museum]
- Oxford Study Program

**Terry School of Educational Ministries** (Director reports to the Dean of the School)

- Walsh Counseling Center

**School of Church Music and Worship** (Director reports to the Dean of the School)

- Southwestern Center for the Arts

**Fish School of Evangelism and Missions** (Director reports to the Dean of the School)

- World Missions Center

**School of Preaching** (Director reports to the Dean of the School)

- Southwestern Center for Expository Preaching

**Scarborough College** (Director reports to the Dean of the College)

- Writing Center

**Academic Administration
Organizational Chart**



## SECTION V

## FACULTY SERVICE, EVALUATION, AND DEVELOPMENT

There are two types of faculty service at Southwestern Seminary, service by presidential appointment and service by election by the Board of Trustees.

If an administrator is granted faculty status that status shall have the standing of appointed faculty without the requirement of annual renewal. The faculty status shall continue conjointly with the administrative position unless the faculty status is removed by action of the President in consultation with the Provost and Vice President for Academic Administration.

The faculty and teaching staff shall consist of the following:

### Appointed Faculty

**Supplemental Teaching Staff**

The teaching fellow, adjunct teacher, and guest professor are supplemental teachers appointed by the President for a limited term of service, not to exceed one year. The President shall make a report of these appointments to the trustees. These appointments may be renewed by the President for additional terms of up to one year with review by the Academic Administration Committee of the trustees. All such additional relationships shall likewise be reported to the Board by the President. The supplemental teaching staff receives neither faculty privileges, benefits, nor provisions for termination of service.

**Presidential Appointment**

The President may appoint faculty to any of the faculty ranks for a limited term of service, not to exceed two years. The President shall make a report of these appointments to the Board. All such relationships may be renewed for additional limited terms of service upon recommendation of the President and with review by the Academic Administration Committee and the Board. The Presidential appointee receives all faculty privileges and benefits except sabbatic leave and provisions for termination of service.

### Elected Faculty

Elected faculty are those elected by the Board of Trustees upon recommendation by the President for ongoing service subject to regular and periodic review and evaluation. Elected faculty may serve in any of the faculty ranks and receive the benefits and privileges of faculty development including sabbatic leave, opportunity for promotion in rank, retirement, provision for termination of service, and other benefits herein set forth.

## Faculty Ranks

The faculty ranks of trustee-elected faculty are instructor, assistant professor, associate professor, professor, senior professor, and distinguished professor.

### Instructor

The rank of instructor is given to a teacher who holds at least a master's degree along with comparable professional experience in his/her teaching field and who has shown evidence of special ability as a teacher and scholar. An instructor carries a full faculty workload.

### Assistant Professor

The rank of assistant professor is given to a teacher who holds a doctoral degree or its equivalent in professional experience in the field of instruction and who has shown evidence of special ability as a teacher and scholar. An assistant professor carries a full faculty workload.

### Associate Professor

The rank of associate professor is given to a person who has met all of the requirements for appointment as an assistant professor and who has established an unequivocal record of high performance in all areas of the faculty workload: (1) classroom instruction, (2) scholarship and research, (3) student advisement/ counseling, and (4) service. An associate professor carries a full faculty workload.

### Professor

The rank of full professor is given to a teacher who has met all of the requirements for appointment as an associate professor including a doctorate in his/her discipline and is recognized widely within the discipline as a prominent teacher, scholar, or practitioner. The person must also have sustained an unequivocal record of high performance in all areas of the faculty workload: (l) classroom instruction, (2) research and scholarship, (3) student advisement/counseling, and (4) administrative and service. A professor carries a full faculty workload.

### Research Professor

The rank of Research Professor is given at the discretion of the administration to a teacher who has met all the requirements for the rank of professor and who, in the estimation of the administrator and board, is capable of making major contributions in professional research and writing. The rank of Research Professor carries a reduction in teaching load and a research support budget. The salary scale is the same as that used for Full Professors or Distinguished Professors (if the Research Professor also carries that rank) with a research stipend added as part of the research support budget.

**Distinguished Professor**

The rank of Distinguished Professor is an honor which may be conferred upon a faculty member by the trustees upon recommendation of the President. The nominating procedure may be initiated by the school faculty, the school Dean, or by the administration. The position is paid according to the established distinguished professor salary ranking system. Usually no more than 5 percent of the total elected faculty may hold this rank. The criteria for consideration are:

1. Hold the rank of full professor for ten years
2. Normally served Southwestern Seminary for twenty-five or more years
3. Reached the age of sixty-three
4. Performed distinguished service in four or more of the following areas as determined by input from his/her colleagues from his/her school, his/her Dean, and the administration:
   a. outstanding classroom performance
   b. outstanding service in faculty administration
   c. inauguration of new academic programs or methodology
   d. distinguished denominational service and influence
   e. distinguished contribution to scholarly pursuits as in writing, publication, performance and research
   f. distinguished contribution in conferences and lectures
   g. unique academic or ministry recognitions

This rank continues until retirement, when the title becomes "distinguished professor emeritus."

**Senior Professor**

The rank of senior professor is an honor which may be conferred upon a faculty member by the appointment of the President. The faculty member must meet the following criteria in order to be considered for the rank of senior professor:

1. Holds the rank of professor and has served ten or more years at Southwestern Seminary.
2. Has sustained an unequivocal record of high performance in all areas of the faculty workload.
3. Desires to continue teaching on a supplemental basis at Southwestern Seminary.

The rank of senior professor is conferred upon eligible faculty members at the time of retirement from a full-time faculty position. Provisions for the rank of senior professor are:

1. The senior professor retires as a full-time faculty member, with the accompanying Seminary recognition of retirement.
2. The senior professor begins to receive retirement benefits.
3. The Seminary may employ the senior professor for no more than nine hours of teaching, as fits the needs of the Seminary and the desire of the senior professor. This arrangement is negotiated on a year-to-year basis.

Upon the conclusion of supplemental teaching, the title becomes "senior professor emeritus."

## Faculty Teaching Load

The normal teaching load for full-time faculty in all schools of the seminary is 21 hours per year, distributed over two semesters, Fall and Spring, and two terms, Winter and Summer. To calculate the teaching load, the standard measure for master's courses is the number of clock hours a course meets per week factored by the actual course enrollment. Thus, a three-hour master's course is weighted in the teaching load with the following course enrollment factors:

> 15 or more students: full load credit (3 hour course = 3 hours of load credit)
> 11-14 students: two-thirds load credit (3 hour course = 2 hours of load credit)
> 7-10 students: one-half load credit (3 hour course = 1.5 hours of load credit)
> 4-6 students: one-third load credit (3 hour course = 1 hour of load credit)
> 0-3 students: no load credit (3 hour course = 0 hours of load credit)

The standard measure for doctoral courses is one and a half times the number of clock hours a seminar meets per week. Thus, a doctoral seminar that meets for two hours per week will be weighted as three hours in the teaching load.

Faculty will be compensated for supplemental teaching beyond the normal load of 21 hours per year. The compensation level will be at the rate established by the Seminary, currently $1,000.00 per load hour. Supplemental teaching compensation will be paid out annually

The maximum teaching load, including normal and supplemental loads, is 29 hours. Faculty who teach more than 29 hours must have the approval of their Dean as well as the Provost and Vice President for Academic Administration.

The normal teaching load may be composed of courses taught at any time and by any delivery system that seminary classes are taught. Supplemental teaching at the seminary is available as opportunity exists. It is not intended to be a regular part of faculty compensation, nor is it a right to be expected on a regular basis.

Administrative faculty may be given hourly credit in their normal teaching load for administrative duties. The number of hours is set by the Provost and Vice President for Academic Administration in consultation with the school Dean.

## External Employment

While members of the Faculty are encouraged to participate in local church, denominational, scholarly, and professional ministries, no full-time member of the Faculty shall take on regular remunerated employment outside the Seminary except with the approval of the President upon recommendation of the Provost and Vice President for Academic Administration and the appropriate Dean. Any such approval must be reviewed and renewed annually at the beginning of the academic year (August 1). In the case of pulpit supply or other interim church ministry, a person may accept such an interim for a period up to three months without approval.

Faculty are not to teach adjunctively for other institutions without permission from the Provost and Vice President for Academic Administration.

## Academic Freedom and Responsibility

Southwestern Baptist Theological Seminary strives to be a community of teaching and learning, predicated on prayer and Bible study, in which freedom of mind and spirit is accepted as fundamental. Academic freedom is the faculty member's privilege of teaching, writing, and conducting research according to his or her conscience under the guidelines of the Seminary's Statement of Faith. With this freedom comes the obligation to exercise this privilege responsibly.

With respect to Southwestern Seminary, the following principles of academic freedom apply:

1. Within the framework of Christian and civil liberty, the Southern Baptist Convention is free to create and sustain through a Board and administration, an institution charged with the responsibility of moving toward specified objectives and of maintaining certain doctrinal standards.

2. Theological teachers and students have the right of inquiry for truth central to their vocation, and they are free to pursue that inquiry. In its simplest form, academic freedom means that a professor has the right and responsibility to examine all material pertinent to the study of his or her discipline and to expose students to various alternative interpretations. The professor has the freedom of full investigation.

3. The teacher shall be free to teach, carry on research, and to publish, subject to adequate performance of assigned academic duties, but must advocate a position consistent with and not contrary to the Seminary's Statement of Faith.

4. Responsible teachers shall have freedom in the classroom to discuss the subject in which they are qualified without limits except as prescribed herein. The teacher shall be free to express and act upon conscientious convictions as an individual citizen although he or she should realize that one always tacitly represents one's institution and must therefore exercise good judgment.

5. Southwestern Baptist Theological Seminary sustains a covenant relationship with the churches of the Southern Baptist Convention. It is within this context that the responsibilities of academic freedom must be exercised. The special privilege of the seminary professor within the Southern Baptist Convention imposes special obligations. Hence, he or she should at all times be accurate, exercise appropriate restraint, show respect for the opinion of others, and seek to relate constructively to the Southern Baptist Convention. Acceptance of a teaching position at Southwestern Baptist Theological Seminary assumes and requires an eagerness to work within the context of the Southern Baptist Convention and its churches, as well as an understanding of the special obligations incumbent upon a denominational seminary.

6. All faculty and staff have an obligation to support and relate constructively to the Seminary, its policies and administration. Members of the faculty and staff may not abuse their position by undermining or obstructing the policies of the institution. They are not to act

in ways injurious or detrimental to the Seminary or its relationships with the denomination, donors, or other constituencies, within and without the Seminary community.

## Faculty Evaluation

### Annual Faculty Evaluation

Prior to the beginning of the next school year, the Dean and faculty member review the past year's performance in each of the five areas of responsibility. The faculty member will complete the self-appraisal and list or identify key activities/involvements in each of these five areas of responsibility. The Dean will comment on the evaluation and make an overall assessment with commendations and notations.

Faculty members will also write goals for areas in which they intend to give priority attention. An annual interview between the faculty member and the Dean will include a review of the Annual Evaluation. For areas in which improvement is needed, goals and evaluation procedures will be developed to assist the faculty member.

### Student Rating of Teaching

The evaluation instrument(s) contains items related to role of the teacher, teacher performance, student outcomes, evaluation and grading, student teacher relations and general items, such as whether or not the student would recommend this course to another student.

The Student Rating of Teaching is conducted for each course (not necessarily each section) once a year for each professor. The Deans and teachers will agree on which semester the course is evaluated. This will provide better documentation and more consistent information for the Deans/faculty review each Spring.

### Uses of Faculty Evaluation

Results of the Annual Faculty Evaluation and Student Rating of Teaching become a part of the continuing profile of faculty performance. This data becomes a basis for equitable workload assignments, personnel decisions, and faculty development plans.

## Faculty Promotion

Faculty promotion is generally understood to be the progress from rank to rank made by the teacher during his/her career. The same principles of evaluation govern promotion through the intermediate steps within a rank, however. These principles include an assessment of the student evaluation of teaching and the faculty member's overall annual evaluation.

It is expected that evaluation, planning, and achievement will help forge the bond of fellowship to the end that both the teacher and the Seminary can expect a long and fruitful association in the successful pursuit of the basic purposes of the Seminary.

## Administration of Promotion

Promotion is based upon two factors – level of performance and length of service. It should be noted that length of service alone is not sufficient for promotion. Level of performance is measured through the Annual Faculty Evaluation and the Student Rating of Teaching.

Promotions from rank to rank are recommended by the School Dean to the Provost and Vice President for Academic Administration, and if favorable from him to the President.

The President's recommendations are presented to the Board of Trustees through the report of the Academic Administration Committee and are acted upon by them in their regular order of business.

In consideration of promotion from rank to rank, length of service is considered along with performance level, and the existence of a position open at the rank. The following are generally understood minimum service times for rank to rank promotion:

***Promotion to Assistant Professor:*** Meets or exceeds performance expectations through service as instructor. Possession of the requisite doctoral degree is required.

***Promotion to Associate Professor:*** Meets or exceeds performance expectations through at least seven years service as an Assistant Professor.

***Promotion to Full Professor:*** Meets or exceeds performance expectations through at least fourteen years of faculty service, including seven years as an Associate Professor.

## Faculty Development

Faculty development at Southwestern Seminary refers to the planning and implementation of intentional policies and programs designed to encourage and enable faculty members to grow toward their full potential as persons, scholars, and teachers.

While this manual necessarily spells out programs sponsored and funded by the Seminary, the faculty member retains primary responsibility for his/her own personal and professional development. The Seminary can and will provide certain opportunities for growth; only the individual faculty member can provide the inner desire and determination to make the most of these opportunities.

In general, teachers will be free to elect faculty development activities in areas of their interests and perceived needs. In some cases, however, a teacher may be requested by the Dean and/or Provost and Vice President for Academic Administration to participate in programs or activities which evaluation of faculty performance has indicated would be especially helpful.

The Seminary has a large and varied faculty, distributed among the various schools. Academic disciplines, teaching assignments, and teaching methods vary widely. No one approach to faculty development will meet the needs of all. Despite this diversity, however, some common needs and concerns are shared. Therefore, the Seminary will provide some development activities for the

entire faculty; others will be tailored to meet the distinctive needs of separate schools and individuals.

While the Seminary has development programs for personnel in other categories, eligibility for programs described here shall be limited to elected faculty. Any exceptions may be approved by the Dean, the Provost and Vice President for Academic Administration, and the President.

## Sabbatic Leave Program

The sabbatic leave program constitutes the major faculty development activity, in terms of time and resources. It is designed to demonstrate the Seminary's commitment to the development of the faculty member as well as enhance the faculty member's service to the Seminary. As a major component of the faculty development program, it seeks to advance (1) the academic qualifications, (2) the professional preparation, and (3) the cultural experiences of faculty members.

The purpose of each sabbatic leave, normally scheduled at the end of six years of service, is to relieve the faculty member of all regular responsibilities in order to engage intensively in academic study, writing for publication, related research, review of course content and teaching methodology, and other activities conducive to enriching one's service to the Seminary.

The sabbatic leave is not guaranteed, but is an academic responsibility granted by the Board of Trustees upon recommendation of the President, subject to (1) the worthwhileness of the study proposal, (2) instructional provisions in the faculty member's discipline, and (3) the availability of Seminary resources.

In order to fulfill the sabbatic leave purpose and to be good stewards of this major investment of Seminary resources, the following guidelines are to be followed:

*Request/Proposal/Approval.* A written description of the proposed leave program should be submitted in accordance with the dates of the current academic calendar. The proposal should show a direct relationship to the faculty member's evaluation and development plan. Copies are to be submitted to and ultimately approved by the faculty member's Dean, the Provost and Vice President for Academic Administration, and the President.

*Schedule.* A full-year leave may only be granted after a six-year period of full academic responsibility. At the discretion of the administration a six-month leave may be granted after seven semesters (three and one-half years). A faculty member who delays a sabbatic must reschedule the leave in light of the total school program. If the delay is requested by the administration, priority will be given to rescheduling the leave.

*Length of Leave.* Sabbatic leave programs are normally for six months or for one full year.

*Scheduling Notes.* A full-year sabbatic leave shall be twelve calendar months. A six-month leave shall be scheduled for either August 1-January 31 or February 1-July 31.

A faculty member must serve at least two years after any sabbatic leave or return to the Seminary the salary and benefits received during the leave.

**Salary and Benefits.** Full salary and benefits are paid during the period of a sabbatic leave. Convention and professional allowances may be granted, depending on available resources, during the leave. Sabbatic leave assistance funds may also be requested and granted, based on the current guidelines and available resources.

**Leave Report.** At the conclusion of the leave a faculty member submits a written report of his/her leave program, setting out his/her activities, accomplishments, results, and evaluation of the experience. Each sabbatic shall include a review and evaluation of the faculty member's course content and teaching methodology. Copies of the report shall be submitted to the respective Dean, the Provost and Vice President for Academic Administration, and the President.

**Sabbatic and Annual Workload.** A twelve-month sabbatic shall constitute 100 percent of the faculty member's workload for that year; a six-month sabbatic shall constitute 50 percent of that year's workload.

## Attendance at the Southern Baptist Convention

Since the Seminary is an entity of the Southern Baptist Convention, it is important that faculty members be informed and active participants in convention life. Attendance at the annual meetings of the Southern Baptist Convention is encouraged. Some faculty may be asked to attend the convention to help represent the Seminary. Responsibilities will be communicated to those invited to help in this way, as well as coverage for travel expenses.

## Faculty Off-Campus Development

The Seminary will make provisions to encourage and enable the faculty to participate in off-campus growth opportunities, such as attendance at professional society meetings, professional development workshops, and additional graduate study.

### Funding

During annual budget planning, the seminary will establish an annual funding level for off-campus development to be administered by the Provost and Vice President for Academic Administration. The Office of the Provost will communicate with faculty members about processes for funding requests annually.

### Options for Faculty Off-Campus Development

**Professional Societies.** Recognizing the value of communication among professionals in the same or similar fields, the Seminary encourages every faculty member to hold membership, attend regularly, and participate actively in at least one national scholarly society appropriate to his/her academic discipline.

***Professional Growth Seminars.*** A number of organizations, such as ATS, SACS, NASM, SPCE, faculty development institutes, foundations, and other professional organizations frequently sponsor seminars/workshops which could enhance faculty development.

## Faculty On-Campus Development

The Seminary will maintain a continuing program of faculty development on campus (or in the Fort Worth-Dallas Metroplex). This program shall be under the direction of the Provost and Vice President for Academic Administration.

### Professional Growth Workshops

From time to time the Seminary will sponsor, or invite other organizations to sponsor, workshops on our campus which may enhance the personal and/or professional growth and competence of the faculty.

### Annual Faculty Workshop

The Annual Faculty Workshop provides opportunity for fellowship and personal growth, spiritual renewal and commitment, planning for the school year, and such other programs and emphases as may seem appropriate from time to time. Planning for the workshop is under the direction of the Provost and Vice President for Academic Administration in consultation with the President. The workshop, held at the beginning of the Fall semester, constitutes the opening of the official school year. All faculty not on sabbatic out-of-town are expected to attend the Faculty Workshop.

### Publication

To encourage scholarship and publication, the Seminary may grant reduction of teaching load and additional secretarial assistance in preparing manuscripts for publication, according to the following guidelines. These provisions shall apply to the preparation of a book or major composition in the faculty member's field. They would not apply to articles or church curriculum materials such as Sunday School lessons.

To qualify for this assistance the faculty member must meet the following qualifications:

1. Must normally have completed at least three years teaching at Southwestern and hold the rank of Professor.
2. Must have a contract or firm commitment for publication of the proposed manuscript.
3. May be granted the equivalent of a three-hour reduction of teaching load for one or two semesters according to the nature of the project.
4. Must have the approval of Dean and Provost and Vice President for Academic Administration.
5. Eligibility limited for one person to no more than one year in three; no more than 15 percent of the faculty with such reduction at any one time.

Those who have books in preparation with a contract or firm commitment from a publisher (whether or not qualifying for a reduction in teaching load) may be allowed additional secretarial assistance for one typing of the manuscript, ordinarily the final copy.

## SECTION VI

## GENERAL INFORMATION, RULES, POLICIES, AND BENEFITS

### Employee Holidays

The seminary provides the following paid holidays:

> Labor Day
> Thanksgiving
> Christmas
> New Year's Day
> Martin Luther King, Jr.'s Birthday
> Good Friday
> Memorial Day
> Independence Day

Each year the administration will establish the holiday calendar.

### Vacation

The Seminary provides for a one-month vacation with pay. Outside work activities during vacation are discouraged but are at the discretion of the faculty member.

The normal vacation period is usually between Spring Commencement and the Fall Faculty Workshop. All vacations should be scheduled in such a way as not to hamper the faculty member's responsibilities. Vacation periods should be scheduled with the appropriate Dean for purposes of good planning and communication.

### Personal Engagements

The Seminary allows a professor leave for up to one week each semester for personal professional engagements, including the summer. A professor may not accept an engagement requiring absence from class teaching responsibility in excess of the number of times a class meets per week within any semester. Beyond this period, any absence that may be termed "official Seminary business" shall have advance approval of the School Dean and the Provost and Vice President for Academic Administration.

### Leaves of Absence

Leaves of absence may be granted to maintain continuity of service in instances where unusual or unavoidable circumstances require a faculty member's absence. Such leaves are considered a privilege to be granted on the assumption that the faculty member will be available to return to regular employment when the conditions necessitating the leave are resolved.

A leave of absence does not apply to a faculty member who is off work because of accidental injury incurred while on the job.

**Payment Provisions for Leaves of Absence**

*Illness/Emergency Leave.* A faculty member may be absent with pay during times of personal illness or serious emergency in his/her immediate family. Excessive absences, beyond ten days in one school year, should have the approval of the school Dean. The Dean shall keep the Provost and Vice President for Academic Administration informed of the situation. For clarification, immediate family normally includes father, mother, brother, sister, spouse, child, father-in-law, mother-in-law, brother-in-law, sister-in-law, grandparents and grandparents of spouse.

*Medical Leave.*

With Pay: A paid medical leave of up to a maximum of three (3) months may be granted upon the approval of the President. The employee must provide documentation from their attending physician indicating the medical reason for the leave of absence. Medical leave ends when their attending physician indicates through a written statement that the employee is able to return to work or the maximum three (3) month period has been reached. Full salary will be continued during the medical leave. The employee should keep the Director of Human Resources informed through regular progress reports. In order for the paid medical leave to be approved, the employee must express a clear intent to return to work. If the employee does not return to work, or returns for a period less than 3 months, the employee will be responsible for reimbursing the full amount of salary paid during the medical leave. Vacation and illness/emergency allowance will not accrue during the time the employee is absent due to medical leave with pay. Medical leave will also run conjunctively with Family Medical Leave.

Without Pay: In the case of a faculty members who do not intend to return to Seminary employment following a medical leave, if requested and qualifications are met, the Seminary will continue their employment on "Medical Leave Without Pay" status with full coverage under the insurance program only. Such employees must provide documentation from their attending physician indicating the medical reason for the leave of absence. Medical leave ends when their attending physician indicates through a written statement that the employee is able to return to work or the maximum three (3) month period has been reached. At that time, the Medical Leave Without Pay and the insurance benefit will be discontinued and their employment status will be changed to inactive. Vacation and illness/emergency allowance will not accrue and retirement benefits will not be paid during the time the employee is absent due to Medical Leave Without Pay.

*Absence for Jury Duty.* The Seminary will continue salary in full for the faculty member called to jury duty. Jury absence, although reported, will not be counted in determining excessive absence.

*Military Leave.* Faculty members will be granted leaves of absence for military training in the Guard or Reserve, with the Seminary paying the differential (if any) between the military compensation and the faculty member's Seminary salary.

In addition, should an individual be called to active military service, the Seminary will continue full salary and benefits less any salary or benefits received as payment for active military service for a period of up to 180 days. After the 180-day period, the salary and benefits are subject to termination pending an individual review of circumstances.

***Personal Leave.*** A leave of absence without pay may be granted for compelling personal reasons upon approval by the School Dean, the Provost and Vice President for Academic Administration, and the President, providing adequate arrangements can be made for the faculty member's responsibilities during the leave.

***Family and Medical Leave.*** Family and Medical Leave information can be found in the Employee Handbook.

## Service Awards

The Seminary values the productive and continued service of its faculty members. Each faculty member who observes an anniversary on five-year intervals receives a service award. Award levels and amounts are set by Seminary administration.

## A Second Doctorate

In order to recognize achievement, to affirm personal effort, and to offer additional motivation for outstanding academic effort, a one-step promotion is given to a faculty member who, having taken advantage of the sabbatical leave program, earns a second doctorate that directly enhances the faculty member's area of teaching. For a faculty member who, prior to taking advantage of the sabbatical leave program, earns a second doctorate that directly enhances the faculty member's area of teaching, a two-step promotion is given. Prior to pursuing the degree the faculty member should have an understanding with the School Dean and the Provost and Vice President for Academic Administration about how the degree contributes to the Seminary, the division, and the department and how it directly enhances the faculty member's area of teaching. For the purpose of budget planning, the Dean and the Provost and Vice President for Academic Administration should be notified as far as possible in advance of the receipt of the degree. The promotion will be reflected in the payroll check in the month following the receipt of the degree.

## Housing Allowance Policy

For all faculty members the salary as stated in compensation includes salary and housing. Housing allowance for ordained personnel designations may be elected by percentage of salary but must be justified as the individual files his tax return. In addition, housing allowance percentages may not be declared in amounts that would lower the individual's salary to the point the Seminary would not be able to make the current tax-deferred retirement contribution on behalf of the employee. In order for an employee to be eligible for matching retirement funds as provided in this manual, the matching dollars must qualify as tax-deferred dollars. (Note: There is a direct relationship between eligibility for tax-deferred dollars and housing allowance deductions.) The percentage of designation must be submitted annually to the Director of Human Resources on forms provided by that office.

## Medical Services

Employees and their dependents may obtain medical services from the Southwestern Seminary Campus Clinic. Contact the Campus Clinic for their hours of operation.

## Recreation Aerobics Center (RAC)

A faculty member and eligible family members may participate fully in the program of activities provided through the RAC. Physical fitness is encouraged for all faculty members.

## Seminary Education Benefit

Faculty members are eligible for a Seminary Education Benefit for themselves or one of their dependents. The total benefit available shall be an amount set annually by the President. The amount of the benefit is contingent upon availability of Seminary resources and the number of applicants. For enrollment in credit and/or audit courses at the Seminary, the Southern Baptist tuition fee, student campus fee, and audit fee are covered by the education benefit. Conference courses are not included. All admissions and academic requirements for enrollment must be met. Recipients of this benefit must have the Registrar's office verify the benefit prior to the beginning of registration. Doctoral students who are permanent staff or the husband, wife, or child of a faculty member can attend the Seminary without tuition charge, campus fee, continuing enrollment fee, or dissertation fee. After verification, recipients will follow the normal registration procedures.

All other fees are to be paid by the recipient and are not included in this benefit. The IRS considers the educational benefit taxable for all graduate degree work but allows and exemption for diploma degree work. For employees who receive the education benefit, according to the IRS standards, a total of $5,250 can be tax deferred during a calendar year. An amount applied to your student account over the IRS limit of $5,250 will be taxed during the Fall semester. The seminary will collect both income tax and social security tax on the education benefit amount as determined at the end of late registration. The taxes will be collected over the four (4) pay periods following late registration for Spring and Fall semesters and over the two pay periods following late registration for the summer semester.

For Seminary employees, class schedules during regular work hours are discouraged. In unusual cases, however, the supervisor may approve a flexible work schedule to permit such enrollment.

## Free Parking

Each faculty member receives a parking permit for parking in designated lots. This permit is received at the time of employment and is renewed periodically through the Office of Human Resources.

## Retirement/Insurance Benefits

As part of total compensation, the Seminary provides insurance coverage and a retirement plan for faculty members and their dependents. Premiums for life, group accident, long-term disability, and comprehensive family health coverage are paid by the Seminary as tax-free benefits. Dependent life for spouse and children, if paid for by the Seminary, is a taxable benefit. Coverage begins with the faculty member's date of employment and is subject to the guidelines for medical insurance as provided by the current carrier. In the event of resignation or termination, coverage ceases with the final day of employment; there is no run-out period. Health, dental and life insurance may be converted to a private policy with the carrier if such plan is available through the carrier. Specific details related to these and other benefits are available from the Office of Human Resources.

## APPENDIX 1

## THE STATEMENT OF FAITH AND GUIDING DOCUMENTS OF SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY

## THE BAPTIST FAITH AND MESSAGE

### Preamble

Baptists are a people of deep beliefs and cherished doctrines. Throughout our history we have been a confessional people, adopting statements of faith as a witness to our beliefs and a pledge of our faithfulness to the doctrines revealed in Holy Scripture.

Our confessions of faith are rooted in historical precedent, as the church in every age has been called upon to define and defend its beliefs. Each generation of Christians bears the responsibility of guarding the treasury of truth that has been entrusted to us [II Timothy 1:14]. Facing a new century, Southern Baptists must meet the demands and duties of the present hour.

New challenges to faith appear in every age. A pervasive anti-supernaturalism in the culture was answered by Southern Baptists in 1925, when The *Baptist Faith and Message* was first adopted by this Convention. In 1963, Southern Baptists responded to assaults upon the authority and truthfulness of the Bible by adopting revisions to The *Baptist Faith and Message*. The Convention added an article on "The Family" in 1998, thus answering cultural confusion with the clear teachings of Scripture. Now, faced with a culture hostile to the very notion of truth, this generation of Baptists must claim anew the eternal truths of the Christian faith.

Your Committee respects and celebrates the heritage of The *Baptist Faith and Message*, and affirms the decision of the Convention in 1925 to adopt the *New Hampshire Confession of Faith*, "revised at certain points and with some additional articles growing out of certain needs . . . ." We also respect the important contributions of the 1925 and 1963 editions of The *Baptist Faith and Message*.

With the 1963 Committee, we have been guided in our work by the 1925 "statement of the historic Baptist conception of the nature and function of confessions of faith in our religious and denominational life . . . ." It is, therefore, quoted in full as a part of this report to the Convention:

(1) That they constitute a consensus of opinion of some Baptist body, large or small, for the general instruction and guidance of our own people and others concerning those articles of the Christian faith which are most surely held among us. They are not intended to add anything to the simple conditions of salvation revealed in the New Testament, viz., repentance toward God and faith in Jesus Christ as Saviour and Lord.

(2) That we do not regard them as complete statements of our faith, having any quality of finality or infallibility. As in the past so in the future, Baptists should hold themselves free to revise their statements of faith as may seem to them wise and expedient at any time.

(3) That any group of Baptists, large or small, have the inherent right to draw up for themselves and publish to the world a confession of their faith whenever they may think it advisable to do so.

(4) That the sole authority for faith and practice among Baptists is the Scriptures of the Old and New Testaments. Confessions are only guides in interpretation, having no authority over the conscience.

(5) That they are statements of religious convictions, drawn from the Scriptures, and are not to be used to hamper freedom of thought or investigation in other realms of life.

Baptists cherish and defend religious liberty, and deny the right of any secular or religious authority to impose a confession of faith upon a church or body of churches. We honor the principles of soul competency and the priesthood of believers, affirming together both our liberty in Christ and our accountability to each other under the Word of God.

Baptist churches, associations, and general bodies have adopted confessions of faith as a witness to the world, and as instruments of doctrinal accountability. We are not embarrassed to state before the world that these are doctrines we hold precious and as essential to the Baptist tradition of faith and practice.

As a Committee, we have been charged to address the "certain needs" of our own generation. In an age increasingly hostile to Christian truth, our challenge is to express the truth as revealed in Scripture, and to bear witness to Jesus Christ, who is "*the Way, the Truth, and the Life*."

The 1963 Committee rightly sought to identify and affirm "certain definite doctrines that Baptists believe, cherish, and with which they have been and are now closely identified." Our living faith is established upon eternal truths. "Thus this generation of Southern Baptists is in historic succession of intent and purpose as it endeavors to state for its time and theological climate those articles of the Christian faith which are most surely held among us."

It is the purpose of this statement of faith and message to set forth certain teachings which we believe.

## I. The Scriptures

The Holy Bible was written by men divinely inspired and is God's revelation of Himself to man. It is a perfect treasure of divine instruction. It has God for its author, salvation for its end, and truth, without any mixture of error, for its matter. Therefore, all Scripture is totally true and trustworthy. It reveals the principles by which God judges us; and therefore is, and will remain to the end of the world, the true center of Christian union, and the supreme standard by which all human conduct, creeds, and religious opinions should be tried. All Scripture is a testimony to Christ, who is Himself the focus of divine revelation.

## II. God

There is one and only one living and true God. He is an intelligent, spiritual, and personal Being, the Creator, Redeemer, Preserver, and Ruler of the universe. God is infinite in holiness and all other perfections. God is all powerful and all knowing; and His perfect knowledge extends to all things, past, present, and future, including the future decisions of His free creatures. To Him we owe the highest love, reverence, and obedience. The eternal triune God reveals Himself to us as Father, Son, and Holy Spirit, with distinct personal attributes, but without division of nature, essence, or being.

**A. God the Father** God as Father reigns with providential care over His universe, His creatures, and the flow of the stream of human history according to the purpose of His grace. He is all powerful, all knowing, all loving, and all wise. God is Father in truth to those who become children of God through faith in Jesus Christ. He is fatherly in His attitude toward all men.

**B. God the Son** Christ is the eternal Son of God. In His incarnation as Jesus Christ He was conceived of the Holy Spirit and born of the virgin Mary. Jesus perfectly revealed and did the will of God, taking upon Himself human nature with its demands and necessities and identifying Himself completely with mankind yet without sin. He honored the divine law by His personal obedience, and in His substitutionary death on the cross He made provision for the redemption of men from sin. He was raised from the dead with a glorified body and appeared to His disciples as the person who was with them before His crucifixion. He ascended into heaven and is now exalted at the right hand of God where He is the One Mediator, fully God, fully man, in whose Person is effected the reconciliation between God and man. He will return in power and glory to judge the world and to consummate His redemptive mission. He now dwells in all believers as the living and ever present Lord.

**C. God the Holy Spirit** The Holy Spirit is the Spirit of God, fully divine. He inspired holy men of old to write the Scriptures. Through illumination He enables men to understand truth. He exalts Christ. He convicts men of sin, of righteousness, and of judgment. He calls men to the Saviour, and effects regeneration. At the moment of regeneration He baptizes every believer into the Body of Christ. He cultivates Christian character, comforts believers, and bestows the spiritual gifts by which they serve God through His church. He seals the believer unto the day of final redemption. His presence in the Christian is the guarantee that God will bring the believer into the fullness of the stature of Christ. He enlightens and empowers the believer and the church in worship, evangelism, and service.

## III. Man

Man is the special creation of God, made in His own image. He created them male and female as the crowning work of His creation. The gift of gender is thus part of the goodness of God's creation. In the beginning man was innocent of sin and was endowed by His Creator with freedom of choice. By his free choice man sinned against God and brought sin into the human race. Through the temptation of Satan man transgressed the command of God, and fell from his original innocence whereby his posterity inherit a nature and an environment inclined toward sin. Therefore, as soon as they are capable of moral action, they become transgressors and are under

condemnation. Only the grace of God can bring man into His holy fellowship and enable man to fulfill the creative purpose of God. The sacredness of human personality is evident in that God created man in His own image, and in that Christ died for man; therefore, every person of every race possesses full dignity and is worthy of respect and Christian love.

## IV. Salvation

Salvation involves the redemption of the whole man, and is offered freely to all who accept Jesus Christ as Lord and Saviour, who by His own blood obtained eternal redemption for the believer. In its broadest sense salvation includes regeneration, justification, sanctification, and glorification. There is no salvation apart from personal faith in Jesus Christ as Lord.

**A.**  Regeneration, or the new birth, is a work of God's grace whereby believers become new creatures in Christ Jesus. It is a change of heart wrought by the Holy Spirit through conviction of sin, to which the sinner responds in repentance toward God and faith in the Lord Jesus Christ. Repentance and faith are inseparable experiences of grace.

Repentance is a genuine turning from sin toward God. Faith is the acceptance of Jesus Christ and commitment of the entire personality to Him as Lord and Saviour.

**B.** Justification is God's gracious and full acquittal upon principles of His righteousness of all sinners who repent and believe in Christ. Justification brings the believer unto a relationship of peace and favor with God.

**C.**  Sanctification is the experience, beginning in regeneration, by which the believer is set apart to God's purposes, and is enabled to progress toward moral and spiritual maturity through the presence and power of the Holy Spirit dwelling in him. Growth in grace should continue throughout the regenerate person's life.

**D.** Glorification is the culmination of salvation and is the final blessed and abiding state of the redeemed.

## V. God's Purpose of Grace

Election is the gracious purpose of God, according to which He regenerates, justifies, sanctifies, and glorifies sinners. It is consistent with the free agency of man, and comprehends all the means in connection with the end. It is the glorious display of God's sovereign goodness, and is infinitely wise, holy, and unchangeable. It excludes boasting and promotes humility.

All true believers endure to the end. Those whom God has accepted in Christ, and sanctified by His Spirit, will never fall away from the state of grace, but shall persevere to the end. Believers may fall into sin through neglect and temptation, whereby they grieve the Spirit, impair their graces and comforts, and bring reproach on the cause of Christ, and temporal judgments on themselves; yet they shall be kept by the power of God through faith unto salvation.

## VI. The Church

A New Testament church of the Lord Jesus Christ is an autonomous local congregation of baptized believers, associated by covenant in the faith and fellowship of the gospel; observing the two ordinances of Christ, governed by His laws, exercising the gifts, rights, and privileges invested in them by His Word, and seeking to extend the gospel to the ends of the earth. Each congregation operates under the Lordship of Christ through democratic processes. In such a congregation each member is responsible and accountable to Christ as Lord. Its scriptural officers are pastors and deacons. While both men and women are gifted for service in the church, the office of pastor is limited to men as qualified by Scripture.

The New Testament speaks also of the church as the body of Christ which includes all of the redeemed of all the ages, believers from every tribe, and tongue, and people, and nation.

## VII. Baptism and the Lord's Supper

Christian baptism is the immersion of a believer in water in the name of the Father, the Son, and the Holy Spirit. It is an act of obedience symbolizing the believer's faith in a crucified, buried, and risen Saviour, the believer's death to sin, the burial of the old life, and the resurrection to walk in newness of life in Christ Jesus. It is a testimony to his faith in the final resurrection of the dead. Being a church ordinance, it is prerequisite to the privileges of church membership and to the Lord's Supper.

The Lord's Supper is a symbolic act of obedience whereby members of the church, through partaking of the bread and the fruit of the vine, memorialize the death of the Redeemer and anticipate His second coming.

## VIII. The Lord's Day

The first day of the week is the Lord's Day. It is a Christian institution for regular observance. It commemorates the resurrection of Christ from the dead and should include exercises of worship and spiritual devotion, both public and private. Activities on the Lord's Day should be commensurate with the Christian's conscience under the Lordship of Jesus Christ.

## IX. The Kingdom

The Kingdom of God includes both His general sovereignty over the universe and His particular kingship over men who willfully acknowledge Him as King. Particularly the Kingdom is the realm of salvation into which men enter by trustful, childlike commitment to Jesus Christ. Christians ought to pray and to labor that the Kingdom may come and God's will be done on earth. The full consummation of the Kingdom awaits the return of Jesus Christ and the end of this age.

## X. Last Things

God, in His own time and in His own way, will bring the world to its appropriate end. According to His promise, Jesus Christ will return personally and visibly in glory to the earth; the

dead will be raised; and Christ will judge all men in righteousness. The unrighteous will be consigned to Hell, the place of everlasting punishment. The righteous in their resurrected and glorified bodies will receive their reward and will dwell forever in Heaven with the Lord.

## XI. Evangelism and Missions

It is the duty and privilege of every follower of Christ and of every church of the Lord Jesus Christ to endeavor to make disciples of all nations. The new birth of man's spirit by God's Holy Spirit means the birth of love for others. Missionary effort on the part of all rests thus upon a spiritual necessity of the regenerate life, and is expressly and repeatedly commanded in the teachings of Christ. The Lord Jesus Christ has commanded the preaching of the gospel to all nations. It is the duty of every child of God to seek constantly to win the lost to Christ by verbal witness under girded by a Christian lifestyle, and by other methods in harmony with the gospel of Christ.

## XII. Education

Christianity is the faith of enlightenment and intelligence. In Jesus Christ abide all the treasures of wisdom and knowledge. All sound learning is, therefore a part of our Christian heritage. The new birth opens all human faculties and creates a thirst for knowledge. Moreover, the cause of education in the Kingdom of Christ is co-ordinate with the causes of missions and general benevolence, and should receive along with these the liberal support of the churches. An adequate system of Christian education is necessary to a complete spiritual program for Christ's people.

In Christian education there should be a proper balance between academic freedom and academic responsibility. Freedom in an orderly relationship of human life is always limited and never absolute. The freedom of a teacher in a Christian school, college, or seminary is limited by the pre-eminence of Jesus Christ, by the authoritative nature of the Scriptures, and by the distinct purpose for which the school exists.

## XIII. Stewardship

God is the source of all blessings, temporal and spiritual; all that we have and are we owe to Him. Christians have a spiritual debtorship to the whole world, a holy trusteeship in the gospel, and a binding stewardship in their possessions. They are therefore under obligation to serve Him with their time, talents, and material possessions; and should recognize all these as entrusted to them to use for the glory of God and for helping others. According to the Scriptures, Christians should contribute of their means, cheerfully, regularly, systematically, proportionately, and liberally for the advancement of the Redeemer's cause on earth.

## XIV. Cooperation

Christ's people should, as occasion requires, organize such associations and conventions as may best secure cooperation for the great objects of the Kingdom of God. Such organizations have no authority over one another or over the churches. They are voluntary and advisory bodies

designed to elicit, combine, and direct the energies of our people in the most effective manner. Members of New Testament churches should cooperate with one another in carrying forward the missionary, educational, and benevolent ministries for the extension of Christ's Kingdom. Christian unity in the New Testament sense is spiritual harmony and voluntary cooperation for common ends by various groups of Christ's people. Cooperation is desirable between the various Christian denominations, when the end to be attained is itself justified, and when such cooperation involves no violation of conscience or compromise of loyalty to Christ and His Word as revealed in the New Testament.

## XV. The Christian and the Social Order

All Christians are under obligation to seek to make the will of Christ supreme in our own lives and in human society. Means and methods used for the improvement of society and the establishment of righteousness among men can be truly and permanently helpful only when they are rooted in the regeneration of the individual by the saving grace of God in Jesus Christ. In the spirit of Christ, Christian should oppose racism, every form of greed, selfishness, and vice, and all forms of sexual immorality, including adultery, homosexuality, and pornography. We should work to provide for the orphaned, the needy, the abused, the aged, the helpless, and the sick. We should speak on behalf of the unborn and contend for the sanctity of all human life from conception to natural death. Every Christian should seek to bring industry, government, and society as a whole under the sway of the principles of righteousness, truth, and brotherly love.  In order to promote these ends Christians should be ready to work with all men of good will in any good cause, always being careful to act in the spirit of love without compromising their loyalty to Christ and His truth.

## XVI. Peace and War

It is the duty of Christians to seek peace with all men on principles of righteousness. In accordance with the spirit and teachings of Christ they should do all in their power to put an end to war.

The true remedy for the war spirit is the gospel of our Lord. The supreme need of the world is the acceptance of His teachings in all the affairs of men and nations, and the practical application of His law of love. Christian people throughout the world should pray for the reign of the Prince of Peace.

## XVII. Religious Liberty

God alone is Lord of the conscience, and He has left it free from the doctrines and commandments of men which are contrary to His Word or not contained in it. Church and state should be separate. The state owes to every church protection and full freedom in the pursuit of its spiritual ends. In providing for such freedom no ecclesiastical group or denomination should be favored by the state more than others. Civil government being ordained of God, it is the duty of Christians to render loyal obedience thereto in all things not contrary to the revealed will of God. The church should not resort to the civil power to carry on its work. The gospel of Christ contemplates spiritual means alone for the pursuit of its ends. The state has no right to impose penalties for religious opinions of any kind. The state has no right to impose taxes for the support

of any form of religion. A free church in a free state is the Christian ideal, and this implies the right of free and unhindered access to God on the part of all men, and the right to form and propagate opinions in the sphere of religion without interference by the civil power.

## XVIII. The Family

God has ordained the family as the foundational institution of human society. It is composed of persons related to one another by marriage, blood, or adoption.

Marriage is the uniting of one man and one woman in covenant commitment for a lifetime. It is God's unique gift to reveal the union between Christ and His church, and to provide for the man and the woman in marriage the framework for intimate companionship, the channel of sexual expression according to biblical standards, and the means for procreation of the human race.

The husband and wife are of equal worth before God, since both are created in God's image. The marriage relationship models the way God relates to His people. A husband is to love his wife as Christ loved the church. He has the God-given responsibility to provide for, to protect, and to lead his family. A wife is to submit herself graciously to the servant leadership of her husband even as the church willingly submits to the headship of Christ. She, being in the image of God as is her husband and thus equal to him, has the God-given responsibility to respect her husband and to serve as his helper in managing the household and nurturing the next generation.

Children, from the moment of conception, are a blessing and heritage from the Lord. Parents are to demonstrate to their children God's pattern for marriage. Parents are to teach their children spiritual and moral values and to lead them, through consistent lifestyle example and loving discipline, to make choices based on biblical truth. Children are to honor and obey their parents.

## THE CHICAGO STATEMENT ON BIBLICAL INERRANCY

### A Short Statement

1. God, who is Himself Truth and speaks truth only, has inspired Holy Scripture in order thereby to reveal Himself to lost mankind through Jesus Christ as Creator and Lord, Redeemer and Judge. Holy Scripture is God's witness to Himself.

2. Holy Scripture, being God's own Word, written by men prepared and superintended by His Spirit, is of infallible divine authority in all matters upon which it touches: it is to be believed, as God's instruction, in all that it affirms: obeyed, as God's command, in all that it requires; embraced, as God's pledge, in all that it promises.

3. The Holy Spirit, Scripture's divine Author, both authenticates it to us by His inward witness and opens our minds to understand its meaning.

4. Being wholly and verbally God-given, Scripture is without error or fault in all its teaching, no less in what it states about God's acts in creation, about the events of world history, and about its own literary origins under God, than in its witness to God's saving grace in individual lives.

5. The authority of Scripture is inescapably impaired if this total divine inerrancy is in any way limited or disregarded, or made relative to a view of truth contrary to the Bible's own; and such lapses bring serious loss to both the individual and the Church.

## Articles of Affirmation and Denial

### Article I

*WE AFFIRM* that the Holy Scriptures are to be received as the authoritative Word of God.

*WE DENY* that the Scriptures receive their authority from the Church, tradition, or any other human source.

### Article II

*WE AFFIRM* that the Scriptures are the supreme written norm by which God binds the conscience, and that the authority of the Church is subordinate to that of Scripture.

*WE DENY* that Church creeds, councils, or declarations have authority greater than or equal to the authority of the Bible.

### Article III

*WE AFFIRM* that the written Word in its entirety is revelation given by God.

*WE DENY* that the Bible is merely a witness to revelation, or only becomes revelation in encounter, or depends on the responses of men for its validity.

### Article IV

*WE AFFIRM* that God who made mankind in His image has used language as a means of revelation.

*WE DENY* that human language is so limited by our creatureliness that it is rendered inadequate as a vehicle for divine revelation. We further deny that the corruption of human culture and language through sin has thwarted God's work of inspiration.

### Article V

*WE AFFIRM* that God's revelation within the Holy Scriptures was progressive.

*WE DENY* that later revelation, which may fulfill earlier revelation, ever corrects or contradicts it. We further deny that any normative revelation has been given since the completion of the New Testament writings.

### Article VI

*WE AFFIRM* that the whole of Scripture and all its parts, down to the very words of the original, were given by divine inspiration.

*WE DENY* that the inspiration of Scripture can rightly be affirmed of the whole without the parts, or of some parts but not the whole.

### Article VII

*WE AFFIRM* that inspiration was the work in which God by His Spirit, through human writers, gave us His Word. The origin of Scripture is divine. The mode of divine inspiration remains largely a mystery to us.

*WE DENY* that inspiration can be reduced to human insight, or to heightened states of consciousness of any kind.

### Article VIII

*WE AFFIRM* that God in His work of inspiration utilized the distinctive personalities and literary styles of the writers whom He had chosen and prepared.

*WE DENY* that God, in causing these writers to use the very words that He chose, overrode their personalities.

### Article IX

*WE AFFIRM* that inspiration, though not conferring omniscience, guaranteed true and trustworthy utterance on all matters of which the Biblical authors were moved to speak and write.

*WE DENY* that the finitude or fallenness of these writers, by necessity or otherwise, introduced distortion or falsehood into God's Word.

### Article X

*WE AFFIRM* that inspiration, strictly speaking, applies only to the autographic text of Scripture, which in the providence of God can be ascertained from available manuscripts with great accuracy. We further affirm that copies and translations of Scripture are the Word of God to the extent that they faithfully represent the original.

*WE DENY* that any essential element of the Christian faith is affected by the absence of the autographs. We further deny that this absence renders the assertion of Biblical inerrancy invalid or irrelevant.

### Article XI

*WE AFFIRM* that Scripture, having been given by divine inspiration, is infallible, so that, far from misleading us, it is true and reliable in all the matters it addresses.

*WE DENY* that it is possible for the Bible to be at the same time infallible and errant in its assertions. Infallibility and inerrancy may be distinguished, but not separated.

### Article XII

*WE AFFIRM* that Scripture in its entirety is inerrant, being free from all falsehood, fraud, or deceit.

*WE DENY* that Biblical infallibility and inerrancy are limited to spiritual, religious, or redemptive themes, exclusive of assertions in the fields of history and science. We further deny that scientific hypotheses about earth history may properly be used to overturn the teaching of Scripture on creation and the flood.

### Article XIII

*WE AFFIRM* the propriety of using inerrancy as a theological term with reference to the complete truthfulness of Scripture.

*WE DENY* that it is proper to evaluate Scripture according to standards of truth and error that are alien to its usage or purpose. We further deny that inerrancy is negated by Biblical phenomena such as a lack of modern technical precision, irregularities of grammar or spelling, observational descriptions of nature, the reporting of falsehoods, the use of hyperbole and round numbers, the topical arrangement of material, variant selections of material in parallel accounts, or the use of free citations.

### Article XIV

*WE AFFIRM* the unity and internal consistency of Scripture.

*WE DENY* that alleged errors and discrepancies that have not yet been resolved vitiate the truth claims of the Bible.

### Article XV

*WE AFFIRM* that the doctrine of inerrancy is grounded in the teaching of the Bible about inspiration.

*WE DENY* that Jesus' teaching about Scripture may be dismissed by appeals to accommodation or to any natural limitation of His humanity.

### Article XVI

*WE AFFIRM* that the doctrine of inerrancy has been integral to the Church's faith throughout its history.

*WE DENY* that inerrancy is a doctrine invented by scholastic Protestantism, or is a reactionary position postulated in response to negative higher criticism.

### Article XVII

*WE AFFIRM* that the Holy Spirit bears witness to the Scriptures, assuring believers of the truthfulness of God's written Word.

*WE DENY* that this witness of the Holy Spirit operates in isolation from or against Scripture.

### Article XVIII

*WE AFFIRM* that the text of Scripture is to be interpreted by grammatico-historical exegesis, taking account of its literary forms and devices, and that Scripture is to interpret Scripture.

*WE DENY* the legitimacy of any treatment of the text or quest for sources lying behind it that leads to relativizing, dehistoricizing, or discounting its teaching, or rejecting its claims to authorship.

### Article XIX

*WE AFFIRM* that a confession of the full authority, infallibility, and inerrancy of Scripture is vital to a sound understanding of the whole of the Christian faith. We further affirm that such confession should lead to increasing conformity to the image of Christ.

*WE DENY* that such confession is necessary for salvation. However, we further deny that inerrancy can be rejected without grave consequences, both to the individual and to the Church.

### THE DANVERS STATEMENT ON BIBLICAL MANHOOD AND WOMANHOOD

In December 1987, the newly-formed Council on Biblical Manhood and Womanhood met in Danvers, Massachusetts, to compose the Danvers Statement on Biblical Manhood and Womanhood. Prior to the listing of the actual affirmations that comprise the Danvers Statement, we have included a section detailing contemporary developments that serve as the rationale for these affirmations. We offer this statement to the evangelical world, knowing that it will stimulate healthy discussion, hoping that it will gain widespread assent.

### Rationale

We have been moved in our purpose by the following contemporary developments which we observe with deep concern:

1. The widespread uncertainty and confusion in our culture regarding the complementary differences between masculinity and femininity;
2. the tragic effects of this confusion in unraveling the fabric of marriage woven by God out of the beautiful and diverse strands of manhood and womanhood;
3. the increasing promotion given to feminist egalitarianism with accompanying distortions or neglect of the glad harmony portrayed in Scripture between the loving, humble leadership of redeemed husbands and the intelligent, willing support of that leadership by redeemed wives;
4. the widespread ambivalence regarding the values of motherhood, vocational homemaking, and the many ministries historically performed by women;
5. the growing claims of legitimacy for sexual relationships which have Biblically and historically been considered illicit or perverse, and the increase in pornographic portrayal of human sexuality;
6. the upsurge of physical and emotional abuse in the family;
7. the emergence of roles for men and women in church leadership that do not conform to Biblical teaching but backfire in the crippling of Biblically faithful witness;
8. the increasing prevalence and acceptance of hermeneutical oddities devised to reinterpret apparently plain meanings of Biblical texts;
9. the consequent threat to Biblical authority as the clarity of Scripture is jeopardized and the accessibility of its meaning to ordinary people is withdrawn into the restricted realm of technical ingenuity;
10. and behind all this the apparent accommodation of some within the church to the spirit of the age at the expense of winsome, radical Biblical authenticity which in the power of the Holy Spirit may reform rather than reflect our ailing culture.

### Affirmations

Based on our understanding of Biblical teachings, we affirm the following:

1. Both Adam and Eve were created in God's image, equal before God as persons and distinct in their manhood and womanhood (Gen 1:26-27; 2:18).

2. Distinctions in masculine and feminine roles are ordained by God as part of the created order, and should find an echo in every human heart (Gen 2:18, 21-24; 1 Cor 11:7-9; 1 Tim 2:12-14).

3. Adam's headship in marriage was established by God before the Fall, and was not a result of sin (Gen 2:16-18, 21-24; 3:1-13; 1 Cor 11:7-9).

4. The Fall introduced distortions into the relationships between men and women (Gen 3:1-7, 12, 16).

    a. In the home, the husband's loving, humble headship tends to be replaced by domination or passivity; the wife's intelligent, willing submission tends to be replaced by usurpation or servility.

    b. In the church, sin inclines men toward a worldly love of power or an abdication of spiritual responsibility, and inclines women to resist limitations on their roles or to neglect the use of their gifts in appropriate ministries.

5. The Old Testament, as well as the New Testament, manifests the equally high value and dignity which God attached to the roles of both men and women (Gen 1:26-27, 2:18; Gal 3:28). Both Old and New Testaments also affirm the principle of male headship in the family and in the covenant community (Gen 2:18; Eph 5:21-33; Col 3:18-19; 1 Tim 2:11-15).

6. Redemption in Christ aims at removing the distortions introduced by the curse.

    a. In the family, husbands should forsake harsh or selfish leadership and grow in love and care for their wives; wives should forsake resistance to their husbands' authority and grow in willing, joyful submission to their husbands' leadership (Eph 5:21-33; Col 3:18-19; Tit 2:3-5; 1 Pet 3:1-7).

    b. In the church, redemption in Christ gives men and women an equal share in the blessings of salvation; nevertheless, some governing and teaching roles within the church are restricted to men (Gal 3:28; 1 Cor 11:2-16; 1 Tim 2:11-15).

7. In all of life Christ is the supreme authority and guide for men and women, so that no earthly submission-domestic, religious, or civil-ever implies a mandate to follow a human authority into sin (Dan 3:10-18; Acts 4:19-20; 5:27-29; 1 Pet 3:1-2).

8. In both men and women a heartfelt sense of call to ministry should never be used to set aside Biblical criteria for particular ministries (1 Tim 2:11-15; 3:1-13; Tit 1:5-9). Rather, Biblical teaching should remain the authority for testing our subjective discernment of God's will.

9. With half the world's population outside the reach of indigenous evangelism; with countless other lost people in those societies that have heard the gospel; with the stresses and miseries of sickness, malnutrition, homelessness, illiteracy, ignorance, aging, addiction, crime, incarceration, neuroses, and loneliness, no man or woman who feels a passion from God to make His grace known in word and deed need ever live without a fulfilling ministry for the glory of Christ and the good of this fallen world (1 Cor 12:7-21).

10. We are convinced that a denial or neglect of these principles will lead to increasingly destructive consequences in our families, our churches, and the culture at large.

**APPENDIX 2**

**BYLAWS**
**THE SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY**
**FORT WORTH, TEXAS**

(Amended and Restated April 10, 2019)

**PREAMBLE**

The following bylaws shall govern the Board of Trustees, the administration, faculty, and all other teachers and employees of The Southwestern Baptist Theological Seminary, hereinafter referred to as "the Seminary," in fulfilling its purpose.

**ARTICLE I—THE SEMINARY**

1.  The Seminary is fostered and supported by the Southern Baptist Convention, hereinafter referred to as "the Convention." The affairs of the Seminary shall be managed[1] by a Board of Trustees, hereinafter referred to as the "Board."

2.  <u>Name</u>: The official and legal corporate name of the Seminary is "The Southwestern Baptist Theological Seminary."

3.  <u>The Statement of Faith</u>: Predicated upon the authority, inspiration, inerrancy, and the infallibility of the Bible, the Statement of Faith, also referred to otherwise as Articles of Faith, of the Seminary shall be the most recent version of the *Baptist Faith and Message* (and any subsequent amendment or revision thereto) adopted by the Convention. This Statement of Faith is published in the *Faculty Manual*, catalog, and other relevant documents of the Seminary.

4.  <u>Purpose</u>: Southwestern Baptist Theological Seminary assists the churches of the Southern Baptist Convention by the biblical education of God-called men and women for their respective ministries, which fulfill the Great Commission and glorify God.

5.  <u>Composition</u>: The Seminary is composed of the Board, a President, other administrative officers, deans, staff, faculty, all other teachers and employees, and students.

6.  <u>Academic Organization</u>: To fulfill its purpose and carry on its academic work, the Seminary is organized into schools as follows:

    (1)   The School of Theology
    (2)   The Jack D. Terry, Jr. School of Educational Ministries
    (3)   The School of Church Music and Worship
    (4)   The Roy J. Fish School of Evangelism and Missions
    (5)   The J. Dalton Havard School for Theological Studies, Houston, Texas

---

[1]As used here the term manage does not involve trustees in administration of the operations of the Seminary.

(6)   The L. R. Scarborough College
(7)   The School of Preaching

These schools are not separate entities but are de facto departments of one institution — the Seminary. Each separately, and they together, along with related educational programs, shall strive for the cohesion and unity of the Seminary at all times.

## ARTICLE II—THE BOARD OF TRUSTEES

1.   <u>Membership</u>: The members of the Board of the Seminary are those persons elected by act of the Convention in accordance with the requirements of the Articles of Incorporation of The Southwestern Baptist Theological Seminary, as may be amended from time to time. As provided therein, trustees may elect persons to fill vacancies on the Board.

2.   <u>Responsibility and Authority</u>: The Convention has committed to the Board the responsibility to manage the Seminary for the Convention and the trustees have full authority in all matters of its management, except to the extent that powers are vested in the Convention by law. The bylaws and other basic operating policies are set out in the Seminary's *Policy Manual*. The power to alter, amend, or to repeal the bylaws of the Seminary is vested solely in the Board. The Board is answerable only to the Convention for its acts in managing the Seminary.

Board polity shall be exclusively the responsibility of the trustees. Board polity includes, but is not limited to, the nomination and election of officers of the Board and the appointment of trustees as chairmen and members of committees.

The President of the institution shall serve in an advisory capacity to the Board in all matters related to operation of the Seminary.

3.   <u>Meetings</u>: There shall be two regular meetings of the Board and such called meetings as may be properly convened:

(1)   <u>Fall Meeting</u>: The fall meeting of the Board, designated the annual meeting, shall be held on such days as the Board in a previous meeting may designate or, in case of the failure of the Board to designate, on such days as the Chairman[2] of the Board in consultation with the President may designate.

(2)   <u>Spring Meeting</u>: The spring meeting of the Board shall be held on such days as the Board in the preceding annual meeting may designate or, in case of the failure of the Board to designate, on such days as the Chairman of the Board in consultation with the President may designate.

(3)   <u>Called Meetings</u>:

a.   Called meetings of the Board may be called by the Chairman of the Board in consultation with the President. The President may make request for a called

---

[2] The noun chairman, as used herein, is not gender specific.

meeting to the Chairman of the Board. In addition, the Chairman shall call a meeting of the Board upon request of a majority of the members of the Board.

    b.    Only such matters as specified for the called meeting may be considered.

(4)    <u>Electronic Provisions</u>: All meetings of the Board, Executive Committee, standing committees, and special committees may be conducted by telephone conference or through other electronic communications media, as long as all members may simultaneously hear each other and participate during the meeting. Participation in a meeting in this manner shall constitute presence in person at such a meeting. Notice of meetings may be sent by email.

(5)    <u>Parliamentary Authority</u>: The parliamentary authority for all meetings shall be *Robert's Rules of Order* (latest revised edition) insofar as such rules do not conflict with the Articles of Incorporation, Bylaws, or any governing law. The Chairman of the Board shall select a parliamentarian as necessary.

4.    <u>Business of the Regular Meetings</u>

(1)    <u>The Fall Meeting (Annual)</u>:

    a.    The Board shall receive and may ratify the actions and activities of the Executive Committee since the last meeting of the Board.

    b.    All standing committees shall report to the Board.

    c.    The President shall report to the Board on the condition and needs of the Seminary and present such recommendations as he may choose.

    d.    The Board shall implement the development program specified in the *Policy Manual*.

(2)    <u>The Spring Meeting</u>:

    a.    The Board shall receive and may ratify the actions and activities of the Executive Committee since the last meeting of the Board.

    b.    All standing committees shall report to the Board.

    c.    The President shall report to the Board on the condition and needs of the Seminary and present such recommendations as he may choose.

    d.    The President, along with the Committee for Business Administration, shall present a detailed proposed budget for the operation of the Seminary for the ensuing fiscal year.

    e.     Officers of the Board shall be elected.

    f.     The Board shall carry out the appraisal of its own performance and the President's performance as specified in the *Policy Manual*.

(3)   <u>Order of Business</u>

    The order of business of all regular meetings of the Board, as prescribed by the Chairman in the agenda, shall include matters such as:

    a.    Scripture and prayer
    b.    Roll call
    c.    Reading of minutes
    d.    Approval of agenda
    e.    Report of the President of the Seminary
    f.    Reports of other administrative officers
    g.    Reports of committees
        (1)   Executive Committee
        (2)   Standing committees
        (3)   Special committees
    h.  Review of policies, resolutions, and official statements
    i.   Review Board responsibilities
    j.   Review performance appraisals
    k.  Unfinished business
    l.   New business
    m. Election of officers of the Board (spring meeting)
    n.  Adjournment

5.   <u>Quorum</u>: A majority of the Board shall constitute a quorum at any regular or called meeting of the Board.

6.   <u>Notice</u>: At least ten days prior to any meeting of the Board the President's Office shall notify all members thereof.

7.   <u>Voting</u>: At all meetings of the Board voting shall be by voice unless otherwise directed. A majority affirmative vote shall be sufficient to adopt a motion, except where a two-thirds vote is required in these bylaws. The Chairman of the Board shall have no vote except in the case of a tie.

8.   <u>Proxy</u>: No proxy voting shall be recognized in any meeting of the Board.

9.   <u>Attendance</u>: Meetings of the Board shall be open except when, by vote of the Board, an executive session is declared. Meetings of the Executive Committee, standing committees, and special committees shall be closed.

10. <u>Expenses of Board Members</u>: The Seminary shall pay all expenses of members of the Board, which are incurred by attendance on meetings of the Board or committees of the Board.

11. <u>Policies</u>: All policies, resolutions and official statements adopted (by the Board) shall be numbered and bound in the *Policy Manual*. Certain trustee resolutions and motions of a procedural nature may be published in the trustee document section of the manual. Procedural material from the administration or the faculty published in the *Policy Manual* are authoritative in so far as they are consistent with official policies adopted by the Board. The *Policy Manual* is to be made available, in an updated version annually, to each trustee.

12. <u>Trustee Interaction</u>: All matters of alleged trustee misconduct shall be considered in an appropriate manner, as prescribed by a majority of the elected trustee officers, within the trustee body. If not resolved therein, the matter shall be referred to the Convention for disposition in accordance with Article VIII of the Seminary's Articles of Incorporation.

## <u>ARTICLE III—OFFICERS OF THE BOARD OF TRUSTEES AND THEIR DUTIES</u>

1. <u>Officers:</u> The officers of the Board shall be Chairman, Vice Chairman, and Secretary. The tenure of consecutive service as Chairman or Vice Chairman shall be limited to two one-year terms for each office with the following exception: Service as Chairman or Vice Chairman of the remaining term of a predecessor, if six months or less, shall not be counted in the limited terms. Before election, the Chairman of the Board shall have served at least three years on the Board.

2. The officers of the Board shall be elected at the spring meeting of the Board. Nominations for each office, with a second required for each nomination, shall be made from the floor by trustees. After a vote by the trustees on those nominated, the one with a majority of votes shall be declared elected. If there is no majority, there shall be a run-off between the two trustees with the highest number of votes. The one with the highest number of votes in the run-off shall be declared elected. In the event that the Vice Chairman should become Chairman, as provided in Article III 3.(2) of these bylaws, an election will be held for Vice Chairman during the next regularly scheduled trustee meeting. The Vice Chairman so elected shall serve only until the next spring meeting of the trustees when all officers are elected as provided in these bylaws.

3. <u>Duties of Officers</u>

   (1) <u>Chairman</u>:

       a. The Chairman shall preside at all meetings of the Board. He shall be the Chairman of the Executive Committee of the Board and shall preside at all of its meetings. The Chairman will call all special meetings of the Board and the meetings of the Executive Committee to be held between semi-annual meetings of the Board and, at the President's invitation, shall meet periodically with the President's Cabinet.

      b.     Subsequent to his election, he shall, in consultation with the Vice Chairman, appoint all committees of the Board prior to the next regular meeting of the Board. He may not appoint anyone to more than one standing committee and no trustee will serve on more than three committees. Subcommittees of standing committees are not appointed by the Chairman nor considered in the "three committee" count mentioned above.

      c.     He shall sign such papers and perform such other duties as are legally required of such presiding officer.

(2)   <u>Vice Chairman</u>: The Vice Chairman shall serve as consultant to the Chairman. In either the absence, incapacity, or upon the resignation of the Chairman, the Vice Chairman shall become Chairman and serve until the next regular election of officers. The Vice Chairman shall also be responsible for directing the program of Board development and appraisal as specified in the *Policy Manual*.

(3)   <u>Secretary</u>: The Secretary shall keep minutes of all regular and called meetings of the Board and the Executive Committee of the Board, and shall preserve a copy of all minutes, both written and on electronic recording device, in bound volumes in the fireproof depository of the Seminary.

## <u>ARTICLE IV—COMMITTEES OF THE BOARD</u>

The Board shall carry out its responsibilities in the management of the Seminary through the following committees: Executive Committee, standing committees, and special committees. These committees shall be appointed by the Chairman and shall assume their duties immediately upon appointment.

1.   <u>Executive Committee</u>

(1)   <u>Membership</u>: The Executive Committee shall be composed of the Chairman, the Vice Chairman, and the Secretary of the Board, and the Chairman and one other member of each standing committee for a total of thirteen members.

(2)   <u>Duties</u>: The Executive Committee is authorized, between meetings of the Board, to have charge of the Seminary and to transact all trustee matters pertaining to the Seminary which appear to demand immediate action and cannot be deferred until a regular meeting of the Board. The Executive Committee shall have at least one called meeting between regular semi-annual meetings of the Board, which may be by teleconference if the Chairman so desires. The Executive Committee will conduct an annual performance review of the President, and shall review the President's performance evaluation of the other officers of the Seminary, in accordance with the procedures in the *Policy Manual*. The Secretary will maintain a written record of these reviews. The Executive Committee shall act as a Compensation Committee in setting annual compensation for the President and other officers of the Seminary. The committee shall report its actions and activities at the next Board meeting.

(3)  Quorum: Seven members of the Executive Committee shall constitute a quorum of said committee.

(4)  Notice: At least ten days prior to any meeting of the committee the Chairman of the Board shall have the President's Office notify all members of any such meeting. The requirement of notice may be suspended by a two-thirds vote of the Executive Committee.

(5)  Electronic Voting: In the interim between meetings of the Executive Committee, a vote may be taken by electronic means at the request of the President or Chairman of the Board on any emergency matter. Such action shall be reported at the next meeting of the Executive Committee and shall become a part of the minutes of that meeting.

2.  Standing Committees: There shall be five standing committees: the Committee for Academic Administration, the Committee for Business Administration, the Committee for Communications, Policies, and Strategic Initiatives, the Committee for Institutional Advancement, and the Committee for Student Services. Every member of the Board shall be appointed to serve on at least one standing committee.

The Chairman of the Board shall name at least five trustees to each standing committee. Two members of each standing committee, being the Chairman of that committee and one other, shall be members of the Executive Committee.

These committees will hold regular meetings in conjunction with meetings of the Board and at other appropriate times at the call of the Chairman of the committee, the Chairman of the Board, acting together in consultation with the President, and make regular reports to the Board at the meetings of the Board. A majority of the members of the committee shall constitute a quorum.

(1)  Committee for Academic Administration

a.  This committee shall provide for policy, review, and general guidance in all areas of work assigned to the Provost and Vice President for Academic Administration.

b.  It shall be the duty of this committee to work with the President and the Provost and Vice President for Academic Administration in establishing and maintaining such faculty and curricula as are approved by the Board.

c.  This committee shall review the curricula in relation to the purpose of the Seminary. It shall also review educational management, attitudes of faculty members, relations between the schools in the Seminary, teaching load carried by faculty members, sabbatical leaves of faculty members, policies, admissions, discipline, and other matters pertaining to the educational program of the Seminary. The committee shall make appropriate recommendations to the Board related to its review.

(2)   Committee for Business Administration

    a.   This committee shall provide for policy, review, and general guidance in all areas of work assigned to the Vice President for Business Administration.

    b.   This committee shall review fiscal and physical concerns of the Seminary and make such recommendations to the Board, in conformity with the Articles of Incorporation, as may be deemed necessary.

    c.   This committee shall recommend to the Board at its spring meeting a detailed budget submitted by the President for the operation of the Seminary during the ensuing fiscal year. This proposed budget shall show the anticipated income of the Seminary for the year by sources, and projected expenditures by object.

    d.   Any substantial change in budget expenditures after the budget is adopted shall be made only by the Board upon the recommendation of the President and the Committee for Business Administration.

    e.   This committee shall be designated the Audit Committee of the Board. This Committee shall be responsible for recommending to the trustees the independent auditors for the annual audit of the Seminary, giving the audit charge to the auditor, receiving the audit from the auditor, and reporting the findings of the audit to the trustees.

    f.   This committee shall explore with the administration the need for expansion of the physical properties of the Seminary and the related need for capital funds. Upon review and recommendation by this committee, only the Board shall authorize disposition and acquisition of real estate. Notwithstanding this subsection, the Board may, by resolution, generally authorize the President or Vice President for Institutional Advancement to execute deeds, mineral deeds, transfer and division orders with respect to oil, gas, and other minerals, leases, releases, transfers and assignments of notes, liens, contracts, or other instruments affecting real estate, or any other documents necessary or expedient in connection with the normal business of the Seminary, when attested by the Secretary of the Seminary.

(3)   Committee for Communications, Policies, and Strategic Initiatives

    a.   This committee shall study and review Seminary communication and marketing efforts of the Seminary; review and advise on strategic initiatives of the Seminary; monitor and review Board policies; receive and study recommendations from trustees; make recommendation for communication and written policy documentation; and upon request from the Chairman, provide general guidance on matters of Board policy and external communication to the Executive Committee.

      b.   At the fall meeting of the Board of Trustees this committee shall make a presentation of any proposed revisions to the *Policy Manual* of the Seminary if there are any to be determined.

      c.   This committee, upon request from the Chairman of the Board, may make recommendations to facilitate more effective implementation of board policy.

      d.   This committee shall make recommendations to the Board for materials to be included in the trustee orientation manual, *Faithful to the Trust*.

(4)   <u>Committee for Institutional Advancement</u>

      a.   This committee shall provide for policy, review, and general guidance in all areas of work assigned to the Vice President for Institutional Advancement.

      b.   This committee shall review and make recommendations to the Board related to development, public relations, alumni, and other related matters.

      c.   This committee shall review projected projects and programs of the Seminary requiring funding and public relations and shall make recommendations to the Board.

      d.   This committee shall be kept informed and involved in the work of the Advisory Council, the President's Club, and other development groups.

(5)   <u>Committee for Student Services</u>

      a.   This committee shall provide for policy, review, and general guidance in all areas of work assigned to the Vice President for Enrollment Management.

      b.   This committee shall work with the Vice President for Enrollment Management in seeking to facilitate the total development of students within a positive learning environment.

      c.   This committee shall, in consultation with the Business Administration Committee, and in keeping with the guidelines of the Convention, approve guidelines for student loans, grants in aid, and scholarships.

      d.   This committee shall give major attention to the matters of assessment and placement, as well as spiritual formation and development.

      e.   This committee shall review programs of student recruitment, orientation, counseling, guidance, employment, activities, recreation, and physical fitness and make recommendations to the Board.

      f.    This committee shall review the student services provided by or coordinated through Student Services and make recommendations to the Board.

3.    <u>Special Committees</u>: Special committees shall be appointed as the Board authorizes, including a Bylaws and Governance Committee that will periodically review and recommend amendments to the Bylaws and otherwise make recommendations to the Board regarding governance policies and procedures of the Seminary. The President shall advise the Bylaws and Governance Committee of any recommended structural changes that require Bylaw revisions.

## <u>ARTICLE V—ADMINISTRATIVE OFFICERS AND DEANS OF THE SEMINARY AND THEIR DUTIES</u>

Officers — Administrative officers shall be the President, the Provost and Vice President for Academic Administration, the Vice President for Business Administration, the Vice President for Enrollment Management, the Vice President for Institutional Advancement, and the Vice President for Strategic Initiatives and Chief of Staff.

1.    <u>President</u>

    (1)    The President shall be elected by the Board. His term of office, duties, and administration of the affairs of the Seminary shall be under the direction and authority of the Board. The retirement policies, process, and benefits for the President shall be established by the Board. The President's salary may be adjusted annually by the Executive Committee in conjunction with its Performance Review of the President.

    (2)    <u>Basic Function</u>

        a.    The President shall serve as the chief executive officer of the Seminary. He shall have executive oversight of the entire institution, including the faculty, employees, curricula, and all that affects its operation. The President reports directly and is accountable only to the Board.

        b.    He shall be custodian of all funds and properties of the Seminary and shall have direct charge and supervision over them, under the authority of the Board.

        c.    The President shall serve in an advisory capacity with the Board and with all its committees. He shall provide for administrative support to the Board and its committees and insure that the administration, faculty and staff of the Seminary relates in a cooperative and cordial manner to all its constituencies.

    (3)    Responsibilities

        a.    The President shall recommend for election by the Board the Provost and Vice President for Academic Administration, the Vice President for Business Administration, the Vice President for Enrollment Management, the Vice

President for Institutional Advancement, and the Vice President for Strategic Initiatives and Chief of Staff. He shall supervise and evaluate their work. He shall report the employment of members of the administrative staff other than those elected by the Board.

b.   The President shall be chairman of the faculty of the Seminary and serve ex officio as a member of all the faculties of the Seminary. He shall participate fully in all decisions and deliberations of the faculty. He must approve all administrative and faculty procedures and insure that these procedures neither exceed nor minimize and are consistent with and not contrary to the bylaws and policies adopted by the Board.

c.   The President shall nominate to the Board for election, the deans and members of the faculty. He shall report the employment of faculty by Presidential appointment. The President shall recommend the promotion of faculty members, and when necessary, the retirement, reassignment, or dismissal of elected administrators or faculty. The President shall likewise recommend all salaries.

d.   The President shall have power to appoint an individual to faculty status for a period not to exceed two years. The President shall report such appointments to the next trustee meeting.

e.   He shall be responsible for the discipline and cooperation of all members of the Seminary staff and student body. He shall give direction to student discipline as administered by the faculty.

f.   It shall be the duty of the President to report to the Board or the Executive Committee all matters connected with the operation of the Seminary which may be of interest to the Board or which the Board, as the manager of the Seminary, should know.

g.   He shall provide for relationship to the Convention and as necessary its committees and other entities, in achieving the ministry assignments related to theological education.

h.   He shall be a member on the Council of Seminary Presidents.

i.   He shall provide service, in turn, as Chairman of the Council of Seminary Presidents.

j.   He shall, as a member of the Council of Seminary Presidents, provide oversight of Seminary Extension and the Southern Baptist Historical Library and Archives.

k.   He shall be a member of the Great Commission Council.

2.    Other Administrative Officers

All administrative officers (other than the President) shall be responsible to the President of the Seminary and shall make, through him, regular reports to the Board.

All of the following administrative officers shall have, in addition to specific responsibilities deemed necessary by the President, the basic functions defined below. Substantive changes to officer titles and job descriptions shall be recommended by the President and approved by the Executive Committee.

(1)    Provost and Vice President for Academic Administration

Recruited by:          The President, in consultation with the Committee for Academic Administration

Elected by:             The Board of Trustees

Responsible to:        The President

Basic Function

To assist the President in the general operation of the Seminary and to provide administrative leadership for the academic administration of the Seminary, including matters related to the seven schools, other educational programs, the library, the faculty and its committees, curricular, and degree programs, and the formation of academic objectives and procedures.

(2)    Vice President for Business Administration

Recruited by:          The President, in consultation with the Committee for Business Administration

Elected by:             The Board of Trustees

Responsible to:        The President

Basic Function

To provide administrative leadership in the business administration of the Seminary, especially in relation to the fiscal, financial, and physical, and legal functions of its operation and to serve as Secretary of the Seminary.

(3)    Vice President for Enrollment Management

Recruited by:          The President, in consultation with the Committee for Student Services

Elected by:             The Board of Trustees

Responsible to:        The President

<u>Basic Function</u>

To provide administrative leadership to all programs having to do with students, including recruitment, retention, discipline, and student activities and missions.

(4)   <u>Vice President for Institutional Advancement</u>

Recruited by:        The President, in consultation with the Committee for Institutional Advancement

Elected by:        The Board of Trustees

Responsible to:        The President

<u>Basic Function</u>

To provide administrative leadership to all programs having to do with institutional advancement including development, alumni activities, and general functions.

(5)   <u>Vice President for Strategic Initiatives and Chief of Staff</u>

Recruited by:        The President, in consultation with the Executive Committee

Elected by:        The Board of Trustees

Responsible to:        The President

<u>Basic Function</u>

To provide administrative leadership for the coordination of presidential strategies and initiatives within the President's Cabinet and among various constituencies of the seminary, as well as for the development and implementation of marketing, public relations, and communication strategies.

3.   <u>Deans</u>

The deans shall report directly to the Provost and Vice President for Academic Administration and, thereby, to the President and to the Board.

Recruited by:        The President in consultation with the Committee for Academic Administration of the Board.

Elected by:        The Board of Trustees

Responsible to:      The Provost and Vice President for Academic Administration

Basic Function

Deans are the primary liaisons between the administration and the faculty. Under the authority of the President and supervision of the Provost and Vice President for Academic Administration, they administer all internal administration including recommendations for faculty evaluation, promotion, discipline, and termination and, when appropriate, recommendations for faculty; provide leadership in the development and direction of curricula; and serve on the Deans' Council.

4.    The President's Cabinet

(1)    The President, the Provost and Vice President for Academic Administration, the Vice President for Business Administration, the Vice President for Enrollment Management, the Vice President for Institutional Advancement, and the Vice President for Strategic Initiatives and Chief of Staff serve on the President's Cabinet.

(2)    The President may find it necessary to appoint additional members to his Cabinet in order to administer the Seminary effectively. He may do so according to the following:

    a.    The President shall provide the Board and existing Cabinet with a job description of the recommended Cabinet position.

    b.    A position will be considered interim until the Board can consider the position.

    c.    The Board will vote whether to approve the new Cabinet position at the next available Regular Meeting.

## ARTICLE VI—FACULTY AND TEACHING STAFF

It shall be the policy of the Seminary to strive for and maintain a faculty composed of persons dedicated to prayer and Bible study and who hold faithful allegiance to the Seminary's Statement of Faith as described in Article I.3. of these bylaws. Included are those who are of unquestionable Christian character, exhibit positive and consecrated Christian attitudes, strive to achieve the highest possible scholastic attainments, and demonstrate an acceptable aptitude for teaching. The selection, election, promotion, and termination of faculty members are viewed as matters of ecclesiastical concern and as commitments of faith between the Seminary and faculty members. Ecclesiastical concern requires that the relationship not be entered into, continued, or severed without prayerful consideration.

1.    Definitions: The faculty and teaching staff shall consist of the following:

(1)  Supplemental Teaching Staff

The teaching fellow, adjunct teacher, guest professor, and teaching assistant are supplemental teachers appointed by the President for a limited term of service, not to exceed one year. The President shall make a report of these appointments to the Board. These appointments may be renewed by the President for additional terms of up to one year upon approval by the Committee for Academic Administration. All such additional relationships shall likewise be reported to the Board by the President. The supplemental teaching staff receives neither faculty privileges, benefits, nor provisions for termination of service.

(2)  Presidential Appointment

The President may appoint faculty to any of the faculty ranks for a limited term of service, not to exceed two years. The President shall make a report of these appointments to the Board. All such relationships may be renewed for additional limited terms of service upon recommendation of the President and with review by the Committee for Academic Administration and the Board. The Presidential appointee receives all faculty privileges and benefits except tenure, sabbatic leave, retirement, and provisions for termination of service.

(3)  Elected Faculty

These are persons elected to the faculty by the trustees upon recommendation by the President for ongoing service subject to regular and periodic review and evaluation. These members of the faculty may have the rank of Instructor, Assistant Professor, Associate Professor, Professor, Research Professor, or Distinguished Professor. Elected faculty receive the benefits and privileges of faculty development including sabbatic leave, opportunity for promotion in rank, retirement, and provision for termination of service.

2.  Qualifications

(1)  Every member of the faculty and teaching staff shall have adequate academic preparation and demonstrated experience for the discipline of teaching.

(2)  Every faculty member and teacher shall be a member and an active and faithful participant in the worship and work of a Baptist church that is cooperating with and supporting the Southern Baptist Convention.

(3)  All members of the faculty and other teachers must affirm a position consistent with and not contrary to the Seminary's Statement of Faith. In so doing, all newly employed faculty and teachers shall publicly sign the most recent version of the *Baptist Faith and Message* at the opening session at which they enter upon their duties. Continuing teachers and faculty members who have previously signed the Seminary's Statement of Faith must sign any subsequent amendment to or revision of the *Baptist Faith and*

*Message* adopted by the Convention in the presence of their dean. Copies of the signed documents shall be bound and available for trustee review. Every faculty member and all other teachers must sign as follows:

> In covenant with the Southern Baptist Convention, Southwestern Baptist Theological Seminary, and its community of faith and learning, I hereby affirm this Statement of Faith known as the *Baptist Faith and Message* and agree to abide by, teach, and write consistent with and not contrary to it.

> Signature
> Printed Name
> Date Signed

(4)   Continued employment will be determined by, among other things, periodic performance reviews of all faculty and teachers. Reviews shall be conducted by an appropriate administrative officer or dean under the authority of the President and supervision of the Provost and Vice President for Academic Administration. All performance reviews shall cover, but are not limited to, teaching, scholarly research, writing, and other professional endeavors that benefit the Seminary. The determination of continued employment for any faculty member or teacher shall be made by the President and the Board as provided in these bylaws.

3.   <u>Responsibilities</u>

(1)   The primary responsibility of the teacher is to teach and to write in connection with assigned subjects. Every teacher must advocate a position consistent with and not contrary to the Seminary's Statement of Faith. Each faculty member is expected to be diligent in study, scholarly research in the assigned field of teaching, share in various committee responsibilities as enlisted, and to exercise good judgment. Published research shall be considered, along with other factors, as evidence of a teacher's scholarship. Any responsibilities beyond these areas are to be performed upon request or under the authority of the President and the Board. In no circumstances shall faculty members deal in policy matters or the administrative affairs of the Seminary except by request or under the authority of the President (in administrative matters) and/or the Board (in policy matters).

(2)   The faculty shall make recommendations concerning the curricula, in accordance with Article VII herein, and in matters relating to the order and discipline of students and shall prescribe courses of study for the various degrees, diplomas, certificates, etc., and the work required to earn such. In all matters they shall work with the academic administration and through them make necessary recommendations to the Board.

(3)   The teacher's commitment to the Seminary includes:

a.   The annual salary of a faculty member shall obligate the teacher to twelve months service to the Seminary, excluding designated holidays during the academic year

and one month of vacation during the period when the teacher is not required to teach.

b. A teacher will not necessarily be engaged in teaching for eleven months, but when not engaged in teaching will exercise discretion to be occupied in such engagements as, study, research, and writing projects as will make a professional contribution to the Seminary.

c. When not required to teach at the Seminary, teaching in another institution shall be subject to approval of the President.

d. Except when on official leave, a teacher shall be available in Fort Worth for professional functions from the date established by the school for the beginning of the fall semester until after commencement at the end of the spring semester. A teacher will not accept an engagement requiring absence from class teaching responsibility in excess of the number of times a class meets per week within any semester. Beyond this period, any absence that may be termed "official Seminary business" shall have advance approval of the President.

e. The faculty member is encouraged to participate in church and denominational engagements outside the Seminary within the accepted policy of absences. Faculty members are discouraged from accepting permanent employment responsibilities outside the Seminary without approval of the President.

f. The academic year consists of the fall semester and spring semester together with the winter term and summer term. Details regarding teaching load shall be set out in the Faculty Manual.

4. <u>Academic Freedom</u>

The Seminary recognizes certain principles of academic freedom. The Seminary must strive to be a community of teaching and learning, predicated on prayer and Bible study, in which freedom of mind and spirit is accepted as fundamental. The fundamental proposition which constitutes the basis of an individual teacher's freedom applies with equal validity to those charged with responsibility for the policies and administrative procedures of the institution. While freedom must ultimately be realized through the spirit and loyalties of people, it can only take form and be protected by concrete standards of institutional practice in harmony with the Seminary's Statement of Faith.

(1) Within the framework of Christian and civil liberty, the Southern Baptist convention is free to create and sustain through a Board and administration, an institution charged with responsibility of moving toward specified objectives and of maintaining certain doctrinal standards.

(2) The theological teacher and students have the right of inquiry for truth central to their vocation, and they are free to pursue that inquiry. In its simplest form, academic freedom

means that a professor has the right and responsibility to examine all material pertinent to the study of the professor's discipline and to expose students to the various alternative interpretations. The professor has the freedom of full investigation.

(3)   The teacher shall be free to teach, carry on research, and to publish, subject to adequate performance of assigned academic duties but must advocate a position consistent with and not contrary to the Seminary's Statement of Faith.

(4)   Responsible teachers[3] shall have freedom in the classroom to discuss the subject in which they are qualified without limits except as prescribed herein. The teacher shall be free to express and act upon conscientious convictions as an individual citizen although the teacher should realize that there is always the tacit representation of one's institution and must exercise good judgment.

5.   <u>Accessions and Elections</u>

Elections of faculty members, except supplemental teaching staff and Presidential appointees as defined and specified in this Article VI.1.(1)(2), preceding, shall occur within the framework of the following:

(1)   The Board holds the authority to elect faculty members who are recommended by the President through the Committee for Academic Administration of the Board.

(2)   Needs for new faculty may be expressed to the deans by trustees, administration, or faculty.

(3)   The President shall prepare a recommendation through the Academic Administration Committee of the Board to be sent to the trustees 30 days in advance of the date of a Board meeting. The salaries of new faculty members shall be fixed by the Board on recommendation of the President.

(4)   The President shall send a letter which informs the candidate that a recommendation will be made at the next meeting of the Board for employment at the Seminary. The prospective faculty member or teacher is also sent information about the proposed salary and rank, and a copy of the *Faculty Manual*. All prospective faculty members and teachers are sent a copy of the *Baptist Faith and Message* in the latest version adopted by the Convention. The prospective faculty member or teacher shall be informed that personal commitment to affirm a position consistent with the Seminary's Statement of Faith as described in Article I.3 of these bylaws is requisite to election.

(5)   The Academic Administration Committee of the Board shall discuss the recommendation from the President, and if they concur, join the President in recommending the candidate for election by the Board. The Committee may in some cases choose to interview a candidate on behalf of the whole Board. Upon completion of the process, the Committee decides whether to join the President in presenting the

---

[3]The terms responsible and qualified should be considered in harmony with the sections on Qualifications and Responsibilities herein.

candidate to the Board. The Board may take action to elect at a regular or special meeting of the Board. Under special circumstances, upon recommendation of the President and Chairman of the Board, election may be conducted by mail ballot.

(6)   Notwithstanding the above, if an exceptionally qualified individual becomes available to the Seminary, the President, in consultation with the Chairman of the Board and/or Chairman of the Academic Administration Committee of the Board, the Provost and Vice President for Academic Administration, and the dean may expedite this process in any manner in order to present the candidate for election by the Board.

(7)   Upon being elected to the faculty by the Board, the faculty member shall be supplied with a letter setting forth fully the conditions of such employment and the basic documents of the Seminary describing this relationship including salary, benefits, and the rank of the person elected. Copies of the letter including terms and conditions of employment should be in the possession of the President and the faculty member at the time of employment.

6.   <u>Promotions</u>

All promotions of the faculty from instructor to assistant professor, from assistant professor to associate professor, from associate professor to professor, or from professor to distinguished professor shall be by action of the Board upon the recommendation of the President following his consultation with the Provost and Vice President for Academic Administration and the dean. Promotions shall be based on factors including, but not limited to, the faculty evaluation program of the Seminary, the availability of open faculty positions based on the percentages that have been established by the trustees for each academic rank, and conforming with guidelines approved by the Board. Salary increases, on the basis of performance reviews, may be recommended by the President to the Board. These increases shall be within the limits of the approved faculty salary scale.

7.   <u>Termination of Service</u>

(1)   *Retirement*

Retirement procedures are set forth in the *Faculty Manual*. All elected faculty shall be required to participate in the retirement annuity program authorized by the Board.

(2)   *Resignations*

If a member of the faculty or teaching staff desires to resign, the faculty member should give notice in writing to the President sufficiently early to allow for appropriate replacement. If any faculty member or anyone employed to teach at the Seminary can no longer affirm, abide by, teach, or write consistent with and not contrary to the Seminary's Statement of Faith as described in Article I.3. of these bylaws, that person is expected to resign.

(3)  *Dismissals*

    a.   Principles

        (i)    The Seminary sustains a covenant relationship with the churches of the Southern Baptist Convention. It is within this context that the responsibilities of academic freedom must be exercised. The special position of the Seminary teacher within the Convention imposes special obligations. The teacher shall at all times be accurate, shall exercise appropriate restraint, shall show respect for the opinion of others, and shall seek to relate constructively to the Seminary and to advocate a position consistent with the *Baptist Faith and Message* in the latest version adopted by the Southern Baptist Convention.

        (ii)   It is expected that any elected faculty member recognizing that either they are (1) no longer qualified or (2) no longer meet the requirements for continued employment or (3) failing at any one of the grounds for termination of service, they would voluntarily offer to resign. If the Seminary administration or Board considers that there are grounds for dismissal, procedures will be initiated.

    b.   Grounds for Termination of Service

       The determination of whether grounds for termination of service exist shall be made by the President in consultation with the Provost and Vice President for Academic Administration and/or the Board as provided in these bylaws.

        (i)    Requirements of continued employment, for which failure in any one is cause for dismissal include, but are not limited to, the following:

            (a)  To abide by, teach, advocate a position, or write in accordance with and not contrary to the Seminary's Statement of Faith as described in Article I.3. of these bylaws.

            (b)  To sign the latest revision of, or any amendment to, the *Baptist Faith and Message* adopted by the Southern Baptist Convention.

        (ii)   Other grounds include, but are not limited to, incompetence, moral delinquency, failure to perform duties properly, defiance of authority, or not acting in the best interest of the Seminary or its mission.

        (iii)  Grounds for dismissal may be established notwithstanding the faculty member's agreement or other employment status.

c.  Procedures

(i)  Informal proceedings concerning dismissal may, at discretion of the President, begin confidentially with the faculty member.

(ii)  If resolution can be effected through informal discussion, the resolution will be reported to the officers of the Board.

(iii)  If resolution cannot be effected through informal discussion, and the faculty member does not choose to resign voluntarily, then formal charges will be submitted to the officers and the Chairman of the Academic Administration Committee of the Board.

(iv)  If resolution cannot be obtained, the President, upon advice of the Chairman and Vice Chairman of the Board, shall submit a written recommendation for dismissal to the Committee for Academic Administration of the Board. If the Committee concurs, the recommendation for dismissal shall be submitted to the Board.

(v)  Formal approval by the Committee for Academic Administration of the recommendation of the President for dismissal shall be voted on by the Board.

8.  <u>Faculty Manual</u>

Official Board policies regarding academic freedom, faculty accession and election, evaluation, promotion, and dismissal are to be implemented by the Provost and Vice President for Academic Administration in accordance with administrative procedures approved by the President. Administrative procedures are to be published in the Faculty Manual. All administrative procedures must be consistent with and not contrary to the bylaws and policies adopted by the Board. Details regarding teaching load shall also be set out in the Faculty Manual.

## <u>ARTICLE VII—CURRICULA</u>

1.  It shall be the policy of the Seminary to maintain at all times well-rounded curricula containing the subjects which should be studied in training for Christian ministry in the various fields of such service.

2.  The President and the Provost and Vice President for Academic Administration shall work with the deans, the faculty, and the Committee for Academic Administration in maintaining such curricula.

## ARTICLE VIII—STUDENT BODY

1. Composition

The student body shall be composed of persons, each of whom has received a divine call to Christian ministry and, upon church endorsement and appropriate application, has been admitted to the Seminary. Included are preachers, evangelists, missionaries, and those who minister throughout the life of the churches and communities who are to receive learning, training, and inspiration to be better equipped, armed, and matured for the faithful exercise of their calling.

2. Character

(1) Only persons of good moral character shall be admitted to the Seminary. The faculty is hereby instructed to make diligent inquiry into the conduct and character of each applicant with the view of refusing admittance to any whose character does not measure up to the high standard required.

(2) It is understood that graduation from the Seminary carries with it the basic assumption that the students have a good moral character and shall, during time of study at the Seminary, conduct themselves in such manner as to merit the conscientious approval of the faculty. In case of failure to merit such approval, the faculty has the right to refuse to recommend such student for graduation. It is expressly understood that the faculty is not required to recommend for graduation a student, though all academic requirements have been met, if they believe the student deemed to be unworthy in character or conduct for such graduation. In such case of refusal to recommend on the part of the faculty, it is distinctly understood that the trustees have the right to refuse to grant a certification of graduation or diploma or to confer a degree.

## ARTICLE IX—FUNDS OF THE CORPORATION

1. Custodian of Funds

The President of the Seminary shall be the custodian of all funds of the Seminary for the trustees. He shall confer with the Committee for Business Administration and the Board concerning problems related to the handling or use of same.

2. Handling of Funds

The Vice President for Business Administration, as treasurer of the Seminary, shall have active charge of all funds of the Seminary including the placement of endowment funds. He shall receive, keep, and disburse such funds under the direction of the President and the Committee for Business Administration. He shall keep an accurate record of all receipts and disbursements and make regular reports to the Board.

3.   Classification of Funds

The funds of the Seminary shall be classified as follows:

(1)   Without Donor Restrictions
(2)   With Donor Restrictions

Each class of funds shall be kept in a separate account in the records of the Seminary and shall be held inviolate in its class unless transfer be authorized by the Board.

4.   Signing of Checks

All checks shall be signed by the treasurer to be affixed by signature writing machine or other facsimile method. The President, also, is authorized to sign checks if necessary. One signature only, a facsimile signature of the treasurer, is authorized for checks to employees of the Seminary from the payroll account.

5.   All endowment funds shall be invested with the Baptist Foundation of Texas, the Southern Baptist Foundation, Guidestone Financial Resources, or such comparable organizations as may be approved by the Committee for Business Administration, and the Board for the investment of seminary funds.

6.   Bequests

All bequests shall be invested and the proceeds thereof used according to the will of the donors.

## ARTICLE X—FINANCIAL RECORDS

1.   Auditing

The financial records shall be audited at the end of each fiscal year by an outside firm of independent certified public accountants selected by the trustees upon recommendation of the Audit Committee. The audit shall be examined by the Audit Committee and it shall report to the Board. Copies of the audit shall be furnished to the President of the Seminary, the Chairman of the Board, members of the Board, and proper officials of the Convention.

2.   Current financial records of the Seminary shall be preserved in the fireproof vault of the Seminary. No records shall be destroyed except upon authority of the Board.

## ARTICLE XI—FISCAL YEAR

The fiscal year of the Seminary shall be August first through July thirty-first.

## ARTICLE XII—DEGREES

1.  The Seminary shall, by the authority of the Board, confer such degrees, diplomas, and certificates as the faculty shall recommend.

2.  The Seminary shall confer no honorary degrees.

## ARTICLE XIII—NON-PROFIT CHARACTER OF INSTITUTION

The Corporation shall at all times be operated as a non-profit corporation. No part of the net earnings of the Corporation shall inure to the benefit of, or be distributable to, its trustees, officers, or other private individuals or persons, except that the Corporation shall be authorized and empowered to pay reasonable compensation for goods and services rendered and to make payments in furtherance of the purposes of the Corporation. Notwithstanding any other provision of these articles of incorporation, the Corporation shall not carry on any activities not permitted to be carried on by a corporation exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code of 1986, or corresponding section of any future federal tax code, or by a corporation, contributions to which are deductible under Section 170(c)(2) of the Internal Revenue Code of 1986, or corresponding section of any future tax code.

Upon dissolution, after all creditors of the Corporation have been paid, the assets of the Corporation shall be distributed to the Southern Baptist Convention, a Georgia nonprofit religious corporation, if the Convention then qualifies as an exempt organization under Section 501(c)(3) of the Internal Revenue Code of 1986, or corresponding section of any future federal tax code. If the Convention does not then qualify, the assets of the Corporation shall be distributed, as determined by the Board, to one or more organizations, which do qualify as an exempt organization.

## ARTICLE XIV—DISTRIBUTION OF BYLAWS

A copy of these bylaws shall be furnished to each member of the Board and each member of the faculty of the Seminary.

## ARTICLE XV—AMENDMENT OF BYLAWS

These bylaws may be amended by the Board in a regular meeting of the Board or in a special meeting called for that purpose and then only by a two-thirds majority of the members present and voting and only after the proposed amendments have been provided to the trustees at least 30 days in advance of the meeting. On any proposed change to the bylaws which has been properly submitted to the trustees as prescribed herein, the matter may be subject to substitution or amendment by the trustees during the meeting of the Board that follows but only to the extent that the substitution or amendment pertains exclusively to the content of the specific article or paragraph of the bylaws which has been submitted for adoption or amendment.

## ARTICLE XVI—INDEMNIFICATION

The Seminary shall indemnify any present or former director, officer, or member of the Board of

the Seminary to the fullest extent permitted by Article 1396-2.22A of the Texas Non-Profit Corporation Act, as may be amended from time to time. These rights of indemnification and reimbursement shall not be exclusive of any other rights to which such person may be entitled by law, agreement, or otherwise.

## <u>ARTICLE XVII—MISCELLANEOUS</u>

In the event of any conflict between the content of a bylaw and the content of any publication, manual, or document of the Seminary, with the exception of the Seminary's then prevailing amended or restated Articles of Incorporation, the content of the bylaw shall control.



## The Southwestern Baptist Theological Seminary
## Annual Faculty Evaluation Form
## 2019-2020

| | |
|---|---|
| Faculty Name | |
| Position | |
| Academic Year | |
| Evaluating Dean | |

| TEACHING | | | | | |
|---|---|---|---|---|---|
| What courses did you teach this last academic year? | Course Name | Course Number | Type (G, U, PHD, DMIN, Conf, AM, SM, DS) | Fall/Winter/Spring/Summer/ Bonn | Prep time? |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

How many Professional and Doctoral students are you currently supervising, where is each supervisee in his/her academic program, and in what year of doctoral study is each supervisee?

What were some insights (positive or critical) about your teaching that were helpful from the SRT feedback you received from your students this last academic year?

| SCHOLARSHIP |
|---|
| Summarize your scholarly activity according to the following categories (lectures, professional presentations, published articles, published books, professional meetings attended, on-going research projects).  List anticipated publication dates where appropriate. |
| |

| What are your research and writing goals for the upcoming academic year? |
|---|
| |

| MINISTRY SKILL |
|---|
| Summarize any special ministerial, performance or skill recognitions or activities that you received or were involved in this last academic year.  These could include any of the following: honors or recognitions, recommendations, teaching or performance awards, public performances, published (non-academic) works, musical compositions or arrangements, mission trips, evangelistic efforts. |
| |

| SPIRITUAL LEADERSHIP |
|---|
| Summarize your spiritual leadership in your role as professor to students this past academic year.  What was your level of interaction with students before and after class, how did you make yourself available to students outside of class time, and in what ways were you able to disciple and mentor students? |
| |

| **SERVICE** |
| --- |
| Where is your church membership and in what ways are you serving faithfully there? |
| |

| SUMMARY REVIEW WITH THE DEAN |
|---|
| From the evaluation above, summarize the top 3-4 goals that will become an area of focused improvement for the upcoming year.  How can the Dean help me, or, help the institution help me, accomplish these goals? |
| |

| Other questions for the Dean: |
|---|
| |

| OVERALL PERFORMANCE (Completed by Professor) | 1 Needs Improvement | 2 Minimal Performance | 3 Meets Expectations | 4 Good Performance | 5 Excellent Performance |
|---|---|---|---|---|---|
| | | | | | |
| Teaching | | | | | |
| Scholarship | | | | | |
| Ministry or Performance | | | | | |
| Spiritual Leadership | | | | | |
| Service | | | | | |
| | | | | | |
| Comments: | | | | | |

| OVERALL PERFORMANCE (Completed by Dean) | 1 Needs Improvement | 2 Minimal Performance | 3 Meets Expectations | 4 Good Performance | 5 Excellent Performance |
|---|---|---|---|---|---|
| | | | | | |
| Teaching | | | | | |
| Scholarship | | | | | |
| Ministry or Performance | | | | | |
| Spiritual Leadership | | | | | |
| Service | | | | | |
| | | | | | |
| Comments: | | | | | |

Both faculty member and Dean have reviewed the information in the appraisal.


_____          _____
(Signature of Dean)                                                    Date


_____          _____
(Signature of Faculty Member)                                  Date

## STUDENT RATING OF TEACHING QUESTIONS

**The Teacher (11)**
The teacher demonstrated broad knowledge and understanding of the subject matter.
The teacher modeled the character of a Christian minister.
The teacher respected students even when they expressed inaccurate or divergent viewpoints.
The teacher presented course content clearly.
The teacher was well prepared for each class.
The teacher made applications of course content to ministry practice where appropriate.
The teacher expounded the biblical content of or related biblical truth to the course subject matter.
The teacher made effective use of class time.
The teacher used teaching methods that were suitable to the subject and contributed to effective learning.
Assistance from the teacher was available outside class.
The Teacher made the course interesting.

**Course Design (4)**
The design of the course allowed for questions of clarification and/or discussion on instructional content during class.
Course work was scheduled in a way to encourage students to stay up-to-date in their work.
Class time was used effectively.
The design of the course allowed adequate coverage of the intended content.

**Materials & Facilities (4)**
The syllabus and instructional material were clear and well organized.
Classroom facilities and/or resources were appropriate for the instructional format.*
The readings contributed to my learning of the course content.
Supplemental aids, such as powerpoint presentations and audiovisual materials were NOT disruptive but were effective teaching instruments.

**Student Outcomes (14)**
The course stimulated my desire for further study in this subject.
I understood the material presented in this course.
The amount of work was appropriate for the credit received.
I was interested in the course subject matter before I took this class.*
I pursued course learning activities willingly and/or with an open mind.*
Up to this point in the course, I have completed assignments by their due date.*
For me, the course objectives have been satisfactorily met.
I gained an appreciation for the subject matter of this course.
I gained factual knowledge in this course.
I developed a deeper biblical knowledge of the subject.
I learned fundamental principles or doctrines of the subject matter.
I gained ability and skill in professional matters addressed by this course.
I made use of library resources in course assignments.
I improved in my research skills as a result of this course.

**Evaluation & Grading (7)**
Course objectives were reflected in the tests and other measurements of learning.
The teacher returned tests and assignments quickly enough to benefit my learning.

Constructive feedback was provided on graded materials.
Exams, assignments, projects contributed to my learning of the subject.
Grading criteria were clearly explained.
Tests and projects addressed the most important aspects of the course content.
The standard for excellent work in this class was high.

**General Evaluation (2)**
The overall quality of instruction in this course was high.
My overall learning experience in this course was satisfactory.

# EXHIBIT 8

# Greenway resigns as president of Southwestern Seminary

Staff
September 23, 2022

The Executive Committee of the Board of Trustees of Southwestern Baptist Theological Seminary met for its regularly scheduled meeting Sept. 22 and subsequently accepted the resignation of President Adam W. Greenway, Chairman Danny Roberts announced today. Greenway has accepted a role with the International Mission Board (IMB).

The Executive Committee voted to extend an invitation to Southern Baptist leader O.S. Hawkins to serve as acting president. Further details about his appointment will be announced early next week. Hawkins is president-emeritus of Guidestone Financial Resources of the Southern Baptist Convention and a two-time alumnus of Southwestern Seminary. The Board of Trustees is expected to name a Presidential Search Committee during its next meeting, Oct. 17-18.

Roberts said the Executive Committee is grateful for Greenway's service to the seminary, noting that final details of his transition as president are pending.

"In receiving President Greenway's resignation, we express our deepest appreciation for his more than three and one-half years of service to his alma mater," said Roberts. "He came to Southwestern Seminary during a difficult time of transition and has worked tirelessly to lead the institution to serve well the churches of the Southern Baptist Convention. Among his other accomplishments, President Greenway has assembled an impressive faculty of scholar-ministers who are daily impacting the lives of their students. He also provided steady leadership during the COVID pandemic, which dramatically altered the delivery of theological education."

In a statement, Greenway spoke about his time on Seminary Hill.

"These days are incredibly challenging in the life of our denomination," said Greenway. "They are also challenging times for academic institutions, particularly theological seminaries. In February 2019, Carla and I accepted the call to come back 'home' to Southwestern Seminary with an understanding of these challenges, but also with the strong desire to be part of the solution. What we failed to appreciate was the enormity of the reputational, legal, and financial realities that would welcome us to the Dome—only to be compounded by a global pandemic unlike anything we have ever experienced before. We have done our best to serve Southern Baptists by helping position our seminary for the future, but much, much work remains to be done. Nevertheless, in the Providence of God we sense a release from our duties here."

He also spoke about his new role with the IMB.

"We will continue to serve Southern Baptists as we have throughout the course of our lives and ministry," said Greenway. "We believe our next assignment is not a departure from but a continuation along the journey God has always had us walk. We are thrilled that we are going to help prepare Southern Baptist missionaries for their work of addressing the world's greatest problem—spiritual lostness—with God's solution, which is the gospel of

Christ. As we look forward to beginning a new chapter with Southern Baptists' favorite entity, the International Mission Board, we ask for your prayers for us in this season of transition, and we pledge our continued prayers and support for our beloved 'crown jewel.'"

https://swbts.edu/news/greenway-resigns-as-president-of-southwestern-seminary/

# EXHIBIT 9

James A. Smith Sr.                                Friday, March 22, 2024 at 11:10:54 Central Daylight Time

**Subject:** Statement on Adam W. Greenway
**Date:** Tuesday, February 28, 2023 at 5:00:11 PM Central Standard Time
**From:** James A. Smith Sr. <JASmith@swbts.edu>
**To:** Brandon Porter <bporter@sbc.net>

Southwestern Baptist Theological Seminary and former president Adam W. Greenway have agreed to an amicable resolution of their differences after discussions on Thursday, January 26, 2023.

Danny Roberts, chairman of the Seminary's Board of Trustees and its Executive Committee, and Dr. Greenway have jointly released the following statement:

"We are grateful to have this resolution between Southwestern Seminary and its ninth president, Dr. Adam W. Greenway. Our prayer has always been that things could be resolved amicably, and the conclusion we have now arrived at is one that we believe honors our Lord and His trustworthy Word, which counsels us that we are to 'if possible, as far as it depends on you, live at peace with everyone.' (Romans 12:18, CSB). The trustees and Dr. Greenway are looking forward to putting this matter behind us and moving on to focus our energies and efforts on following God's plans for the next chapters of our respective lives and ministries. We pray that God will richly bless the Greenway family as well as Southwestern Seminary in the years ahead."


**James A. Smith Sr.**
*Associate Vice President for Communications* | Office of Communications
*Executive Editor* | Seminary Hill Press

**Southwestern Baptist Theological Seminary**
2001 W. Seminary Drive, Fort Worth, TX 76115
**Phone** 817.921.8730 | 1.800.SWBTS.01
**swbts.edu** | **T** **@SWBTS** | **F** **@swbts**

1 of 1

# EXHIBIT 10

Southwestern trustees elect Dockery president, Hawkins chancellor;…udget, academic programs approved in spring meeting | Southwestern    4/12/24, 11:40 AM

Case 4:24-cv-00260-O   Document 10   Filed 04/18/24   Page 157 of 213   PageID 240

# Southwestern trustees elect Dockery president, Hawkins chancellor; new institutional plan, budget, academic programs approved in spring meeting

[Staff](#)

FORT WORTH, TEXAS (SWBTS) – The election of David S. Dockery as 10th president and O.S. Hawkins to a new position as chancellor marked a historic spring meeting of the Southwestern Baptist Theological Seminary board of trustees.

Meeting April 17-19, trustees also approved "Advance Southwestern: 2030," a new institutional plan, a 2023-2024 budget, elected new officers, and approved academic programs and faculty elections, promotions, sabbaticals, and academic chairs, among other actions. All actions of the board were unanimous.

The seminary community gathered for a special prayer chapel for the trustees on April 18, led by Matt Queen, interim provost and vice president for academic administration, and Melana Hunt Monroe, daughter of former Southwestern faculty member T.W. Hunt. The service was based on Psalm 90:17, the theme verse for the academic year established by Dockery in September, and the Lord's Prayer.

The [elections of Dockery and Hawkins to their new roles](#) come nearly seven months after being named as interim president and senior advisor and ambassador-at-large, respectively, in a special-called trustee meeting, September 27, 2022, following the resignation of Adam W. Greenway.

David S. Dockery, who has served as interim president of Southwestern Baptist Theological Seminary since Sept. 27, 2022, was unanimously elected the tenth president of the Forth Worth, Texas, institution by the Board of Trustees on April 19, 2023.

"Dr. David Dockery is God's man for Southwestern Seminary in this hour," Chairman Danny Roberts told trustees. "Our seminary's at a critical juncture in this 115-year history, and in God's providence, He has already provided the man to lead our seminary during this time."

Roberts said trustees did not need to "look further for our next president" based on Dockery's "impressive performance as interim [president] providing stability and healing, his long track record of outstanding Christian leadership in higher education, with the current needs of the institution."

Dockery said he was "deeply humbled and genuinely grateful for the privilege and responsibility to serve" as Southwestern's 10th president. "I am

Southwestern trustees elect Dockery president, Hawkins chancellor;…udget, academic programs approved in spring meeting | Southwestern    4/12/24, 11:40 AM

Case 4:24-cv-00260-O   Document 10   Filed 04/18/24   Page 159 of 213   PageID 242

truly thankful for the overwhelming support from the board of trustees as well as for the faithful encouragement and prayerful support from the faculty, staff, colleagues, and students. What an honor it will be to continue to serve side-by-side with O.S. Hawkins, a dear friend and person that I greatly admire and from whom I have learned much in recent months."

In a statement, Hawkins said, "I have loved Southwestern since the first day I attended classes in January 1970, and I feel a sense of indebtedness to all those who invested so much in my own journey to the M.Div. and Ph.D. degrees on this hill. While I will be serving alongside Dr. Dockery in the new role of chancellor, I will be volunteering my time and whatever gifts and talents God has given me to prayerfully advance the school into what we hope and prayerfully expect to be a brighter tomorrow. We are calling on all 'Southwesterners' to join us on this journey."

"Advance Southwestern: 2030" is an updated and expanded version of an academic plan adopted in 2021, and was the collaborative effort of the interim administration, faculty, and staff involving dozens.

Southwestern trustees elect Dockery president, Hawkins chancellor;…udget, academic programs approved in spring meeting | Southwestern          4/12/24, 11:40 AM

Case 4:24-cv-00260-O   Document 10   Filed 04/18/24   Page 160 of 213   PageID 243

David S. Dockery, a 1981 Master of Divinity graduate of Southwestern Seminary, told the Board of Trustees he was "deeply humbled and genuinely grateful for the privilege and responsibility to serve" as Southwestern's 10th president.

"This plan will pave the way for a, hopefully, coordinated, concerted, collaborative effort together across this campus," Dockery told trustees in his first remarks as president. "This plan did not come about because of one person. It did not come about because of a small group of people. It has contributions from every area of the campus that have spoken into this plan and identify the priorities for their area, things that they think will speak to the advancement of this place."

"The Plan seeks to provide guidance for the administration, faculty, and staff regarding academic, educational, and student matters," the 39-page document says in the introduction. "Designed with the hope of bringing about institutional renewal and consensus, the Plan serves as both an audit

Case 4:24-cv-00260-O   Document 10   Filed 04/18/24   Page 161 of 213   PageID 244

of our current situation and a pointer to the future, recognizing the vital need to bring much needed unity and synergy to the Southwestern community."

In addition to new vision, identity, and mission statements, the plan includes six core values of the institution: grace filled, Christ centered, scripturally grounded, confessionally guided, student focused, and globally engaged.

"Our hope is that such a Plan will help to develop a shared vision and consensus to help bring renewal to Southwestern Seminary for the years ahead," the Plan says.

Acting on recommendations from the Academic Administration Committee, trustees approved four curriculum changes: two in the Roy J. Fish School of Evangelism and Missions adding the Master of Divinity in Spanish and the Master of Theological Studies (MTS) in Portuguese, and two in the Jack D. Terry School of Educational Ministries to offer a master's concentration in Ministry to Women, as approved by both the School of Theology and Terry School faculty, and a master's concentration in Collegiate Ministry. All new programs will begin in the fall 2023 semester, other than the Portuguese MTS, which will be available in 2024.

In matters pertaining to faculty, trustees named Mark E. Taylor to the Wesley Harrison Chair of New Testament and Chris Osborne to the James T. Draper Chair of Pastoral Ministry, both in the School of Theology, effective August 1.

Trustees also promoted John D. Massey to professor of missions and Hongyi Yang to associate professor of world Christianity, both in the Fish School, effective August 1. Massey also serves as dean of the Fish School and Charles F. Stanley Chair for the Advancement of Global Christianity.

Elected to the faculty effective August 1 were Adam Dodd, assistant professor of Old Testament and biblical backgrounds in the School of

App. 158

Theology; Jeremiah Kim, associate professor of systematic theology in the School of Theology and director of the Korean D.Min. program; and Lilly H. Park, associate professor of biblical counseling in the Terry School.

Faculty members approved for a renewed three-year term as presidential appointees were Amy Crider, associate professor of foundations of education in the Terry School; Coleman Ford, assistant professor of humanities in Texas Baptist College; Rebekah Naylor, distinguished professor of missions and missionary-in-residence in the Fish School; and Ken Magnuson, professor of Christian ethics in the School of Theology. All are effective August 1.

Four members of the faculty were approved for partial sabbaticals during the spring 2024 semester: Robert Caldwell, professor of church history; Allen Lott, professor of music history; Dean Sieberhagen, associate professor of Islamic studies and Vernon D. and Jeannette Davidson Chair of Missions; and Hongyi Yang, assistant professor of world Christianity and director of Chinese Language Programs.

Trustees also approved students nominated by the faculty and certified by the registrar as having met all requirements for spring 2023 graduation, as well as a new faculty manual.

Roberts reported that a trustee task force evaluated the former president's expenses and financial management, following up on a request from trustees during their fall meeting. He said the task force "was given unfettered access by the administration to all financial records of the institution, and concluded there were instances of imprudent, unwise, and some activities contrary to institutional policies. These findings, however, did not rise to the level of requiring further action based on what is currently known."

He said, "The findings demonstrated a need for greater accountability and

oversight for the institution. As a result, new financial guardrails will be implemented to provide for greater accountability to the trustees in order to prevent similar decision making in the future."

A budget for fiscal year 2024 of $35.9 million was approved, which is similar to the current fiscal year budget, as adjusted by the board in its fall meeting. Trustees also approved a capital budget for 2024 with a list of priority items in deferred maintenance to address as possible with approval of the Business Administration Committee (BAC).

Trustees affirmed the BAC's decision to sell B.H. Carroll Park Apartments, student housing that is not contiguous with the main campus. In March, seminary officials announced a non-binding agreement for an $11 million acquisition of 15 acres of the Carroll Park property by the Fort Worth Housing Finance Corporation, the housing development arm of the City of Fort Worth. The city plans to use the property to provide housing for 140 vulnerable families, including victims of domestic violence and homeless members of the community.

Trustees authorized the BAC to negotiate details of an agreement with Prestonwood Baptist Church in Plano, Texas, to use seminary property for the purpose of establishing a pregnancy care center for women, expanding Prestonwood Pregnancy Center's ministry to Fort Worth.

"We're grateful for the relationship and partnership with Prestonwood and the opportunity to extend the partnership through this agreement," said John Rayburn, BAC chairman. "The Prestonwood Pregnancy Center will allow new ministry opportunities for Southwestern students and personnel, particularly in the areas of the women's program, biblical counseling, and evangelistic opportunities."

John Horn, chairman of the Institutional Advancement Committee, reported

Southwestern trustees elect Dockery president, Hawkins chancellor;…udget, academic programs approved in spring meeting | Southwestern    4/12/24, 11:40 AM

Case 4:24-cv-00260-O   Document 10   Filed 04/18/24   Page 164 of 213   PageID 247

that the Office of Admissions "has had great results in the last nine months" as they have seen "Preview Days, recruitment, applications, enrollment hours, [and] retention hours greatly increase" from 2022 to 2023. Horn added that "enrollment and student services have set goals diligently building a culture of partnership and engagement between faculty, staff, and students."

New officers of the board were elected for the 2023–2024 academic year: Jonathan Richard (New Mexico), pastor of First Baptist Church of Estancia, New Mexico, chairman; Robert Brown (Tennessee), executive director of Lakeway Christian Schools in Morristown, Tennessee, vice chairman; and Angela Duncan (At-Large), a homemaker in Granbury, Texas, secretary.

In other actions, trustees approved:

- an updated GuideStone Investment Policy Statement;
- the fiscal year 2024 housing allowance for eligible faculty and staff; and
- that Guinn Smith & Co. be contracted with to conduct the fiscal year 2023 financial audit.

# EXHIBIT 11

### MINUTES OF THE SPECIAL CALLED MEETING
### OF THE BOARD OF TRUSTEES
### OF SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY

Tuesday, May 30, 2023, at 3:00 p.m.
Via Zoom and the President's Conference Room,
Southwestern Baptist Theological Seminary

| | |
|---|---|
| Trustees Present in Person: | Danny Roberts, Jonathan Richard, Jamie Green, John Rayburn, Philip Levant, and George West |
| Trustees Present via Zoom: | Bob Brown, Bob Bumgarner, Andrew Bunnell, Mike Bussey, Angela Duncan, Josh Grega, Jonathan Hewett, Mark Hindman, John Horn, Todd Houston, Matthew Kirkland, Brad Lewter, Louie Lu, David Maron, Mike Mings, Mark Mucklow, Darius Nable, Andre Palmer, Ron Pracht, Jordan Rogers, Tim Rothberg, Aaron Sligar, Mark Spence, Leon Stamm, James Taylor, Mike Trammell, and Tim Williams |
| Trustees Absent: | Josh Allen, Demetric Felton, Larry Johnson, Paul Kim, Andrea Powell, Don Reeves, and JoAnne Ruble |
| Representing the Administration: | Dr. David S. Dockery (*President*), Mrs. Michele Smith (*Chief Financial Officer*), Andrew Jennings (*Chief of Staff*), and Dr. O. S. Hawkins (*Chancellor*).  (Dr. Hawkins via Zoom) |
| Others present: | Mr. Colby Adams and Attorney Michael Anderson. Attorney Brian Poe was also present via zoom. |

Call to Order:
The special called meeting of the Board of Trustees was called to order by Chairman Danny Roberts at 3:04 p.m.  This meeting was called by the board chairman at the request of President David Dockery with the invitation emailed on May 22, 2023.

Roll Call:
Secretary Jamie Green called the roll.  A quorum was present.

Executive Session:
As per the meeting invitation and due to the presence of the seminary attorney, the entire meeting was held in privileged Executive Session.  Chairman Roberts reminded the board that there was to be no recording and that those on Zoom should have no others in the room who could overhear the deliberations.

The purpose of the meeting was stated in the meeting invitation: "The matters to be discussed are those covered in the email sent by Aaron Sliger and Andrew Bunnell and possibly other matters dealing with our former president." The following motions were approved by the trustees during the meeting:

1. To publish the audited financials as one comprehensive report for the fiscal years 2002-2022 and examples of presidential expenses as generated by the task force review.
2. To affirm the ongoing work to strengthen financial guardrails recommended by the task force to ensure greater accountability and oversight of the president and other senior administrators.
3. To authorize the publication of a response to allegations made by trustees Aaron Sligar and Andrew Bunnell
4. To instruct the officers of the board to conduct an investigation of possible misconduct by the two trustees as per bylaw 2.14, and to report back within 60 days

Adjournment:
Philip Levant moved that the trustees come out of privileged executive session and adjourn the meeting. George West seconded the motion. The meeting was adjourned by Chairman Roberts at 7:42 p.m.

Respectfully Submitted,

_____          _____
Danny Roberts                        Jamie Green
Chairman of the Board of Trustees    Secretary of the Board of Trustees

# EXHIBIT 12

# Statement of Danny Roberts, chairman of Southwestern Seminary Board of Trustees

Staff

"In response to the claims of Trustees Aaron Sligar and Andrew Bunnell questioning the integrity of the board leadership and requesting affirmation of their call for a special meeting—even though the vote for a meeting was well short of the required 21 positive votes—the chairman upon the request of the president called a meeting of the full board of trustees, which was held today in executive session. Sligar and Bunnell stated their case. Each of the matters they presented was discussed and evidence or lack thereof was vetted. A task force presented its findings and two staff members whose personal morality was egregiously and baselessly questioned were able to speak and share about the harm that has resulted. In response, the full board has approved the following motions, the first unanimously and the others overwhelmingly:

Motion 1:

I move that the Board of Trustees affirms the work of the officers, executive committee, and task force empaneled to examine spending and financial practices of the previous administration as authorized by unanimous vote of the Board during its October 2022 meeting. That the Board further affirms the ongoing work to strengthen financial guardrails recommended by the task force to ensure greater accountability and oversight of the president and other senior administrators. That the Board unambiguously expresses its support and complete confidence in Michele Smith and Colby Adams and finds the allegations contained in the email from Trustees Andrew Bunnell

and Aaron Sliger of financial mismanagement and misbehavior amongst those individuals to be without merit. Finally, that the board unreservedly repudiates as unsubstantiated and egregious other rumors trafficked by Trustees Andrew Bunnell and Aaron Sliger made against employees of the Seminary.

Motion 2:
I move that the Board of Trustees authorize the officers to publish the audited financials as one comprehensive report for the fiscal years 2003-2022 and examples of presidential expenses as generated by the Task Force review.

Motion 3:
I move that the board authorizes the publication of a response to allegations made by trustees Aaron Sligar and Andrew Bunnell.

Motion 4:
I move that the Board of Trustees requests that the officers of the board conduct an investigation of possible misconduct by Andrew Bunnell and Aaron Sligar, per bylaw 2.14, and report back to the full board within 60 days.

"I'm grateful for the near-total support of the trustee board. I state publicly and without equivocation my personal repudiation of the allegations made against my colleagues and me, as well as against staff members of the seminary.

"I can state confidently that the board leadership has exercised aggressively its fiduciary duties, with trustees giving collectively thousands of hours of their time in doing so. Financial guardrails have been and continue to be researched and put in place. One example is that the chairman is now examining the expense reports of the president and the Seminary Leadership Team on a quarterly basis.

"As I said in our October 2022 meeting, it was the growing involvement of trustee leadership and our insistence of greater presidential accountability and resistance to our attempts to implement financial safeguards that led to Adam Greenway's resignation. During that same meeting, a task force was created to carefully examine all expenditures of the institution. During our April 2023 meeting, the task force members made oral reports to the full board in executive session. Board leadership asked Sligar to not raise certain matters that he failed to give proper notice of his intent to raise, some of which were clearly untrue, with others having been inadequately researched, baseless and/or egregiously harmful. On May 20, Sligar and Bunnell emailed these claims, with the unsubstantiated material becoming public several days later by individuals obviously motivated to bring harm on the institution, the board, and certain staff. To send such an email was reckless since it was inevitable that such claims would become public. In today's meeting, the board heard all the facts and has now acted.

"I condemn in the strongest possible manner the actions of any individual who has participated in spreading these baseless allegations. Such behavior is ungodly and is contrary to the spirit of Southwestern Seminary. Even as they have had to endure these odious attacks, staff have served the seminary faithfully, carrying out their duties with competence and integrity. I am grateful for them, and for their families, as they have remained committed to the mission of Southwestern Seminary.

"I look forward to releasing in the near future the information as approved by the board in motions two and three.

"Under the leadership of President David Dockery, the board of trustees is encouraged about the future of Southwestern Seminary. While significant challenges remain, there are 'hopeful markers' for the future, as Dr. Dockery has said. We join with him and the seminary community in his call for prayer

for the institution seeking God's favor (Ps. 90:17) in its vital work of biblically educating and equipping Christian men and women for ministry which encourages the priority of the Great Commandment and the fulfillment of the Great Commission. We ask all Southern Baptists to join us in this prayer."

# EXHIBIT 13

# Board officers issue 'Summary of Findings' by trustee Task Force

[Staff](#)

**Summary of Findings**
**Southwestern Seminary Board of Trustees Task Force**
**June 7, 2023**

*"The President shall have direct charge of, full supervision over, and shall be responsible for all funds and properties of the Seminary."*
Southwestern Seminary Bylaw 5.4

During the special meeting of the Southwestern Seminary Board of Trustees on May 30, trustees overwhelmingly voted to request the officers to publish a summary of the findings of the work of the task force empaneled to review expenditures related to the President's home, the President's office, and any personal expenditures by the former President. The Board requested officers to "publish audited financials as one comprehensive report for the fiscal years 2002-2022 and examples of presidential expenses as generated by the task force review."

The task force, unanimously authorized during the Fall 2022 meeting, was composed of John Rayburn, chairman, George West, Mike Bussey, Josh Grega, and Aaron Sligar (who was added to the task force in March). The findings of this review, based on extensive research by the task force, along with recommendations for preventing such issues in the future, were presented to trustees at their Spring 2023 meeting. Matters covered by the task force included suggested strengthened financial guardrails, evaluation of possible sale of portions of the campus, and spending habits of the

former President.

The task force concluded that Adam Greenway engaged in a pattern of spending that the task force believes did not reflect proper stewardship of seminary resources. This pattern of spending occurred without deference to financial controls and seminary financial policies.

Between 2019 and 2022, over $1.5 million was spent on renovations, furnishings, and related expenses to the President's home. These expenditures were made at a time when the seminary was making significant budget cuts, including the reduction of faculty personnel and positions. Examples of expenses for the President's home include $59,865.79 for Christmas decorations, more than $25,000 for artwork, and $11,123.49 for an espresso machine and accessories. Despite extensive renovations completed early in his tenure, further optional work was done on the President's home in late 2021 when more than $180,000 was spent on HVAC work.

The task force found that a significant amount of the work done on the President's home was carried out by the seminary's facilities team, creating an unsustainable demand, and contributing to poor morale and high turnover. It was reported that employees were often asked to do the same job multiple times to meet Greenway's demanding expectations. Multiple change orders were also true with outside contractors, increasing costs of the projects.

Between the summer of 2020 and early 2021, over $500,000 was spent on the President's office, including renovations and furniture.

The task force also found numerous examples of improper expenses charged to the seminary by Greenway himself and/or individuals whom he authorized to use his seminary credit card in violation of seminary policy,

including $9,936.05 for first-class airfare for Greenway, his family, and a family friend to Anaheim, California, for the 2022 Southern Baptist Convention annual meeting, $4,850.51 for the framing of personal diplomas, and $920 for a metal University of Florida Gator head decoration (one of Greenway's favorite college athletic programs).

Published with these findings is a compilation of all the audited financials of the seminary, 2002-2022, introduced with an overview with pertinent details. The audited financials for 2021-2022 are being published for the first time here in advance of their appearance in the 2023 *SBC Annual*, where all the other financials were previously published each year. The compilation and overview demonstrate that the financial challenges at Southwestern are longstanding. Unfortunately, the trustees' hopes of correction in this financial trajectory in the 2019 election of Greenway were not realized.

We grieve the pattern of poor stewardship evident in this summary of the task force's findings. We wish to express our gratitude to those seminary employees who sought to enforce existing policies and challenge the pattern of spending noted above, even as their efforts were met with resistance.

We wish to underscore Chairman Roberts' May 30 statement, "I can state confidently that the Board leadership has exercised aggressively its fiduciary duties, with trustees giving collectively thousands of hours of their time in doing so. Financial guardrails have been and continue to be researched and put in place. One example is that the chairman is now examining the expense reports of the President and the Seminary Leadership Team on a quarterly basis."

The Board of Trustees and administrative leadership at the seminary are committed to every appropriate measure that will ensure proper stewardship of seminary resources in a manner that is consistent with the mission of

Southwestern Seminary.

The officers commend the tireless work of the task force members who conscientiously and carefully reviewed voluminous materials and worked collaboratively to bring these findings to the Board. These findings are being published to provide as much transparency as possible. The officers remain committed to lead the Board of Trustees to steward faithfully their responsibility to the Southern Baptist Convention to govern this historic institution on behalf of Southern Baptists.

The Board enthusiastically supports President David S. Dockery and Chancellor O.S. Hawkins as they lead Southwestern Seminary. Although we must be candid to note that significant financial challenges remain, the new administration has made difficult decisions to reduce spending, including in overall staffing of the institution, while prioritizing the educational mission of the seminary. These reductions, coupled with promising increases in undesignated giving and upticks in enrollment and credit hours taken, are important first steps to stabilizing the institution's financial standing.

We echo Chairman Roberts' May 30 statement joining President Dockery and "the seminary community in his call for prayer for the institution seeking God's favor (Ps. 90:17) in its vital work of biblically educating and equipping Christian men and women for ministry which encourages the priority of the Great Commandment and the fulfilment of the Great Commission. We ask all Southern Baptists to join us in this prayer."

*Editor's note: An overview with pertinent details about the audited financials of the seminary, 2002-2022, are available* [here](). *The audited financials of the seminary, 2002-2022, are available* [here]().

# EXHIBIT 14

# BAPTIST FAITH AND MESSAGE

## PREAMBLE _____

Baptists are a people of deep beliefs and cherished doctrines. Throughout our history we have been a confessional people, adopting statements of faith as a witness to our beliefs and a pledge of our faithfulness to the doctrines revealed in Holy Scripture.

Our confessions of faith are rooted in historical precedent, as the church in every age has been called upon to define and defend its beliefs. Each generation of Christians bears the responsibility of guarding the treasury of truth that has been entrusted to us [2 Timothy 1:14]. Facing a new century, Southern Baptists must meet the demands and duties of the present hour.

New challenges to faith appear in every age. A pervasive anti-supernaturalism in the culture was answered by Southern Baptists in 1925, when the *Baptist Faith and Message* was first adopted by this Convention. In 1963, Southern Baptists responded to assaults upon the authority and truthfulness of the Bible by adopting revisions to the *Baptist Faith and Message*. The Convention added an article on "The Family" in 1998, thus answering cultural confusion with the clear teachings of Scripture. Now, faced with a culture hostile to the very notion of truth, this generation of Baptists must claim anew the eternal truths of the Christian faith.

Your committee respects and celebrates the heritage of the *Baptist Faith and Message*, and affirms the decision of the Convention in 1925 to adopt the *New Hampshire Confession of Faith*, "revised at certain points and with some additional articles growing out of certain needs . . . ." We also respect the important contributions of the 1925 and 1963 editions of the *Baptist Faith and Message*.

With the 1963 committee, we have been guided in our work by the 1925 "statement of the historic Baptist conception of the nature and function of confessions of faith in our religious and denominational life . . . ." It is, therefore, quoted in full as a part of this report to the Convention:

(1) That they constitute a consensus of opinion of some Baptist body, large or small, for the general instruction and guidance of our own people and others concerning those articles of the Christian faith which are most surely held among us. They are not intended to add anything to the simple conditions of salvation revealed in the New Testament, viz., repentance toward God and faith in Jesus Christ as Saviour and Lord.

(2) That we do not regard them as complete statements of our faith, having any quality of finality or infallibility. As in the past so in the future, Baptists should hold themselves free to revise their statements of faith as may seem to them wise and expedient at any time.

(3) That any group of Baptists, large or small, have the inherent right to draw up for themselves and publish to the world a confession of their faith whenever they may think it advisable to do so.

(4) That the sole authority for faith and practice among Baptists is the Scriptures of the Old and New Testaments. Confessions are only guides in interpretation, having no authority over the conscience.

(5) That they are statements of religious convictions, drawn from the Scriptures, and are not to be used to hamper freedom of thought or investigation in other realms of life.

Baptists cherish and defend religious liberty, and deny the right of any secular or religious authority to impose a confession of faith upon a church or body of churches. We honor the principles of soul competency and the priesthood of believers, affirming together both our liberty in Christ and our accountability to each other under the Word of God.

Baptist churches, associations, and general bodies have adopted confessions of faith as a witness to the world, and as instruments of doctrinal accountability. We are not embarrassed to state before the world that these are doctrines we hold precious and as essential to the Baptist tradition of faith and practice.

As a committee, we have been charged to address the "certain needs" of our own generation. In an age increasingly hostile to Christian truth, our challenge is to express the truth as revealed in Scripture, and to bear witness to Jesus Christ, who is "*the Way, the Truth, and the Life*."

The 1963 committee rightly sought to identify and affirm "certain definite doctrines that Baptists believe, cherish, and with which they have been and are now closely identified." Our living faith is established upon eternal truths. "Thus this generation of Southern Baptists is in historic succession of intent and purpose as it endeavors to state for its time and theological climate those articles of the Christian faith which are most surely held among us."

It is the purpose of this statement of faith and message to set forth certain teachings which we believe.

# BAPTIST FAITH AND MESSAGE _____

### I. The Scriptures

The Holy Bible was written by men divinely inspired and is God's revelation of Himself to man. It is a perfect treasure of divine instruction. It has God for its author, salvation for its end, and truth, without any mixture of error, for its matter. Therefore, all Scripture is totally true and trustworthy. It reveals the principles by which God judges us, and therefore is, and will remain to the end of the world, the true center of Christian union, and the supreme standard by which all human conduct, creeds, and religious opinions should be tried. All Scripture is a testimony to Christ, who is Himself the focus of divine revelation.

*Exodus 24:4; Deuteronomy 4:1-2; 17:19; Joshua 8:34; Psalms 19:7-10; 119:11, 89, 105, 140; Isaiah 34:16; 40:8; Jeremiah 15:16; 36:1-32; Matthew 5:17-18; 22:29; Luke 21:33; 24:44-46; John 5:39; 16:13-15; 17:17; Acts 2:16ff.; 17:11; Romans 15:4; 16:25-26; 2 Timothy 3:15-17; Hebrews 1:1-2; 4:12; 1 Peter 1:25; 2 Peter 1:19-21.*

### II. God

There is one and only one living and true God. He is an intelligent, spiritual, and personal Being, the Creator, Redeemer, Preserver, and Ruler of the universe. God is infinite in holiness and all other perfections. God is all powerful and all knowing; and His perfect knowledge extends to all things, past, present, and future, including the future decisions of His free creatures. To Him we owe the highest love, reverence, and obedience. The eternal triune God reveals Himself to us as Father, Son, and Holy Spirit, with distinct personal attributes, but without division of nature, essence, or being.

### A. God the Father

God as Father reigns with providential care over His universe, His creatures, and the flow of the stream of human history according to the purposes of His grace. He is all powerful, all knowing, all loving, and all wise. God is Father in truth to those who become children of God through faith in Jesus Christ. He is fatherly in His attitude toward all men.

*Genesis 1:1; 2:7; Exodus 3:14; 6:2-3; 15:11ff.; 20:1ff.; Leviticus 22:2; Deuteronomy 6:4; 32:6; 1 Chronicles 29:10; Psalm 19:1-3; Isaiah 43:3, 15; 64:8; Jeremiah 10:10; 17:13; Matthew 6:9ff.; 7:11; 23:9; 28:19; Mark 1:9-11; John 4:24; 5:26; 14:6-13; 17:1-8; Acts 1:7; Romans 8:14-15; 1 Corinthians 8:6; Galatians 4:6; Ephesians 4:6; Colossians 1:15; 1 Timothy 1:17; Hebrews 11:6; 12:9; 1 Peter 1:17; 1 John 5:7.*

### B. God the Son

Christ is the eternal Son of God. In His incarnation as Jesus Christ He was conceived of the Holy Spirit and born of the virgin Mary. Jesus perfectly revealed and did the will of God, taking upon Himself human nature with its demands and necessities and identifying Himself completely with mankind yet without sin. He honored the divine law by His personal obedience, and in His substitutionary death on the cross He made provision for the redemption of men from sin. He was raised from the dead with a glorified body and appeared to His disciples as the person who was with them before His crucifixion. He ascended into heaven and is now exalted at the right hand of God where He is the One Mediator, fully God, fully man, in whose Person is effected the reconciliation between God and man. He will return in power and glory to judge the world and to consummate His redemptive mission. He now dwells in all believers as the living and ever present Lord.

*Genesis 18:1ff.; Psalms 2:7ff.; 110:1ff.; Isaiah 7:14; Isaiah 53:1-12; Matthew 1:18-23; 3:17; 8:29; 11:27; 14:33; 16:16, 27; 17:5; 27; 28:1-6, 19; Mark 1:1; 3:11; Luke 1:35; 4:41; 22:70; 24:46; John 1:1-18, 29; 10:30, 38; 11:25-27; 12:44-50; 14:7-11; 16:15-16, 28; 17:1-5, 21-22; 20:1-20, 28; Acts 1:9; 2:22-24; 7:55-56; 9:4-5, 20; Romans 1:3-4; 3:23-26; 5:6-21; 8:1-3, 34; 10:4; 1 Corinthians 1:30; 2:2; 8:6; 15:1-8, 24-28; 2 Corinthians 5:19-21; 8:9; Galatians 4:4-5; Ephesians 1:20; 3:11; 4:7-10; Philippians 2:5-11; Colossians 1:13-22; 2:9; 1 Thessalonians 4:14-18; 1 Timothy 2:5-6; 3:16; Titus 2:13-14; Hebrews 1:1-3; 4:14-15; 7:14-28; 9:12-15, 24-28; 12:2; 13:8; 1 Peter 2:21-25; 3:22; 1 John 1:7-9; 3:2; 4:14-15; 5:9; 2 John 7-9; Revelation 1:13-16; 5:9-14; 12:10-11; 13:8; 19:16.*

### C. God the Holy Spirit

The Holy Spirit is the Spirit of God, fully divine. He inspired holy men of old to write the Scriptures. Through illumination He enables men to understand truth. He exalts Christ. He convicts men of sin, of righteousness, and of judgment. He calls men to the Saviour, and effects regeneration. At the moment of regeneration He baptizes every believer into the Body of Christ. He cultivates Christian character, comforts believers, and bestows the spiritual gifts by which they serve God through His church. He seals the believer unto the day of final redemption. His presence in the Christian is the guarantee that God will bring the believer into the fullness of the stature of Christ. He enlightens and empowers the believer and the church in worship, evangelism, and service.

*Genesis 1:2; Judges 14:6; Job 26:13; Psalms 51:11; 139:7ff.; Isaiah 61:1-3; Joel 2:28-32; Matthew 1:18; 3:16; 4:1; 12:28-32; 28:19; Mark 1:10, 12; Luke 1:35; 4:1, 18-19; 11:13; 12:12; 24:49; John 4:24; 14:16-17, 26; 15:26; 16:7-14; Acts 1:8; 2:1-4, 38; 4:31; 5:3; 6:3; 7:55; 8:17, 39; 10:44; 13:2; 15:28; 16:6; 19:1-6; Romans 8:9-11, 14-16, 26-27; 1 Corinthians 2:10-14; 3:16; 12:3-11, 13; Galatians 4:6; Ephesians 1:13-14; 4:30; 5:18; 1 Thessalonians 5:19; 1 Timothy 3:16; 4:1; 2 Timothy 1:14; 3:16; Hebrews 9:8, 14; 2 Peter 1:21; 1 John 4:13; 5:6-7; Revelation 1:10; 22:17.*

### III. Man

Man is the special creation of God, made in His own image. He created them male and female as the crowning work of His creation. The gift of gender is thus part of the goodness of God's creation. In the beginning man was innocent of sin and was endowed by his Creator with freedom of choice. By his free choice man sinned against God and brought sin into the human race. Through the temptation of Satan man transgressed the command of God, and fell from his original innocence whereby his posterity inherit a nature and an environment inclined toward sin. Therefore, as soon as they are capable of moral action, they become transgressors and are under condemnation. Only the grace of God can bring man into His holy fellowship and enable man to fulfill the creative purpose of God. The sacredness of human personality is evident in that God created man in His own image, and in that Christ died for man; therefore, every person of every race possesses full dignity and is worthy of respect and Christian love.

*Genesis 1:26-30; 2:5, 7, 18-22; 3; 9:6; Psalms 1; 8:3-6; 32:1-5; 51:5; Isaiah 6:5; Jeremiah 17:5; Matthew 16:26; Acts 17:26-31; Romans 1:19-32; 3:10-18, 23; 5:6, 12, 19; 6:6; 7:14-25; 8:14-18, 29; 1 Corinthians 1:21-31; 15:19, 21-22; Ephesians 2:1-22; Colossians 1:21-22; 3:9-11.*

### IV. Salvation

Salvation involves the redemption of the whole man, and is offered freely to all who accept Jesus Christ as Lord and Saviour, who by His own blood obtained eternal redemption for the believer. In its broadest sense salvation includes regeneration, justification, sanctification, and glorification. There is no salvation apart from personal faith in Jesus Christ as Lord.

A. Regeneration, or the new birth, is a work of God's grace whereby believers become new creatures in Christ Jesus. It is a change of heart wrought by the Holy Spirit through conviction of sin, to which the sinner responds in repentance toward God and faith in the Lord Jesus Christ. Repentance and faith are inseparable experiences of grace.

   Repentance is a genuine turning from sin toward God. Faith is the acceptance of Jesus Christ and commitment of the entire personality to Him as Lord and Saviour.

B. Justification is God's gracious and full acquittal upon principles of His righteousness of all sinners who repent and believe in Christ. Justification brings the believer unto a relationship of peace and favor with God.

C. Sanctification is the experience, beginning in regeneration, by which the believer is set apart to God's purposes, and is enabled to progress toward moral and spiritual maturity through the presence and power of the Holy Spirit dwelling in him. Growth in grace should continue throughout the regenerate person's life.

D. Glorification is the culmination of salvation and is the final blessed and abiding state of the redeemed.

*Genesis 3:15; Exodus 3:14-17; 6:2-8; Matthew 1:21; 4:17; 16:21-26; 27:22-28:6; Luke 1:68-69; 2:28-32; John 1:11-14, 29; 3:3-21, 36; 5:24; 10:9, 28-29; 15:1-16; 17:17; Acts 2:21; 4:12; 15:11; 16:30-31; 17:30-31; 20:32; Romans 1:16-18; 2:4; 3:23-25; 4:3ff.; 5:8-10; 6:1-23; 8:1-18, 29-39; 10:9-10, 13; 13:11-14; 1 Corinthians 1:18, 30; 6:19-20; 15:10; 2 Corinthians 5:17-20; Galatians 2:20; 3:13; 5:22-25; 6:15; Ephesians 1:7; 2:8-22; 4:11-16; Philippians 2:12-13; Colossians 1:9-22; 3:1ff.; 1 Thessalonians 5:23-24; 2 Timothy 1:12; Titus 2:11-14; Hebrews 2:1-3; 5:8-9; 9:24-28; 11:1-12:8, 14; James 2:14-26; 1 Peter 1:2-23; 1 John 1:6-2:11; Revelation 3:20; 21:1-22:5.*

**PART**

**V. God's Purpose of Grace**

Election is the gracious purpose of God, according to which He regenerates, justifies, sanctifies, and glorifies sinners. It is consistent with the free agency of man, and comprehends all the means in connection with the end. It is the glorious display of God's sovereign goodness, and is infinitely wise, holy, and unchangeable. It excludes boasting and promotes humility.

All true believers endure to the end. Those whom God has accepted in Christ, and sanctified by His Spirit, will never fall away from the state of grace, but shall persevere to the end. Believers may fall into sin through neglect and temptation, whereby they grieve the Spirit, impair their graces and comforts, and bring reproach on the cause of Christ and temporal judgments on themselves; yet they shall be kept by the power of God through faith unto salvation.

*Genesis 12:1-3; Exodus 19:5-8; 1 Samuel 8:4-7, 19-22; Isaiah 5:1-7; Jeremiah 31:31ff.; Matthew 16:18-19; 21:28-45; 24:22, 31; 25:34; Luke 1:68-79; 2:29-32; 19:41-44; 24:44-48; John 1:12-14; 3:16; 5:24; 6:44-45, 65; 10:27-29; 15:16; 17:6, 12, 17-18; Acts 20:32; Romans 5:9-10; 8:28-39; 10:12-15; 11:5-7, 26-36; 1 Corinthians 1:1-2; 15:24-28; Ephesians 1:4-23; 2:1-10; 3:1-11; Colossians 1:12-14; 2 Thessalonians 2:13-14; 2 Timothy 1:12; 2:10, 19; Hebrews 11:39–12:2; James 1:12; 1 Peter 1:2-5, 13; 2:4-10; 1 John 1:7-9; 2:19; 3:2.*

**VI. The Church**

A New Testament church of the Lord Jesus Christ is an autonomous local congregation of baptized believers, associated by covenant in the faith and fellowship of the gospel; observing the two ordinances of Christ, governed by His laws, exercising the gifts, rights, and privileges invested in them by His Word, and seeking to extend the gospel to the ends of the earth. Each congregation operates under the Lordship of Christ through democratic processes. In such a congregation each member is responsible and accountable to Christ as Lord. Its two scriptural offices are that of pastor/elder/overseer and deacon. While both men and women are gifted for service in the church, the office of pastor/elder/overseer is limited to men as qualified by Scripture.

The New Testament speaks also of the church as the Body of Christ which includes all of the redeemed of all the ages, believers from every tribe, and tongue, and people, and nation.

*Matthew 16:15-19; 18:15-20; Acts 2:41-42, 47; 5:11-14; 6:3-6; 13:1-3; 14:23, 27; 15:1-30; 16:5; 20:28; Romans 1:7; 1 Corinthians 1:2; 3:16; 5:4-5; 7:17; 9:13-14; 12; Ephesians 1:22-23; 2:19-22; 3:8-11, 21; 5:22-32; Philippians 1:1; Colossians 1:18; 1 Timothy 2:9-14; 3:1-15; 4:14; Hebrews 11:39-40; 1 Peter 5:1-4; Revelation 2-3; 21:2-3.*

**VII. Baptism and the Lord's Supper**

Christian baptism is the immersion of a believer in water in the name of the Father, the Son, and the Holy Spirit. It is an act of obedience symbolizing the believer's faith in a crucified, buried, and risen Saviour, the believer's death to sin, the burial of the old life, and the resurrection to walk in newness of life in Christ Jesus. It is a testimony to his faith in the final resurrection of the dead. Being a church ordinance, it is prerequisite to the privileges of church membership and to the Lord's Supper.

The Lord's Supper is a symbolic act of obedience whereby members of the church, through partaking of the bread and the fruit of the vine, memorialize the death of the Redeemer and anticipate His second coming.

*Matthew 3:13-17; 26:26-30; 28:19-20; Mark 1:9-11; 14:22-26; Luke 3:21-22; 22:19-20; John 3:23; Acts 2:41-42; 8:35-39; 16:30-33; 20:7; Romans 6:3-5; 1 Corinthians 10:16, 21; 11:23-29; Colossians 2:12.*

**VIII. The Lord's Day**

The first day of the week is the Lord's Day. It is a Christian institution for regular observance. It commemorates the resurrection of Christ from the dead and should include exercises of worship and spiritual devotion, both public and private. Activities on the Lord's Day should be commensurate with the Christian's conscience under the Lordship of Jesus Christ.

*Exodus 20:8-11; Matthew 12:1-12; 28:1ff.; Mark 2:27-28; 16:1-7; Luke 24:1-3, 33-36; John 4:21-24; 20:1, 19-28; Acts 20:7; Romans 14:5-10; I Corinthians 16:1-2; Colossians 2:16; 3:16; Revelation 1:10.*

**IX. The Kingdom**

The Kingdom of God includes both His general sovereignty over the universe and His particular kingship over men who willfully acknowledge Him as King. Particularly the Kingdom is the realm of salvation into which men enter by trustful, childlike commitment to Jesus Christ. Christians ought to pray and to labor that the Kingdom may come and God's will be done on earth. The full consummation of the Kingdom awaits the return of Jesus Christ and the end of this age.

*Genesis 1:1; Isaiah 9:6-7; Jeremiah 23:5-6; Matthew 3:2; 4:8-10, 23; 12:25-28; 13:1-52; 25:31-46; 26:29; Mark 1:14-15; 9:1; Luke 4:43; 8:1; 9:2; 12:31-32; 17:20-21; 23:42; John 3:3; 18:36; Acts 1:6-7; 17:22-31; Romans 5:17; 8:19; 1 Corinthians 15:24-28; Colossians 1:13; Hebrews 11:10, 16; 12:28; 1 Peter 2:4-10; 4:13; Revelation 1:6, 9; 5:10; 11:15; 21-22.*

**X. Last Things**

God, in His own time and in His own way, will bring the world to its appropriate end. According to His promise, Jesus Christ will return personally and visibly in glory to the earth; the dead will be raised; and Christ will judge all men in righteousness. The unrighteous will be consigned to Hell, the place of everlasting punishment. The righteous in their resurrected and glorified bodies will receive their reward and will dwell forever in Heaven with the Lord.

*Isaiah 2:4; 11:9; Matthew 16:27; 18:8-9; 19:28; 24:27, 30, 36, 44; 25:31-46; 26:64; Mark 8:38; 9:43-48; Luke 12:40, 48; 16:19-26; 17:22-37; 21:27-28; John 14:1-3; Acts 1:11; 17:31; Romans 14:10; 1 Corinthians 4:5; 15:24-28, 35-58; 2 Corinthians 5:10; Philippians 3:20-21; Colossians 1:5; 3:4; 1 Thessalonians 4:14-18; 5:1ff.; 2 Thessalonians 1:7ff.; 2; 1 Timothy 6:14; 2 Timothy 4:1, 8; Titus 2:13; Hebrews 9:27-28; James 5:8; 2 Peter 3:7ff.; 1 John 2:28; 3:2; Jude 14; Revelation 1:18; 3:11; 20:1-22:13.*

**XI. Evangelism and Missions**

It is the duty and privilege of every follower of Christ and of every church of the Lord Jesus Christ to endeavor to make disciples of all nations. The new birth of man's spirit by God's Holy Spirit means the birth of love for others. Missionary effort on the part of all rests thus upon a spiritual necessity of the regenerate life, and is expressly and repeatedly commanded in the teachings of Christ. The Lord Jesus Christ has commanded the preaching of the gospel to all nations. It is the duty of every child of God to seek constantly to win the lost to Christ by verbal witness undergirded by a Christian lifestyle, and by other methods in harmony with the gospel of Christ.

*Genesis 12:1-3; Exodus 19:5-6; Isaiah 6:1-8; Matthew 9:37-38; 10:5-15; 13:18-30, 37-43; 16:19; 22:9-10; 24:14; 28:18-20; Luke 10:1-18; 24:46-53; John 14:11-12; 15:7-8, 16; 17:15; 20:21; Acts 1:8; 2; 8:26-40; 10:42-48; 13:2-3; Romans 10:13-15; Ephesians 3:1-11; 1 Thessalonians 1:8; 2 Timothy 4:5; Hebrews 2:1-3; 11:39-12:2; 1 Peter 2:4-10; Revelation 22:17.*

**XII. Education**

Christianity is the faith of enlightenment and intelligence. In Jesus Christ abide all the treasures of wisdom and knowledge. All sound learning is, therefore, a part of our Christian heritage. The new birth opens all human faculties and creates a thirst for knowledge. Moreover, the cause of education in the Kingdom of Christ is co-ordinate with the causes of missions and general benevolence, and should receive along with these the liberal support of the churches. An adequate system of Christian education is necessary to a complete spiritual program for Christ's people.

In Christian education there should be a proper balance between academic freedom and academic responsibility. Freedom in any orderly relationship of human life is always limited and never absolute. The freedom of a teacher in a Christian school, college, or seminary is limited by the pre-eminence of Jesus Christ, by the authoritative nature of the Scriptures, and by the distinct purpose for which the school exists.

*Deuteronomy 4:1, 5, 9, 14; 6:1-10; 31:12-13; Nehemiah 8:1-8; Job 28:28; Psalms 19:7ff.; 119:11; Proverbs 3:13ff.; 4:1-10; 8:1-7, 11; 15:14; Ecclesiastes 7:19; Matthew 5:2; 7:24ff.; 28:19-20; Luke 2:40; 1 Corinthians 1:18-31; Ephesians 4:11-16; Philippians 4:8; Colossians 2:3, 8-9; 1 Timothy 1:3-7; 2 Timothy 2:15; 3:14-17; Hebrews 5:12-6:3; James 1:5; 3:17.*

### XIII. Stewardship

God is the source of all blessings, temporal and spiritual; all that we have and are we owe to Him. Christians have a spiritual debtorship to the whole world, a holy trusteeship in the gospel, and a binding stewardship in their possessions. They are therefore under obligation to serve Him with their time, talents, and material possessions; and should recognize all these as entrusted to them to use for the glory of God and for helping others. According to the Scriptures, Christians should contribute of their means cheerfully, regularly, systematically, proportionately, and liberally for the advancement of the Redeemer's cause on earth.

*Genesis 14:20; Leviticus 27:30-32; Deuteronomy 8:18; Malachi 3:8-12; Matthew 6:1-4, 19-21; 19:21; 23:23; 25:14-29; Luke 12:16-21, 42; 16:1-13; Acts 2:44-47; 5:1-11; 17:24-25; 20:35; Romans 6:6-22; 12:1-2; 1 Corinthians 4:1-2; 6:19-20; 12; 16:1-4; 2 Corinthians 8-9; 12:15; Philippians 4:10-19; 1 Peter 1:18-19.*

### XIV. Cooperation

Christ's people should, as occasion requires, organize such associations and conventions as may best secure cooperation for the great objects of the Kingdom of God. Such organizations have no authority over one another or over the churches. They are voluntary and advisory bodies designed to elicit, combine, and direct the energies of our people in the most effective manner. Members of New Testament churches should cooperate with one another in carrying forward the missionary, educational, and benevolent ministries for the extension of Christ's Kingdom. Christian unity in the New Testament sense is spiritual harmony and voluntary cooperation for common ends by various groups of Christ's people. Cooperation is desirable between the various Christian denominations, when the end to be attained is itself justified, and when such cooperation involves no violation of conscience or compromise of loyalty to Christ and His Word as revealed in the New Testament.

*Exodus 17:12; 18:17ff.; Judges 7:21; Ezra 1:3-4; 2:68-69; 5:14-15; Nehemiah 4; 8:1-5; Matthew 10:5-15; 20:1-16; 22:1-10; 28:19-20; Mark 2:3; Luke 10:1ff.; Acts 1:13-14; 2:1ff.; 4:31-37; 13:2-3; 15:1-35; 1 Corinthians 1:10-17; 3:5-15; 12; 2 Corinthians 8-9; Galatians 1:6-10; Ephesians 4:1-16; Philippians 1:15-18.*

### XV. The Christian and the Social Order

All Christians are under obligation to seek to make the will of Christ supreme in our own lives and in human society. Means and methods used for the improvement of society and the establishment of righteousness among men can be truly and permanently helpful only when they are rooted in the regeneration of the individual by the saving grace of God in Jesus Christ. In the spirit of Christ, Christians should oppose racism, every form of greed, selfishness, and vice, and all forms of sexual immorality, including adultery, homosexuality, and pornography. We should work to provide for the orphaned, the needy, the abused, the aged, the helpless, and the sick. We should speak on behalf of the unborn and contend for the sanctity of all human life from conception to natural death. Every Christian should seek to bring industry, government, and society as a whole under the sway of the principles of righteousness, truth, and brotherly love. In order to promote these ends Christians should be ready to work with all men of good will in any good cause, always being careful to act in the spirit of love without compromising their loyalty to Christ and His truth.

*Exodus 20:3-17; Leviticus 6:2-5; Deuteronomy 10:12; 27:17; Psalm 101:5; Micah 6:8; Zechariah 8:16; Matthew 5:13-16, 43-48; 22:36-40; 25:35; Mark 1:29-34; 2:3ff.; 10:21; Luke 4:18-21; 10:27-37; 20:25; John 15:12; 17:15; Romans 12–14; 1 Corinthians 5:9-10; 6:1-7; 7:20-24; 10:23-11:1; Galatians 3:26-28; Ephesians 6:5-9; Colossians 3:12-17; 1 Thessalonians 3:12; Philemon; James 1:27; 2:8.*

### XVI. Peace and War

It is the duty of Christians to seek peace with all men on principles of righteousness. In accordance with the spirit and teachings of Christ they should do all in their power to put an end to war.

The true remedy for the war spirit is the gospel of our Lord. The supreme need of the world is the acceptance of His teachings in all the affairs of men and nations, and the practical application of His law of love. Christian people throughout the world should pray for the reign of the Prince of Peace.

*Isaiah 2:4; Matthew 5:9, 38-48; 6:33; 26:52; Luke 22:36, 38; Romans 12:18-19; 13:1-7; 14:19; Hebrews 12:14; James 4:1-2.*

**XVII. Religious Liberty**

God alone is Lord of the conscience, and He has left it free from the doctrines and commandments of men which are contrary to His Word or not contained in it. Church and state should be separate. The state owes to every church protection and full freedom in the pursuit of its spiritual ends. In providing for such freedom no ecclesiastical group or denomination should be favored by the state more than others. Civil government being ordained of God, it is the duty of Christians to render loyal obedience thereto in all things not contrary to the revealed will of God. The church should not resort to the civil power to carry on its work. The gospel of Christ contemplates spiritual means alone for the pursuit of its ends. The state has no right to impose penalties for religious opinions of any kind. The state has no right to impose taxes for the support of any form of religion. A free church in a free state is the Christian ideal, and this implies the right of free and unhindered access to God on the part of all men, and the right to form and propagate opinions in the sphere of religion without interference by the civil power.

*Genesis 1:27; 2:7; Matthew 6:6-7, 24; 16:26; 22:21; John 8:36; Acts 4:19-20; Romans 6:1-2; 13:1-7; Galatians 5:1, 13; Philippians 3:20; 1 Timothy 2:1-2; James 4:12; 1 Peter 2:12-17; 3:11-17; 4:12-19.*

**XVIII. The Family**

God has ordained the family as the foundational institution of human society. It is composed of persons related to one another by marriage, blood, or adoption.

Marriage is the uniting of one man and one woman in covenant commitment for a lifetime. It is God's unique gift to reveal the union between Christ and His church and to provide for the man and the woman in marriage the framework for intimate companionship, the channel of sexual expression according to biblical standards, and the means for procreation of the human race.

The husband and wife are of equal worth before God, since both are created in God's image. The marriage relationship models the way God relates to His people. A husband is to love his wife as Christ loved the church. He has the God-given responsibility to provide for, to protect, and to lead his family. A wife is to submit herself graciously to the servant leadership of her husband even as the church willingly submits to the headship of Christ. She, being in the image of God as is her husband and thus equal to him, has the God-given responsibility to respect her husband and to serve as his helper in managing the household and nurturing the next generation.

Children, from the moment of conception, are a blessing and heritage from the Lord. Parents are to demonstrate to their children God's pattern for marriage. Parents are to teach their children spiritual and moral values and to lead them, through consistent lifestyle example and loving discipline, to make choices based on biblical truth. Children are to honor and obey their parents.

*Genesis 1:26-28; 2:15-25; 3:1-20; Exodus 20:12; Deuteronomy 6:4-9; Joshua 24:15; 1 Samuel 1:26-28; Psalms 51:5; 78:1-8; 127; 128; 139:13-16; Proverbs 1:8; 5:15-20; 6:20-22; 12:4; 13:24; 14:1; 17:6; 18:22; 22:6, 15; 23:13-14; 24:3; 29:15, 17; 31:10-31; Ecclesiastes 4:9-12; 9:9; Malachi 2:14-16; Matthew 5:31-32; 18:2-5; 19:3-9; Mark 10:6-12; Romans 1:18-32; 1 Corinthians 7:1-16; Ephesians 5:21-33; 6:1-4; Colossians 3:18-21; 1 Timothy 5:8,14; 2 Timothy 1:3-5; Titus 2:3-5; Hebrews 13:4; 1 Peter 3:1-7.*

---

Additional information relating to the *Baptist Faith and Message,* including an introduction, preamble, committee information, commentary, multilingual versions, and more, can be found online at bfm.sbc.net.

# EXHIBIT 15

  3. The Executive Committee may change the time and place of meeting if the entertaining city withdraws its invitation or is unable to fulfill its commitments.

  4. The Convention officers, the Executive Committee, and the executive heads of the Convention's boards and institutions acting in a body may, in case of grave emergency, cancel a regular meeting or change the place of meeting.

  **Article XII. As to Conflict with State Laws:** All incorporated entities of the Convention shall be required to comply with the letter and spirit of this Constitution, the Bylaws, and the Business and Financial Plan insofar as they are not in conflict with the statute law of the state in which an entity is incorporated, and nothing herein contained shall be construed to require any such incorporated entity to act and carry on its affairs in conflict with the law of the state of its incorporation. In case any action of any entity of the Convention is found to be a violation of the law of the state of its incorporation, said action shall be reported by that entity to the Convention for appropriate action.

  **Article XIII. Definition of a State:** The District of Columbia shall be regarded as a state for the purpose of this Constitution, the Bylaws, and all actions of the Convention.

  **Article XIV. Amendments:** Any alterations may be made in these Articles at any annual meeting of the Convention by a vote of two-thirds of the messengers present and voting at the time the vote is taken, provided that an amendment shall be so approved by two (2) consecutive annual meetings of the Convention.

# BYLAWS

  In order to carry out the provisions of the Constitution, the following Bylaws are adopted for the government of the Convention:

**1. Convention Session:**

  A. The Convention shall open with the Tuesday morning session and continue through Wednesday, holding such sessions as the Committee on Order of Business finds necessary for the conduct of business, except that sufficient time on Wednesday afternoon shall be reserved for seminary luncheons and other necessary meetings.

  B. The Convention sermon and president's message shall be considered as fixed orders at the time designated by the committee on Order of Business.

  C. A messenger may speak in debate for longer than three minutes only with the permission of the Convention granted by a two-thirds vote.

  D. A messenger may introduce a second motion during a business session only if no other messenger is seeking the floor who has not made a motion during that session.

**2. Presentation of Outside Causes:** Causes other than those provided for in the regular work of the Convention may be presented to the Convention upon authority of officers of the Convention in conference with the Committee on Order of Business in such ways and at such times as may be dictated by the courtesies of the case and the necessities of the program.

**3. Convention Site:**

  A. No city shall be considered as a meeting place for the Southern Baptist Convention in which there is a considerable distance between the available hotels and the Convention hall.

B. No meetings other than the Convention services shall be held in the Convention hall during the sessions of the Convention. Every service held in the Convention auditorium shall be under the direction of the Committee on Order of Business.

4. **Exhibits:** All exhibits of every description shall be rigidly excluded from those parts of the place of meeting where the people visiting the exhibits will disturb the proceedings of the Convention, their locations to be determined by the Executive Committee or its agent. The Executive Committee of the Convention shall have exclusive control of all exhibit space.

5. *Book of Reports***:**

A. Copy for reports and recommendations to the Convention shall be submitted to the recording secretary by March 1, unless circumstances beyond the control of the reporting entity or committee make it impossible.

B. Recommendations of entities and committees of the Convention may not be voted upon until the recommendations have been printed in the *Book of Reports* or the Convention *Bulletin*. The recording secretary is authorized to provide the Baptist Press and other interested parties, upon their request, copies of recommendations requiring Convention action.

6. **Convention** *Annual***:** The Convention *Annual* containing reports and actions of the Convention and other pertinent material shall be published as soon as possible after the meeting of the Convention and shall be made available without charge to all active pastors and denominational agents.

7. *Bulletin***:**

A. The Executive Committee of the Convention shall have printed each day a sufficient number of brief reports, or bulletins, of the Journal of Proceedings, reporting specifically matters of business proposed and acted upon, including the names of committees appointed, reports of the committees, and such business as may be transacted and carried over to the following day, also including a list of the titles or subjects of the resolutions presented and the names of the persons presenting them.

B. Such report, or bulletin, shall not include speeches or addresses or any comment thereon, a photograph, or any personal reference to any messenger of the Convention, but shall be only a resume of the business transacted during that day.

8. **Messenger Credentials and Registration:**

A. Each person elected by a church cooperating with the Southern Baptist Convention as a messenger to the Southern Baptist Convention shall be registered as a messenger to the Convention upon presentation of proper credentials. Credentials shall be presented by each messenger, in person, at the Convention registration desk and shall be in the following form:

(1) A completed, properly authorized, official Southern Baptist Convention registration document, certifying the messenger's election in accordance with Article III. Composition, of the Constitution of the Southern Baptist Convention; but if the messenger does not have the messenger registration document,

(2) A letter from the messenger's church, signed by the pastor, clerk or moderator of the church, certifying the messenger's election in accordance with Article III. Composition, of the Constitution of the Southern Baptist Convention; or

> (3) Some other document (which may include a fax, e-mail, or other physical or electronically transmitted document) from the messenger's church which is deemed reliable by the Credentials Committee or qualifies under guidelines approved by the registration secretary and the Credentials Committee.

Messengers registered in accordance with this section shall constitute the Convention.

B. The president of the Convention, in consultation with the vice presidents, shall appoint, at least thirty (30) days before the annual session, a Credentials Committee to serve at the forthcoming sessions of the Convention. This committee shall review and rule upon any questions which may arise in registration concerning the credentials of messengers. Any such ruling may be appealed to the Convention during business session. Any contention arising on the floor concerning seating of messengers shall be referred to the committee for consideration and the committee shall report back to the Convention.

C. The registration secretary shall be at the place of the annual meeting at least one (1) day prior to the convening of the first session of the Southern Baptist Convention for the purpose of opening the registration desk and registering messengers. The registration secretary also shall convene the Credentials Committee at least one day prior to the annual meeting and shall assist the committee in reviewing questions concerning messenger credentials. The registration secretary shall report to the Convention the number of registered messengers.

**9. Address of Welcome:** There may be one (1) address of welcome limited to ten (10) minutes and one (1) response thereto limited to ten (10) minutes.

**10. Election of Officers and Voting:**

A. The president, the first and second vice presidents, and the secretaries shall be elected at the Convention, their terms of office to begin at the final adjournment.

B. Election of officers shall be by ballot, provided however that if there is only one (1) nomination, and no other person desires to nominate, the registration secretary or anyone designated for the purpose may cast the ballot of the Convention. If an officer does not receive a majority of votes cast on the first ballot, subsequent ballots shall carry the names of those who are included in the top 50 percent of the total votes cast in the previous ballot.

C. Nominating speeches for officers of the Convention shall be limited to one (1) address of not more than three (3) minutes for each nominee.

D. The president, in consultation with the registration secretary, shall appoint tellers. The tabulation of any vote by the tellers or otherwise (such as by electronic means) shall be under the supervision of the registration secretary. The president or registration secretary shall announce election and voting results to the Convention as soon as practicable.

E. Any materials, instructions, and/or devices necessary to vote shall be made available to the messengers.

F. No proxy voting is permitted. All propositions, decisions, and choices shall be by a majority vote of the messengers present and voting in person, except where provisions have been made for a greater than majority vote. Except for officer elections, votes may be taken by ballot, by voice, by rising, by show of hands, by common consent, or by some other acceptable method. "Ballot" shall include electronic voting that

**PART 1**

protects the integrity of the voting process and provides for messengers' votes to remain confidential.

11. **Parliamentary Authority and Parliamentarians:** The parliamentary authority of the Southern Baptist Convention shall be *Robert's Rules of Order* (latest revised edition). The Convention president, in conference with the vice presidents, shall select a chief parliamentarian and assistant parliamentarians, as necessary, to advise the presiding officers of the Convention on matters of parliamentary procedure. The chief parliamentarian shall be a person of experience and knowledge, sufficient to qualify him or her to serve as parliamentarian to the Southern Baptist Convention, and he or she shall be certified by the American Institute of Parliamentarians and/or the National Association of Parliamentarians. It shall be the responsibility of the president and treasurer of the Executive Committee of the Southern Baptist Convention to sign, on behalf of the Executive Committee, any contracts or letters of agreement related to the services of the chief parliamentarian.

12. **Ministry Leaders:** Leaders of Southern Baptist Convention entities shall be admitted to the Convention sessions and shall be authorized to serve as resource persons for discussion of those matters which affect their areas of ministry responsibility.

13. **Memorial Services:** The Committee on Order of Business is instructed to arrange for any memorial service to be held during the Convention.

14. **Entities and Auxiliary of the Convention:**

    A. The entities of the Convention are as follows:

       (1) General Boards:  The International Mission Board of the Southern Baptist Convention, Richmond, Virginia; The North American Mission Board of the Southern Baptist Convention, Inc., Alpharetta, Georgia; LifeWay Christian Resources of the Southern Baptist Convention, Nashville, Tennessee; GuideStone Financial Resources of the Southern Baptist Convention, Dallas, Texas.

       (2) Institutions:  The Southern Baptist Theological Seminary, Louisville, Kentucky; The Southwestern Baptist Theological Seminary, Fort Worth, Texas; New Orleans Baptist Theological Seminary, New Orleans, Louisiana; Gateway Seminary of the Southern Baptist Convention, Ontario, California; The Southeastern Baptist Theological Seminary, Inc., Wake Forest, North Carolina; Midwestern Baptist Theological Seminary, Inc., Kansas City, Missouri.

       (3) Commission:  The Ethics and Religious Liberty Commission of the Southern Baptist Convention, Nashville, Tennessee.

    B. Auxiliary: Woman's Missionary Union, Birmingham, Alabama, is an auxiliary of the Convention.

15. **Committee on Nominations:**

    A. The Committee on Nominations shall be composed of two (2) members from each qualified state, who shall be elected by the Convention. Nominations for each position shall be made by the Committee on Committees. The Committee on Committees shall make its recommendation of nominees to the Convention in the form of a single motion to elect all those persons it recommends for the Committee on Nominations. The motion may be amended but no messenger shall be allowed to propose more than one (1) person at a time for election. When adopted by the Convention, the motion of the Committee on Committees, as amended, shall constitute the election of the persons named in the motion to the Committee on Nominations. One (1) person nominated to

the Committee on Nominations from each state shall be a person not employed full time by (or retired from) a church or denominational entity. Persons nominated to the Committee on Nominations shall have been resident members for at least three (3) years of Southern Baptist churches either geographically within the states or affiliated with the conventions of the states from which they are elected.

B. The Committee on Nominations thus elected shall prepare its report through the year, carefully following the provisions of the Constitution and Bylaws of the Convention and the documents of the respective Convention entities, and shall recommend to the next Convention the following:

   (1) Members of the Executive Committee of the Southern Baptist Convention

   (2) Directors/trustees of the boards of the Convention

   (3) Trustees of the institutions of the Convention

   (4) Trustees of the commissions of the Convention

   (5) Members of any standing committees

C. Excluding the president and recording secretary of the Convention, and the president of Woman's Missionary Union, and unless otherwise specifically permitted or required by these bylaws, no person shall be eligible to be elected or appointed to serve simultaneously on more than one of the boards, institutions, commissions, or committees of the Convention, or as a member of the Executive Committee, and no person shall be elected or appointed to serve on one of these bodies if that person's spouse has been elected or appointed to serve on one of these bodies for a time which would be simultaneous.

D. The committee shall not recommend a fellow committee member or the member's spouse or a member of the previous year's Committee on Committees or the member's spouse for a first term on an entity.

E. The committee shall recognize the principle that the persons it recommends shall represent the constituency of the Convention, rather than the staff of the entity.

F. No person and no person's spouse shall be eligible to serve on the board of any one of the above entities (1) from which the person receives, directly or indirectly, any form of payment or financial benefit except for reimbursements for reasonable and authorized expenses incurred in the performance of the duties of a trustee, or, (2) which provides funds for which he/she has a duty of administration. When such conditions become applicable, that person or that person's spouse shall be considered as having resigned and such vacancy shall be filled in accordance with established Convention procedure.

G. All of the above entities shall include both church or denominational employees and those who are not church or denominational employees. Not more than two-thirds of the members of any of these entities shall be drawn from either category. Where a person was serving as a church or denominational employee at the time of retirement, he/she should be counted as a church or denominational employee after retirement as far as the work of the Committee on Nominations is concerned.

H. Any person elected to serve on any of the boards, institutions, commissions, or the Executive Committee, shall at the time of such election have been continuously a resident member for at least the preceding three (3) years of a church or churches which were in those years in friendly cooperation with the Convention and sympathetic with its purposes and work, and, where representation is by qualifying states, which were

**PART 1**

either geographically within the state or affiliated with the convention of the state from which the person is elected. Any person who is a member of one of these entities shall be considered as having resigned when the person ceases to be a resident member of a church either geographically within the state or affiliated with the convention of the state from which he/she has been elected as a representative.

I.  No person who has served on the board of an entity or on the Executive Committee shall be eligible to serve on the board of any entity or on the Executive Committee until two years after the conclusion of his or her term of office, except that a person may be re-elected to an authorized successive term or serve by virtue of a separate office.

J.  The report of the Committee on Nominations shall be released to Baptist Press no later than 45 days prior to the annual meeting of the Convention and shall be published in the first day's *Bulletin*. Persons desiring to amend the report of the Committee on Nominations are encouraged to publicize the nature of their amendment sufficiently in advance of the annual meeting of the Convention to allow information concerning the amendment to be made available to Convention messengers.

K.  The Committee on Nominations shall make its recommendation to the Convention in the form of a motion to elect those persons it recommends for specific terms of office. The motion may be amended but no messenger shall be allowed to propose more than one (1) person at a time for election. When adopted by the Convention, the motion of the Committee on Nominations, as amended, shall constitute the election of the persons named in the motion to their respective terms of office.

16. **Vacancies on Boards:** All entities shall report all vacancies on the entities to the Committee on Nominations immediately on the occurrence of such vacancies. Any entity's board may make interim appointments only when authorized by its charter. Any such appointment shall only be of a person who is eligible and qualified both to be elected by the Convention and to serve according to the Constitution and Bylaws of the Southern Baptist Convention.

17. **Fraternal Messengers:**

A.  The Convention shall send a fraternal messenger to the annual sessions of the American Baptist Churches and the National Baptist conventions. The expenses of the fraternal messengers incurred while in attendance upon the conventions herein named shall be included in the items of Convention expenses.

B.  The fraternal messenger to the American Baptist Churches shall be the president of the Southern Baptist Convention at the time of the meeting of the American Baptist Churches, and he shall also be the fraternal messenger to the other National Baptist conventions named. If the president is unable to attend, he shall be authorized to name another officer as a substitute.

C.  The fraternal messengers to other Baptist bodies or other religious bodies may be elected by the Convention as occasion may require. The expenses of such messengers shall be borne by the messengers themselves unless specifically provided for by the Convention.

18. **The Executive Committee:**

A.  The Executive Committee shall consist of the president and the recording secretary of the Convention, the president of the Woman's Missionary Union, and one (1) member from each cooperating state of the Convention subject to the provisions of Section 30 of the Bylaws. When the membership of cooperating Baptist churches in a given state shall have reached two hundred and fifty thousand (250,000), there shall be elected

an additional member of the Executive Committee, one (1) of whom shall be a person not employed full time by a church or denominational entity; and, further, there shall be an additional member for each two hundred and fifty thousand (250,000) members providing that the number of members from each cooperating state shall be limited to five (5); and, further, that not more than two-thirds shall be drawn from either persons employed full time by a church or denominational entity or persons not employed full time by a church or denominational entity.  No salaried official of the Convention or of any of its entities or any member of any board or board of trustees or commission of the Convention or any salaried official of any state convention or of any entity of a state convention may be a member of the Executive Committee, but these restrictions shall not apply in case of the president, the president of Woman's Missionary Union, and the recording secretary of the Convention.

B.  Members shall be divided into four (4) groups as nearly equal as possible and shall hold office for four (4) years, one-fourth going out of office each year.

C.  A majority of the Committee shall constitute a quorum.

D.  The Executive Committee shall elect a president, who shall also be treasurer, and other officers and staff who may be needed.  All the main executive officers and all the office employees who handle funds shall be bonded, and no salaried officer or employee shall be a member of the Executive Committee.

E.  The Executive Committee shall be the fiduciary, the fiscal, and the executive entity of the Convention in all its affairs not specifically committed to some other board or entity.

The Executive Committee is specifically authorized, instructed, and commissioned to perform the following functions:

(1)  To act for the Convention ad interim in all matters not otherwise provided for.

(2)  To be named in transfers of real and personal property for the use and benefit of the Convention either by deed, conveyance, will, or otherwise and to affix the seal of the Convention to all approved transactions; and to take title to and hold or to convey title to all properties, real or personal, and all funds, monies, and securities that are donated or transferred or left by will to or for the use of the Convention.  As to such properties, funds, monies, and securities as the Executive Committee shall hold and not convey title to, the Executive Committee shall be custodian of such, holding them in trust for the Convention to be managed, controlled, and administered by the Executive Committee in accordance with the direction, general or specific, of the Convention.  Rules governing the handling of securities set out in Article VII, Section 3, of the Constitution shall be observed by the Executive Committee.

(3)  To receive and receipt for all current funds of the Convention including all undesignated cooperative missionary, educational, and benevolent funds and all current special or designated funds for missionary, educational, and benevolent purposes which may be contributed by individuals, churches, societies, corporations, associations, or state conventions; and to disburse all undesignated funds, according to the percentages fixed by the Convention and all the designated funds according to the stipulations of the donors. The Executive Committee shall keep the accounts of all inter-entity groups and shall disburse their funds on requisition of the properly constituted officers of the inter-entity organization.

(4) To recommend to the Convention a time and place and to have oversight of the arrangements for the meetings of the Convention, with authority to change both the time and place of the meetings in accordance with the provisions of Article XI, Section 3, of the Constitution.

(5) To act in an advisory capacity on all questions of cooperation among the different entities of the Convention, and among the entities of the Convention and those of other conventions, whether state or national.

(6) To present to the Convention each year a consolidated and comprehensive financial statement of the Convention and all its entities, which statement shall show the assets and liabilities of the Convention and all its entities, and all the cash and other receipts of the year.

(7) To present to the Convention a comprehensive budget for the Convention and for all its entities, which budget shall include the budgets of all the entities of the Convention whether or not they receive Cooperative Program funds, as reviewed by the Executive Committee. The Executive Committee shall recommend the amount of Convention funds which may be allocated to each cause. It shall not recommend any direct allocation of funds for any entity or institution for which the Convention does not elect trustees or directors.

(8) To conduct the general work of promotion and the general work of publicity for the Convention in cooperation with the entities of the Convention. The Executive Committee shall provide a Convention relations service and a Convention news service to interpret and publicize the overall Southern Baptist ministry. These services shall be available to support the work of all Convention entities and ministries.

(9) To maintain open channels of communication between the Executive Committee and the trustees of the entities of the Convention, to study and make recommendations to entities concerning adjustments required by ministry statements or by established Convention policies and practices, and, whenever deemed advisable, to make recommendations to the Convention. The Executive Committee shall not have authority to control or direct the several boards, entities, and institutions of the Convention. This is the responsibility of trustees elected by the Convention and accountable directly to the Convention.

(10) To make its own bylaws in keeping with the Constitution and Bylaws of the Convention in carrying out these instructions to the Executive Committee; to hold meetings whenever deemed necessary; to make reports of all meetings to the Convention; to notify all the boards, entities, and institutions of the actions of the Convention and to advise with them as to the best way of promoting all the interests of the Convention.

(11) To derive, in accordance with the action of the Convention in Atlanta in 1944, the expenses of the Executive Committee from the Operating Budget of the Convention specifically established for this purpose and formally approved by the Convention.

(12) To utilize an appropriate report format which will enable the Executive Committee to obtain from the entities adequate and comparable information about ministry plans, accomplishments, and financial data.

(13) To maintain an official organization manual defining the responsibilities of each entity of the Convention for conducting specific ministries and for performing other functions. The manual shall cite the actions of the Convention that assigned the ministries and other functions to the entity. The Executive Committee shall present to the Convention recommendations required to clarify the responsibilities of the entities for ministries and other functions, to eliminate overlapping assignments of responsibility, and to authorize the assignment of new responsibilities for ministries or functions to entities.

(14) To send copies of the minutes of the Executive Committee to the heads of all Southern Baptist Convention entities, and copies of the minutes of all entities shall be sent to the office of the Executive Committee.

**19. Committee on Committees:** A Committee on Committees, composed of two (2) members from each qualified state or defined territory, shall be appointed by the president, in conference with the vice presidents, of whom one (1) shall be designated as chairperson. Persons named to the Committee on Committees shall have been resident members for at least three (3) years of Southern Baptist churches either geographically within the states or affiliated with the conventions of the states from which they are appointed. Members so named shall be notified by the president in writing, at least 45 days before the meeting of the Convention. Their names shall be released by the president to Baptist Press no later than 45 days prior to the annual meeting of the Convention, and their names shall be published in the first issue of the Convention Bulletin. The president may fill any vacancies on the committee when those originally named do not attend the Convention. This committee shall nominate all special committees authorized during the sessions of the Convention not otherwise provided for. All special Convention committees shall transfer, upon their discharge, all official files to the Executive Committee of the Southern Baptist Convention.

**20. Committee on Resolutions:** At least seventy-five (75) days in advance of the Convention, the president, in conference with the vice presidents, shall appoint a Committee on Resolutions to consist of ten (10) members, any two (2) of whom shall have served as Committee on Resolutions members during the prior year, and any three (3) of whom shall be members of the Executive Committee. One of the Committee members shall be designated as chairperson. Members so named shall be notified by the president in writing at least 75 days before the annual meeting of the Convention. The names of the members of the Committee on Resolutions shall be released by the president to Baptist Press no later than 75 days prior to the annual meeting of the Convention, and their names shall be published in the first issue of the Convention Bulletin.

In order to facilitate thorough consideration and to expedite the Committee's work, all proposed resolutions shall:

1) Be submitted to the Committee for review and consideration as early as April 15th, but no later than fifteen (15) days prior to the next SBC annual meeting,

2) Be addressed to the Committee on Resolutions in care of the Executive Committee of the Southern Baptist Convention at its registered or e-mail address (electronic copies are preferred),

3) Be typewritten, titled, and dated,

4) Be accompanied by a letter from a church qualified to send a messenger to the annual meeting of the Southern Baptist Convention certifying that the person submitting the resolution is a member in good standing, and

5)   Include complete contact information for both the person submitting it, and his or her church.

No person may submit more than three resolutions per year. The Committee on Resolutions shall prepare and submit to each annual meeting of the Convention only such resolutions the Committee recommends for adoption. Such resolutions may be based upon proposals received by the Committee or may originate with the Committee. Only resolutions recommended by the Committee may be considered by the Convention, except the Convention may, by a 2/3 vote, consider any other resolution properly submitted to the Committee.

A list of the titles of all properly submitted proposed resolutions shall be printed in the Convention *Bulletin*. The list shall include the name and city of each person properly submitting a resolution, and the disposition of each proper submission.

21. **Committee on Order of Business:** The Committee on Order of Business, a standing committee, shall consist of seven (7) members – the president of the Convention and six (6) other members, two (2) of whom shall be elected each year for a term of three (3) years and two (2) of whom shall be persons not employed full time by a church or denominational entity. No member of the committee can succeed himself or herself. The committee shall suggest an order of business for the next meeting of the Convention. It shall provide periods of time during the Convention for the introduction of all matters requiring a vote not scheduled on the agenda, and, when introduced (unless the Convention then gives its unanimous consent for its immediate consideration) shall fix times for the consideration of the same. All such matters of business shall be introduced to the Convention by the end of the afternoon session of the first day of the annual meeting of the Convention. When practicable it shall give notice in the Convention *Bulletin* of the substance of the motion or resolution and the time for its consideration. If unable to give notice in the *Bulletin*, it shall cause announcement to be made from the floor of the Convention of the same, action thereon to be taken at the subsequent session of that Convention. The committee shall recommend to the Convention a preacher for the succeeding Convention sermon and the director of music. The director of music shall be elected annually and the term of office is limited to two (2) years. The director of music shall not be eligible for re-election until as much as one (1) year has elapsed from the time a successor is named.

22. **Notification of Committees:** Within thirty (30) days after the Convention adjourns, the recording secretary shall notify the members of all committees of their appointment and all chairpersons of their position and furnish each one a list of that committee. The recording secretary shall also notify all board members, trustees of institutions, and commission members of their appointment.

23. **The Great Commission Council:** The Great Commission Council shall serve as the organization through which the various entities and the auxiliary of the Convention will correlate their work. The membership of the Great Commission Council shall be composed of the chief executives of The Executive Committee of the Southern Baptist Convention, the auxiliary of the Convention, and the entities named in Bylaw 14.

   A.   The work of the Council shall be in keeping with its prescribed functions. It will neither launch nor execute ministries; it will formulate no policies, except those which govern its own activities. Its chief purpose is that of consultation, communication, and cooperation. The scope of its work will be that of:

      (1)   finding ways of mutual re-enforcement in assigned responsibilities and distinctive ministries;

    (2)  considering and seeking to avoid overlapping endeavors and competitive ministries;

    (3)  considering the means for helping the churches fulfill their divine mission in Bible teaching, evangelism, world missions, stewardship, Christian training, education, and Christian social service;

    (4)  finding ways for effective cooperation in promoting the total work of the Southern Baptist Convention;

    (5)  considering the significant factors affecting the work and witness of the denomination; and

    (6)  seeking to find the means through which the power of the Christian gospel may be comprehensively and effectively applied to the ends of the earth.

B.  In the matter of relationships:

    (1)  the Council is not, itself, an entity of the Convention;

    (2)  it has no authority over the several entities;

    (3)  its decisions are not binding on the entities, since the boards and commissions must retain the authority to reach the decisions required to carry out their own responsibilities;

    (4)  its relationship to the entities is purely advisory;

    (5)  the Council does not report formally either to the Convention or the Executive Committee, nor does the Convention refer matters directly to the Great Commission Council;

    (6)  it may receive from and refer to the Executive Committee problems for consideration;

    (7)  it is not required to take formal action with regard to matters referred to it by the Executive Committee in serving as a channel of cooperation and correlation relative to the work of the Convention; and

    (8)  the Council sustains no direct relationship with state conventions or local churches, but it will strive to be mindful of the needs of the churches as well as the functions and ministries of the several conventions.

**24. Ministry Statements:** The ministry statements of the entities as approved by the Southern Baptist Convention and published in the 1967 *Annual* and subsequently amended, renamed, or rewritten, and approved by the Convention, express the policy of the Convention with respect to the ministries of the entities of the Convention.

**25. New Enterprises and Abolishing of Entities:** No new enterprise, involving expenditure of money, shall be authorized by the Convention except upon favorable action by the Convention in two (2) succeeding annual meetings; provided, however, that this restriction shall not apply to a recommendation of an entity of the Convention concerning its own work. No entity shall be discontinued without a majority vote at two (2) successive annual sessions of the Convention.

**26. Procedures:**

A.  *Method of Procedure for Entities:*  To facilitate consideration and discussion of the interests of the Convention, the following method of procedure is hereby adopted:

(1) Printed reports of the boards, institutions, commissions, and standing committees shall be consolidated into the *Book of Reports* for distribution to messengers on their enrollment;

(2) Reports of all special commissions and standing committees, containing recommendations for the Convention's action, shall be included in the *Book of Reports*; and

(3) All recommendations of each board, institution, commission, special committee, and standing committee shall be printed together at the end of its report before they may be considered by the Convention.  In case any entity or committee shall be unable to comply with this requirement, its recommendation shall be printed in the Convention *Bulletin* before consideration and action by the Convention. Recommendations by an entity which are not published in the *Book of Reports* or the Convention *Bulletin* shall, when presented to the Convention, be referred to the Executive Committee or to such other committee as the Convention may direct.

B. *Procedure for Motions of Messengers Concerning Entities:*  Motions made by messengers dealing with internal operations or ministries of an entity shall be referred to the elected board of the entity for consideration and report to the constituency and to the next annual meeting of the Convention for action with the exception that the Committee on Order of Business may be instructed by a two-thirds vote to arrange for consideration at a subsequent session of the same Convention, subject to provision of Bylaw 21.

On all matters referred by the Convention, entities shall respond in writing at the close of their report in the *Book of Reports* and *Annual*, giving specific information on:

(1) how the matter referred was considered;

(2) how it was reported to the constituency; and

(3) any actions on the matter taken by the entity or action proposed to the Convention.

C. *Limitations:*  The last one-third of the time allotted for consideration of every entity report before the Convention shall be reserved for discussion from the floor.

**27. Publicity and Press Representative:**

A. Boards, institutions, and special committees dealing with matters of general importance and interest shall have in the hands of the press representative of the Convention, at least one (1) week in advance, copies of digests of their report to be submitted to the approaching Convention.

B. The press representative shall cooperate with the representatives of the secular press in furnishing intelligent, accurate, and creditable reports of this Convention while in session.

**28. Closing of Books:**  Entities of the Convention shall close their books and accounts and have them audited as of midnight September 30, or in the case of the seminaries, July 31, or in the case of the International Mission Board and GuideStone Financial Resources, December 31.  Supplemental reports for the period between the closing of the books of the entities and the Convention session should be included in the reports to the Convention.

**29. Participation in Convention Affairs:** To allow participation in the affairs of the Convention, any member of a church who is eligible to be a messenger to the Convention may be appointed teller, a member of the Credentials Committee, a member of the Committee on Resolutions, and/or a member of the Convention's special committees.

**30. Representation From Qualified States and Territories:**

A. When the cooperating Baptist churches in a state or defined territory have fifteen thousand (15,000) members, an initial application may be filed for representation on the Executive Committee, the Committee on Committees, and the Committee on Nominations.

B. When the cooperating Baptist churches have twenty thousand (20,000) members, an updated application may be filed for representation on the International Mission Board, North American Mission Board, and LifeWay Christian Resources of the Southern Baptist Convention, unless otherwise provided in the Board's charter.

C. When the cooperating Baptist churches have twenty-five thousand (25,000) members, an updated application may be filed for representation on GuideStone Financial Resources, the commissions, and institutions, unless otherwise provided in the commission's or institution's charter, and on the standing committees of the Convention, all as provided by the Bylaws of the Convention.

D. The application in each instance shall be filed with the Executive Committee, through its president, prior to its February meeting. The application shall contain information as specified by the Executive Committee.

E. Upon receiving the initial application, the Executive Committee shall investigate all matters pertaining to the request and make a recommendation to the Southern Baptist Convention at its next annual meeting. If the recommendation of the Executive Committee is favorable to the application, a copy of the recommendation shall be forwarded to the president of the Southern Baptist Convention and the chairman of the Committee on Committees prior to the next annual meeting of the Convention.

F. Upon receipt of the favorable recommendation of the Executive Committee on the initial application in (1) above, the president of the Convention, in conference with the vice presidents, shall appoint two (2) persons from the state or territory to serve as members of the Committee on Committees, and the Committee on Committees shall nominate two (2) persons from the state or territory to serve on the Committee on Nominations, all conditional upon the approval of the application by the Southern Baptist Convention.

G. Those elected by the Convention shall be immediately eligible to begin their appropriate terms of service.

**31. Adoption of Reports:** The adoption of recommendations contained in reports to the Convention shall not bind the Convention on any other matters in the body of the reports; but the Convention reserves the right to consider and amend the body of all reports.

**32. As to Violation of State Laws:** All incorporated entities of the Convention shall be required to comply with the letter and spirit of the Constitution insofar as it is not in conflict with the statute law of the state in which an entity is incorporated, and nothing herein contained shall be construed to require any such incorporated entity to act and carry on its affairs in conflict with the law of the state of its incorporation. In case any action of any entity of the Convention is found to be a violation of the law of the state of its incorporation, said action shall be reported by that entity to the Convention for appropriate action.

PART 1

33. **Charters of Entities, Subsidiaries, and Ancillary Organizations:** The charters of all entities of the Convention shall provide that the trustees or directors of such entities be elected by the Convention, and that the charters may not be further amended without the prior consent of the Convention. The charters of all subsidiaries of any entity of the Convention shall provide that they may not be further amended without the prior consent of the Convention or its Executive Committee. No entity of the Convention shall establish a subsidiary corporation or any other legal entity or form for conducting its affairs, nor acquire a controlling interest or greater than a 25% interest in any other corporation or business enterprise, until the Convention or its Executive Committee has approved the same and its governing instruments. An entity of the Convention shall not undertake through a subsidiary or by any other means any action which, if undertaken by the entity itself, would violate the Constitution, Bylaws, or Business and Financial Plan of the Convention.

34. **Quorum:** The quorum for conducting business during the annual meeting of the Southern Baptist Convention shall be a minimum of 25 percent of those duly registered and seated messengers.

35. **Trustee Absenteeism:**

    A. Upon the request of any entity, the Convention may remove from office any trustee/ director of that entity who has excessive unexcused absences. Following such removal, the Convention shall elect a successor to complete the term of office of the person removed.

    B. An entity shall give written notice of any request to remove a trustee/director for absenteeism at least one hundred twenty (120) days prior to the meeting of the Convention which shall consider the removal. The notice shall be given to the president of the Convention, the president/chief executive officer of the Executive Committee, the chairman of the Committee on Nominations, and the individual trustee/director whose removal shall be considered.

    C. If required by state law, an entity shall incorporate this procedure in its charter or bylaws prior to requesting the Convention to remove any trustee.

36. **Amendments:** The Bylaws may be amended pursuant to Bylaw 21 by a two-thirds majority vote at any time except during the last session of the Convention. Bylaw 14, which lists the entities and auxiliary of the Convention, may be amended by a majority vote of two (2) successive annual meetings.

# BUSINESS AND FINANCIAL PLAN

I. **Convention Budget:** Each entity of the Convention shall submit to the Executive Committee for its review:

    A. an itemized estimate of its receipts for the next fiscal year, and

    B. an itemized estimate of its expenditures for the next fiscal year according to the rule set forth below (See Section II-C) for making operating budgets.

    The Executive Committee shall present to the Convention a budget, which budget shall consist of all the budgets of all the entities which have been submitted to the Executive Committee and reviewed by it, and recommend the amount of Convention funds to be allocated to each cause or entity.

# EXHIBIT 16



**U.S. TREASURY DEPARTMENT**
INTERNAL REVENUE SERVICE
WASHINGTON 25, D.C.

**AUG 17 1964**

IN REPLY REFER TO
T:R:EO:6
CSG

Southern Baptist Convention
127 Ninth Avenue North
Nashville 3, Tennessee

Gentlemen:

This has further reference to your application for exemption
from Federal income tax as an organization described in section
501(c)(3) of the Internal Revenue Code of 1954 and your request
for a group ruling covering your agencies and institutions.

In a ruling dated September 20, 1949, it was held that you
are exempt from Federal income tax under the provisions of section
101(6) of the 1939 Code.

Based upon the information presented, it is held that you and
the General Boards, Commissions, educational, charitable and
religious institutions (including schools, seminaries, colleges,
hospitals, children's homes and homes for the aged) and your
Auxiliary, the Woman's Missionary Union, listed in your 1962 Annual
and 1962 Handbook are exempt from Federal income tax as organi-
zations described in section 501(c)(3) of the Internal Revenue Code
of 1954, as it is shown that you and your listed General Boards,
Commissions, educational, charitable and religious institutions and
Auxiliary are organized and operated exclusively for religious,
charitable and educational purposes.

You and your listed General Boards, Commissions, educational,
charitable and religious institutions and Auxiliary are not required
to file Federal income tax returns so long as you and your listed
General Boards, Commissions, educational, charitable and religious
institutions and Auxiliary retain a tax exempt status.

It will not be necessary for you and your listed General
Boards, Commissions, educational, charitable and religious
institutions and Auxiliary to file the annual return of information,
Form 990-A, generally required of organizations exempt under section
501(c)(3) of the Code, as you and your listed General Boards,
Commissions, educational, charitable and religious institutions and
Auxiliary come within the specific exceptions contained in section
6033(a) of the Code.

Southern Baptist Convention          -2-

Contributions made to you and to your listed General Boards, Commissions, educational, charitable and religious institutions and Auxiliary are deductible by donors as provided in section 170 of the Code.  Bequests, legacies, devises, transfers, or gifts to or for the use of you and your listed General Boards, Commissions, charitable and religious institutions and Auxiliary are deductible for Federal estate and gift tax purposes as provided in sections 2055, 2106 and 2522 of the Code.

You and your listed General Boards, Commissions, educational, charitable and religious institutions and Auxiliary are not liable for the taxes imposed under the Federal Insurance Contributions Act (social security taxes) unless waiver of exemption certificates are, or have been, filed as provided by that Act.  Inquiries about the waiver of exemption certificates should be addressed to your District Director.  You and your listed General Boards, Commissions, educational, charitable and religious institutions and Auxiliary are not liable for the tax imposed under the Federal Unemployment Tax Act.

Please send us the following information annually not later than 45 days after the close of your annual accounting period.

1. Lists showing the names and mailing addresses of your new General Boards, Commissions, educational, charitable and religious institutions and auxiliaries and the names and addresses of any General Boards, Commissions, educational, charitable and religious institutions and auxiliaries which have ceased to exist or have changed their names or addresses. The names should be arranged in alphabetical order.  In lieu of the lists referred to above you may furnish us with a copy of your published directory.  Please send one copy for each district in which your General Boards, Commissions, educational, charitable and religious institutions and auxiliaries are located.

2. A statement signed by one of your principal officers stating whether or not the information upon which your original group ruling was based is applicable in all respects to the new General Boards, Commissions, educational, charitable and religious institutions and auxiliaries.

Southern Baptist Convention        -3-

3.  A statement if, at the close of the year, there
    were no changes in your roster.

4.  A statement of any changes in the character,
    purposes or method of operation of your organi-
    zation or those of your General Boards,
    Commissions, educational, charitable and religious
    institutions and auxiliaries.

5.  Duplicate copies of amendments to charters or
    bylaws of your organization or those of any of your
    General Boards, Commissions, educational, charitable
    and religious institutions and auxiliaries.

This ruling is applicable to your churches in Puerto Rico
whose names appear on the separate list submitted with your letter
of January 18, 1963.

However, this ruling is not applicable to any of your organi-
zations organized under the laws of, and operated in, a foreign
country.  It is also not applicable to the Southern Baptist
Foundation, Inc., which has established a separate exempt status,
nor to your churches in the United States since they have been or
will be covered by group rulings to your State Conventions.

The exempt status of your General Boards, Commissions,
educational, charitable and religious institutions and Auxiliary
is predicated on the understanding that upon dissolution all of
their assets shall be distributed to organizations organized and
operated exclusively for educational, charitable or religious
purposes.

The District Directors concerned are being notified.

Very truly yours,

R. J. Stiken

Acting   Chief, Exempt Organizations Branch

# EXHIBIT 17

# ADAM W. GREENWAY
President
Professor of Evangelism and Apologetics
The Southwestern Baptist Theological Seminary

## EDUCATION

**UNIVERSITY OF NOTRE DAME—MENDOZA COLLEGE OF BUSINESS**
Master of Nonprofit Administration, *magna cum laude*, May 2016.

**THE SOUTHERN BAPTIST THEOLOGICAL SEMINARY (SBTS)**
Doctor of Philosophy, December 2007.
> Major Subjects: Evangelism and Apologetics
> Dissertation: The Integration of Apologetics and Evangelism in the Ministry of Reuben Archer Torrey
> Committee: Timothy K. Beougher (Chair), Thom S. Rainer, Theodore J. Cabal

**THE SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY (SWBTS)**
Master of Divinity, *with biblical languages*, May 2002.

**SAMFORD UNIVERSITY—HOWARD COLLEGE OF ARTS AND SCIENCES**
Bachelor of Arts in Religion, *cum laude*, December 1998.

## ACADEMIC EXPERIENCE

**ADMINISTRATIVE APPOINTMENTS**
President, SWBTS, 2019-present.
Vice President for Academic Services and Denominational Relations, SBTS, 2016-19.
Dean, Billy Graham School of Missions, Evangelism and Ministry, SBTS, 2013-19.
Senior Associate Dean, Billy Graham School of Missions and Evangelism, SBTS, 2010-13.
Associate Vice President for Extension Education and Applied Ministries, SBTS, 2009-11.
Director of Research Doctoral Studies, Billy Graham School of Missions and Evangelism, SBTS, 2008-10.
Director of Extension Education and Conferencing, SBTS, 2008.
Associate Director of Professional Doctoral Studies, SBTS, 2007.

**FACULTY POSITIONS**
Professor of Evangelism and Apologetics, SWBTS, 2019-present.
Elected by the Board of Trustees to hold the William Walker Brookes Endowed Chair, SBTS, 2014.
Associate Professor of Evangelism and Apologetics, Billy Graham School of Missions, Evangelism and Ministry, SBTS, 2013-19.
Visiting Professor, Malaysia Baptist Theological Seminary, Penang, Malaysia, 2011.
Assistant Professor of Evangelism and Applied Apologetics, Billy Graham School of Missions and Evangelism, SBTS, 2007-13.
Instructor of Evangelism and Applied Apologetics, Billy Graham School of Missions, Evangelism and Church Growth, SBTS, 2007.

**COURSES TAUGHT**
Graduate-level courses: Personal Evangelism; Introduction to Christian Philosophy; Apologetics in the Local Church; Personal Spiritual Disciplines; Church Growth in a Changing Community;

Applied Ministry; Survey of Christian Ethics; Introduction to Evangelism and Church Growth; The Ministry of the Itinerant Evangelist; The Theology of Evangelism; Building an Evangelistic Church; Spiritual Warfare in Evangelism and Missions; Introduction to Church Revitalization

Doctoral-level seminars: Theoretical and Practical Issues in Evangelism and Church Growth, Leadership and Contemporary Issues in Evangelism and Church Growth, Project Methodology, Leadership and Contemporary Issues in Church Revitalization, Administration for Missions Leaders (D.Min.); Spiritual Warfare in Evangelism and Missions, Contemporary Church Growth (Ph.D.)

## INSTITUTIONAL SERVICE

Member, Executive Cabinet, SBTS, 2013-19.

Member, Faculty Budget Task Force, SBTS, 2010.

Member, Task Force on the Future of Distance Education, SBTS, 2010.

Member, *Southern Seminary Manual of Style* Revision Committee, SBTS, 2010.

Member, Faculty Committee, SBTS, 2009-12.

Member, *Findley B. and Louvenia Edge Faculty Award for Teaching Excellence* Selection Committee, SBTS, 2009, 2014-19.

Member, Classroom Technology Committee, SBTS, 2008-09.

Member, Th.M. Revision Committee, SBTS, 2007.

Member, Quality Enhancement Plan Task Force, SBTS, 2007-09.

Student Representative, Purpose, Planning, and Institutional Effectiveness Committee (Self-Study Council), SWBTS, 2000-01.

## PROFESSIONAL DEVELOPMENT

Member, Accreditation Evaluation Committee, Comprehensive Evaluation Visit to George W. Truett Theological Seminary of Baylor University, Waco, TX, Association of Theological Schools, April 3-6, 2017.

Chair, Accreditation Evaluation Committee, Focused Evaluation Extension Site Visit to Seventh-Day Adventist Theological Seminary of Andrews University, Altamonte Springs, FL, Association of Theological Schools, January 20, 2016.

Member, Accreditation Evaluation Committee, Comprehensive Evaluation Extension Site Visit to Gordon-Conwell Theological Seminary, Jacksonville, FL, Association of Theological Schools, November 6, 2015.

Chair, Accreditation Evaluation Committee, Focused Evaluation Extension Site Visit to Denver Seminary, Landover, MD, Association of Theological Schools, March 13, 2015.

Member, Accreditation Evaluation Committee, Comprehensive Evaluation Visit to Dallas Theological Seminary, Dallas, TX, Association of Theological Schools, March 24-27, 2014.

Member, Accreditation Evaluation Committee, Comprehensive Evaluation Visit to Cincinnati Bible Seminary of Cincinnati Christian University, Cincinnati, OH, Association of Theological Schools, September 23-26, 2013.

Member, Accreditation Evaluation Committee, Initial Evaluation Visit to World Mission University School of Theology, Los Angeles, CA, Association of Theological Schools, April 15-18, 2013.

Member, Accreditation Evaluation Committee, Comprehensive Evaluation Visit to Bethel Seminary of Bethel University, St. Paul, MN, Association of Theological Schools, October 16-19, 2011.

## MINISTERIAL EXPERIENCE

### CHURCH-RELATED SERVICE

Interim Pastor, Crestwood Baptist Church, Crestwood, KY, 2017-18.
Interim Pastor, Second Baptist Church, Mount Vernon, IL, 2017.
Interim Pastor, Porter Memorial Baptist Church, Lexington, KY, 2015-16.
Interim Pastor, The Baptist Church at Andover, Lexington, KY, 2014.
Interim Pastor, Hebron Baptist Church, Hebron, KY, 2012.
Interim Pastor, Florence Baptist Church, Florence, KY, 2011-12.
Interim Pastor, Northside Baptist Church, Indianapolis, IN, 2011, 2012-13.
Interim Pastor, Hickory Grove Baptist Church, Independence, KY, 2010.
Interim Pastor, Little Flock Baptist Church, Shepherdsville, KY, 2009-10.
Interim Teaching Pastor, Far Hills Community Church, Dayton, OH, 2008-09.
Senior Pastor, The Baptist Church at Andover, Lexington, KY, 2002-07.
Interim Pastor, Friendship Baptist Church, Weatherford, TX, 2001-02.
Pastoral Assistant, Ridgecrest Baptist Church, Birmingham, AL, 1999.
Interim Pastor, Southside Baptist Church, Frostproof, FL, 1995.

### MISSIONS AND CROSS-CULTURAL SERVICE

Keynote Speaker, "Who Will Go?" Missions Conference, International Baptist Church, Santo
    Domingo, Dominican Republic, 2016.
Board Member, Baptist Haiti Mission, Louisville, KY, 2014-16.
Crusade Evangelist and Apologetics Seminar Leader, *Reasons for Believing Festival*, Faith Baptist
    Church, Kaiserslautern, Germany, 2001.
Invited Participant, *Amsterdam 2000* Conference of Preaching Evangelists convened by Billy Graham
    Evangelistic Association, Amsterdam, the Netherlands, 2000.

### PARACHURCH-RELATED SERVICE

Pastor Search Team Advisory Board, Lighthouse Community Church, Nashville, IL, 2009-11.
Church Consultant, The Lawless Group, Wake Forest, NC, 2007-19.
Lead Staff Apologist, Institute for Christian Defense, Fort Worth, TX, 2000-01.
H-Day Coordinator, Samford University, Birmingham, AL, 1996-98.
Summer Revival Team Evangelist, Alabama Baptist State Convention, Montgomery, AL, 1996-98.

## DENOMINATIONAL SERVICE AND LEADERSHIP

### SOUTHERN BAPTIST CONVENTION

Member, Council of Seminary Presidents, 2019-present.
Member, Great Commission Council, 2019-present.
Chairman, Committee on Order of Business, 2018-present.
Vice Chairman, Evangelism Task Force, 2017-18.
Assistant Parliamentarian, 2016-18.
Vice Chairman, Committee on Nominations, 2016-17.
Trustee, LifeWay Christian Resources, 2005-15.
    Chairman of the Board of Trustees, 2012-14.
    Chairman, 2011 NIV Task Force, 2011-12.
    Member, Nominating Committee, 2009-12.
        Chairman, 2010-12.
    Member, Executive Committee, 2008-14.
        Vice Chairman, 2012-14.

Member, Church Resources Committee, 2005-12.
    Chairman, 2010-12; Vice Chairman, 2008-10.
President, Southern Baptist Professors of Evangelism Fellowship, 2010-12.
President, SWBTS Kentucky State Alumni Association, 2004-05.

### KENTUCKY BAPTIST CONVENTION

President of the Convention, 2011-12.
First Vice President of the Convention, 2009-10.
Parliamentarian, 2010-19.
Member, Mission Board, 2009-10, 2011-16.
    Chairman of the Board, 2011-12; First Vice Chairman, 2009-10.
    Member, Administrative Committee, 2009-10, 2012-16.
        Chairman, 2012-16.
    Member, Agencies and Institutions Committee, 2013-16.
    Member, Placement Committee, 2013-16.
Chairman, Mission Board Size Study Committee, 2009.
Member, Committee on Resolutions, 2011-14; 2018-19.
    Chairman, 2018-19.
Member, Committee on Constitution and Bylaws, 2008-11, 2015-19.
    Chairman, 2009-10; Vice Chairman, 2008-09, 2010-11.
Member, Committee on Nominations, 2006-08.
    Chairman, 2007-08; Vice Chairman, 2006-07.
Secretary-Treasurer, Pastors' Conference, 2006.
Teller, 2005, 2006.

### ASSOCIATIONAL INVOLVEMENT

Member, Nominating Team, Elkhorn Baptist Association, 2007.
Chairman, Resolutions Team, Elkhorn Baptist Association, 2005.
Member, Executive Board, Elkhorn Baptist Association, 2002-07.

### OTHER CIVIC AND COMMUNITY ENGAGEMENT

Embedded Reader, Associated Press Managing Editors Conference, Louisville, KY, 2004.
Advisory Board Member, *Lexington Herald-Leader*, Lexington, KY, 2004.

# PUBLICATIONS

### BOOKS

*R. A. Torrey: Defender of the Faith*. Manuscript prepared for submission.

*The Great Commission Resurgence: Fulfilling God's Mandate in Our Time* (co-edited with Chuck Lawless).
    Nashville: B&H Academic, 2010.

*Evangelicals Engaging Emergent: A Discussion of the Emergent Church Movement* (co-edited with William D.
    Henard). Nashville: B&H Academic, 2009.

### BOOK CONTRIBUTIONS

Chapter on the SBC Cooperative Program (not yet titled). In *Make Disciples of All Nations: A History
    of Southern Baptist International Missions*, ed. John D. Massey, J. Michael Morris, and W. Madison
    Grace. Grand Rapids: Kregel, under contract for 2020.

"Article XIII: Perseverance of the Saints." In *Confessing the Faith: The Living Legacy of Southern Seminary's Abstract of Principles*, ed. R. Albert Mohler Jr., 87-92. Louisville: SBTS Press, 2016.

"Mathis, Donny Ray (Don)." In *Twentieth Century Kentucky Baptist Biographies*, ed. Bill D. Whittaker, 162-63. Nashville: Fields Publishing, 2012.

"Apologetics: The Key to Revitalizing Personal Evangelism." In *Mobilizing a Great Commission Church for Harvest: Voices and Views from the Southern Baptist Professors of Evangelism Fellowship*, ed. Thomas P. Johnston, 147-54. Eugene: Wipf & Stock, 2011.

"Conclusion." In *The Great Commission Resurgence: Fulfilling God's Mandate in Our Time*, ed. Chuck Lawless and Adam W. Greenway, 401-08. Nashville: B&H Academic, 2010.

"Conclusion." In *Evangelicals Engaging Emergent: A Discussion of the Emergent Church Movement*, ed. William D. Henard and Adam W. Greenway, 334-36. Nashville: B&H Academic, 2009.

**ARTICLES**

"Even in His Death, Billy Graham Preached the Gospel." *Southern Seminary Magazine*, Spring 2018, 32-35.

"In Spite of History, SBC Leads the Way in Ethnic Diversity." *Southern Seminary Magazine*, Spring 2015, 16.

"Restoring the Church's First Love: A Case Study from the Church at Ephesus." *Southern Seminary Magazine*, Summer 2014, 38-39.

"A Goal of Faithful Living, Not Filling Pews." Room for Debate, *New York Times*, October 27, 2013.

"How Should We Then Witness?: A Plea for Reexamining Evangelical Evangelistic Practice in Light of the Concept of Worldview." *Great Commission Research Journal* 3 (2011): 80-96.

"When *Euangelion* Met *Apologia*: An Examination of the Mind's Role in Conversion and the Value of Apologetics in Evangelism." *Great Commission Research Journal* 2 (2010): 62-75.

"Leading Church Members to Engage in Personal Evangelism." *Southern Seminary Magazine*, Fall 2009, 25; reprinted in *The Baptist Banner*, January 2010, 15-16; republished as "Lead Members to Engage in Personal Evangelism" in *Western Recorder*, April 17, 2012, 4.

**EDITORIAL WORK**

Editor-in-Chief, *Southwestern Journal of Theology*, 2019-present.
Executive Editor, *The Southern Baptist Journal of Missions and Evangelism*, 2013-19.
Member, Editorial Board, SBTS, 2008-10, 2013-19.

# PRESENTATIONS

**PROFESSIONAL SOCIETY PAPERS**

"Reformation Echoes in the Preaching Ministry of R. A. Torrey." Paper presented at the 69th annual meeting of the Evangelical Theological Society, Providence, RI, November 15, 2017.

"What Billy Graham Owed to R. A. Torrey." Paper presented at the 68th annual meeting of the Evangelical Theological Society, San Antonio, TX, November 16, 2016.

"A Biographical Sketch of A. T. Robertson: Seminary Professor, Bible Scholar, Kentucky Baptist." Paper presented at the annual meeting of the J. H. Spencer Historical Society, Lexington, KY, November 12, 2012.

"Inerrancy and Exclusivity in Mutuality: Why 'No Other Name' Reveals No Other Way." Paper presented at the 63rd annual meeting of the Evangelical Theological Society, San Francisco, CA, November 17, 2011.

"Defender of the Faith: Reexamining the Life and Legacy of R. A. Torrey." Paper presented at the 61st annual meeting of the Evangelical Theological Society, New Orleans, LA, November 18, 2009.

"Reconsidering the Identity of the Edenic Serpent." Paper presented at the 60th annual meeting of the Evangelical Theological Society, Providence, RI, November 20, 2008.

"The Common Sense Revolution: An Evangelical Reassessment of Thomas Reid's Epistemology." Paper presented at the 59th annual meeting of the Evangelical Theological Society, San Diego, CA, November 14, 2007.

"Brian McLaren's *Euangelion*: Enigmatic, Emergent, but Evangelical?" Paper presented at the annual meeting of the Academy for Evangelism in Theological Education, Ashland, OH, October 5, 2007.

"How Should We Then Witness?: A Plea for Reexamining Evangelical Evangelistic Practice in Light of the Concept of Worldview." Paper presented at the 58th annual meeting of the Evangelical Theological Society, Washington, DC, November 16, 2006.

"When *Euangelion* Met *Apologia*: An Examination of the Mind's Role in Conversion and the Value of Apologetics in Evangelism." Paper presented at the 57th annual meeting of the Evangelical Theological Society, Valley Forge, PA, November 17, 2005.

## ACADEMIC LECTURESHIPS AND CONFERENCES

Invited to Deliver the Herschel H. and Frances J. Hobbs Lectureship in Baptist Faith and Heritage, Oklahoma Baptist University, Shawnee, OK, scheduled for Fall 2020.

"Fostering a Culture of Institutional Effectiveness Through Coaching" (co-presented with Joseph C. Harrod and Matthew R. Minier). Concurrent Session presented at the annual meeting of the Southern Association of Colleges and Schools Commission on Colleges, Dallas, TX, December 4, 2017.

"The Resurrection of Jesus Christ" and "The Nature and Authority of the Bible." Featured Speaker for the Inaugural *Defend the Faith Apologetics Conference*, Brewton-Parker College, January 21, 2017.

"Evangelism and the Power of the Gospel." Talk presented at the *Resolute Collegiate Conference*, SBTS, February 16, 2013.

"Reconciling Rebels: How Do We Use Scripture in Witnessing?" Talk presented at the *Give Me an Answer Collegiate Conference*, SBTS, February 13, 2010.

"Teaching the Only Savior to Atheists." Talk presented at the *Give Me an Answer Collegiate Conference*, SBTS, February 21, 2009.

CHAPEL SERVICES

Chapel, East Texas Baptist University, 2020.
Chapel, Dallas Baptist University, 2019.
Chapel, Howard Payne University, 2019.
Chapel, University of Mobile, 2018.
Chapel, Dallas International University (formerly Graduate Institute of Applied Linguistics), 2018.
Staff Chapel, Southern Baptists of Texas Convention, 2017, 2019.
Chapel, Criswell College, 2013, 2017.
Staff Chapel, LifeWay Christian Resources, 2013.
Chapel, Campbellsville University, 2012, 2014.
Chapel, Clear Creek Baptist Bible College, 2012.
Staff Chapel, Kentucky Baptist Convention, 2012.
Chapel, The Southern Baptist Theological Seminary, 2012, 2013, 2014, 2016 (2), 2018.
Chapel, Shorter University, 2009, 2010 (2).
Chapel, North Greenville University, 2008, 2009, 2011, 2014, 2016, 2019 (Founder's Day).
Chapel, Samford University, 1998.

DENOMINATIONAL SPEAKING ENGAGEMENTS

Priority of Preaching Conference, Baptist General Convention of Oklahoma, 2020.
State Evangelism Conference, Baptist Convention of New Mexico, 2020.
State Evangelism (Empower) Conference, Southern Baptists of Texas Convention, 2020.
Southern Baptist Convention Fellowship of State Executive Directors, 2020.
State Evangelism Conference, Arkansas Baptist State Convention, 2020.
State Evangelism (Advance) Conference, Baptist General Convention of Oklahoma, 2020.
Annual Meeting, State Convention of Baptists in Ohio, 2019.
Annual Meeting, Southern Baptists of Texas Convention, 2019.
Pastors' Conference, Mississippi Baptist Convention, 2019.
Convention Sermon, Kentucky Baptist Convention, 2018.
Revitalize Conference, Arizona Southern Baptist Convention, 2016.
Church Revitalization Events, Southern Baptists of Texas Convention, 2016, 2017, 2019.
Annual Meeting, Utah-Idaho Southern Baptist Convention, 2015.
Vocational Evangelists' Conference, Kentucky Baptist Convention, 2012.
Pastors' Conference, Kentucky Baptist Convention, 2003, 2011, 2015.
Winter Men's Retreat, Baptist State Convention of Michigan, 2011.
Annual Meeting, Baptist State Convention of Michigan, 2010.
Associational Missionaries Workshop, Georgia Baptist Convention, 2009.
Younger Leaders Summit, LifeWay Christian Resources, 2005.
State Evangelism Conference, Kentucky Baptist Convention, 2003, 2006, 2017.

# PROFESSIONAL MEMBERSHIPS

American Institute of Parliamentarians
Evangelical Philosophical Society

Evangelical Theological Society
Fellowship of Evangelical Seminary Presidents
Great Commission Research Network (formerly American Society for Church Growth)
J. H. Spencer Historical Society
National Association of Parliamentarians

## HONORS AND AWARDS

The Dean's M.N.A. Award, Mendoza College of Business, University of Notre Dame, 2016.
M.N.A. Graduate Fellow, Mendoza College of Business, University of Notre Dame, 2014-16.
Commissioned as a Kentucky Colonel by Governor Ernie Fletcher, 2004.
Vernon G. Davison Award for Top Graduating Senior in Biblical Languages, Department of
    Religion and Philosophy, Samford University, 1998.
Presidential Scholar, Samford University, 1995-98.

## ACCREDITATIONS

Professional Registered Parliamentarian, National Association of Parliamentarians
Certified Apologetics Instructor, North American Mission Board
Church Consultant Training Levels 1-5, Society for Church Consulting

## MINISTERIAL CREDENTIALS

Licensed to the ministry by First Baptist Church, Frostproof, FL, June 4, 1995.
Ordained to the ministry by First Baptist Church, Frostproof, FL, January 17, 1999.